NO. 10-3285

IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

ROBERT F. BOOTH TRUST and RONALD GROSS,
*derivatively on behalf of nominal defendant* SEARS HOLDING CORPORATION,
*Plaintiffs-Appellees*,

v.

WILLIAM C. CROWLEY, EDWARD S. LAMPERT, STEVEN T. MNUCHIN,
RICHARD C. PERRY, ANN N. REESE, KEVIN B. ROLLINS, EMILY SCOTT,
and THOMAS J. TISCH,
*Defendants*,

*and*

SEARS HOLDING CORPORATION,
*Nominal Defendant*.

Appeal of THEODORE H. FRANK, *Appellant*.

On Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division, No. 09-cv-5314
The Honorable Ronald A. Guzman Presiding

Opening Brief and Required Short Appendix
of Appellant Theodore H. Frank

Theodore H. Frank
1718 M Street NW, No. 236
Washington, D.C. 20036
(703) 203-3848
*In propria persona*

## DISCLOSURE STATEMENT

Appellate Court Number:     10-3285
Short Caption:     ***Robert F. Booth Trust v. William C. Crowley, Appeal of Theodore H. Frank***

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information:

(1)  The full name of every party that the attorney represents in the case:

       Theodore H. Frank

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

       In a October 2010 filing, I identified my affiliation with the Center for Class Action Fairness (now the Center for Class Action Fairness LLC). I wish to clarify that CCAF is not a law firm.

(3)  If the party or amicus is a corporation:

    i)  Identify all its parent corporations, if any; and

       N/A

    ii)  list any publicly held company that owns 10% or more of the party's or amicus' stock:

       N/A

---

Attorney's Signature:  /s/ Theodore H. Frank      Date: March 12, 2012
Attorney's Printed Name: Theodore H. Frank

Are you *Counsel of Record* for the above listed parties pursuant to Cir. Rule 3(d)?   Yes

Address:      1718 M Street NW, No. 236
          Washington, DC 20036

Telephone:   (703) 203-3848            Facsimile:  N/A
E-mail Address: tedfrank@gmail.com

# TABLE OF CONTENTS

CIRCUIT RULE 26.1 DISCLOSURE ............................................................... i

TABLE OF CONTENTS ................................................................................ ii

TABLE OF AUTHORITIES ........................................................................... iii

Statutes and Rules ....................................................................................... vii

Jurisdictional Statement ................................................................................ 1

Statement of the Issues ................................................................................. 1

Statement of the Case ................................................................................... 2

Statement of the Facts .................................................................................. 4

    A.    The Lawsuit and Settlement Agreement. ..................................... 4

    B.    Frank's Objections and Motions to Intervene and Dismiss. .................... 6

    C.    The Court's Rulings. ....................................................................... 7

Summary of the Argument ............................................................................ 7

Argument ..................................................................................................... 10

I.    As a Timely Objector to a Settlement, Frank Had the Right to Intervene as a Matter of Law. ...................................................................... 10

II.    In the Wake of *Devlin*, the Seventh Circuit Should Overrule *Felzen*'s Requirement of Intervention. ............................................................. 12

III.    The Case Should Be Dismissed For Lack of Adequate Representation Under Rule 23.1(a). ..................................................................................... 16

    A.    The Settlement Is Rife With Evidence of Self-Dealing. ........................... 17

    B.    *Aqua Dots* Requires Dismissal of Plaintiffs' Suit ....................................... 21

CONCLUSION ........................................................................................... 26

CERTIFICATE OF COMPLIANCE WITH FED. R. APP. 32(a)(7)(C) AND CIRCUIT RULE 30(d) ............................................................................... 27

PROOF OF SERVICE ................................................................................. 28

# TABLE OF AUTHORITIES

<u>Cases</u>

*Annex Books, Inc. v. Indianapolis,*
    624 F.3d 368 (7th Cir. 2010) ................................................................. 24

*B.H. by Pierce v. Murphy,*
    984 F.2d 196 (7th Cir. 1993) ................................................................... 1

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,*
    429 U.S. 477 (1977) ............................................................................... 25

*Crawford v. Equifax Payment Services,*
    201 F.3d 877 (7th Cir. 2000) ............................................. 1-2, 8-9, 12

*Devlin v. Scardeletti,*
    536 U.S. 1 (2002) ......................................................................... 9, 13-15

*Dickinson v. Petroleum Conversion Corp.,*
    338 U.S. 507 (1950) ................................................................................. 1

*Felzen v. Andreas,*
    134 F.3d 873 (7th Cir. 1998),
    *aff'd by an equally divided Court,*
    *California Public Employees' Retirement System v. Felzen,*
    525 U.S. 315 (1999) ........................................... 2, 7-8, 12-15, 17, 26

*Flying J., Inc. v. Van Hollen,*
    578 F.3d 569 (7th Cir. 2009) ...................................................... 8, 11-12

*G. A. Enterprises, Inc. v. Leisure Living Communities, Inc.,*
    517 F.2d 24 (1st Cir. 1975) .................................................................. 17

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998) .......................................................... 18-19

*In re Aqua Dots Prod. Liab. Litig.,*
    654 F.3d 748 (7th Cir. 2011) ..................................................9, 16, 21, 25

*In re Bluetooth Headset Prod. Liab. Litig.,*
    654 F.3d 935 (9th Cir. 2011) .......................................................... 18-21

*In re Brand Name Prescription Drugs Antitrust Litigation,*
    115 F.3d 456 (7th Cir. 1997) ............................................................................12-13

*In re Envirodyne Indus.,*
    29 F.3d 301 (7th Cir. 1994) ................................................................................. 15

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.,*
    55 F.3d 768 (3d Cir. 1995) ................................................................................. 18

*In re Navigant Consulting, Inc., Sec. Litig.,*
    275 F.3d 616 (2001) ........................................................................................... 13

*Lobatz v. U.S. West Cellular of Cal., Inc.,*
    222 F.3d 1142 (9th Cir. 2000) ........................................................................... 21

*Marino v. Ortiz,*
    484 U.S. 301 (1988) ..........................................................................................12-14

*Mars Steel Corp. v. Continental Illinois Nat'l Bank & Trust Co.,*
    834 F.2d 677 (7th Cir. 1987) ............................................................................. 14

*McKinney v. Indiana Mich. Power Co.,*
    113 F.3d 770 (7th Cir. 1997) ............................................................................. 15

*Mirfasihi v. Fleet Mortgage Corp.,*
    356 F.3d 781 (7th Cir. 2004) ............................................................................17-18

*Mungo v. Taylor,*
    355 F.3d 969 (7th Cir. 2004) ......................................................................... 12, 16

*Murray v. GMAC,*
    434 F.3d 948 (7th Cir. 2006) ............................................................................. 16

*Protectoseal v. Barancik,*
    484 F.2d 585 (7th Cir. 1973) ............................................................................23-25

*SEC v. Enterprise Trust Co.,*
    559 F.3d 649 (7th Cir. 2009) ............................................................................13-14

*Staton v. Boeing Co.,*
    327 F.3d 938 (9th Cir. 2003) ......................................................................... 18, 20

*United States v. BDO Seidman,*
   337 F.3d 802 (7th Cir. 2003) ................................................................ 10

*Weinberger v. Great Northern Nekoosa Corp.,*
   925 F. 2d 518 (1st Cir. 1991) .............................................................. 20

*Young v. Higbee Co.,*
   324 U.S. 204 (1945) ............................................................................ 16

Rules and Statutes

15 U.S.C. § 19(a)(2) ...............................................................................4

15 U.S.C. § 26 ................................................................................. 1, 25

28 U.S.C. §1291 .....................................................................................1

28 U.S.C. §1331 .....................................................................................1

28 U.S.C. §1337 .....................................................................................1

28 U.S.C. §1367 .....................................................................................1

Fed. R. App. Proc. 4(a)(1)(A) ...............................................................1

Fed. R. Civ. Proc. 23 .......................................................8-9, 11, 13, 15, 16

Fed. R. Civ. Proc. 23(a)(4) ..........................................................9, 16, 21

Fed. R. Civ. Proc. 23(e) ...................................................................... 11

Fed. R. Civ. Proc. 23.1 ...................................... 2, 4, 8-9, 11, 13-16, 25-26

Fed. R. Civ. Proc. 23.1(a) ...................................... 3, 7, 10, 15, 16, 21

Fed. R. Civ. Proc. 24 .............................................................................7

Fed. R. Civ. Proc. 24(a) ...................................................................... 11

Fed. R. Civ. Proc. 24(a)(2) .................................................................. 10

Fed. R. Civ. Proc. 24(b) ...................................................................... 11

<u>Other Authorities</u>

AMERICAN LAW INSTITUTE,
    PRINCIPLES OF THE LAW OF AGGREGATE LITIG. §3.05, *comment b* (2010) ....18-19

Christopher R. Leslie, *The Significance of Silence: Collective Action Problems and Class Action Settlements*, 59 Fla. L. Rev. 71 (2007) ........................................................... 14

Report of the Third Circuit Task Force,
    *Court Awarded Attorney Fees*, 108 F.R.D. 237 (1985) .......................................19-20

Silver, Charles, *Due Process and the Lodestar Method*,
    74 Tulane L. Rev. 1809 (2000) ................................................................................ 21

## Statutes and Rules

**Federal Rule of Civil Procedure 23.1. Derivative Actions.**

    **(a)**    **Prerequisites.** This rule applies when one or more shareholders or members of a corporation or an unincorporated association bring a derivative action to enforce a right that the corporation or association may properly assert but has failed to enforce. The derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of shareholders or members who are similarly situated in enforcing the right of the corporation or association.

## Jurisdictional Statement

The district court has jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1337 because the plaintiffs' complaint alleged a cause of action under 15 U.S.C. § 26. The district court also has supplemental jurisdiction over plaintiffs' state-law claim pursuant to 28 U.S.C. § 1367.

On September 8, 2010, the district court denied Theodore H. Frank's Motion to Intervene and Motion to Dismiss. App. 1-2.[1] A timely notice of appeal was filed with the district court on September 28, 2010. Dkt. 142; Fed. R. App. Proc. 4(a)(1)(A).

An order denying intervention is final and appealable. *Dickinson v. Petroleum Conversion Corp.*, 338 U.S. 507, 513 (1950); *B.H. by Pierce v. Murphy*, 984 F.2d 196, 199 (7th Cir. 1993). This court thus has jurisdiction under 28 U.S.C. § 1291.

The original parties and their dispute remain before the district court.

## Statement of the Issues

1.      This Court holds that "it is vital that district courts freely allow the intervention of unnamed class members who object to proposed settlements and want an option to appeal an adverse decision" and that an order denying intervention by an objector seeking to preserve appellate rights "cannot survive even the most

---

[1] "App." refers to Frank's Rule 30 appendix in this case. "Dkt." refers to the docket in the district court below. "Appeal Dkt." refers to the docket in this case, No. 10-3285.

deferential kind of review." *Crawford v. Equifax Payment Services*, 201 F.3d 877, 881 (7th Cir. 2000). Did the district court err when it denied a timely motion to intervene by a shareholder objector seeking to preserve his appellate rights?

2.      Should this Court overrule the requirement of *Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998), that an objector to a Rule 23.1 settlement must intervene to preserve his or her right of appeal?

3.      Did the district court err in holding that the plaintiffs fairly and adequately represented the interests of shareholders in bringing derivative litigation where the plaintiffs proposed a settlement where 100% of the pecuniary benefit accrued to the plaintiffs' attorneys, and the interlocking directorate alleged by the plaintiffs remained in place?

## Statement of the Case

Plaintiffs brought a derivative shareholder action under Fed. R. Civ. Proc. 23.1 against Sears Holding Corp. and its directors, alleging that two of its directors were sitting on the board in violation of the Clayton Act prohibition against interlocking directorates. App. 28-49. The parties settled. App. 58-110.

An initial fairness hearing on July 9, 2010, raised questions about the adequacy of the notice, which the parties agreed to rectify; the court scheduled a second fairness hearing. App. 116-19, 125, 210-11.

In advance of the new fairness hearing, shareholder Theodore H. Frank timely filed an objection and a motion to intervene to dismiss the lawsuit for failing to meet

the Rule 23.1(a) adequacy requirement or, in the alternative, to preserve appellate rights if the settlement was approved. App. 126-39. On September 8, 2010, the district court denied Frank's motion to intervene and motion to dismiss. App. 1-2.

At the September 10, 2010, fairness hearing, the district court indicated that it disagreed with Frank's objections, but that it believed that the release in the settlement was too broad. App. 2, 5-9. The parties narrowed the release, and resubmitted the settlement for consideration. Dkt. 137-139.

Frank filed a timely notice of appeal on September 28, 2010, of the September 8 order denying the motion to intervene. Dkt. 142.

On December 1, 2010, this Court stayed the appellate briefing schedule in anticipation of the district court granting settlement approval and a consolidation of appeals. Appeal Dkt. 19. The district court, however, indicated that it believed that Frank's appeal divested it of jurisdiction. Dkt. 161. The district court continued to fail to rule after the parties submitted papers demonstrating that jurisdiction remained to approve the settlement. Dkt. 162-165. On August 30, 2011, this Court reset the briefing schedule. On plaintiffs' motion, this Court again stayed the briefing schedule in an order dated September 29, 2011, and affirmatively held that district court has jurisdiction to rule on the motion for final approval of the settlement while Frank's appeal is pending. Dkt. 167. The same order denied without prejudice Frank's motion for summary reversal. *Id.*

On January 27, 2012, the district court issued an order denying settlement approval without prejudice, again emphasizing the scope of the release, implying that

an identical settlement with a narrower release would be acceptable. App. 171. The case remains pending below as of March 11, 2012.

On February 9, 2012, this Court ordered briefing to proceed. Appeal Dkt. 32.


### Statement of the Facts

**A.     The Lawsuit and Settlement Agreement.**

On May 4, 2009, Ann N. Reese and William C. Crowley were elected to the Sears Holding Corporation board of directors with over 99.9% of the shareholder vote. App. 44, 205. Reese also sits on the board of Jones Apparel Group, Inc., which sells clothing and shoes; Crowley sits on the boards of AutoZone, Inc., which sells automotive replacement parts and accessories, and AutoNation, Inc., which offers auto service and repair. App. 29.

Plaintiffs brought a derivative shareholder action under Fed. R. Civ. Proc. 23.1 against Sears Holding Corp. and its directors, alleging that the presence of Reese and Crowley on the board violated the Clayton Act prohibition against interlocking directorates, and that the entire board breached their fiduciary duty to the company by permitting this to happen. App. 28-49. The complaint did not allege any financial damages to shareholders or antitrust injury. *Id.* The defendants denied the allegations under the 15 U.S.C. § 19(a)(2) safe harbor, but when the district court refused to dismiss the case (App. 50-57), they agreed to settle because it would be cheaper to settle than litigate. App. 164 ("The cost of continuing to litigate a complex case like this… would have been dramatically more than the settlement will cost.").

The settlement (App. 58-110) provided no compensation to shareholders and required the replacement of one of the two challenged directors, Crowley, while leaving Reese in place with a firewall—but provided that the plaintiffs' attorneys could request $925,000 in fees, with a "clear sailing" clause that prohibited the defendants from challenging the fee request, and reversion to the defendants of any denied fees. App. 69. The $925,000 figure was 1.39 times the alleged lodestar. App. 196-97. Sears denied any liability under the antitrust laws. App. 74.

Sears announced the settlement as part of its Schedule 14A statement on April 6, 2010; between then and the close of trading April 7, 2010, its stock price dropped from $107.91/share to $106.11, a greater drop than the Dow Jones Industrial Average over the same period. App. 133, 168.



Plaintiffs denied that the stock price drop demonstrated anything about the settlement, but presented no evidence that the market viewed the settlement favorably. App. 168-69.

## B.    Frank's Objections and Motions to Intervene and Dismiss.

Theodore H. Frank purchased 100 shares of Sears Holding Corporation on March 9, 2010, and owns them today. App. 116. He is an attorney and an elected member of the American Law Institute. App. 199.

Frank initially objected that he did not receive notice of the settlement until June 28, 2010, three days after the objection deadline, and was forced to file a placeholder objection within 24 hours; the parties, after some initial resistance, agreed to issue new notice and hold a new fairness hearing. App. 116-19, 125, 210-11.

In advance of the second fairness hearing, Frank objected again, and moved to intervene and to dismiss the litigation. App. 126-38. He objected that the settlement and litigation provided no benefit to shareholders. The litigation, Frank argued, was allegedly brought to prevent the risk that the government might litigate against the alleged interlocking directorate, but the parties presented no evidence that the government brings litigation or seeks fines without first attempting to settle interlocking directorate allegations, while the derivative shareholder litigation imposed the very costs it was supposedly meant to prevent. App. 130-34, 203-04, 6. Meanwhile, Frank argued, shareholders were deprived of an experienced director shareholders had chosen to elect; furthermore, the settlement permitted another challenged director to remain on the board, meaning that Sears still faced the alleged

risk of a government Clayton Act investigation. App. 134, 5-6. The market did not respond positively to the settlement, Frank claimed. App. 5-6, 133. The settlement did, however, provide a $925,000 payment to the attorneys, an amount well above their lodestar; Frank argued that this, combined with the adverse expense of the lawsuit, was a diversion of the firm's resources for the benefit of plaintiffs' attorneys in violation of Rule 23.1(a)'s adequacy requirement. App. 6, 134-35, 138.

In response, plaintiffs, *inter alia*, challenged the right of Frank to intervene, even for purposes of appeal. App. 143-47.

## C.    The Court's Rulings.

On September 8, 2010, the district court denied Frank's motion to intervene and motion to dismiss. App. 1-2. The court adopted plaintiffs' argument that the Rule 24 requirement that an intervenor demonstrate existing parties do not adequately represent the intervenor's interest mirrored the Rule 23.1(a) inquiry into adequacy. App. 2. The court rejected Frank's intervention for purposes of appeal because such an intervention "would be more obstructive than constructive." *Id.*

The court held that a shareholder derivative suit to end an interlocking directorate had benefits to shareholders because interlocking directorates are illegal. App. 2, 7. The court held the movement in the stock price irrelevant. App. 5.

## Summary of the Argument

In *Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998), *aff'd by an equally divided Court, California Public Employees' Retirement System v. Felzen*, 525 U.S. 315 (1999), this Court

made two observations. *First*, in dicta, citing extensive academic literature, this Court noted the problem of shareholder derivative suit settlements that "divert the firm's resources to the plaintiffs' lawyers without providing a corresponding benefit." 134 F.3d at 876. However, though this Court was critical of the *Felzen* settlement, where attorneys received 50% of the total benefit, it refused to rule upon the objector-appellants' appeal of the settlement approval, holding that an objector to a Rule 23.1 settlement must intervene to preserve his or her appellate rights, and dismissed the appeal for want of jurisdiction. *Id.* at 876, 878.

This case presents both of these questions before this Court again. Since *Felzen*, this Court has repeatedly held that a district court must permit intervention where an intervenor wishes to preserve his or her right of appeal. *Felzen*, 134 F.3d at 876 (noting that "intervention to facilitate an appeal" could be justified where shareholders sought to monitor potentially abusive Rule 23.1 settlement); *Flying J., Inc. v. Van Hollen*, 578 F.3d 569 (7th Cir. 2009) (reversible error to deny motion to intervene to preserve appellate rights, even where motion brought after district court issued injunction); *Crawford v. Equifax Payment Services, Inc.*, 201 F.3d 877, 881 (7th Cir. 2000) (decision to deny motion to intervene by Rule 23 objector contesting adequacy of class representative and seeking to preserve appellate rights "cannot survive even the most deferential kind of review"). Nevertheless, the plaintiffs opposed Frank's motion to intervene, and the district court, without mentioning *Flying J*, rejected the motion, applying the wrong legal standard, and holding that an appeal of a settlement approval

would be "obstructive"—precisely the backwards reasoning rejected by *Crawford*. This alone requires reversal.

But this Court should go farther than merely reversing the denial of intervention. The underlying premise of *Felzen*'s requirement of intervention—that a non-party who has not intervened cannot be considered a party for purposes of appeal—has been rejected by the Supreme Court in *Devlin v. Scardelletti*, 536 U.S. 1 (2002). *Devlin* does not necessarily reverse *Felzen*—*Devlin* applies to Rule 23 objectors, and *Felzen* held the case for intervention is stronger for Rule 23.1 objectors than Rule 23 objectors—but *Devlin* does undermine the premise of *Felzen*'s intervention requirement. Moreover, the reasoning of *Devlin*—that an intervention requirement is superfluous and creates unnecessary judicial burden—is fully demonstrated by the facts of this case, where the need for a motion to intervene created additional briefing in the district court, a need for an appeal before the case was finally resolved, a delay of over a year while the district court mistakenly thought it was without jurisdiction, and multiple rounds of motions in this Court as plaintiffs mysteriously continue to resist Frank's right to intervene. All of this waste can be avoided in future cases if this Court holds that *Devlin* applies to Rule 23.1 objectors as well as Rule 23 objectors.

This litigation is a poster child for *Felzen*'s other issue: the problem of self-serving derivative actions brought for the benefit of plaintiffs' lawyers, rather than shareholders. The Seventh Circuit recognizes that plaintiffs who bring class litigation that cannot possibly make class members better off cannot meet the Rule 23(a)(4) adequacy requirement. *In re Aqua Dots Prod. Liab. Litig.*, 654 F.3d 748 (7th Cir. 2011).

The same principle should apply to the Rule 23.1(a) adequacy requirement, and the district court erred as a matter of law in finding that a litigation whose only benefit was to prevent the possibility of litigation was a potential benefit to the class and that the plaintiffs adequately represented the shareholders. The suit cannot be maintained under Rule 23.1(a), and should be dismissed.

## Argument

## I.    As a Timely Objector to a Settlement, Frank Had the Right to Intervene as a Matter of Law.

**Standard of Review:** A decision that intervention can be denied because a party adequately represents an intervenor is reviewed *de novo*. *United States v. BDO Seidman*, 337 F.3d 802, 808 (7th Cir. 2003).

*Felzen* required Frank to intervene if he wished to maintain his objection on appeal. 134 F.3d at 876. But the district court applied the wrong legal standard. An intervenor must demonstrate that existing parties "fail to represent adequately" an intervenor's interest. *BDO Seidman*, 337 F.3d at 808. But the district court conflated this requirement under Rule 24(a)(2) with the Rule 23.1(a) requirement of adequate representation: "Whether plaintiffs can maintain this derivative suit and Frank has a right to intervene in it boil down to a single issue: Do plaintiffs adequately represent Frank's interest as a Sears shareholder? See Fed. R. Civ. P. 23.1(a), 24(a)(2)." App. 2. This is wrong. Every settlement approval necessarily requires a finding of that the class or shareholder representative is adequate under Rule 23(a)(4) or Rule 23.1(a): if

such a finding inherently precluded the right of an objector to intervene under Rule 24(a)(2), then no objector could ever intervene to appeal a settlement approval. But this is the exact opposite of what the Seventh Circuit has consistently held.

Just the same scenario occurred in the Rule 23 context in *Crawford*. The Seventh Circuit's reasoning in *Crawford* is equally applicable here:

> Magistrate Judge Schenkier gave a second reason for denying the motions: that the appearance of [objectors] Blair and Wilbon would cause "prejudice" in *Crawford* by upsetting the settlement. … Blair and Wilbon wanted to intervene so that they could appeal if the court approved the settlement under Rule 23(e) despite their objections; they recognized that a settlement had been reached already. Thus even if there were reason to doubt the proposition that an intervenor can't usurp the class representative's prerogatives, the magistrate judge could have avoided any problem by limiting the extent of the intervenors' rights to objecting and, if necessary, appealing. The possibility that we would see merit to their appeal cannot be called "prejudice"; appellate correction of a district court's errors is a benefit to the class. Because only parties may appeal, it is vital that district courts freely allow the intervention of unnamed class members who object to proposed settlements and want an option to appeal an adverse decision. So in the end, it does not matter whether intervention would come under Fed.R.Civ.P. 24(a) or (b), or what the standard of appellate review may be; the magistrate judge's order cannot survive even the most deferential kind of review.

201 F.3d at 881. *Cf. also Flying J., Inc. v. Van Hollen*, 578 F.3d 569 (7th Cir. 2009) (reversible error to deny motion to intervene to preserve appellate rights). It is no less vital that district courts freely allow shareholders to object to proposed Rule 23.1 settlements to preserve their appellate rights.

Remarkably, the district court held that Frank's desire to preserve his right to appeal a settlement approval was a reason to *deny* the motion to intervene. App. 2 (Frank's stated intent to appeal a settlement approval "suggest[s] that Frank's intervention would be more obstructive than constructive"). This is exactly the reasoning that *Crawford* rejected: "The possibility that we would see merit to [an objector's] appeal cannot be called 'prejudice'; appellate correction of a district court's errors is a benefit to the class." 201 F.3d at 881. The district court's order denying intervention "cannot survive even the most deferential kind of review." *Id.* It must be reversed.[2]

## II.    In the Wake of *Devlin*, the Seventh Circuit Should Overrule *Felzen*'s Requirement of Intervention.

**Standard of Review:** Questions of law are reviewed *de novo. Mungo v. Taylor*, 355 F.3d 969, 974 (7th Cir. 2004).

In *Felzen*, this Court held that an objector to a Rule 23.1 settlement was required to intervene for the appellate court to have jurisdiction over an appeal. Relying on *Marino v. Ortiz*, 484 U.S. 301, 304 (1988) and *In re Brand Name Prescription Drugs Antitrust Litigation*, 115 F.3d 456 (7th Cir. 1997), *Felzen* held that an appellate

---

[2] Below, claimed that Frank's motion to intervene was untimely. The argument is frivolous. Frank's motion to intervene was filed before the deadline to object to the settlement, and thus caused no prejudice to the parties, because the arguments Frank made plaintiffs with respect to his proposed intervention were co-extensive with his objections. App. 126-39. Moreover, the Seventh Circuit has held that a motion to intervene merely to preserve appellate rights can come even after final judgment has issued. *Flying J, supra*.

court only had jurisdiction over parties' appeals, and an objector who did not intervene was not a party.

But in *Devlin v. Scardelletti*, 536 U.S. 1 (2002), the Supreme Court rejected the Seventh Circuit's interpretation of *Marino* and abrogated *Brand Name Prescription Drugs*. Singling out the argument in this Court's *In re Navigant Consulting, Inc., Sec. Litig.*, 275 F.3d 616, 619 (2001), that "nonnamed class members cannot be considered parties for the purposes of bringing an appeal because they are not considered parties for the purposes of the complete diversity requirement," *Devlin* held that unnamed class members "may be parties for some purposes and not for others. The label 'party' does not indicate an absolute characteristic, but rather a conclusion about the applicability of various procedural rules that may differ based on context." 536 U.S. at 9-10. *Devlin* went on to hold that "it is difficult to see the value of" an intervention requirement "[g]iven the ease with which nonnamed class members who have objected at the fairness hearing could intervene for purposes of appeal." *Id.* at 12. Thus, *Devlin* concluded, intervention was not required to preserve appellate rights. "Just as class action procedure allows nonnamed class members to object to a settlement at the fairness hearing without first intervening, … it should similarly allow them to appeal the District Court's decision to disregard their objections." *Id.* at 14.

Now, *Devlin* does not necessarily mandate the reversal of *Felzen*; *Devlin* was a case about Rule 23 objectors and, as *Felzen* pointed out, there are additional reasons for requiring intervention for Rule 23.1 objectors. 134 F.3d at 875-76. But as this Court recognized in *SEC v. Enterprise Trust Co.*, 559 F.3d 649, 651 (7th Cir. 2009), an

opinion authored by the author of *Felzen*, *Devlin* overruled the Seventh Circuit's understanding of *Marino* that "only parties may appeal." This was the entire premise behind *Felzen*'s holding requiring intervention. With that premise abrogated by *Devlin*, it would be the most petty formalism to require intervention for a Rule 23.1 objector.

This is especially true "[g]iven the ease with which nonnamed [shareholders] who have objected at the fairness hearing could intervene for purposes of appeal." *Devlin*, 536 U.S. at 12; Section I, *supra*. Requiring the additional formalistic step of intervention only adds burden to objectors (who already have a less-than-economically-efficient incentive to create the positive externality of objecting for the greater good of the class)[3] with no offsetting benefit.

Indeed, the comedy of errors in this case demonstrates the wisdom of applying *Devlin* to Rule 23.1 objectors' appeals. Pursuant to *Felzen*, Frank moved to intervene in this case to preserve his appellate rights. This motion practice permitted plaintiffs to successfully confuse the judge as to relevant legal standard in the hopes of creating roadblocks to Frank's objection to an illegitimate settlement. Because the judge denied

---

[3] Christopher R. Leslie, *The Significance of Silence: Collective Action Problems and Class Action Settlements*, 59 Fla. L. Rev. 71, 73 (2007) ("[S]ilence is a rational response to any proposed settlement even if that settlement is inadequate. For individual class members, objecting does not appear to be cost-beneficial. Objecting entails costs, and the stakes for individual class members are often low."). As this Court has noted, where notice of the class action is "sent simultaneously with the notice of the settlement itself, the class members are presented with what looks like a *fait accompli*." *Mars Steel Corp. v. Continental Illinois Nat'l Bank & Trust Co.*, 834 F.2d 677, 680-681 (7th Cir. 1987).

Frank's motion, Frank was forced to appeal before the settlement was approved, and then parry multiple attempts by the plaintiffs to sidetrack the appeal with appellate motion practice. Because Frank's appeal was pending, the district court mistakenly believed that it did not have jurisdiction, causing a delay of over a year while the parties engaged in motion practice to get this Court to issue an order giving more explicit permission for the district court to rule on the settlement approval. Dkt. 161, 167. Even if the district court had approved the settlement some time in 2010 or 2011, Frank and the courts would have been put to the expense of a second appeal and administrative motions to consolidate this appeal with the new appeal.[4]

All of this could have been avoided if it was clear that this Court would adopt *Devlin*'s streamlined procedures for objectors in Rule 23.1 cases as well as Rule 23 cases. This Court should take the opportunity to hold that *Devlin* supersedes *Felzen*,

---

[4] Plaintiffs have claimed that this appeal is moot by the denial of the settlement. Appeal Dkt. 30. This is wrong. An "intervening event will be deemed to moot a pending appeal only if, in light of that event, 'there is no possible relief which the court could order that would benefit the party seeking it.'" *McKinney v. Indiana Mich. Power Co.*, 113 F.3d 770, 772 (7th Cir. 1997) (*quoting In re Envirodyne Indus.*, 29 F.3d 301, 303 (7th Cir. 1994)). The district court's denial of the settlement was not on the grounds to which Frank objected, but was without prejudice and on easily-fixable technical grounds relating to the scope of the release. App. 171. The parties will be able to submit a materially identical settlement to the Court without new notice to the shareholders. If this appeal is dismissed without ruling on Frank's right to appeal a settlement approval, it will remain unclear whether this Court has jurisdiction over a second appeal from the eventual final judgment. Moreover, Frank is requesting additional relief in this appeal: a ruling holding the shareholder plaintiffs inadequate representatives under Rule 23.1(a). *See* Section III, *infra*.

---

and that Rule 23.1 shareholder-objectors need not intervene to appeal approvals of Rule 23.1 settlements.

## III.   The Case Should Be Dismissed For Lack of Adequate Representation Under Rule 23.1(a).

**Standard of Review:** Mixed questions of law and fact are reviewed *de novo*. *Mungo*, 355 F.3d at 974 (7th Cir. 2004).

Frank objected to a fee-driven settlement of a strike suit brought against the best interests of the shareholders for the benefit of the plaintiffs' attorneys. By threatening to force the corporate defendant and its directors to spend time and money and resources defending against a meritless lawsuit and complying with discovery requests, plaintiffs' attorneys can extract value from shareholders. This Court's precedents suggest that it is an impermissible misuse of Rule 23 to bring litigation designed to benefit plaintiffs' attorneys at the expense of their putative clients. *In re Aqua Dots Prod. Liab. Litig.*, 635 F.3d 748 (7th Cir. 2011) (holding class could not be certified because of failure to meet Rule 23(a)(4) adequacy requirement); *Murray v. GMAC*, 434 F.3d 948, 952 (7th Cir. 2006) ("untenable" when "class device had been used to obtain leverage for one person's benefit") (*citing Young v. Higbee Co.*, 324 U.S. 204, 211-14 (1945) (shareholder suit)). There is no reason to treat Rule 23.1 actions any differently: Rule 23.1(a) mirrors Rule 23(a)(4)'s requirement of adequacy of representation. *G. A. Enterprises, Inc. v. Leisure Living Communities, Inc.*, 517 F.2d 24, 26 n.3 (1st Cir. 1975). The appropriate remedy is, as Frank requested below, to dismiss the lawsuit for failure to meet Rule 23.1(a)'s adequacy requirement.

**A.     The Settlement Is Rife With Evidence of Self-Dealing.**

As this Court has repeatedly recognized, "class actions are rife with potential conflicts of interest between class counsel and class members." *Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 785 (7th Cir. 2004) (citing cases). The dynamic is no different in shareholder derivative litigation. *Felzen* recognized this problem a decade ago:

> Rule 23.1 provides for notice to shareholders only in the event of dismissal or settlement, so that other investors may contest the faithfulness or honesty of the self-appointed plaintiffs; we do not doubt that this monitoring is often useful and that intervention to facilitate an appeal could be justified. Many thoughtful students of the subject conclude, with empirical support, that derivative actions do little to promote sound management and often hurt the firm by diverting the managers' time from running the business while diverting the firm's resources to the plaintiffs' lawyers without providing a corresponding benefit. Janet Cooper Alexander, *Do the Merits Matter? A Study of Settlements in Securities Class Actions*, 43 Stan. L.Rev. 497 (1991); Reinier Kraakman, Hyun Park & Steven Shavell, *When are Shareholder Suits in Shareholder Interests?*, 82 Geo. L.J. 1733 (1994); Roberta Romano, *The Shareholder Suit: Litigation Without Foundation?*, 7 J.L. Econ. & Org. 55 (1991); Mark L. Cross, Wallace N. Davidson & John H. Thornton, *The Impact of Directors' and Officers' Liability Suits on Firm Value*, 56 J. Risk & Insurance 128 (1989); Daniel R. Fischel & Michael Bradley, *The Role of Liability Rules and the Derivative Suit in Corporate Law: A Theoretical and Empirical Analysis*, 71 Cornell L.Rev. 261 (1986). The two shareholder-appellants in this case believe that the modest settlement, half of which will be paid to counsel, exemplifies this problem.

134 F.3d at 876. This settlement is even worse than the one in *Felzen*: the attorneys get up to $925,000, while the class gets zero in cash.

The concerns about the potential conflict of interest between class counsel and their clients "warrant special attention when the record suggests that settlement is driven by fees; that is, when counsel receive a disproportionate distribution of the settlement…" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1021 (9th Cir. 1998); *accord In re Bluetooth Headset Prod. Liability Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). "If fees are unreasonably high, the likelihood is that the defendant obtained an economically beneficial concession with regard to the merits provisions, in the form of lower monetary payments to class members or less injunctive relief for the class than could otherwise have obtained." *Staton v. Boeing Co.*, 327 F.3d 938, 964 (9th Cir. 2003); *accord Bluetooth*, 654 F.3d at 947.

There need not be explicit collusion to create the sort of self-dealing unfairness that benefits class counsel at the expense of their clients, only acquiescence: "a defendant is interested only in disposing of the total claim asserted against it" and "the allocation between the class payment and the attorneys' fees is of little or no interest to the defense." *Staton*, 327 F.3d at 964 (*quoting In re General Motors Corp. Pickup Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 819-20 (3d Cir. 1995)); *accord Bluetooth*, 654 F.3d at 949; *cf. Mirfasihi*, 356 F.3d at 785. Thus, courts judging the fairness of a settlement should not just simply ask whether a settlement was negotiated at arms' length, but whether the attorneys are unfairly pursuing their self-interest at the expense of the class. *Mirfasihi*, 356 F.3d at 785; *Bluetooth*, 654 F.3d at 947; *cf. also* American Law Institute, *Principles of the Law of Aggregate Litigation* § 3.05, *comment b* at 208 (2010) ("a proposed settlement in which the class receives an insubstantial

payment while the fees requested by counsel are substantial could raise fairness concerns").

*Bluetooth* suggests a nonexclusive list of three possible signs of self-dealing. *Bluetooth,* 654 F.3d at 947. As in *Bluetooth*, all three of these "multiple indicia" of unfairness are present here. *Id.*

*First*, "counsel receive[d] a disproportionate distribution of the settlement"—in this case, all of it. *Id.* (*quoting Hanlon*, 150 F.3d at 1021). Plaintiffs' counsel is requesting $925,000 for itself, well over its alleged (and likely inflated) lodestar; the shareholders they purport to be representing will get no cash at all.

Perhaps the plaintiffs will argue that they did not negotiate their attorneys' fees until after the rest of the settlement was negotiated. As a matter of economic analysis, this is irrelevant to the question of self-dealing. The settling parties are rational economic actors. Even when the negotiations over fees are severed, the parties know in advance that those negotiations are coming, that the defendants have a reservation price based on their internal valuation of the litigation, and that every dollar negotiated for the shareholders reduces the amount the defendants are willing to pay plaintiffs' counsel. The defendants can further reasonably estimate in advance what plaintiffs will claim their lodestar to be from their own defense costs. Because these future fee negotiations are not an unexpected surprise, and because the parties know a settlement will not occur unless the parties agree to an attorney-fee clause, the overhang of the future fee negotiations necessarily infects the earlier settlement negotiations. "Even if the plaintiff's attorney does not consciously or explicitly

bargain for a higher fee at the expense of the beneficiaries, it is very likely that this situation has indirect or subliminal effects on the negotiations." *Court Awarded Attorney Fees*, Report of the Third Circuit Task Force, 108 F.R.D. 237, 266 (1985); *cf. also Bluetooth*, 654 F.3d at 948 (neither presence of neutral mediator nor separation of fee negotiations from other settlement negotiations demonstrates that a settlement is fair). "In other words, the negotiation of class counsel's attorneys' fees is not exempt from the truism that there is no such thing as a free lunch." *Staton*, 327 F.3d at 964.

*Second*, the settlement has a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds without challenge from the defendants. *Bluetooth,* 654 F.3d at 948. A clear sailing clause stipulates that attorney awards will not be contested by opposing parties. "Such a clause by its very nature deprives the court of the advantages of the adversary process." *Weinberger v. Great Northern Nekoosa Corp.,* 925 F.2d 518, 525 (1st Cir. 1991). The clear sailing clause lays the groundwork for lawyers to "urge a class settlement at a low figure or on a less-than-optimal basis in exchange for red-carpet treatment on fees." *Id.* at 524; *accord Bluetooth,* 654 F.3d at 947. Here, class counsel put its own fees ahead of the interests of the shareholders by negotiating a provision that insulated those fees from challenge by the defendant. App. 69.

*Third*, the "parties arrange[d] for fees not awarded to revert to defendants rather than be added to the [shareholder] fund." *Bluetooth,* 654 F.3d at 947. A "kicker arrangement reverting unpaid attorneys' fees to the defendant rather than to the [shareholders] amplifies the danger" that is "already suggested by a clear sailing

provision." *Id.* at 949. "The clear sailing provision reveals the defendant's willingness to pay, but the kicker deprives the class of that full potential benefit if class counsel negotiates too much for its fees." *Id.*

The class is unambiguously worse off when any reduction in a fee award reverts to the defendant instead of the shareholders. The only reason to negotiate that provision is for the self-serving effect of protecting class counsel by deterring scrutiny of the fee award. A court has less incentive to scrutinize a fee award, because the kicker combined with the clear sailing agreement means that any reversion will only go to the defendant that had already agreed to pay that amount. Charles Silver, *Due Process and the Lodestar Method*, 74 Tulane L. Rev. 1809, 1839 (2000) (such a fee arrangement is "a strategic effort to insulate a fee award from attack").

Thus, from the proposed settlement alone, there is substantial evidence of the failure to meet Rule 23.1(a)'s adequacy requirement. If "class counsel agreed to accept excessive fees and costs to the detriment of class plaintiffs, then class counsel breached their fiduciary duty to the class." *Lobatz v. U.S. West Cellular of Cal., Inc.,* 222 F.3d 1142, 1147 (9th Cir. 2000).

## B.    *Aqua Dots* Requires Dismissal of Plaintiffs' Suit.

When class representatives permit class counsel to bring class litigation to benefit themselves, rather than their putative class clients, they cannot meet the adequacy requirements of Rule 23(a)(4), and the class should not be certified. *In re Aqua Dots Prod. Liab. Litig.,* 654 F.3d 748 (7th Cir. 2011). It would be one thing that if

the plaintiffs were seeking injunctive relief that would leave shareholders in a better position. But they were not.

The plaintiffs sued to end an alleged interlocking directorate under the Clayton Act. But they claim no damages to shareholders from the directorate, only the *potential* for damages—to wit, the risk that the government might litigate against Sears to end the interlocking directorate. But there is no benefit in forcing a corporation to pay for both the defense and prosecution of civil litigation to prevent the remote risk of future government enforcement litigation: it is akin to the apocryphal Vietnam-War-era cliché "We had to destroy the village in order to save it." This is especially so given that there is no evidence that the government has brought a lawsuit over interlocking directorates in at least the last thirty years; instead, the Department of Justice resolves rare alleged violations during that time with demand letters. (Plaintiffs cited to two 1950s-era enforcement actions against Sears (App. 149); to say the least, the fact that the plaintiffs had to go back to the Truman Administration to find counter-evidence cuts against a finding that Sears was facing any serious risk today, given the dramatic changes in antitrust enforcement in the last forty years.) Moreover, the settlement did not even relieve the risk of future government litigation, because Reese, one of the two challenged directors, remained on the board. The settlement creates a "firewall" for Reese (App. 109-10), but there is no firewall exception to the interlocking directorate prohibition in the Clayton Act.

A comparison of the but-for world shows that rational shareholders would prefer *ex ante* that this litigation not be brought, and that the shareholders have been made worse off by this litigation and proposed settlement:

| **No Litigation** | **Litigation** |
|---|---|
| There is some probability $p$ that the government will believe the interlocking directorate law is violated, and require, through demand letters or litigation, the resignation of Crowley and Reese, forcing Sears to incur defense costs $D$. | There is 100% certainty that Sears is incurring defense costs $D^*$, notice costs $N^*$, and settlement costs $S^*$ of up to $925,000 in attorneys' fees for the plaintiffs. One director, Crowley, has resigned. There is some probability $p^*$ that the government will believe the interlocking directorate law is still violated, and require, through demand letters or litigation, the resignation of Reese, forcing Sears to incur defense costs $D$. |

Below, plaintiffs and the district court (App. 2) relied upon *Protectoseal v. Barancik*, 484 F.2d 585 (7th Cir. 1973), to justify this suit. But *Protectoseal* is a case where the corporation itself (rather than a derivative shareholder) chose to bring litigation against a director who sat on the board of a competitor as part of a battle over control of the corporation. There was thus no need for a Rule 23.1(a) threshold inquiry whether the plaintiffs were acting in the interests of the corporation. *Protectoseal* does not change the simple mathematical equation that a 100% chance of litigation is more expensive to the corporation than a chance of litigation less than 100%. Even if government enforcement litigation were a 100% certainty, the

shareholder derivative litigation is more expensive to the corporation than the government litigation:

- the shareholder derivative litigation requires the corporation to pay for both the defense and, in settlement, the plaintiffs' attorneys;

- the shareholder derivative litigation requires the corporation to pay for the expense of settlement notice; and

- because of the time value of money, shareholders would prefer the expense of litigation over interlocking directorates be borne in the future, rather than in present derivative litigation.

Indeed, the market appears to have rejected the idea that this litigation benefited Sears: the stock dropped in the aftermath of the settlement announcement, both in absolute terms and relative to the Dow Jones Industrial Average. App. 133. While the district court is correct that there are lots of reasons a stock could drop (App. 5), this is beside the point: it is up to the plaintiffs to prove that their litigation and proposed settlement benefits shareholders. While the stock price data has not been subjected to statistical analysis, and Frank has not attempted to control for other variables, "these data do imply that the change in [defendant's board of directors] did not produce any measurable benefit." *Annex Books, Inc. v. Indianapolis*, 624 F.3d 368, 370 (7th Cir. 2010).

There is also a material difference between *Protectoseal* and the current litigation: in *Protectoseal*, there was no dispute that there was an interlocking directorate; the only question was the issue of standing. In this case, there is a substantial factual dispute whether Section 8 was violated, which would require expensive discovery to resolve to

the detriment of shareholders; to this day, Sears denies that there was a Section 8 violation, and is only settling to avoid the expense of litigation—an expense that would not be incurred by shareholders that had the interests of other shareholders at heart. Plaintiffs interested in operating for the benefit of shareholders rather than for the benefit of plaintiffs' attorneys would have issued a formal demand upon the Sears board to address the alleged problem of interlocking directorates rather than immediately forcing the corporation to expend hundreds of thousands of dollars in litigation expenses—but a formal demand could not generate attorneys' fees.

Moreover, it is far from clear that *Protectoseal* is still good law. *Protectoseal* predates the unanimous decision in *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477 (1977), which requires a showing of "antitrust injury" before bringing suit under the Clayton Act. Plaintiffs' complaint alleges no antitrust injury. Instead, they bring two causes of action for injunctive relief under 15 U.S.C. § 26, but that relief is only available "against threatened loss or damage by a violation of the antitrust laws" where there is "a showing that the danger of irreparable loss or damage is immediate." The derivative shareholder plaintiffs cannot possibly meet either requirement: indeed, they explicitly disclaim any damages in their amended complaint. Nor can the corporation, in whose shoes the derivative shareholder plaintiffs purport to sit, have suffered any antitrust injury or "threatened loss or damage by a violation of the antitrust laws."

This is a case akin to *Aqua Dots*: the only potential beneficiaries from this litigation are the plaintiffs' attorneys. Plaintiffs who bring litigation to benefit the

plaintiffs' attorneys at the expense of shareholders do not "fairly and adequately represent the interests of shareholders." Fed. R. Civ. Proc. 23.1(a). Thus, the "derivative action may not be maintained. *Id.*

## CONCLUSION

Therefore, this Court should reverse the decision to deny Frank's motion to intervene, and remand with instructions to dismiss plaintiffs' complaint for failure to meet the Rule 23.1(a) adequacy requirement. This Court should further clarify that *Felzen*'s requirement of intervention to preserve appellate rights is no longer needed for a Rule 23.1 objector.

Dated:  March 12, 2012                    Respectfully submitted,

                                          */s/ Theodore H. Frank*
                                          Theodore H. Frank
                                          1718 M Street NW, No. 236
                                          Washington, DC 20036
                                          Telephone:  (703) 203-3848
                                          Email:  tfrank@gmail.com
                                          *In pro per*

## CERTIFICATE OF COMPLIANCE
## WITH FED. R. APP. 32(a)(7)(C) AND CIRCUIT RULE 30(d)

Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, Type Style Requirements, and Appendix Requirements:

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

This brief contains 6,773 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

This brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Garamond font.

3.     All materials required by Cir. R. 30(a) & (b) are included in the appendix. Executed on March 12, 2012.

*/s/ Theodore H. Frank*
Theodore H. Frank
1718 M Street NW, No. 236
Washington, DC 20036
Telephone:  (703) 203-3848
Email:  tfrank@gmail.com
*In pro per*

**PROOF OF SERVICE**

I hereby certify that on March 12, 2012, I electronically filed the foregoing with the Clerk of the United States Court of Appeals for the Seventh Circuit using the CM/ECF system, thereby effecting service on counsel of record who are registered for electronic filing under Cir. R. 25(a).

I further certify that I have caused to be served via First-Class Mail a copy of the foregoing Brief and Appendix on the following counsel who are not registered for electronic filing:

Kenneth J. Vianale
VIANALE & VIANALE
Suite 112
2499 Glades Road
Boca Raton, FL 33431-0000

Paul Vizcarrondo
WACHTELL, LIPTON, ROSEN & KATZ
51 W. 52nd Street
New York, NY 10019-0000

Executed on March 12, 2012.

/s/ Theodore H. Frank
Theodore H. Frank
1718 M Street NW, No. 236
Washington, DC 20036
Telephone:  (703) 203-3848
Email:  tfrank@gmail.com
*In pro per*

# REQUIRED SHORT APPENDIX

CASE NO. 10-3285

## INDEX TO DOCUMENT REFERENCES IN APPENDIX

| Description of Item | Record Entry No. | Appendix Page No. |
|---|---|---|
| **REQUIRED SHORT APPENDIX** | | |
| Minute Entry Denying Theodore Frank's Motion to Intervene and Dismiss (9/08/10) .............................................. | R.133 | 1 |
| Transcript of Proceedings Fairness Hearing on September 10, 2010, pages 28-32 (10/15/10).............................................. | R.148 | 3 |
| **DOCUMENTS FOR ADDITIONAL APPENDIX** | | |
| District Court Docket Sheet Case No. 1:09-cv-05314 ................................. | N/A | 10 |
| Amended Consolidated Verified Derivative Complaint (10/13/09)........................................... | R.45 | 28 |
| Memorandum Opinion and Order (2/26/10)............................................ | R.65 | 50 |
| Memorandum of Law by Robert F. Booth Trust in Support of Joint Amended Motion for Preliminary Approval of Settlement (4/28/10) .............................................. | R.87 | N/A |
|     <u>Attachment 1</u> Amended Stipulation of Settlement..... | | 58 |

|                                                                                 | Record Entry No. | Appendix Page No. |
| ------------------------------------------------------------------------------- | ---------------- | ----------------- |
| **Description of Item**                                                         |                  |                   |
| **Exhibit A**<br>**[Proposed] Order and Final Judgment** ..........................................  |                  | **80**            |
| **Exhibit B**<br>**Preliminary Approval Order** ......                          |                  | **87**            |
| **Exhibit C**<br>**Summary Notice of Pendency of Shareholder Derivative Action, Proposed Settlement and Settlement Hearing** .......................  |                  | **93**            |
| **Exhibit D**<br>**Notice of Proposed Settlement of Shareholder Derivative Lawsuit Brought on Behalf of Sears Holdings Corporation** ...................  |                  | **97**            |
| **Exhibit E**<br>**Guidelines Regarding Protection of Sears Holdings Corporation Information** .............  |                  | **108**           |
| **Preliminary Approval Order (5/11/10)**..............................................................  | **R.93**         | **111**           |
| **Objection of Theodore H. Frank (7/1/10)**.................................................................  | **R.107**        | **116**           |
| **Minute Entry Fairness and Motion Hearing (7/9/10)**...............................................................  | **R.115**        | **125**           |

| Description of Item | Record Entry No. | Appendix Page No. |
|---|---|---|
| Motion to Intervene and Objection of Theodore H. Frank; and Motion to Dismiss under Rule 23.1(a) (8/16/10) .............................................. | R.117 | 126 |
| [Proposed] Pleading of Objector/Intervenor Theodore H. Frank (8/16/10) .............................................. | R.118 | 137 |
| Plaintiffs' Opposition to the Motion to Intervene and Objection of Theodore H. Frank and Motion to Dismiss under Rule 23.1(A) (8/24/10)................................................ | R.119 | 140 |
| Reply in Support of Motion to Intervene and Motion to Dismiss of Theodore H. Frank (8/25/10)................................................ | R.124 | 154 |
| Individual Defendants' Response to Motion to Intervene and Objection of Theodore H. Frank to Proposed Settlement (9/7/10)................................................. | R.128 | 163 |
| Supplemental Response to Objection of Theodore H. Frank (9/8/10) .............................................. | R.131 | 167 |
| Minute Entry Court Denying Plaintiffs' Motion to Approve the Amended Stipulation of Settlement (1/27/12) ............................................. | R.176 | 171 |

| Hearing other than <u>Witness Testimony</u> | Pages of Hearing <u>in Transcript</u> | Page where Hearing/Exhibit <u>Begins in Appendix</u> |
|---|---|---|
| **Transcript Of Proceedings Final Approval of Settlement and Attorneys' Fees 7/9/10 R.149** | **1-48** | **172** |
| **Transcript Of Proceedings Fairness Hearing 9/10/10 R.148** | | |
| | **1-27** | **220** |

# 1

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 09 C 5314 | **DATE** | 9/8/2010 |
| **CASE TITLE** | Robert F. Booth Trust vs. Crowley | | |

**DOCKET ENTRY TEXT**

For the reasons set forth in this Order, objector Theodore Frank's motion to intervene and dismiss [doc. no. 117] is denied.

■ [For further details see text below].

Docketing to mail notices.

| | Courtroom Deputy Initials: | LC/LM |
|---|---|---|

Sears shareholder Theodore Frank has filed a motion to intervene and dismiss pursuant to Federal Rules of Civil Procedure 23.1 and 24. Whether plaintiffs can maintain this derivative suit and Frank has a right to intervene in it boil down to a single issue: Do plaintiffs adequately represent Frank's interest as a Sears shareholder? *See* Fed. R. Civ. P. 23.1(a), 24(a)(2).

Among the factors courts consider to determine whether derivative suit plaintiffs are adequate representatives is whether they appear to be "the driving force behind the litigation." *See Davis v. Comed, Inc.*, 619 F.2d 588, 593-94 (6th Cir. 1980) (listing factors). Frank argues that the nature of the suit shows that plaintiffs' lawyers are the force behind it because interlocking directorates, which stifle competition, actually benefit stockholders. Consequently, he concludes, the only point to filing a suit to enforce the ban on interlocks is to generate legal fees. (Mot. Intervene 5-6.)

The Court disagrees. Interlocking directorates are illegal. 15 U.S.C. § 19. Maintaining them carries the risk of government intervention, further private litigation and negative publicity, all of which can decrease the price of Sears stock. Though the relative value of suing over interlocks can be debated, such suits are not, as Frank contends, completely devoid of merit.

In addition, Frank argues that the terms of the settlement, which provide no compensation to the shareholders but up to $925,000.00 in fees to plaintiffs' counsel, show that the lawyers are driving the suit. However, the proposed settlement does not include money for the shareholders because money damages were not sought in the suit. Moreover, though Frank's concern about the agreed amount is well taken, the Clayton Act contemplates that prevailing plaintiffs will recover a reasonable attorney's fee. *See* 15 U.S.C. § 26. If the Court approves a settlement, it will determine the amount of a reasonable fee according to the principles set forth in *Hensley v. Eckerhart*, 461 U.S. 424 (1983), not the parties' agreement.

In short, Frank has not demonstrated that plaintiffs do not adequately represent his interests as a Sears shareholder. Thus, he is not entitled to intervene under Rule 24(a).

Alternatively, Frank seeks the Court's permission to intervene under Rule 24(b). *See* Fed. R. Civ. P. 24(b)(1), (3) ("[T]he court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact" if "the intervention will [not] unduly delay or prejudice the adjudication of the original parties' rights."). Frank argues that his intervention will not delay the case or prejudice the parties because he seeks party status solely to obtain the right to appeal. (Mot. Intervene 5); *see Felzen v. Andreas*, 134 F.3d 873, 874-76 (7th Cir. 1998) (holding that shareholders must intervene in a derivative suit to appeal from an order approving its settlement), *aff'd sub nom. Cal. Pub. Emp. Retirement Sys. v. Felzen*, 525 U.S. 315 (1999) (per curiam). But he also says that he will appeal any settlement approval order, regardless of its terms, because the suit enriches the lawyers at the expense of the shareholders and distracts the Sears board. (*See* Mot. Intervene 5, 9.) Frank unequivocally states his intention before the Court has held a fairness hearing, approved or rejected the proposed settlement in whole or part, or made any necessary fee determination, and without acknowledging that an appeal will also impose costs on Sears. These facts suggest that Frank's intervention would be more obstructive than constructive. As a result, the Court exercises its discretion to deny both his motion to intervene and his motion to dismiss.

That does not mean, however, that the Court will disregard his concerns. Frank has submitted written objections to the proposed settlement, which he may address more fully at the fairness hearing. Moreover, if Frank cannot or does not attend that hearing, the Court will still consider his objections, and those of any other Sears stockholder, before ruling on plaintiffs' motion for final approval.

```
 1                     IN THE UNITED STATES DISTRICT COURT
                      FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                              EASTERN DIVISION

 3    ROBERT F. BOOTH TRUST,           )
      derivatively on behalf of        )
 4    nominal defendant SEARS HOLDINGS )
      CORPORATION,                     )
 5                                     )
                   Plaintiff,          )
 6                                     )
        v.                             )  No. 09 C 5314
 7                                     )
      WILLIAM C. CROWLEY, EDWARD S.    )
 8    LAMPERT, STEVEN T. MNUCHIN,      )
      RICHARD S. PERRY, ANN N. REESE,  )
 9    KEVIN B. ROLLINS, EMILY SCOTT,   )
      and THOMAS J. TISCH,             )  Chicago, Illinois
10                                     )  September 10, 2010
                   Defendants,         )  9:30 a.m.
11                                     )
        and                            )
12                                     )
      SEARS HOLDINGS CORPORATION,      )
13                                     )
                   Nominal Defendant.  )
14
                          TRANSCRIPT OF PROCEEDINGS
15              BEFORE THE HONORABLE RONALD A. GUZMAN

16
      APPEARANCES:
17
      For the Plaintiff:       SARRAF GENTILE LLP
18                             BY:  MR. JOSEPH GENTILE
                               485 Seventh Avenue
19                             Suite 1005
                               New York, New York  10018
20                             (212) 868-3610

21                             SUSMAN HEFFNER & HURST LLP
                               BY:  MR. MATTHEW TODD HURST
22                             Two First National Plaza
                               Suite 600
23                             Chicago, Illinois  60603
                               (312) 346-3466
24

25
```

```
 1    APPEARANCES:   (Continued)

 2    For the Plaintiff:          VIANALE & VIANALE LLP
                                  BY:  MR. KENNETH J. VIANALE
 3                                2499 Glades Road
                                  Suite 112
 4                                Boca Raton, Florida  33431
                                  (561) 392-4750
 5
      For the Defendants:         SONNENSCHEIN, NATH & ROSENTHAL, LLP
 6                                BY:  MR. CHRISTOPHER Q. KING
                                       MR. RAMJI B. KAUL
 7                                233 South Wacker Drive
                                  Suite 7800
 8                                Chicago, Illinois  60606
                                  (312) 876-8000
 9
      For the Nominal Defendant   SCHOPF & WEISS LLP
10    Sears:                      BY:  MS. LESLEY GAYLE SMITH
                                  One South Wacker Drive
11                                28th Floor
                                  Chicago, Illinois  60606
12                                (312) 701-9300

13
      Court Reporter:             NANCY C. LaBELLA, CSR, RMR, CRR
14                                Official Court Reporter
                                  219 South Dearborn Street
15                                Room 1222
                                  Chicago, Illinois  60604
16                                (312) 435-6890
                                  Nancy_LaBella@ilnd.uscourts.gov
17

18

19

20

21

22

23

24

25
```

**5**

Case: 1:09-cv-05314 Document #: 148 Filed: 10/15/10 Page 28 of 32 PageID #:1854
Case: 10-3285    Document: 37    Filed: 03/12/2012    Pages: 50

28

 1  cents.  54 cents with 110 million shares is $60 million.  And

 2  the next day, it dropped another $200 million.

 3          THE COURT:  Sure.  But you and I both know that the

 4  fluctuations in the price of a particular stock on a

 5  particular day doesn't necessarily establish cause and effect

 6  to any particular cause.

 7          MR. FRANK:  Right.  But, again --

 8          THE COURT:  There are hundreds of causes out there.

 9  And just telling me that the price went down or up on any

10  given day doesn't prove much of anything.

11          MR. FRANK:  Certainly.  But it went down more than

12  the Dow -- the Dow went sideways.  The Sears stock went down.

13  And they -- it's their burden of proof, and they provided no

14  alternative explanation.

15          THE COURT:  It takes a little bit more analysis than

16  that to make the drop in price or any change in price material

17  to the filing of this.

18          MR. FRANK:  Certainly.  And that brings us to the

19  third piece of evidence.  And this comes from their own brief.

20  They say this settlement is not the type of issue that

21  shareholders care about.  It wouldn't be material to the

22  price.  And that is the crux of the issue.  This settlement is

23  immaterial.  It is not providing a benefit to shareholders.

24  And because of that, the -- the only benefit to shareholders

25  is potentially avoided litigation.  And I say potentially

**6**

Case: 1:09-cv-05314 Document #: 148 Filed: 10/15/10 Page 29 of 32 PageID #:1855
Case: 10-3285     Document: 37     Filed: 03/12/2012     Pages: 50

29

1    because one of the board members that they accuse of violating

2    the Clayton Act is still on the board, and there's no Chinese

3    wall exception in the Clayton Act.

4         So their sole benefit is potentially avoiding

5    litigation on the one hand; and to potentially avoid

6    litigation, they brought litigation.  How is that a benefit?

7    The costs clearly exceed the benefits because to potentially

8    avoid litigation, Sears was put through litigation.

9         And the fact of the matter is, is that the DOJ and

10   the FTC, they do not randomly sue companies for alleged

11   Section 8 violations.  They call up the company and say we

12   think there's a Section 8 problem; we're going to open an

13   investigation unless you remove the board member.  And if

14   Sears got that phone call, I'm sure that they wouldn't

15   litigate it -- or maybe they would litigate it; but that would

16   be their choice, because this is a board member that 99.95

17   percent of the shareholders voted for.

18        Where's the benefit?  And it is that lack of

19   benefit -- and that's exactly what Felzen v. Andreas points

20   out, that many of these shareholder derivative suits are

21   brought for the benefit of attorneys.  And this is exactly the

22   type of case that Felzen was talking about.

23        THE COURT:  The problem with your analysis is that if

24   you follow it all the way through, what you're saying is that

25   there's never any benefit to this type of action under Section

1   8.   That is what you're saying.

2          MR. FRANK:   There's never a benefit for a shareholder

3   derivative suit under Section 8.   I think that's correct.

4          THE COURT:   Well, I think as counsel pointed out, the

5   law is not in agreement with that, and I am not.   I think

6   there's an inherent benefit to all the shareholders to see to

7   it that there are board members who are not in collusive

8   violation of the law.

9          MR. FRANK:   But, again, there's no evidence that they

10  were in violation of the law because Sears denies it to this

11  day.

12         Thank you, your Honor.

13         THE COURT:   Okay.

14         MR. KING:   Excuse me, your Honor.   Chris King on

15  behalf of the individual defendants.

16         I would like to just make the record -- put into the

17  record the individual defendants' position on the scope of the

18  release issue that your Honor raised.

19         THE COURT:   Sure.

20         MR. KING:   The -- we concur with plaintiffs' counsel,

21  and we understand that the Court is of a different view, but

22  we concur with defendants' -- with plaintiffs' counsel that

23  they -- the release language here is appropriate.

24         And what's more, this release language was a material

25  term of the stipulation of settlement and a material term of

1   what my clients agreed to when they agreed to settle the case.

2   And so if there is going to be any modification to the release

3   language, that is something that I would need to confer with

4   my clients about.  And I just wanted to make sure that I made

5   that point for the record.

6           THE COURT:  This is your settlement agreement, so

7   only you can change it.

8           MR. KING:  Thank you, your Honor.

9           THE COURT:  Anything else?

10          All right.

11          MR. VIANALE:  Your Honor, I would just like to put on

12  the record, to respond to Mr. Frank for one second, just one

13  point.

14          We did not -- what we said with respect to expert

15  proof was that Mr. Frank presented no expert testimony that

16  the news of the settlement could move the market for Sears'

17  stock one way or the other; and that his stock chart was,

18  therefore, proof of nothing.

19          As I say, this is a non-pecuniary benefit.  Without

20  any -- in the absence of some expert testimony here, the chart

21  that he has given the Court is just very misleading.

22          THE COURT:  Okay.  I thought I said that I agreed

23  with that, but --

24          MR. VIANALE:  I'm sorry.

25          THE COURT:  -- maybe I didn't.  Let me make it clear.

# 9

32

1   I agree with that.  The price fluctuation on a given day of a

2   given stock by itself proves no cause and effect whatsoever to

3   much of anything.  It takes a few more factors than that.

4           Okay.  Anything else?

5           MR. VIANALE:  No, your Honor.

6           THE COURT:  All right.  We'll issue a written opinion

7   on the settlement agreement.

8           MR. VIANALE:  All right.  Thank you, your Honor.

9           MR. KING:  Thank you, your Honor.

10                  *    *    *    *    *

11

12  I certify that the foregoing is a correct transcript from the
    record of proceedings in the above-entitled matter.

13

14
    */s/ Nancy C. LaBella*                      *September 13, 2010*

15  Official Court Reporter

16

17

18

19

20

21

22

23

24

25