NO. 10-3285

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

ROBERT F. BOOTH TRUST and RONALD GROSS,
*derivatively on behalf of nominal defendant* SEARS HOLDING CORPORATION,
*Plaintiffs-Appellees*,

v.

WILLIAM C. CROWLEY, EDWARD S. LAMPERT, STEVEN T. MNUCHIN,
RICHARD C. PERRY, ANN N. REESE, KEVIN B. ROLLINS, EMILY SCOTT,
and THOMAS J. TISCH,
*Defendants*,

*and*

SEARS HOLDING CORPORATION,
*Nominal Defendant.*

Appeal of THEODORE H. FRANK, *Appellant.*

On Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division, No. 09-cv-5314
The Honorable Ronald A. Guzman Presiding

Appendix of Appellant Theodore H. Frank

Theodore H. Frank
1718 M Street NW, No. 236
Washington, D.C. 20036
(703) 203-3848
*In propria persona*

# CASE NO. 10-3285

## INDEX TO DOCUMENT REFERENCES IN APPENDIX

| Description of Item | Record Entry No. | Appendix Page No. |
|---|---|---|
| **REQUIRED SHORT APPENDIX** | | |
| Minute Entry Denying Theodore Frank's Motion to Intervene and Dismiss (9/08/10) ............................................. | R.133 | 1 |
| Transcript of Proceedings Fairness Hearing on September 10, 2010, pages 28-32 (10/15/10).............................................. | R.148 | 3 |
| **DOCUMENTS FOR ADDITIONAL APPENDIX** | | |
| District Court Docket Sheet Case No. 1:09-cv-05314 .................................. | N/A | 10 |
| Amended Consolidated Verified Derivative Complaint (10/13/09)............................................. | R.45 | 28 |
| Memorandum Opinion and Order (2/26/10)............................................. | R.65 | 50 |
| Memorandum of Law by Robert F. Booth Trust in Support of Joint Amended Motion for Preliminary Approval of Settlement (4/28/10) ............................................. | R.87 | N/A |
| Attachment 1 Amended Stipulation of Settlement..... | | 58 |

| Description of Item | Record Entry No. | Appendix Page No. |
|---|---|---|
| **Exhibit A** **[Proposed] Order and Final Judgment** ......................................... | | **80** |
| **Exhibit B** **Preliminary Approval Order** ...... | | **87** |
| **Exhibit C** **Summary Notice of Pendency of Shareholder Derivative Action, Proposed Settlement and Settlement Hearing** ....................... | | **93** |
| **Exhibit D** **Notice of Proposed Settlement of Shareholder Derivative Lawsuit Brought on Behalf of Sears Holdings Corporation** ................... | | **97** |
| **Exhibit E** **Guidelines Regarding Protection of Sears Holdings Corporation Information** ............. | | **108** |
| **Preliminary Approval Order (5/11/10)**................................................ | **R.93** | **111** |
| **Objection of Theodore H. Frank (7/1/10)**................................................. | **R.107** | **116** |
| **Minute Entry Fairness and Motion Hearing (7/9/10)**................................................. | **R.115** | **125** |

| Description of Item | Record Entry No. | Appendix Page No. |
|---|---|---|
| **Motion to Intervene and Objection of Theodore H. Frank; and Motion to Dismiss under Rule 23.1(a)** (8/16/10)............................................................. | **R.117** | **126** |
| **[Proposed] Pleading of Objector/Intervenor Theodore H. Frank** (8/16/10) ........................................................... | **R.118** | **137** |
| **Plaintiffs' Opposition to the Motion to Intervene and Objection of Theodore H. Frank and Motion to Dismiss under Rule 23.1(A)** (8/24/10)............................................................. | **R.119** | **140** |
| **Reply in Support of Motion to Intervene and Motion to Dismiss of Theodore H. Frank** (8/25/10)............................................................. | **R.124** | **154** |
| **Individual Defendants' Response to Motion to Intervene and Objection of Theodore H. Frank to Proposed Settlement** (9/7/10)............................................................... | **R.128** | **163** |
| **Supplemental Response to Objection of Theodore H. Frank** (9/8/10) .............................................................. | **R.131** | **167** |
| **Minute Entry Court Denying Plaintiffs' Motion to Approve the Amended Stipulation of Settlement** (1/27/12) ........................................................... | **R.176** | **171** |

| Hearing other than <u>Witness Testimony</u> | Pages of Hearing <u>in Transcript</u> | Page where Hearing/Exhibit <u>Begins in Appendix</u> |
|---|---|---|
| **Transcript Of Proceedings Final Approval of Settlement and Attorneys' Fees 7/9/10 R.149** | **1-48** | **172** |
| **Transcript Of Proceedings Fairness Hearing 9/10/10 R.148** | | |
| | **1-27** | **220** |

## United States District Court
## Northern District of Illinois – CM/ECF LIVE, Ver 5.0.3 (Chicago)
## CIVIL DOCKET FOR CASE #: 1:09–cv–05314

Robert F. Booth Trust v. Crowley et al
Assigned to: Honorable Ronald A. Guzman
Case in other court:  10–03285
Cause: 15:25 Clayton Act

Date Filed: 08/28/2009
Jury Demand: None
Nature of Suit: 160 Contract: Stockholders Suits
Jurisdiction: Federal Question

**Plaintiff**

**Robert F. Booth Trust**
*derivatively on behalf of nominal defendant Sears Holdings Corporation*

represented by **Joseph Gentile**
Sarraf Gentile LLP
450 Seventh Avenue
Suite 1900
New York, NY 10123
(212)868–3610
Fax: (212) 918–7967
Email: joseph@sarrafgentile.com
*ATTORNEY TO BE NOTICED*

**Kenneth J Vianale**
Vianale &Vianale LLP
2499 Glades Road
Suite 112
Boca Raton, FL 33431
(561) 392–4750
Fax: (561) 392–4775
Email: kvianale@vianalelaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Matthew Todd Hurst**
Susman Heffner &Hurst LLP
Two First National Plaza
Suite 600
Chicago, IL 60603
312–346–3466
Fax: 312–346–2829
Email: mhurst@shhllp.com
*ATTORNEY TO BE NOTICED*

**Ronen Sarraf**
Sarraf Gentile LLP
450 Seventh Avenue
Suite 1900
New York, NY 10123
(212)868–3610
Fax: (212) 918–7967
Email: ronen@sarrafgentile.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Ronald Gross**

represented by **Ronald Gross**
PRO SE

V.

**Defendant**

**William C Crowley**

represented by

**Christopher Qualley King**
SNR Denton US LLP
233 South Wacker Drive
Suite 7800
Chicago, IL 60606
(312)876–8000
Email: christopher.king@snrdenton.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Andrew Klenk**
SNR Denton US LLP
233 South Wacker Drive
Suite 7800
Chicago, IL 60606
(312)876–8000
Email: james.klenk@snrdenton.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David R. Geerdes**
SNR Denton US LLP
233 South Wacker Drive
Suite 7800
Chicago, IL 60606
(312) 876–2844
Email: dgeerdes@sonnenschein.com
*ATTORNEY TO BE NOTICED*

**La Chapelle Richard Jonathon**
Wachtell, Lipton, Rosen &Katz
51 W 52
New York, NY 10019
(212) 403–1000
Email: JRLaChapelle@wlrk.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Paul Vizcarrondo , Jr**
Wachtell, Lipton, Rosen &Katz
51 West 52nd Street
New York, HY 10019
(212)403–1000
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ramji B. Kaul**
SNR Denton US LLP
233 South Wacker Drive
Suite 7800
Chicago, IL 60606
(312)876–3484
Email: ramji.kaul@snrdenton.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Edward S. Lampert**                      represented by     **Christopher Qualley King**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Andrew Klenk**
(See above for address)
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**David R. Geerdes**
(See above for address)
*ATTORNEY TO BE NOTICED*

**La Chapelle Richard Jonathon**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Paul Vizcarrondo , Jr**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ramji B. Kaul**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Steven T Mnuchin**                    represented by   **Christopher Qualley King**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Andrew Klenk**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David R. Geerdes**
(See above for address)
*ATTORNEY TO BE NOTICED*

**La Chapelle Richard Jonathon**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Paul Vizcarrondo , Jr**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ramji B. Kaul**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Richard C Perry**                     represented by   **Christopher Qualley King**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Andrew Klenk**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David R. Geerdes**
(See above for address)
*ATTORNEY TO BE NOTICED*

**La Chapelle Richard Jonathon**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Paul Vizcarrondo , Jr**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ramji B. Kaul**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Ann N Reese**                     represented by   **Christopher Qualley King**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Andrew Klenk**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David R. Geerdes**
(See above for address)
*ATTORNEY TO BE NOTICED*

**La Chapelle Richard Jonathon**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Paul Vizcarrondo , Jr**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ramji B. Kaul**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Kevin B Rollins**                   represented by   **Christopher Qualley King**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Andrew Klenk**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David R. Geerdes**
(See above for address)
*ATTORNEY TO BE NOTICED*

**La Chapelle Richard Jonathon**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Paul Vizcarrondo , Jr**

(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ramji B. Kaul**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Emily Scott**                    represented by    **Christopher Qualley King**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Andrew Klenk**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David R. Geerdes**
(See above for address)
*ATTORNEY TO BE NOTICED*

**La Chapelle Richard Jonathon**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Paul Vizcarrondo , Jr**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ramji B. Kaul**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Thomas J Tisch**                 represented by    **Christopher Qualley King**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Andrew Klenk**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David R. Geerdes**
(See above for address)
*ATTORNEY TO BE NOTICED*

**La Chapelle Richard Jonathon**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Paul Vizcarrondo , Jr**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ramji B. Kaul**
(See above for address)

*ATTORNEY TO BE NOTICED*

**Defendant**

| | | |
|---|---|---|
| **Sears Holding Corporation**<br>*Nominal Defendant* | represented by | **Kristen Elizabeth Hudson**<br>Schopf &Weiss LLP<br>One South Wacker Drive<br>28th Floor<br>Chicago, IL 60606<br>(312) 701–9300<br>Email: hudson@sw.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Lesley Gayle Smith**
Schopf &Weiss LLP
One South Wacker Drive
28th Floor
Chicago, IL 60606
(312) 701–9300
Email: lgsmith@sw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Paula Enid Litt**
Schopf &Weiss LLP
One South Wacker Drive
28th Floor
Chicago, IL 60606
(312) 701–9300
Email: litt@sw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William Butler Berndt**
Schopf &Weiss LLP
One South Wacker Drive
28th Floor
Chicago, IL 60606
(312) 701–9300
Fax: 3127019335
Email: berndt@sw.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 08/28/2009 | 1 | COMPLAINT filed by Robert F. Booth Trust; n. Filing fee $ 350, receipt number 0752000000004051781. (Attachments: # 1 Exhibit Signed Verification)(Hurst, Matthew) (Entered: 08/28/2009) |
| 08/28/2009 | 2 | CIVIL Cover Sheet (Hurst, Matthew) (Entered: 08/28/2009) |
| 08/28/2009 | 3 | ATTORNEY Appearance for Plaintiff Robert F. Booth Trust by Matthew Todd Hurst (Hurst, Matthew) (Entered: 08/28/2009) |
| 08/28/2009 | | CASE ASSIGNED to the Honorable Ronald A. Guzman. Designated as Magistrate Judge the Honorable Martin C. Ashman. (tc, ) (Entered: 08/28/2009) |
| 09/02/2009 | 4 | MINUTE entry before the Honorable Ronald A. Guzman: The Court orders the parties to appear for an initial status hearing. All parties shall refer to and comply with Judge Guzman's requirements for the initial appearance as outlined in Judge Guzman's case management procedures, which can be found at: www.ilnd.uscourts.gov. Status hearing set for 10/30/2009 at 09:30 AM. Mailed notice (cjg, ) (Entered: 09/02/2009) |

| 09/02/2009 | 5 | SUMMONS Issued, nine originals as to Defendants Emily Scott, Thomas J Tisch, Sears Holding Corporation, William C Crowley, Edward S. Lampert, Steven T Mnuchin, Richard C Perry, Ann N Reese, Kevin B Rollins (ca, ). (Entered: 09/02/2009) |
|---|---|---|
| 09/03/2009 | 6 | ALIAS Summons Issued as to Sears Holding Corp. (cdy, ) (Entered: 09/04/2009) |
| 09/04/2009 | 7 | SUMMONS Returned Executed by Robert F. Booth Trust as to Emily Scott on 9/2/2009, answer due 9/22/2009; Thomas J Tisch on 9/2/2009, answer due 9/22/2009; Sears Holding Corporation on 9/2/2009, answer due 9/22/2009; William C Crowley on 9/2/2009, answer due 9/22/2009; Edward S. Lampert on 9/2/2009, answer due 9/22/2009; Steven T Mnuchin on 9/2/2009, answer due 9/22/2009; Richard C Perry on 9/2/2009, answer due 9/22/2009; Ann N Reese on 9/2/2009, answer due 9/22/2009; Kevin B Rollins on 9/2/2009, answer due 9/22/2009. (Hurst, Matthew) (Entered: 09/04/2009) |
| 09/04/2009 | 8 | NOTICE by Robert F. Booth Trust re summons returned executed,, 7 (Hurst, Matthew) (Entered: 09/04/2009) |
| 09/04/2009 | 9 | SUMMONS Returned Executed by Robert F. Booth Trust as to Sears Holding Corporation on 9/4/2009, answer due 9/24/2009. (Hurst, Matthew) (Entered: 09/04/2009) |
| 09/04/2009 | 10 | NOTICE by Robert F. Booth Trust re summons returned executed 9 *Alias Summons for Nominal Defendant Sears Holdings Corporation* (Hurst, Matthew) (Entered: 09/04/2009) |
| 09/14/2009 | 11 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 50, receipt number 07520000000004093873. (Gentile, Joseph) (Entered: 09/14/2009) |
| 09/14/2009 | 12 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 50, receipt number 07520000000004093896. (Sarraf, Ronen) (Entered: 09/14/2009) |
| 09/16/2009 | 13 | MOTION by Plaintiff Robert F. Booth TrustFinding of Relatedness (Hurst, Matthew) (Entered: 09/16/2009) |
| 09/16/2009 | 14 | NOTICE of Motion by Matthew Todd Hurst for presentment of motion for miscellaneous relief 13 before Honorable Ronald A. Guzman on 9/24/2009 at 09:30 AM. (Hurst, Matthew) (Entered: 09/16/2009) |
| 09/21/2009 | 15 | ATTORNEY Appearance for Defendants Emily Scott, Thomas J Tisch, William C Crowley, Edward S. Lampert, Steven T Mnuchin, Richard C Perry, Ann N Reese, Kevin B Rollins by David R. Geerdes (Geerdes, David) (Entered: 09/21/2009) |
| 09/21/2009 | 16 | ATTORNEY Appearance for Defendants Emily Scott, Thomas J Tisch, William C Crowley, Edward S. Lampert, Steven T Mnuchin, Richard C Perry, Ann N Reese, Kevin B Rollins by James Andrew Klenk (Klenk, James) (Entered: 09/21/2009) |
| 09/21/2009 | 17 | ATTORNEY Appearance for Defendants Emily Scott, Thomas J Tisch, William C Crowley, Edward S. Lampert, Steven T Mnuchin, Richard C Perry, Ann N Reese, Kevin B Rollins by Christopher Qualley King (King, Christopher) (Entered: 09/21/2009) |
| 09/23/2009 | 18 | MINUTE entry before the Honorable Ronald A. Guzman: Application for Leave to Appear Pro Hac Vice Filing fee $ 50, receipt number 07520000000004093873. (Gentile, Joseph) 11 is granted. Application for Leave to Appear Pro Hac Vice Filing fee $ 50, receipt number 07520000000004093896. (Sarraf, Ronen) 12 is granted. Motion by Plaintiff Robert F. Booth Trust for Finding of Relatedness with 09 C 5705 13 is granted. Mailed notice (cjg, ) (Entered: 09/23/2009) |
| 09/23/2009 | 19 | ATTORNEY Appearance for Defendant Sears Holding Corporation by Paula Enid Litt (Litt, Paula) (Entered: 09/23/2009) |
| 09/23/2009 | 20 | ATTORNEY Appearance for Defendant Sears Holding Corporation by Kristen Elizabeth Hudson (Hudson, Kristen) (Entered: 09/23/2009) |
| 09/24/2009 | 21 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 50, receipt number 07520000000004130860. (Vianale, Kenneth) (Entered: 09/24/2009) |

| 09/24/2009 | 22 | MOTION by Plaintiff Robert F. Booth Trust to consolidate cases *and to appoint a Leadership Structure for Plaintiffs* (Hurst, Matthew) (Entered: 09/24/2009) |
|---|---|---|
| 09/24/2009 | 23 | MEMORANDUM by Robert F. Booth Trust in support of motion to consolidate cases 22 *and to Appoint a Leadership Structure for Plaintiffs* (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Errata C)(Hurst, Matthew) (Entered: 09/24/2009) |
| 09/24/2009 | 24 | WAIVER OF SERVICE returned executed by Robert F. Booth Trust. (Hurst, Matthew) (Entered: 09/24/2009) |
| 09/24/2009 | 25 | NOTICE by Robert F. Booth Trust re waiver of service executed 24 (Hurst, Matthew) (Entered: 09/24/2009) |
| 09/25/2009 | 26 | NOTICE of Motion by Matthew Todd Hurst for presentment of motion to consolidate cases 22 before Honorable Ronald A. Guzman on 9/29/2009 at 09:30 AM. (Hurst, Matthew) (Entered: 09/25/2009) |
| 09/25/2009 | 27 | WAIVER OF SERVICE returned executed by Robert F. Booth Trust. (Hurst, Matthew) (Entered: 09/25/2009) |
| 09/25/2009 | 28 | NOTICE by Robert F. Booth Trust re waiver of service executed 27 (Hurst, Matthew) (Entered: 09/25/2009) |
| 09/25/2009 | 29 | WAIVER OF SERVICE returned executed by Robert F. Booth Trust. William C Crowley waiver sent on 9/2/2009, answer due 11/2/2009. (Hurst, Matthew) (Entered: 09/25/2009) |
| 09/25/2009 | 30 | WAIVER OF SERVICE returned executed by Robert F. Booth Trust. Edward S. Lampert waiver sent on 9/2/2009, answer due 11/2/2009. (Hurst, Matthew) (Entered: 09/25/2009) |
| 09/25/2009 | 31 | WAIVER OF SERVICE returned executed by Steven T Mnuchin. Steven T Mnuchin waiver sent on 9/2/2009, answer due 11/2/2009. (Hurst, Matthew) (Entered: 09/25/2009) |
| 09/25/2009 | 32 | WAIVER OF SERVICE returned executed by Robert F. Booth Trust. Richard C Perry waiver sent on 9/2/2009, answer due 11/2/2009. (Hurst, Matthew) (Entered: 09/25/2009) |
| 09/25/2009 | 33 | WAIVER OF SERVICE returned executed by Robert F. Booth Trust. Ann N Reese waiver sent on 9/2/2009, answer due 11/2/2009. (Hurst, Matthew) (Entered: 09/25/2009) |
| 09/25/2009 | 34 | WAIVER OF SERVICE returned executed by Robert F. Booth Trust. Kevin B Rollins waiver sent on 9/2/2009, answer due 11/2/2009. (Hurst, Matthew) (Entered: 09/25/2009) |
| 09/25/2009 | 35 | WAIVER OF SERVICE returned executed by Robert F. Booth Trust. Emily Scott waiver sent on 9/2/2009, answer due 11/2/2009. (Hurst, Matthew) (Entered: 09/25/2009) |
| 09/25/2009 | 36 | WAIVER OF SERVICE returned executed by Robert F. Booth Trust. Thomas J Tisch waiver sent on 9/2/2009, answer due 11/2/2009. (Hurst, Matthew) (Entered: 09/25/2009) |
| 09/28/2009 | 37 | MINUTE entry before the Honorable Ronald A. Guzman: Application for Leave to Appear Pro Hac Vice Filing fee $ 50, receipt number 07520000000004130860. 21 is granted. Mailed notice (cjg, ) Modified on 9/29/2009 (cdy, ). (Entered: 09/28/2009) |
| 09/28/2009 | 38 | MINUTE entry before the Honorable Ronald A. Guzman: Unopposed motion by Plaintiff Robert F. Booth Trust to consolidate cases and to appoint a Leadership Structure for Plaintiffs 22 is granted. It is hereby ordered that 09 C 5705 is consolidated for all purposes with 09 C 5314. All issues having been consolidated under 09 C 5314, case number 09 C 5705 is hereby dismissed. All future pleadings are to be filed in 09 C 5314. Amended consolidated complaint to be filed on or before 10/13/09. The Court appoints Vianale &Vianale LLP and Sarraf Gentile LLP as Lead Counsel and appoints Susman Feffner &Hurst LLP as Liaison Counsel. Status hearing set for 10/30/09 to stand. Mailed notice (cjg, ) (Entered: |

| | | 09/28/2009) |
|---|---|---|
| 09/29/2009 | 39 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 50, receipt number 07520000000004144621. (Vizcarrondo, Paul) (Entered: 09/29/2009) |
| 09/29/2009 | 40 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 50, receipt number 07520000000004144677. (Jonathon, La Chapelle) (Entered: 09/29/2009) |
| 10/01/2009 | 41 | ATTORNEY Appearance for Plaintiff Robert F. Booth Trust by Joseph Gentile (Gentile, Joseph) (Entered: 10/01/2009) |
| 10/01/2009 | 42 | ATTORNEY Appearance for Plaintiff Robert F. Booth Trust by Ronen Sarraf (Sarraf, Ronen) (Entered: 10/01/2009) |
| 10/01/2009 | 43 | ATTORNEY Appearance for Plaintiff Robert F. Booth Trust by Kenneth J Vianale (Vianale, Kenneth) (Entered: 10/01/2009) |
| 10/09/2009 | 44 | MINUTE entry before the Honorable Ronald A. Guzman: Status hearing set for 10/30/09 is reset to 11/6/09 at 09:30 AM. on request of parties. Mailed notice (cjg, ) (Entered: 10/09/2009) |
| 10/13/2009 | 45 | AMENDED Consolidated Verified Derivative Complaint by Robert F. Booth Trust against all defendants (Attachments: # 1 Verifications)(Hurst, Matthew) Modified on 10/14/2009 (ca, ). (Entered: 10/13/2009) |
| 10/13/2009 | 46 | NOTICE by Robert F. Booth Trust re amended complaint 45 (Hurst, Matthew) (Entered: 10/13/2009) |
| 11/03/2009 | 47 | JOINT Initial Status Report by Emily Scott, Thomas J Tisch, Sears Holding Corporation, Robert F. Booth Trust, William C Crowley, Edward S. Lampert, Steven T Mnuchin, Richard C Perry, Ann N Reese, Kevin B Rollins (Geerdes, David) Modified on 11/4/2009 (ca, ). (Entered: 11/03/2009) |
| 11/04/2009 | 48 | Duplicate entry of #49 (cjg, ) Modified on 11/6/2009 (ca, ). (Entered: 11/04/2009) |
| 11/04/2009 | 49 | MINUTE entry before the Honorable Ronald A. Guzman: Status hearing set for 11/6/09 is reset to 11/9/2009 at 09:30 AM. on Court's own motion. Mailed notice (cjg, ) (Entered: 11/04/2009) |
| 11/06/2009 | 50 | NOTICE of Correction 48 (ca, ). (Entered: 11/06/2009) |
| 11/09/2009 | 51 | MINUTE entry before the Honorable Ronald A. Guzman: Status hearing held on 11/9/2009. Defendants' motion to dismiss and memorandum in support due by 11/20/2009. Response due 12/7/09. Reply due 12/22/09. Ruling to be by mail. Mailed notice (cjg, ) Modified on 11/24/2009 (cjg, ). (Entered: 11/10/2009) |
| 11/09/2009 | 52 | MINUTE entry before the Honorable Ronald A. Guzman: Application for Leave to Appear Pro Hac Vice Filing fee $ 50, receipt number 07520000000004144621. (Vizcarrondo, Paul) 39 is granted. Application for Leave to Appear Pro Hac Vice Filing fee $ 50, receipt number 07520000000004144677. (Jonathon, La Chapelle) 40 is granted. Mailed notice (cjg, ) (Entered: 11/10/2009) |
| 11/20/2009 | 53 | MOTION by Defendants Emily Scott, Thomas J Tisch, William C Crowley, Edward S. Lampert, Steven T Mnuchin, Richard C Perry, Ann N Reese, Kevin B Rollins to dismiss pursuant to Rules 12(b)(6) and 23.1(b)(3) (Attachments: # 1 Exhibit)(King, Christopher) Modified on 11/23/2009 (ca, ). (Entered: 11/20/2009) |
| 11/20/2009 | 54 | MEMORANDUM by Emily Scott, Thomas J Tisch, William C Crowley, Edward S. Lampert, Steven T Mnuchin, Richard C Perry, Ann N Reese, Kevin B Rollins in support of motion to dismiss pursuant to Rules 12(b)(6) and 23.1(b)(3) 53 (King, Christopher) Modified on 11/23/2009 (ca, ). (Entered: 11/20/2009) |
| 11/20/2009 | 55 | MOTION by Defendant Sears Holding Corporation to dismiss the Amended Consolidated Complaint Pursuant to Rules 12(B)(6) and 23.1(b)(3) (Hudson, Kristen) Modified on 11/23/2009 (ca, ). (Entered: 11/20/2009) |
| 12/07/2009 | 56 | MEMORANDUM of Law by Robert F. Booth Trust in Opposition to motion to dismiss, 53 (Attachments: # 1 Declaration of Kenneth J. Vianale, # 2 Exhibit A to Declaration of Kenneth J. Vianale, # 3 Exhibit B to Declaration of Kenneth J. |

| | | |
|---|---|---|
| | | Vianale, #_4_ Exhibit C to Declaration of Kenneth J. Vianale, #_5_ Exhibit D to Declaration of Kenneth J. Vianale, #_6_ Exhibit E to Declaration of Kenneth J. Vianale, #_7_ Exhibit F to Declaration of Kenneth J. Vianale, #_8_ Exhibit G to Declaration of Kenneth J. Vianale, #_9_ Exhibit H to Declaration of Kenneth J. Vianale, #_10_ Exhibit I to Declaration of Kenneth J. Vianale)(Hurst, Matthew) Modified on 12/8/2009 (ca, ). (Entered: 12/07/2009) |
| 12/07/2009 | 57 | NOTICE by Robert F. Booth Trust re memorandum in opposition to motion,, _56_ *to Dismiss* (Hurst, Matthew) (Entered: 12/07/2009) |
| 12/22/2009 | 58 | REPLY by William C Crowley, Edward S. Lampert, Steven T Mnuchin, Richard C Perry, Ann N Reese, Kevin B Rollins, Emily Scott, Thomas J Tisch to memorandum in opposition to motion,, _56_ , MOTION by Defendants Emily Scott, Thomas J Tisch, William C Crowley, Edward S. Lampert, Steven T Mnuchin, Richard C Perry, Ann N Reese, Kevin B Rollins to dismiss _53_ (King, Christopher) (Entered: 12/22/2009) |
| 12/22/2009 | 59 | REPLY by Defendant Sears Holding Corporation *in Support of Its Motion to Dismiss the Amended Consolidated Complaint Pursuant to Rules 12(B)(6) and 23.1(B)(3)* (Hudson, Kristen) (Entered: 12/22/2009) |
| 01/05/2010 | 60 | MOTION by Plaintiff Robert F. Booth Trust for leave to file *Sur−reply* (Attachments: #_1_ Exhibit Sur–reply)(Hurst, Matthew) (Entered: 01/05/2010) |
| 01/05/2010 | 61 | NOTICE of Motion by Matthew Todd Hurst for presentment of motion for leave to file _60_ before Honorable Ronald A. Guzman on 1/19/2010 at 09:30 AM. (Hurst, Matthew) (Entered: 01/05/2010) |
| 01/12/2010 | 62 | OPPOSITION by William C Crowley, Edward S. Lampert, Steven T Mnuchin, Richard C Perry, Ann N Reese, Kevin B Rollins, Emily Scott, Thomas J Tisch to Plaintiff's motion for leave to file sur–reply _60_ (King, Christopher) Modified on 1/13/2010 (ca, ). (Entered: 01/12/2010) |
| 01/14/2010 | 63 | MINUTE entry before Honorable Ronald A. Guzman: Motion by Plaintiff Robert F. Booth Trust for leave to file Sur–reply _60_ is denied. Mailed notices. (cjg, ) (Entered: 01/14/2010) |
| 02/26/2010 | 64 | MINUTE entry before Honorable Ronald A. Guzman: Pursuant to Memorandum Opinion and Order dated 2/26/10, the Court denies defendants' motions to dismiss [doc. nos.53 &55]. Mailed notice (cjg, ) (Entered: 03/02/2010) |
| 02/26/2010 | 65 | MEMORANDUM Opinion and Order Signed by the Honorable Ronald A. Guzman on 2/26/2010. Mailed notice (cjg, ) (Entered: 03/02/2010) |
| 03/02/2010 | 66 | MINUTE entry before Honorable Ronald A. Guzman: Status hearing set for 3/29/2010 at 09:30 AM.Mailed notice (cjg, ) (Entered: 03/02/2010) |
| 03/05/2010 | 67 | MOTION by Plaintiff Robert F. Booth Trust for preliminary injunction (Hurst, Matthew) (Entered: 03/05/2010) |
| 03/05/2010 | 68 | MEMORANDUM by Robert F. Booth Trust in support of motion for preliminary injunction _67_ (Hurst, Matthew) (Entered: 03/05/2010) |
| 03/05/2010 | 69 | NOTICE of Motion by Matthew Todd Hurst for presentment of motion for preliminary injunction _67_ before Honorable Ronald A. Guzman on 3/11/2010 at 09:30 AM. (Hurst, Matthew) (Entered: 03/05/2010) |
| 03/10/2010 | 70 | ATTORNEY Appearance for Defendants William C Crowley, Edward S. Lampert, Steven T Mnuchin, Richard C Perry, Ann N Reese, Kevin B Rollins, Emily Scott, Thomas J Tisch by Ramji B. Kaul (Kaul, Ramji) Modified on 3/11/2010 (kj, ). (Entered: 03/10/2010) |
| 03/11/2010 | 71 | MINUTE entry before Honorable Ronald A. Guzman: Motion hearing held on 3/11/2010 regarding motion by Plaintiff Robert F. Booth Trust for preliminary injunction _67_ . Discovery due by 3/15/10. All response to discovery due by 3/17/10. Status hearing set for 3/18/2010 at 09:30 AM. Mailed notice (cjg, ) (Entered: 03/12/2010) |

| 03/12/2010 | 72 | MOTION by Defendants William C Crowley, Edward S. Lampert, Steven T Mnuchin, Richard C Perry, Ann N Reese, Kevin B Rollins, Emily Scott, Thomas J Tisch for 7–Day Enlargement of time to file answer (King, Christopher) Modified on 3/15/2010 (ca, ). (Entered: 03/12/2010) |
| --- | --- | --- |
| 03/12/2010 | 73 | NOTICE of Motion by Christopher Qualley King for presentment of motion for extension of time to file answer 72 before Honorable Ronald A. Guzman on 3/16/2010 at 09:30 AM. (King, Christopher) (Entered: 03/12/2010) |
| 03/15/2010 | 74 | MINUTE entry before Honorable Ronald A. Guzman: Motion by Defendants William C Crowley, Edward S. Lampert, Steven T Mnuchin, Richard C Perry, Ann N Reese, Kevin B Rollins, Emily Scott, Thomas J Tisch for 7–Day Enlargement of time to file answer 72 is withdrawn. Mailed notice (cjg, ) (Entered: 03/15/2010) |
| 03/16/2010 | 75 | ANSWER to the Amended Consolidated Verified Derivative Complaint by William C Crowley, Edward S. Lampert, Steven T Mnuchin, Richard C Perry, Ann N Reese, Kevin B Rollins, Emily Scott, Thomas J Tisch(Kaul, Ramji) Modified on 3/17/2010 (ca, ). (Entered: 03/16/2010) |
| 03/16/2010 | 76 | NOTICE of Position with Respect to Its Answer and Defense on the Merits by Sears Holding Corporation (Hudson, Kristen) Modified on 3/17/2010 (ca, ). (Entered: 03/16/2010) |
| 03/16/2010 | 77 | CERTIFICATE of Service *accompanying the foregoing INDIVIDUAL DEFENDANTS' ANSWER TO THE AMENDED CONSOLIDATED VERIFIED DERIVATIVE COMPLAINT* (Kaul, Ramji) (Entered: 03/16/2010) |
| 03/18/2010 | 78 | MINUTE entry before Honorable Ronald A. Guzman: Status hearing held on 3/18/2010. Set hearing as to motion by Plaintiff for preliminary injunction 67 : Motion Hearing set for 3/24/2010 at 09:30 AM. Mailed notice (cjg, ) (Entered: 03/18/2010) |
| 03/19/2010 | 79 | MINUTE entry before Honorable Ronald A. Guzman: Motion by Plaintiff Robert F. Booth Trust for preliminary injunction 67 is withdrawn. Status hearing reset for 4/19/2010 at 09:30 AM. Mailed notice (cjg, ) (Entered: 03/19/2010) |
| 04/16/2010 | 80 | JOINT MOTION by Plaintiff Robert F. Booth Trust for Preliminary Approval of Settlement (Hurst, Matthew) Modified on 4/19/2010 (ca, ). (Entered: 04/16/2010) |
| 04/16/2010 | 81 | NOTICE of Motion by Matthew Todd Hurst for presentment of joint motion for preliminary approval 80 before Honorable Ronald A. Guzman on 4/19/2010 at 09:30 AM. (Hurst, Matthew) Modified on 4/19/2010 (ca, ). (Entered: 04/16/2010) |
| 04/16/2010 | 82 | MEMORANDUM of Law by Robert F. Booth Trust in support of joint motion for preliminary approval of settlement 80 (Attachments: # 1 Stipulation of Settlement)(Hurst, Matthew) Modified on 4/19/2010 (ca, ). (Entered: 04/16/2010) |
| 04/16/2010 | 83 | MEMORANDUM by William C Crowley, Edward S. Lampert, Steven T Mnuchin, Richard C Perry, Ann N Reese, Kevin B Rollins, Emily Scott, Thomas J Tisch in support of joint motion for preliminary approval of settlement 80 (Kaul, Ramji) Modified on 4/19/2010 (ca, ). (Entered: 04/16/2010) |
| 04/19/2010 | 84 | MINUTE entry before Honorable Ronald A. Guzman: Status hearing held on 4/19/2010. Hearing on JOINT MOTION by Plaintiff Robert F. Booth Trust for Preliminary Approval of Settlement 80 : entered and continued to 4/29/2010 at 09:30 AM.Mailed notice (cjg, ) (Entered: 04/19/2010) |
| 04/28/2010 | 85 | MINUTE entry before Honorable Ronald A. Guzman: Hearing on motion by Plaintiff Robert F. Booth Trust for Preliminary Approval of Settlement 80 reset to 4/29/2010 at 09:00 AM. **NOTE TIME CHANGE ONLY. Mailed notice (cjg, ) (Entered: 04/28/2010) |
| 04/28/2010 | 86 | JOINT Amended Motion by Plaintiff Robert F. Booth Trust for Preliminary Approval of Settlement (Attachments: # 1 Exhibit A)(Hurst, Matthew) Modified on 4/29/2010 (ca, ). (Entered: 04/28/2010) |
| 04/28/2010 | 87 | MEMORANDUM of Law by Robert F. Booth Trust in support of joint amended motion for preliminary approval of settlement 86 (Attachments: # 1 Amended Stipulation of Settlement)(Hurst, Matthew) Modified on 4/29/2010 (ca, ). (Entered: |

| | | 04/28/2010) |
|---|---|---|
| 04/28/2010 | 88 | NOTICE of Motion by Matthew Todd Hurst for presentment of motion to amend/correct 86 before Honorable Ronald A. Guzman on 4/29/2010 at 09:00 AM. (Hurst, Matthew) (Entered: 04/28/2010) |
| 04/28/2010 | 89 | MEMORANDUM by William C Crowley, Edward S. Lampert, Steven T Mnuchin, Richard C Perry, Ann N Reese, Kevin B Rollins, Emily Scott, Thomas J Tisch in further support of the amended joint motion for preliminary approval of settlement 86 (Attachments: # 1 Exhibit, # 2 Exhibit)(Kaul, Ramji) Modified on 4/29/2010 (ca, ). (Entered: 04/28/2010) |
| 04/28/2010 | 90 | ATTORNEY Appearance for Defendant Sears Holding Corporation by Lesley Gayle Smith (Smith, Lesley) (Entered: 04/28/2010) |
| 04/29/2010 | 91 | MINUTE entry before Honorable Ronald A. Guzman: Motion hearing held on 4/29/2010 regarding joint motion by Plaintiff Robert F. Booth Trust for Preliminary Approval of Settlement 86 . Order to issue. Mailed notice (cjg, ) (Entered: 04/29/2010) |
| 05/11/2010 | 92 | MINUTE entry before Honorable Ronald A. Guzman: Enter preliminary approval order. Final approval hearing set for 7/9/10 at 10:00 a.m.Mailed notice (ca, ) (Entered: 05/17/2010) |
| 05/11/2010 | 93 | PRELIMINARY Approval Order Signed by the Honorable Ronald A. Guzman on 5/11/2010(ca, ). (Entered: 05/17/2010) |
| 06/14/2010 | 94 | LETTER from Billy R. Jackson (ca, ). (Entered: 06/16/2010) |
| 06/16/2010 | 95 | LETTER from Roger Neetz dated 6/6/10 (ca, ). (Entered: 06/18/2010) |
| 06/16/2010 | 96 | NOTICE of Appearance by Robert W. Orlick (Exhibits) (ca, ) (Entered: 06/18/2010) |
| 07/01/2010 | 106 | LETTER from Katherine L. Kough dated 6/28/10 (ca, ). (Entered: 07/06/2010) |
| 07/01/2010 | 107 | OBJECTION of Theodore H. Frank (ca, ). (Entered: 07/06/2010) |
| 07/02/2010 | 97 | MOTION by Plaintiff Robert F. Booth Trust to Approve the settlement (Hurst, Matthew) Modified on 7/6/2010 (ca, ). (Entered: 07/02/2010) |
| 07/02/2010 | 98 | MEMORANDUM of Law in Support of Plaintiffs' Motion to Approve the Settlement 97 (Attachments: # 1 Declaration Joint Declaration in Support of Final Settlement Approval)(Hurst, Matthew) Modified on 7/2/2010 (tc, ). Modified on 7/6/2010 (ca, ). (Entered: 07/02/2010) |
| 07/02/2010 | 99 | Document entered in error (Hurst, Matthew) Modified on 7/6/2010 (ca, ). (Entered: 07/02/2010) |
| 07/02/2010 | 100 | MOTION by Plaintiff Robert F. Booth Trust to Approve Attorneys' Fees (Hurst, Matthew) Modified on 7/6/2010 (ca, ). (Entered: 07/02/2010) |
| 07/02/2010 | 101 | STATEMENT by Defendants William C Crowley, Edward S. Lampert, Steven T Mnuchin, Richard C Perry, Ann N Reese, Kevin B Rollins, Emily Scott, Thomas J Tisch in Support of MOTION by Plaintiff Robert F. Booth Trust for settlement *Motion to Approve Settlement* 97 (Kaul, Ramji) (Entered: 07/02/2010) |
| 07/02/2010 | 102 | MEMORANDUM by Robert F. Booth Trust in support of motion for attorney fees 100 *Memorandum of Law in Support of Plaintiffs' Motion to Approve Attorneys' Fees* (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H)(Hurst, Matthew) (Entered: 07/02/2010) |
| 07/02/2010 | 103 | Document entered in error (Hurst, Matthew) Modified on 7/6/2010 (ca, ). (Entered: 07/02/2010) |
| 07/02/2010 | 104 | CERTIFICATE of Service by Plaintiff Robert F. Booth Trust regarding memorandum in support of motion, 102 , notice of filing 99 , memorandum in support of motion 98 , notice of filing, 103 , MOTION by Plaintiff Robert F. Booth Trust for attorney fees *Plaintiffs' Motion to Approve Attorneys' Fees* 100 , |

| | | |
|---|---|---|
| | | MOTION by Plaintiff Robert F. Booth Trust for settlement *Motion to Approve Settlement 97 Certificate of Service* (Hurst, Matthew) (Entered: 07/02/2010) |
| 07/02/2010 | 105 | CERTIFICATE of Service by Defendants William C Crowley, Edward S. Lampert, Steven T Mnuchin, Richard C Perry, Ann N Reese, Kevin B Rollins, Emily Scott, Thomas J Tisch regarding statement in support, 101 of Motion to Approve *Settlement* (Kaul, Ramji) (Entered: 07/02/2010) |
| 07/06/2010 | 108 | Document entered in error (Hurst, Matthew) Modified on 7/6/2010 (ca, ). (Entered: 07/06/2010) |
| 07/06/2010 | 109 | Document entered in error (Hurst, Matthew) Modified on 7/6/2010 (ca, ). (Entered: 07/06/2010) |
| 07/06/2010 | 110 | *Notice of Motion to Approve Settlement* NOTICE of Motion by Matthew Todd Hurst for presentment of motion for settlement 97 before Honorable Ronald A. Guzman on 7/9/2010 at 10:00 AM. (Hurst, Matthew) (Entered: 07/06/2010) |
| 07/06/2010 | 111 | *Notice of Motion to Approve Attorneys' Fees* NOTICE of Motion by Matthew Todd Hurst for presentment of motion for attorney fees 100 before Honorable Ronald A. Guzman on 7/9/2010 at 10:00 AM. (Hurst, Matthew) (Entered: 07/06/2010) |
| 07/06/2010 | 112 | NOTICE of Correction 99 103 108 109 (ca, ). (Entered: 07/06/2010) |
| 07/06/2010 | 114 | LETTER from Melvin J. Schultz dated 6/30/10 (ca, ). (Entered: 07/08/2010) |
| 07/07/2010 | 113 | OBJECTIONS *Melvin J. Schultz Objection* (Hurst, Matthew) (Entered: 07/07/2010) |
| 07/09/2010 | 115 | MINUTE entry before Honorable Ronald A. Guzman: Fairness and motion hearing held on 7/9/2010. Plaintiff's Motion for settlement 97 and Motion for attorneys fees 100 are entered and continued for hearing and fairness hearing on 8/27/2010 at 10:30 A.M. The parties are ordered to submit briefs and/or records, as stated in open court, by 7/23/2010. Briefs to be submitted in camera. Mailed notice by judge's staff. (srb,) (Entered: 07/09/2010) |
| 08/05/2010 | 116 | LETTER from Katherine Kough dated July 24, 2010. (lp, ) (Entered: 08/10/2010) |
| 08/16/2010 | 117 | MOTION to intervene and objection and Motion to dismiss under rule 23.1(a) by Theodore H. Frank. (lp, ) (Entered: 08/20/2010) |
| 08/16/2010 | 118 | PROPOSED Pleading of Objector/Intervenor Theodore H. Frank. (lp, ) (Entered: 08/20/2010) |
| 08/23/2010 | 123 | LETTER from Veronica Chemers dated July 14, 2010. (Exhibit). (lp, ) (Entered: 08/27/2010) |
| 08/24/2010 | 119 | MEMORANDUM by Robert F. Booth Trust in Opposition to motion to intervene 117 (Attachments: # 1 Exhibit A)(Hurst, Matthew) (Entered: 08/24/2010) |
| 08/24/2010 | 120 | NOTICE by Robert F. Booth Trust re memorandum in opposition to motion 119 (Hurst, Matthew) (Entered: 08/24/2010) |
| 08/24/2010 | 121 | CERTIFICATE of Service by Matthew Todd Hurst on behalf of Robert F. Booth Trust (Hurst, Matthew) (Entered: 08/24/2010) |
| 08/24/2010 | 122 | MINUTE entry before Honorable Ronald A. Guzman: Hearings regarding Plaintiff's Motion for settlement 97 and Motion for attorneys fees 100 and fairness hearing are reset to 9/10/2010 at 09:30 AM. on Court's own motion. Mailed notice (cjg, ) (Entered: 08/24/2010) |
| 08/25/2010 | 124 | REPLY in support of motion by Theodore H. Frank to intervene and motion to dismiss. (lp, ) (Entered: 08/30/2010) |
| 09/02/2010 | 125 | AFFIDAVIT of Jennifer M. Keough (Attachments: # 1 Exhibit A)(Hurst, Matthew) (Entered: 09/02/2010) |
| 09/02/2010 | 126 | NOTICE by All Parties (Hurst, Matthew) (Entered: 09/02/2010) |

| 09/02/2010 | 127 | CERTIFICATE of Service by Matthew Todd Hurst on behalf of All Plaintiffs (Hurst, Matthew) (Entered: 09/02/2010) |
|---|---|---|
| 09/07/2010 | 128 | RESPONSE by William C Crowley, Edward S. Lampert, Steven T Mnuchin, Robert W Orlick, Richard C Perry, Ann N Reese, Kevin B Rollins, Emily Scott, Thomas J Tisch to MOTION to intervene and Objection of Theodore H. Frank to Proposed Settlement 117 (Kaul, Ramji) Modified on 9/8/2010 (ca, ). (Entered: 09/07/2010) |
| 09/07/2010 | 129 | SUPPLEMENTAL MEMORANDUM of Law by Robert F. Booth Trust in support of Plaintiffs' Motion to approve attorney fees and expenses 100 (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Hurst, Matthew) Modified on 9/8/2010 (ca, ). (Entered: 09/07/2010) |
| 09/07/2010 | 130 | NOTICE by Robert F. Booth Trust re memorandum in support of motion, 129 (Hurst, Matthew) (Entered: 09/07/2010) |
| 09/08/2010 | 131 | SUPPLEMENTAL RESPONSE by Plaintiff Robert F. Booth Trust to Objection of Theodore H. Frank 117 (Attachments: # 1 Exhibit A)(Hurst, Matthew) Modified on 9/9/2010 (ca, ). (Entered: 09/08/2010) |
| 09/08/2010 | 132 | NOTICE by Robert F. Booth Trust re Response 131 *and Certificate of Service Supplemental Response to Objection of Theodore H. Frank* (Hurst, Matthew) (Entered: 09/08/2010) |
| 09/08/2010 | 133 | MINUTE entry before Honorable Ronald A. Guzman: For the reasons set forth in this Order, objector Theodore Frank's motion to intervene and dismiss 117 is denied. [For further details see order]. Mailed notice. (srb,) (Entered: 09/09/2010) |
| 09/10/2010 | 134 | MINUTE entry before Honorable Ronald A. Guzman: Fairness hearing held on 9/10/2010. Settlement agreement taken under advisement. Written opinion to be issued. Status hearing will be set after opinion has been issued if necessary. Mailed notice by judge's staff. (srb,) (Entered: 09/10/2010) |
| 09/13/2010 | 135 | Supplemental Materials Regarding Objection of Frank by Robert F. Booth Trust (Attachments: # 1 Affidavit Matthew T. Hurst, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C)(Hurst, Matthew) (Entered: 09/13/2010) |
| 09/13/2010 | 136 | NOTICE by Robert F. Booth Trust re other 135 *Supplemental Materials Regarding Objection of Frank* (Hurst, Matthew) (Entered: 09/13/2010) |
| 09/24/2010 | 137 | JOINT MOTION by Defendants William C Crowley, Edward S. Lampert, Steven T Mnuchin, Robert W Orlick, Richard C Perry, Ann N Reese, Kevin B Rollins, Emily Scott, Thomas J Tisch of Plaintiffs and Individual Defendants to Modify Release Terms in [Amended Proposed] Order &Final Judgment and to Present First Amendment to Amended Stipulation of Settlement in Further Support of Motion to Approve the Settlement (Attachments: # 1 Exhibit, # 2 Exhibit)(Kaul, Ramji) Modified on 9/27/2010 (ca, ). (Entered: 09/24/2010) |
| 09/24/2010 | 138 | NOTICE of Motion by Ramji B. Kaul for presentment of joint motion of plaintiffs and individual defendants to modify release 137 before Honorable Ronald A. Guzman on 9/28/2010 at 09:30 AM. (Kaul, Ramji) Modified on 9/27/2010 (ca, ). (Entered: 09/24/2010) |
| 09/27/2010 | 139 | MINUTE entry before Honorable Ronald A. Guzman: Notice of motion set for 9/28/10 is stricken. JOINT MOTION by Defendants William C Crowley, Edward S. Lampert, Steven T Mnuchin, Robert W Orlick, Richard C Perry, Ann N Reese, Kevin B Rollins, Emily Scott, Thomas J Tisch of Plaintiffs and Individual Defendants to Modify Release Terms in [Amended Proposed] Order &Final Judgment and to Present First Amendment to Amended Stipulation of Settlement in Further Support of Motion to Approve the Settlement 137 is taken under advisement. Mailed notice (cjg, ) (Entered: 09/27/2010) |
| 09/28/2010 | 142 | NOTICE of appeal by Theodore H. Frank regarding orders 133 (ca, ). (Entered: 10/01/2010) |
| 09/30/2010 | 141 | NOTICE by William C Crowley, Edward S. Lampert, Steven T Mnuchin, Richard C Perry, Ann N Reese, Kevin B Rollins, Emily Scott, Thomas J Tisch *of Firm Name Change* (King, Christopher) (Entered: 09/30/2010) |

| | | |
|---|---|---|
| 10/01/2010 | 143 | NOTICE of Appeal Due letter sent to counsel of record. (gel, ) (Entered: 10/01/2010) |
| 10/01/2010 | 144 | TRANSMITTED to the 7th Circuit the short record on notice of appeal 142 . Notified counsel (gel, ) (Entered: 10/01/2010) |
| 10/01/2010 | 145 | ACKNOWLEDGEMENT of receipt of short record on appeal regarding notice of appeal 142 ; USCA Case No. 10−3285 (ca, ). (Entered: 10/01/2010) |
| 10/07/2010 | 146 | MINUTE entry before Honorable Ronald A. Guzman: Minute entry dated 9/27/10 [doc. 139] is amended to read as follows: Notice of motion set for 9/28/10 is stricken. Joint motion by Plaintiffs and Individual Defendants (The Individual Defendants are William C. Crowley, Edward S. Lampert, Steven T. Mnuchin, Richard C. Perry, Ann N. Reese, Kevin B. Rollins, Emily Scott, and Thomas J. Tisch) to Modify Release Terms in [Amended Proposed] Order &Final Judgment and to Present First Amendment to Amended Stipulation of Settlement in Further Support of Motion to Approve the Settlement 137 is taken under advisement. Mailed notice Mailed notice (cjg, ) (Entered: 10/07/2010) |
| 10/13/2010 | 147 | SEVENTH CIRCUIT transcript information sheet by Robert F. Booth Trust (ca, ). (Entered: 10/15/2010) |
| 10/15/2010 | 148 | TRANSCRIPT OF PROCEEDINGS held on 9/10/10 before the Honorable Ronald A. Guzman. Court Reporter Contact Information: Nancy LaBella, 312−435−6890, Nancy_LaBella@ilnd.uscourts.gov.

IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.

Redaction Request due 11/5/2010. Redacted Transcript Deadline set for 11/15/2010. Release of Transcript Restriction set for 1/13/2011. (Labella, Nancy) (Entered: 10/15/2010) |
| 10/15/2010 | 149 | TRANSCRIPT OF PROCEEDINGS held on 7/9/10 before the Honorable Ronald A. Guzman. Court Reporter Contact Information: Nancy LaBella, 312−435−6890, Nancy_LaBella@ilnd.uscourts.gov.

IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.

Redaction Request due 11/5/2010. Redacted Transcript Deadline set for 11/15/2010. Release of Transcript Restriction set for 1/13/2011. (Labella, Nancy) (Entered: 10/15/2010) |
| 10/15/2010 | 150 | TRANSCRIPT OF PROCEEDINGS held on 4/19/10 before the Honorable Ronald A. Guzman. Court Reporter Contact Information: Nancy LaBella, 312−435−6890, Nancy_LaBella@ilnd.uscourts.gov.

IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.

Redaction Request due 11/5/2010. Redacted Transcript Deadline set for 11/15/2010. Release of Transcript Restriction set for 1/13/2011. (Labella, Nancy) (Entered: 10/15/2010) |

| | | |
|---|---|---|
| 10/15/2010 | <u>151</u> | TRANSCRIPT OF PROCEEDINGS held on 3/18/10 before the Honorable Ronald A. Guzman. Court Reporter Contact Information: Nancy LaBella, 312–435–6890, Nancy_LaBella@ilnd.uscourts.gov.<br><br>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.<br><br>Redaction Request due 11/5/2010. Redacted Transcript Deadline set for 11/15/2010. Release of Transcript Restriction set for 1/13/2011. (Labella, Nancy) (Entered: 10/15/2010) |
| 10/15/2010 | <u>152</u> | TRANSCRIPT OF PROCEEDINGS held on 3/11/10 before the Honorable Ronald A. Guzman. Court Reporter Contact Information: Nancy LaBella, 312–435–6890, Nancy_LaBella@ilnd.uscourts.gov.<br><br>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.<br><br>Redaction Request due 11/5/2010. Redacted Transcript Deadline set for 11/15/2010. Release of Transcript Restriction set for 1/13/2011. (Labella, Nancy) (Entered: 10/15/2010) |
| 10/15/2010 | <u>153</u> | TRANSCRIPT OF PROCEEDINGS held on 11/9/09 before the Honorable Ronald A. Guzman. Court Reporter Contact Information: Nancy LaBella, 312–435–6890, Nancy_LaBella@ilnd.uscourts.gov.<br><br>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.<br><br>Redaction Request due 11/5/2010. Redacted Transcript Deadline set for 11/15/2010. Release of Transcript Restriction set for 1/13/2011. (Labella, Nancy) (Entered: 10/15/2010) |
| 10/21/2010 | <u>154</u> | TRANSMITTED to the USCA for the 7th Circuit the long record on appeal <u>142</u> (USCA no. 10–3285). (gel, ) (Entered: 10/21/2010) |
| 10/21/2010 | <u>155</u> | USCA RECEIVED on 10/21/2010 the long record regarding notice of appeal <u>142</u> . (gel, ) (Entered: 10/26/2010) |
| 04/20/2011 | <u>156</u> | STATUS Report *Joint* by William C Crowley, Edward S. Lampert, Steven T Mnuchin, Richard C Perry, Ann N Reese, Robert F. Booth Trust, Kevin B Rollins, Emily Scott, Sears Holding Corporation, Thomas J Tisch (Attachments: # <u>1</u> Exhibit A)(King, Christopher) (Entered: 04/20/2011) |
| 04/20/2011 | <u>157</u> | NOTICE by William C Crowley, Edward S. Lampert, Steven T Mnuchin, Richard C Perry, Ann N Reese, Robert F. Booth Trust, Kevin B Rollins, Emily Scott, Sears Holding Corporation, Thomas J Tisch re status report, <u>156</u> (King, Christopher) (Entered: 04/20/2011) |
| 04/21/2011 | <u>158</u> | MOTION by Plaintiff Robert F. Booth Trust for Presentment of Status (Hurst, Matthew) (Entered: 04/21/2011) |
| 04/21/2011 | <u>159</u> | *Certificate of Service and* NOTICE of Motion by Matthew Todd Hurst for presentment of motion for miscellaneous relief <u>158</u> before Honorable Ronald A. Guzman on 4/28/2011 at 09:30 AM. (Hurst, Matthew) (Entered: 04/21/2011) |

| 04/25/2011 | 160 | *Amended* NOTICE of Motion by Matthew Todd Hurst for presentment of motion for presentment of status 158 before Honorable Ronald A. Guzman on 5/5/2011 at 09:30 AM. (Hurst, Matthew) (Docket text Modified by clerk's office on 4/26/2011 (ca, ). (Entered: 04/25/2011) |
| --- | --- | --- |
| 04/28/2011 | 161 | MINUTE entry before Honorable Ronald A. Guzman: Notice of motion set for 5/5/11 is stricken. According to a letter from counsel, the Seventh Circuit has stayed briefing and consideration of Mr. Frank's appeal of the denial of his motion to intervene until the Court makes a final ruling on the proposed settlement. The Court has not, however, received an order to that effect from the Seventh Circuit and, though the appellate docket states that briefing has been suspended, it does not explain why. Absent direction from the Seventh Circuit or the parties' submission of authority that shows the Court has jurisdiction to take the very action Mr. Frank sought to avert while his appeal is pending, the Court will not make a ruling. Thus, plaintiffs' motion for presentment of status [doc. no. 158] is stricken as moot. Mailed notice (cjg, ) (Entered: 04/28/2011) |
| 05/11/2011 | 162 | The Parties' Joint Submission of Authority on Court's Jurisdiction in Response to April 28, 2011 Minute Entry by Robert F. Booth Trust (Hurst, Matthew) (Entered: 05/11/2011) |
| 05/11/2011 | 163 | NOTICE by Robert F. Booth Trust re other 162 *and Certificate of Service* (Hurst, Matthew) (Entered: 05/11/2011) |
| 06/30/2011 | 164 | MOTION by Plaintiff Robert F. Booth Trust for Presentment of Status 162 (Hurst, Matthew) (Docket text Modified by clerk's office on 7/1/2011 (ca, ). (Entered: 06/30/2011) |
| 06/30/2011 | 165 | *NOM and COS* NOTICE of Motion by Matthew Todd Hurst for presentment of motion for hearing, motion for relief 164 before Honorable Ronald A. Guzman on 7/14/2011 at 09:30 AM. (Hurst, Matthew) (Entered: 06/30/2011) |
| 07/11/2011 | 166 | MINUTE entry before Honorable Ronald A. Guzman: Notice of motion set for 7/14/11 is stricken. Motion by Plaintiff Robert F. Booth Trust for Presentment of Status 164 is denied. Court will notify parties if status is required. Mailed notice (cjg, ) (Entered: 07/11/2011) |
| 09/29/2011 | 167 | ORDER dated 9/29/11 from the USCA for the Seventh Circuit regarding notice of appeal 142 ; Appellate case no: 10–3285. IT IS ORDERED that appellees' motion to stay proceedings is GRANTED. The district court has jurisdiction to rule on the motion for final approval of the settlement while Frank's appeal is pending. Proceedings in this appeal are SUSPENDED pending a ruling by the district court. The parties are ORDERED to file statements of position with this court within ten days of a ruling by the district court. IT IS FURTHER ORDERED that appellant's motion for summary reversal is DENIED without prejudice. The parties are encouraged to address the application of Devlin v. Scardelletti, 536 U.S. 1 (2002) in their briefs. And the parties will be able to more fully address the merits of the appeal when briefing is reset. (ca, ). (Entered: 09/30/2011) |
| 10/31/2011 | 168 | MOTION by Plaintiffs Robert F. Booth Trust, Ronald Gross For Presentment of Status (Hurst, Matthew) (Entered: 10/31/2011) |
| 10/31/2011 | 169 | *Certificate of Service and* NOTICE of Motion by Matthew Todd Hurst for presentment of motion for miscellaneous relief 168 before Honorable Ronald A. Guzman on 11/3/2011 at 09:30 AM. (Hurst, Matthew) (Entered: 10/31/2011) |
| 11/02/2011 | 170 | MINUTE entry before Honorable Ronald A. Guzman: Notice of motion set for 11/3/11 is stricken. The Court denies the motion for presentment of status 168 but gives the parties fourteen days to submit a written status report, if they wish to do so. Mailed notice (cjg, ) (Entered: 11/02/2011) |
| 11/03/2011 | 171 | STATUS Report by Ronald Gross, Robert F. Booth Trust (Hurst, Matthew) (Entered: 11/03/2011) |
| 11/03/2011 | 172 | NOTICE by Ronald Gross, Robert F. Booth Trust re status report 171 *and Certificate of Service* (Hurst, Matthew) (Entered: 11/03/2011) |

| 11/09/2011 | 173 | STATUS Report by William C Crowley, Edward S. Lampert, Steven T Mnuchin, Richard C Perry, Ann N Reese, Kevin B Rollins, Emily Scott, Sears Holding Corporation, Thomas J Tisch (King, Christopher) (Entered: 11/09/2011) |
| --- | --- | --- |
| 11/09/2011 | 174 | NOTICE by William C Crowley, Edward S. Lampert, Steven T Mnuchin, Richard C Perry, Ann N Reese, Kevin B Rollins, Emily Scott, Sears Holding Corporation, Thomas J Tisch re status report 173 (King, Christopher) (Entered: 11/09/2011) |
| 11/22/2011 | 175 | NOTICE by Matthew Todd Hurst of Change of Address *for Sarraf Gentile LLP &Certificate of Service* (Hurst, Matthew) (Entered: 11/22/2011) |
| 01/27/2012 | 176 | MINUTE entry before Honorable Ronald A. Guzman: For the reasons set forth in this order, the Court denies without prejudice plaintiffs' motion to approve the amended stipulation of settlement [97, 137]. Mailed notice (cjg, ) (Entered: 01/27/2012) |
| 02/08/2012 | 177 | MINUTE entry before Honorable Ronald A. Guzman: Status hearing set for 2/23/2012 at 09:30 AM. Mailed notice (cjg, ) (Entered: 02/08/2012) |
| 02/22/2012 | 178 | ATTORNEY Appearance for Defendant Sears Holding Corporation by William Butler Berndt (Berndt, William) (Entered: 02/22/2012) |
| 02/23/2012 | 179 | MINUTE entry before Honorable Ronald A. Guzman: Status hearing held on 2/23/2012. Status hearing set for 3/14/2012 at 09:30 AM. Mailed notice (cjg, ) (Entered: 02/23/2012) |

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| ROBERT F. BOOTH TRUST, derivatively on behalf of nominal defendant SEARS HOLDINGS CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> WILLIAM C. CROWLEY, EDWARD S. LAMPERT, STEVEN T. MNUCHIN, RICHARD C. PERRY, ANN N. REESE, KEVIN B. ROLLINS, EMILY SCOTT, and THOMAS J. TISCH, <br><br> Defendants, <br><br> and <br><br> SEARS HOLDINGS CORPORATION, <br><br> Nominal Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    No. 1:09-cv-05314 <br><br>    Hon. Ronald A. Guzman |

**AMENDED CONSOLIDATED VERIFIED DERIVATIVE COMPLAINT**

Pursuant to Rule 23.1, Fed. R. Civ. P., plaintiffs Robert F. Booth Trust and Ronald Gross bring this action derivatively, on behalf of nominal defendant Sears Holdings Corporation ("Sears" or the "Company"), for injunctive relief against defendants and allege as follows:

**NATURE OF ACTION**

1.  Plaintiffs bring this action to enjoin defendants' continued violation of the prohibition of "interlocking directorships."  Section 8 of the Clayton Act ("Section 8"), 15 U.S.C. § 19, prohibits a person from serving as a director or officer of two or more corporations if:  (a) the combined capital, surplus and undivided profits of each of the corporations exceeds

$26,161,000;[1] (b) each corporation is engaged in commerce; and (c) the corporations are competitors with certain threshold competitive annual sales. Although the statute contains some exemptions, none apply here.[2]

2.      Two of the directors of Sears – Ann N. Reese ("Reese") and William C. Crowley ("Crowley") – are "interlocking" directors within the meaning of Section 8. Reese is Chair of the Audit Committee of the Sears board and also sits on the board of Jones Apparel Group, Inc. ("Jones Apparel"), a competitor of Sears in the area of women's clothing and accessories, men's clothing, and women's and children's shoes. Crowley is a member of the Finance Committee of the Sears board and also sits on the boards of AutoZone, Inc. ("AutoZone"), a competitor of Sears in the area of automotive replacement parts and accessories, and AutoNation, Inc. ("AutoNation"), a competitor of Sears in the area of auto service and repair.

3.      As alleged more fully below, the interlocking directorates of Reese and Crowley violate Section 8. Nevertheless, in March 2009, the Sears Board nominated Reese and Crowley for re-election to the Board and recommended that Sears' shareholders vote to re-elect these directors.

4.      A prior demand on the Board of Sears is excused. Defendant Edward S. Lampert

---

[1] This statutory threshold is adjusted every year as determined by the Department of Commerce and published by the Federal Trade Commission (the "FTC"). 15 U.S.C. § 19(a)(5). On January 13, 2009, the FTC announced the operative threshold amount.

[2] Exempted from Section 8's prohibitions are interlocks for which: (1) the competitive sales of either corporation are less than $1 million (or as of January 13, 2009: $2,616,000); (2) the competitive sales of either corporation are less than 2 percent of that corporation's total sales; or, (3) the competitive sales of each corporation are less than 4 percent of that corporation's total sales. 15 U.S.C. § 19(2)(A)-(C). The term "competitive sales" is defined as "the gross revenues for all products and services sold by one corporation in competition with the other, determined on the basis of annual gross revenues for such products and services in that corporation's last completed fiscal year" and the term "total sales" means "the gross revenues for all products and services sold by one corporation over that corporation's last completed fiscal year." 15 U.S.C. § 19(2).

Case: 10-3285    Document: 38    Filed: 03/12/2012    Pages: 243

("Lampert") owns 54% of Sears, and according to Sears, thereby controls the election of directors to the Sears Board. Lampert, by his control, is thus directly or indirectly responsible for the *ultra vires* acts complained of herein, namely the violations of Section 8. Lampert also designated Crowley to sit on the boards of AutoZone and AutoNation, by virtue of Lampert's substantial stock ownership in both of those companies, as discussed below. Lampert is thus an interested director, as are Reese and Crowley. In addition, a majority of the seven members of the current Sears Board nominated Reese and Crowley to the Sears Board in or about March 2009 and recommended that Sears shareholders vote for them, in violation of Section 8. Because a majority of the current Board committed these *ultra vires* acts, a pre-suit demand on the current Board would be futile and is excused.

## PARTIES

5.      Plaintiffs Robert F. Booth Trust and Ronald Gross are shareholders of Sears and have been since January 2008.

6.      Nominal Defendant Sears is a Delaware corporation with principal executive offices located at 3333 Beverly Road, Hoffman Estates, Illinois. In 2005, Kmart Holding Corporation ("Kmart") and Sears, Roebuck and Co. ("Sears, Roebuck") agreed to merge, forming a new company, Sears, the nominal defendant here. As part of this merger, Kmart contributed seven directors to the new board and Sears, Roebuck contributed three directors. (Form S-4, filed 2/15/05 at 75). When the merger was consummated on March 24, 2005 (2009 DEF14A at 7), the original 10 directors were: Lampert, Alan J. Lacy ("Lacy"), Aylwin B. Lewis ("Lewis"), Donald J. Carty ("Carty"), Crowley, Julian C. Day, Michael A. Miles, Steven T. Mnuchin ("Mnuchin"), Reese and Thomas J. Tisch ("Tisch"). In 2008, the Sears Board had declined to eight members: Crowley, Lampert, Mnuchin, Perry, Reese, Kevin B. Rollins

("Rollins"), Scott and Tisch. In 2009, the Sears Board was reduced in size to its current membership of seven directors: Crowley, Lampert, Mnuchin, Reese, Rollins, Scott and Tisch.

7.     Defendant Crowley has been a director of Sears from March 24, 2005 to the present. Crowley is a member of the Finance Committee. (DEF14A filed 3/17/09 at 8). Crowley became a member of the board of AutoZone on August 18, 2008. (AutoZone Form 8-K, filed 8/18/08). Crowley is also President and Chief Operating Officer of Lampert's company, ESL Investments, Inc. ("ESL"), discussed below. Crowley has also been a member of the board of AutoNation since January 2002. (AutoNation Form 10-K, filed 3/23/09, at 6). Crowley is on AutoNation's Compensation Committee and Corporate Governance and Nominating Committee. *Id.* at 9.

8.     Defendant Lampert has been a director of Sears from March 24, 2005 to the present. Lampert is the Chairman of the Board of Sears and of the Finance Committee. (DEF14A filed 3/17/09 at 8). Lampert is also Chairman and Chief Executive Officer of ESL, a Connecticut-based private hedge fund. (DEF14A, filed 3/26/08, at 11). ESL beneficially owned 49.6% of Sears' outstanding common stock as of February 2, 2008, *id.* at 12, and 54.1% of Sears' common stock as of January 31, 2009. (2009 DEF14A at 14). In addition, as of March 31, 2009, Lampert (through his ownership of ESL) became a 43.67% owner of AutoZone. Lampert, through ESL, is also a 45% owner of AutoNation. (AutoNation Schedule 14A, filed 3/23/09, at 17). According to Sears, due to Lampert's 54% current ownership of Sears, Lampert has "substantial influence over many, if not all, actions to be taken or approved by [Sears'] shareholders, including the election of directors and any transactions involving a change of control." (2008 Form 10-K, filed 3/17/09, at 10).

9.     Defendant Mnuchin has been a director of Sears from March 24, 2005 to the

present.  Mnuchin is a member of the Audit Committee and is the Chair of the Nominating and Corporate Governance Committee.  (DEF14A, filed 3/17/09, at 8).

10.    Defendant Perry served as a director of Sears from 2006 through May 4, 2009.  Perry was a member of the Finance Committee and the Nominating and Corporate Governance Committee.  (DEF14A, filed 3/17/09 at 8).

11.    Defendant Rollins has been a director of Sears from February 20, 2008 to the present.  Rollins is a member of the Audit Committee.  (DEF14A, filed 3/17/09, at 8).

12.    Defendant Scott has been a director of Sears from May 4, 2007 to the present.  Scott is a member of the Compensation Committee.  (DEF14A, filed 3/17/09, at 8).

13.    Defendant Tisch has been a director of Sears from March 24, 2005 to the present.  Tisch is a member of the Audit Committee and Chair of the Compensation Committee.

14.    Defendant Reese has been a director of Sears from March 24, 2005 to the present.  Reese is Chair of the Audit Committee and a member of the Compensation Committee.  She has been a director of Jones Apparel since 2003. (Jones Apparel Schedule 14A, filed 4/12/09, at 5).

15.    The term "Individual Defendants" is sometimes used in this Complaint to refer to defendants Crowley, Lampert, Mnuchin, Perry, Reese, Rollins, Scott, and Tisch.

16.    Plaintiffs bring this action to enjoin Reese from serving simultaneously as a board member of Jones Apparel, and to enjoin Crowley from serving simultaneously as a board member of Sears and AutoZone and AutoNation.

## JURISDICTION AND VENUE

17.    This Court has jurisdiction of this action under Section 16 of the Clayton Act, 15 U.S.C. § 26, for violations of Section 8 of the Clayton Act, 15 U.S.C. § 19.  The Court has supplemental jurisdiction over Plaintiff's state-law claim alleged in Count Three.

18. Original jurisdiction is conferred upon this Court pursuant to 28 U.S.C. §§ 1331, 1337. The Court also has supplemental jurisdiction over Plaintiff's state-law claim pursuant to 28 U.S.C. § 1367.

19. Venue is laid in this District pursuant to 15 U.S.C. § 22 and 28 U.S.C. § 1391. Nominal Defendant Sears maintains its corporate headquarters in this District at 3333 Beverly Road, Hoffman Estates, Illinois 60179.

## SUBSTANTIVE ALLEGATIONS

20. Sears is a Delaware corporation with principal executive offices in Illinois. Defendants Reese and Crowley are "interlocking" directors within the meaning of Section 8, and in March 2009 were nominated and recommended by the Sears Board for re-election.

21. On August 20, 2009, Sears announced that it had lost $94 million, or 79 cents per share, in the second quarter of 2009. According to a *Barron's* article ("Washed Out," August 24, 2009), the news "hit Wall Street like a massive bunker-blasting bomb." Sears shares dropped nearly 14% that day. According to the August 24 *Barron's* article, "Lampert seems to be starving his company, driving away customers with uncompetitive pricing." Although Lampert responded to *Barron's* in a letter of his own to the editor (*Barron's*, September 17, 2009), Lampert acknowledged that "performance of the company is not where [he] would like it to be." Lampert did not, however, respond to the charge that Sears was driving away customers with "uncompetitive pricing."

### Sears and Jones Apparel

22. Sears and the publicly-traded Jones Apparel each have a combined capital, surplus and undivided profit exceeding $26,161,000. Both are engaged in commerce. The two companies compete with one another in selling women's apparel, footwear and accessories;

men's clothing; and women's and children's shoes.

23.      Sears is a broadline retailer with 2,297 full-line and 1,233 specialty retail stores in the United States.  (*See* Sears 2008 Form 10-K, filed 3/17/09).  Sears reported total revenues for its fiscal year 2008 of $46.8 billion.  (2008 Form 10-K, filed 3/17/09, at 22-23).  (Sears' fiscal year 2008 began on February 1, 2008 and ended on January 31, 2009.  2008 Form 10-K, filed 3/17/09, cover page).  Since the merger with Kmart, Sears conducts operations in three business segments:  Kmart, Sears Domestic and Sears Canada.  Apparel, footwear and accessories are among the product lines offered by the Sears Domestic, Kmart and Sears Canada business segments.  (Form 10-Q, filed 5/2/09, at 18-19).  For fiscal 2008, Sears broke down its segment sales as follows:  Kmart ($16.219 billion); Sears Domestic ($25.315 billion); Sears Canada ($5.236 billion).  (2008 Form 10-K at 88).

24.      As of January 31, 2009, Sears had 1,368 Kmart stores across 49 states, Guam, Puerto Rico and the U.S. Virgin Islands.  Most Kmart stores are one-floor, free-standing units that carry a wide assortment of general merchandise.

25.      The Sears Domestic segment operates 929 broadline stores of which 856 are full-line stores located across all 50 states and Puerto Rico, primarily mall-based locations averaging 133,000 square feet.  Full-line stores offer a wide array of products across many merchandise categories, including "apparel, footwear and accessories for the whole family."  (2008 Form 10-K, filed 3/17/09, at 2).  This segment's product offerings in women's apparel and accessories (handbags, small leather goods, costume jewelry) include Apostrophe, Canyon River Blues, Carhartt, Classic Elements, Covington, Dockers, Lands' End, Levi's, Southpole, and others. (www.sears.com; 2008 Form 10-K, filed 3/17/09, at 2).  Its product offerings also include men's clothing such as jeans, sweaters, sportswear, casual and dress shirts, casual and dress pants, and

suits and sport coats, among other things.  (www.sears.com (clothing (men's)).  Among the brands of men's clothing Sears sells are the following:  Arrow, Canyon River Blues, Carhartt, Covington, Dockers, Lee, Levi's, Pierre Cardin, and Structure.  The Sears Domestic segment also sells jewelry and watches.  (www.sears.com (jewelry & watches)).  The segment sells a variety of necklaces, bracelets, earrings, and pendants.  Sears sells both costume and fine jewelry (semi-precious, sterling silver, and gold), both at a variety of price points.  Sears also sells a selection of men's watches.  (*Id.*)

26.     Sears operates 73 Sears Essentials/Grand Stores located in 26 states.  (2008 Form 10-K, filed 3/17/09, at 2).  These stores sell all products sold in the "typical mall-based store."  *Id.*

27.     Sears operates Lands' End, Inc., a leading direct merchant of casual clothing, accessories and footwear for men, women and children.  (2008 Form 10-K, filed 3/17/09, at 3).  These products are offered through multiple selling channels including Landsend.com, a leading apparel website, as well as catalog mailings, and international businesses.  (*Id.*).  Lands' End has 14 retail stores, averaging 8,600 square feet, which offer Lands' End merchandise primarily from catalog and internet channel overstocks.  In addition, Lands' End has 222 "store within a store" departments inside Sears Domestic broadline locations.  (2008 Form 10-K, filed 3/17/09, at 3).

28.     Sears also sells an assortment of women's apparel and accessory merchandise, and men's clothing, through its website, *www.sears.com.*  Customers can buy through the Internet and have merchandise shipped to their home or can pick the goods up in one of Sears' full-line specialty stores.  (*Id.*)

29.     Sears conducts retail operations in Canada similar to those conducted by Sears Domestic, with greater emphasis on apparel and other softlines than in the U.S. stores.  (2008

Form 10-K, filed 3/17/09, at 4). As of January 31, 2009, Sears Canada operated 122 full-line stores, 266 specialty stores (including one Lands' End store), 30 floor covering stores, 1,858 catalog pick-up locations and 106 travel offices. (*Id.*) Sears Canada also conducts business over its internet website: *sears.ca.*

30. Jones Apparel is a leading designer, marketer and wholesaler of branded apparel, footwear and accessories. (*See* Jones Apparel 2008 Form 10-K Annual Report, filed 2/17/08). Jones Apparel designs, contracts for the manufacture of and markets a broad range of women's collection sportswear, suits and dresses, casual sportswear and jeanswear for women and children, and women's footwear and accessories. *Id.* at 32. Jones Apparel sells women's clothing at a variety of retail price points, depending on quality and style. *Id.* at 5-7 (Table summarizing products and price points). Jones Apparel also sells brand name and private label footwear for women and children. (*Id.* at 6). Jones Apparel also sells costume, semi-previous, sterling silver, and marcasite jewelry. (*Id.*) In 2008, Jones Apparel announced that Wal-Mart would be the exclusive retailer of its l.e.i. brand for juniors, junior plus and girls. (*Id.* at 34.) Jones Apparel sells its products through a broad array of distribution channels, including better specialty and department stores and mass merchandisers, primarily in the United States and Canada. *Id.* Jones Apparel also operates a network of retail and factory outlet stores and several e-commerce websites. *Id.* Jones Apparel reported total revenues for fiscal 2008 of $3.6 billion. *Id.* at 30.

31. Jones Apparel also sells men's accessories and jewelry, neckwear, sportswear, dress and casual shirts, dress slacks, sweaters, suits and jackets, denim, footwear.

32. Jones Apparel's nationally recognized brands include Jones New York, Nine West, Anne Klein, Gloria Vanderbilt, Kasper, Bandolino, Easy Spirit, Evan Picone, l.e.i.,

Energie, Enzo Angiolini, Joan & David, Mootsies Tootsies, Sam & Libby, Napier, Judith Jack, Albert Nipon and le Suit. *Id.*

33.   As of December 31, 2008, Jones Apparel operated 373 specialty retail stores nationwide, *Id.* at 7. These stores sell either footwear and accessories, or apparel (or a combination of these products), primarily under their respective brand names. *Id.* The Nine West, Easy Spirit, Bandolino and AK Klein retail stores offer selections of exclusive products not marketed to Jones Apparel's wholesale customers. *Id.* Specialty retail stores operated by Jones Apparel also sell products licensed by Jones Apparel, including belts, outerwear, watches and sunglasses. *Id.*

34.   As of December 31, 2008, Jones Apparel also operated 644 outlet stores nationwide. *Id.* Outlet shoe and apparel stores focus on breadth of product line, as well as value pricing, and offer a distribution channel for Jones Apparel residual inventories.

35.   Jones Apparel also operates the following websites which offer Jones Apparel products for sale direct to consumers: *www.ninewest.com*, *www.easyspirit.com*, *www.bandolino.com*, and *www.jny.com*. *Id.* at 8. Through these websites, Jones Apparel markets either footwear and accessories, or apparel, or a combination of these products, primarily under their respective brand names. The selection of products Jones Apparel sells on its websites is consistent with the product offerings in Jones Apparel's corresponding retail stores. *Id.*

36.   Defendant Reese became a member of the Sears Board on March 24, 2005.  Reese has been a member of the Jones Apparel Board since 2003.

37.   Jones Apparel states that "[t]he apparel, footwear and accessories industries are highly competitive."  (Jones Apparel 2008 Form 10-K, filed 2/17/09, at 23).  Jones Apparel warns its investors that:

> There is intense competition in the sectors of the apparel, footwear and accessories industries in which we participate. We compete with many other manufacturers and retailers, some of which are larger and have greater resources than we do. Any increased competition could result in reduced sales or prices, or both, which could have a material adverse effect on us. [*Id.*]

**Sears, AutoZone and AutoNation**

38.     Sears sells a variety of auto parts and accessories through its Kmart, Sears Domestic and Sears Canada business segments. Sears sells a full line of auto parts and accessories, as set forth on its website, including, but not limited to, the following: tires, custom wheels, batteries and chargers, car top and hitch carriers, exterior and interior accessories, under car and hood items (*e.g.*, air intakes and fuel systems; exhaust and emissions; suspension and chassis; engine cooling systems; transmission and drive train; filters; windshield wipers and washers; engine parts; spark plugs), car care and garage items, outdoor car shelters, bed and tailgate and tonneau and ramp items for trucks; truck boxes, electrical systems, hitches and towing and trailers, suspension, automotive electronics, mechanics' tools, air intake and fuel systems, motorcycle and all terrain vehicle items, RV's and camping items, and car art. (*See www.sears.com* automotive and tire department).

39.     Sears sells a variety of auto parts brands, such as DieHard, Michelin, Goodyear, Bridgestone, BF Goodrich, Dunlop, Bestop, Curt, Truxedo, K and N and Rausch Performance. (*Id.*)

40.     Sears also services and repairs autos at its Sears Auto Centers. As part of its Sears Domestic business segment, Sears operates 782 Sears Auto Centers in association with full-line stores. (2008 Form 10-K, filed 3/17/09, at 3). In addition 27 Sears Auto Centers are operated out of Sears Essentials/Grand Stores. (*Id.*) There are 30 free standing Sears Auto Centers that operate independently of full-line stores. (*Id.*)

Case: 10-3285 Document: 38 Filed: 03/12/2012 Pages: 243

41.     Sears states that "[t]he retail industry is highly competitive, with few barriers to entry." (2008 Form 10-K, filed 3/17/09, at 7). According to Sears, it "compete[s] with a wide variety of retailers, including other department stores, discounters, home improvement stores, consumer electronics dealers, auto service providers, specialty retailers, wholesale clubs, as well as many other retailers operating on a national, regional or local level along with Internet and catalog businesses, which handle similar lines of merchandise." (*Id.*)

42.     AutoZone is a public company that has a combined capital, surplus and undivided profit exceeding $26,161,000. AutoZone operates as a specialty retailer and distributor of automotive replacement parts and accessories. AutoZone also offers a commercial sales program that provides commercial credit, and delivery of parts and other products to local, regional, and national repair garages, dealers, and service stations. In addition, it sells the ALLDATA brand automotive diagnostic and repair information, auto and light truck parts, and accessories on the Web at *autozone.com*. As of August 30, 2008, AutoZone operated 4,092 stores in the United States and Puerto Rico and 148 stores in Mexico.

43.     AutoZone was founded in 1979 and is based in Memphis, Tennessee. For the year ended August 30, 2008, AutoZone reported net sales of $6.523 billion compared with $6.170 billion for the year ended August 25, 2007, a 5.7% increase from fiscal 2007. (AutoZone 2008 Form 10-K, filed 10/27/08, at 17). AutoZone reported net income for fiscal 2008 of $641.6 million. (*Id.*)

44.     AutoZone sells a variety of auto parts and accessories, which are listed on its website, *www.autozone.com*. Among these items are the following: brakes and traction control, engine management, exhaust, exterior items, interior items, performance, power train, routine maintenance items, suspension and steering, tools, trim accessories, and truck accessories.

Case: 10-3285 Document: 38 Filed: 03/12/2012 99 Pages: 243

According to AutoZone, "[t]he sale of automotive parts, accessories and maintenance items is highly competitive. . . ." (2008 Form 10-K, filed 10/27/08, at 11). AutoZone states that: "Competitors include national, regional and local auto parts chains, independently owned parts stores, jobbers, repair shops, car washes and auto dealers, in addition to discount and mass merchandise stores, department stores, hardware stores, supermarkets, drugstores, convenience stores and home stores that sell aftermarket vehicle parts and supplies, chemicals, accessories, tools and maintenance parts." (*Id.*)

45. Sears and AutoZone both are engaged in commerce. The two companies compete with one another in selling auto replacement parts, supplies, and accessories.

46. Defendant Crowley became a member of the AutoZone board on August 18, 2008. AutoZone issued a press release announcing that Crowley had been added to the AutoZone board at the direction of ESL, AutoZone's largest shareholder. (AutoZone 8/18/08 press release). The August 18, 2008 AutoZone press release noted that Crowley has been a Sears director since March 2005, and has been President and Chief Operating Officer of ESL. Crowley also serves as a director of AutoNation, a public company 45% owned by ESL. (AutoNation, Schedule 14A, filed 3/23/09, at 29).

47. According to AutoNation's most recent annual report on SEC Form 10-K, AutoNation sells new and used cars, and its "stores also provide a wide range of vehicle maintenance, repair, paint, and collision repair services, including warranty work that can be performed only at franchised dealerships and customer-pay service work." (AutoNation 2008 Form 10-K, filed 2/17/09 at 5). AutoNation disclosed that it has 232 stores as of December 31, 2008. *Id.* at 1. According to AutoNation, its "parts and service and finance and insurance operations, while comprising approximately 21% of total revenue, contribute approximately 65%

of our gross margin." *Id.* at 23. Crowley has been a member of the board of directors of AutoNation since January 2002. (AutoNation Form 10-K, filed 3/23/09, at 6). Crowley is on AutoNation's Compensation Committee and Corporate Governance and Nominating Committee. *Id.* at 9.

48. AutoNation sells auto service and parts to its customers. According to its website, a customer can search for auto parts and order them from AutoNation. (*See www.autonation.com,* service & parts toolbar)). AutoNation's website directs customers to 291 "Parts Centers." These parts centers are participating car dealerships located throughout Florida, California, Texas, Washington, Nevada, Tennessee, Maryland, Georgia, Colorado, Ohio, Illinois, Virginia, Arizona, and Alabama. The customer selects a car dealer, completes a "Parts Order Form" online, and submits the order to the participating car dealer.

49. AutoNation also offers a "network" of "service and collision repair locations to make vehicle maintenance & repair simple and convenient." (*www.autonation.com*). According to its website, AutoNation's auto dealer network offers: "State-of-the-art facilities, diagnostic & repair equipment; factory trained and certified technicians; knowledgeable & friendly service personnel; competitively priced maintenance and repairs." (*Id.*) AutoNation tells customers: "To schedule a service appointment, simply click on the request link below to locate a dealer near you." (*Id.*) Customers can then choose a participating car dealer online to service their car in the following states: Washington, Florida, California, Texas, Arizona, Nevada, Tennessee, Maryland, Ohio, Virginia, Illinois, Alabama, Georgia, and Minnesota. (*www.autonation.com*).

50. Sears has stores in all these states, including but not limited to full-line mall stores in the numbers indicated in parentheses, as follows: California (80); Alabama (13); Florida (55); Colorado (13); Georgia (22); Minnesota (12); Nevada (4); Maryland (19); Tennessee (24);

Virginia (23); Texas (60); Washington (23). (2008 Form 10-K, filed 3/17/09, at 11-12). Sears'
2008 Form 10-K also details the number of Sears' other types of stores in these states, such as
Discount Stores, Super Centers, Sears Essentials/Grand Stores and Specialty Stores. *Id.*

51.　　Sears and AutoNation both are engaged in commerce. The two companies
compete with one another in providing vehicle maintenance, auto parts, and vehicle repair.

52.　　AutoNation has a combined capital surplus and undivided profit exceeding
$26,161,000. AutoNation reported revenue for 2008 of $14.131 billion. (AutoNation 2008
Form 10-K, filed 3/17/09, at 22). AutoNation states that they "operate in a highly competitive
industry." (*Id.* at 9). In addition to competition from other auto retailers and dealers,
AutoNation states that it is "also subject to competition from independent automobile service
shops and service center chains." (*Id.*).

**The Individual Defendants Violated Section 8 by
Nominating Reese and Crowley to the Sears Board
<u>and Recommending that Shareholders Re-elect Them</u>**

53.　　According to Sears' proxy disclosures, the Board's Nominating and Corporate
Governance Committee evaluates a candidate's qualifications to sit as a Board member and
reviews all proposed nominees for the Board of Directors, including those proposed by
stockholders, in accord with Sears' charter and Corporate Governance Guidelines. (2008
DEF14A at 9; 2009 DEF14A at 10-11). According to Sears, the Nominating and Corporate
Governance Committee reviews a candidate's "qualifications and independence," and considers
"diversity, age, skills and experience in the context of the needs of the Board." (2008 DEF14A
at 9; 2009 DEF14A at 11).

54.　　Although the Nominating and Corporate Governance Committee "has the ability
to retain a third party to assist in the nomination process, the Company has not paid a fee to any

third party to identify or assist in identifying or evaluating potential nominees." (2008 DEF14A at 9; 2009 DEF14A at 10).

55.     The Nominating and Corporate Governance Committee recommends nominees for directors to the full Board. (2009 DEF14A at 10). Directors are nominated by the Sears Board of Directors, or by stockholders, provided the stockholders follow the nomination procedures in the Company's bylaws. (2008 DEF14A at 8-9; 2009 DEF14A at 10). The Board then recommends whether it believes shareholders should vote for the nominated slate of directors. (*See* 2009 DEF14A, Proxy Card).

56.     In 2008, Sears' Board of Directors consisted of the following eight members: Lampert, Crowley, Mnuchin, Perry, Rollins, Reese, Scott, and Tisch. (2008 DEF14A at 7).

57.     On or about March 17, 2009, Sears disseminated a proxy statement on Form DEF14A to its shareholders seeking their vote on the election of directors, among other things. The shareholder vote was to take place at the annual meeting of shareholders to be held on May 4, 2009. (2009 DEF14A, letter from W. Bruce Johnson to shareholders).

58.     Sears stated in the 2009 proxy that the Nominating and Corporate Governance Committee reviewed the qualifications and independence of these seven nominees, and approved them to the full Board of Directors. The full Board of Directors, in turn, approved the nomination of the seven directors for re-election to the Board in 2009. On March 12, 2009, defendant Perry advised the Sears Board that he would not stand for re-election to the full Board at the annual meeting on May 4, 2009 so that he could devote more time to his company, Perry Capital. (2009 DEF14A at 7). Perry, however, "indicated his intention to serve until the Annual Meeting." *Id.* In light of Perry's intention not to seek re-election, the Sears Board decided to "evaluate reducing the size of the Board from eight members to seven." *Id.*

59.     According to the 2009 DEF14A sent to shareholders, the then-current Board of Sears recommended that Sears shareholders vote in favor of the following seven nominees for director:  Crowley, Lampert, Mnuchin, Reese, Rollins, Scott, and Tisch.  (2009 DEF14A at 7-8 & Proxy Card).

60.     The seven nominees for re-election in 2009 to the Sears Board (Crowley, Lampert, Mnuchin, Reese, Rollins, Scott, and Tisch) were re-elected at the annual shareholder's meeting on May 4, 2009.

61.     Reese remains a director of Jones Apparel.

62.     Crowley remains a director of AutoZone and AutoNation.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

63.     Plaintiffs bring this action derivatively in the right and for the benefit of the Company to redress defendants' breaches of fiduciary duties.

64.     Plaintiffs own Sears common stock and have owned such stock since January 2008.

65.     Plaintiffs will adequately and fairly represent the interests of the Company and its shareholders in enforcing and prosecuting its rights.

66.     The Sears Board currently consists of seven directors: defendants Crowley, Lampert, Mnuchin, Reese, Rollins, Scott and Tisch.  Defendants Reese and Crowley are interested directors. Defendant Lampert is an interested director also. Moreover, with respect to Lampert, Crowley is his designee on the boards of AutoZone and AutoNation, given Lampert's large share-ownership of those companies through ESL. According to Sears, Lampert controls the power to elect directors to the Sears Board, by virtue of his 54% ownership of Sears. (2008

Form 10-K, filed 3/17/09, at 10). Accordingly, pre-suit demand on the current Sears Board would be futile and is excused.

67. Moreover, demand is also excused because a majority (seven out of eight) of the directors who committed the *ultra vires* acts complained of – nominating Reese and Crowley for Board re-election and recommending to shareholders that they vote for these directors' reelection in 2009 – are still members of the Sears Board of Directors. These seven directors are: Crowley, Lampert, Mnuchin, Reese, Rollins, Scott and Tisch. As a result, a majority of the current Sears Board is not independent with respect to evaluating the Board's violation of Section 8. A pre-suit demand on the current Board is therefore excused.

**COUNT ONE: VIOLATION OF SECTION 8 OF THE CLAYTON ACT (REESE)**

68. Plaintiffs repeat and reallege the foregoing allegations as if fully set forth herein.

69. Section 8 of the Clayton Act, 15 U.S.C. § 19, prohibits a person from serving, at the same time, as a director or officer of two or more corporations, other than banks, banking associations, and trust companies if: (1) the combined capital, surplus and undivided profits of each of the corporations exceeds $10,000,000 (or as of January 13, 2009, $26,161,000); (2) each corporation is engaged in commerce; and, (3) the corporations are competitors. Sears and Jones Apparel meet these statutory requirements and none of the exemptions from Section 8 apply here.

70. Reese currently serves as a director of both Sears and Jones Apparel and is in violation of Section 8 because:

a) Sears and Jones Apparel have each a combined capital, surplus and undivided profit exceeding $26,161,000.

b) Sears and Jones Apparel corporations are each engaged in commerce.

c)      Sears and Jones Apparel are competitors, such that the elimination of competition by agreement between them would constitute a violation of any of the antitrust laws.

71.    Pursuant to 15 U.S.C. § 26, Reese should be enjoined from continuing to serve on the boards of both companies, namely Sears and Jones Apparel.

72.    The Court should also enjoin the Sears Board (as presently constituted and as it may be constituted in the future) from committing future violations of Section 8.

## COUNT TWO:  VIOLATION OF SECTION 8 OF THE CLAYTON ACT (CROWLEY)

73.    Plaintiffs repeat and reallege the foregoing allegations as if fully set forth herein.

74.    Section 8 of the Clayton Act, 15 U.S.C. § 19, prohibits a person from serving, at the same time, as a director or officer of two or more corporations, other than banks, banking associations, and trust companies if: (1) the combined capital, surplus and undivided profits of each of the corporations exceeds $10,000,000 (or as of January 13, 2009, $26,161,000); (2) each corporation is engaged in commerce; and, (3) the corporations are competitors.  Sears and Jones Apparel meet these statutory requirements and none of the exemptions from Section 8 apply here.

75.    Crowley currently serves as a director of Sears and AutoZone and AutoNation and is in violation of Section 8 because:

a)      Sears, AutoZone and AutoNation have each a combined capital, surplus and undivided profit exceeding $26,161,000.

b)      Sears, AutoZone and AutoNation are each engaged in commerce.

c)      Sears and AutoZone are competitors, and Sears and AutoNation are competitors, such that the elimination of competition by agreement between Sears and AutoZone or Sears and AutoNation would constitute a violation of any of the antitrust laws.

76.     Pursuant to 15 U.S.C. § 26, Crowley should be enjoined from continuing to serve on the board of Sears while he is still a member of the boards of AutoZone and AutoNation.

77.     The Court should also enjoin the Board of Sears (as presently constituted or as it may be constituted in the future) from committing future violations of Section 8.

## COUNT THREE: BREACH OF FIDUCIARY DUTY

78.     Plaintiffs repeat and reallege the foregoing allegations as if fully set forth herein.

79.     As alleged herein, each of the Individual Defendants had a fiduciary duty to, among other things, exercise good faith to ensure that Sears was operated in a diligent, honest and prudent manner and complied with all applicable federal laws.

80.     The Individual Defendants knowingly or recklessly violated Section 8 when they nominated Reese and Crowley for re-election to the Sears Board and recommended that shareholders vote in favor of their re-election. In doing so, the Individual Defendants breached their fiduciary duties under Delaware law owed to Sears and its shareholders, namely, the duties of due care, good faith, candor, and loyalty.

81.     Furthermore, despite their actual knowledge of the Company's improper business practices, the Individual Defendants have made no effort to correct the problems; thus, they abdicated their fiduciary duty of good faith.

82.     As a direct and proximate result of the Individual Defendants' breaches of fiduciary duties, they have violated and caused the Company to violate, Section 8. The Sears Board should be enjoined from violating Section 8. The Court should issue an injunction requiring the Sears Board to remove Reese and Crowley from the Sears Board, or to otherwise cure the present violation of Section 8. The Court should also issue an injunction barring the Sears Board (as presently constituted and as it may be constituted in the future) from all future

violations of Section 8.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand:

A.     That the Sears Board (as presently constituted or as it may be constituted in the future) be preliminarily and permanently enjoined such that the Board is directed to remove the subject interlocks or otherwise cure the violation by requiring Reese to resign from her directorship on the Board of Jones Apparel or Sears, and Crowley from the Boards of AutoZone and AutoNation, or Sears.

B.     That the defendants be preliminarily and permanently enjoined from future violations of Section 8 and that the Sears Board be ordered to establish a procedure whereby future elections and appointments of officers and directors in violation of Section 8 are identified and restricted.

C.     That the Court award Plaintiffs the cost of this suit, including reasonable attorneys' fees as authorized under 15 U.S.C. § 26 and the common law, and

D.     That the Court order such other and further relief as may appear necessary and appropriate.

Dated: October 13, 2009

*/s/ Matthew T. Hurst*
**SUSMAN HEFFNER & HURST LLP**
Matthew T. Hurst
Two First National Plaza
Suite 600
Chicago, Illinois 60603
T: 312-346-3466
F: 312-346-2829

***Liaison Counsel for Plaintiffs***

**SARRAF GENTILE LLP**
Ronen Sarraf
Joseph Gentile
116 John Street, Suite 2310
New York, New York 10038
T: 212-868-3610
F: 212-918-7967

**VIANALE & VIANALE LLP**
Kenneth J. Vianale
2499 Glades Road, Suite 112
Boca Raton, Florida 33431
T: 561-392-4750
F: 561-392-4775

***Lead Counsel for Plaintiffs***

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **ROBERT F. BOOTH TRUST and** | ) | |
| **RONALD GROSS, derivatively on** | ) | |
| **behalf of nominal defendant SEARS** | ) | |
| **HOLDINGS CORPORATION,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 09 C 5314** |
| **v.** | ) | |
| | ) | |
| **WILLIAM C. CROWLEY, EDWARD** | ) | |
| **S. LAMPERT, STEVEN T. MNUCHIN,** | ) | **Judge Ronald A. Guzmán** |
| **RICHARD C. PERRY, ANN N. REESE,** | ) | |
| **KEVIN B. ROLLINS, EMILY SCOTT** | ) | |
| **and THOMAS J. TISCH,** | ) | |
| | ) | |
| **Defendants,** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **SEARS HOLDINGS CORPORATION,** | ) | |
| | ) | |
| **Nominal Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Robert Booth Trust and Ronald Gross have sued defendants on behalf of nominal

defendant Sears Holding Corporation ("Sears") for their alleged violation of section 8 of the Clayton

Act, 15 U.S.C.§ 19, and breach of fiduciary duty. The individual defendants and Sears have filed

Federal Rule of Civil Procedure ("Rule") 12(b)(6) motions to dismiss the Clayton Act claims. For

the reasons set forth below, the Court denies the motions.

**Facts**

On March 24, 2005, Kmart Corporation and Sears, Roebuck and Co. merged, creating nominal defendant Sears.  (Am. Compl. ¶ 6.)  Non-parties Jones Apparel Group, Inc., a clothing and accessories retailer, AutoZone, Inc., an auto parts retailer, and AutoNation, Inc., a provider of auto repairs and services, are competitors of Sears.  (*Id.* ¶¶ 2, 23-35, 38-44, 47-50.)

Plaintiffs have owned stock in Sears since 2008, when the Sears Board was comprised of the eight individual defendants:  William C. Crowley, Edward S. Lampert, Steven T. Mnuchin, Richard C. Perry, Ann. N. Reese, Kevin B. Rollins, Emily Scott and Thomas J. Tisch.  (*Id.* ¶¶ 5-6.)

Lampert has been a Sears Board member since March 24, 2005 and is now Board Chairman. (*Id.* ¶ 8.)  He is also the owner, Chief Executive Officer ("CEO") and Board Chairman of ESL, which owns 54.1 percent of Sears, 45 percent of AutoNation and 43.67 percent of AutoZone.  (*Id.*)

Crowley has been a member of the Sears Board since March 24, 2005, a member of the AutoNation Board since 2002 and a member of the AutoZone Board since August 18, 2008.  (*Id.* ¶ 7.)  He is also President and Chief Operating Officer of ESL.  (*Id.*)

Mnuchin has been a Sears Board member since March 24, 2005 and is Chairman of its Nominating and Corporate Governance Committee.  (*Id.* ¶ 9.)

Perry no longer serves on the Sears Board but was a member of the Board and its Nominating and Corporate Governance Committee from 2006 through May 4, 2009.  (*Id.* ¶ 10.)

Reese has been a Sears Board member since March 24, 2005 and has been a member of the Jones Apparel Board since 2003.  (*Id.* ¶ 14.)

Rollins, Scott and Tisch have been Sears Board members since February 20, 2008, May 4, 2007, and March 24, 2005, respectively.  (*Id.* ¶¶ 11-13.)

2

In late 2008 or early 2009, defendants nominated Reese and Crowley, among others, to serve another term as Sears Board members and recommended that the shareholders re-elect them. (*Id.* ¶¶ 53-59.) At Sears' May 4, 2009 annual meeting, the shareholders did just that. (*Id.* ¶ 60.) Plaintiff contends that defendants' 2009 actions with respect to Reese and Crowley violated the Clayton Act.

## Discussion

On a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded factual allegations of the complaint, drawing all reasonable inferences in plaintiff's favor. *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations" but must contain "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

The amended complaint in this derivative suit must comply with Rule 23.1, which requires plaintiffs to describe " with particularity" the attempts they made to obtain the desired action from the corporation's directors or shareholders ("pre-suit demand") or the reasons they failed to do so. Fed. R. Civ. P. 23.1(b)(3). Plaintiffs allege that they did not make a pre-suit demand because doing so would have been futile. (*See* Am. Compl. ¶¶ 63-67.) Defendants say plaintiffs have not sufficiently alleged futility, and thus, their suit must be dismissed.

Whether pre-suit demand is futile, the parties agree, is governed by Delaware law. (*See* Individual Defs.' Mem. Supp. Mot. Dismiss at 1-3; Sears' Mot. Dismiss at 3; Pl.'s Mem. Law Opp'n Mot. Dismiss at 7.) Under Delaware law, such demand is excused only when "a plaintiff has alleged specific facts with particularity, which, taken as true, support a reasonable doubt that the challenged

transaction was the product of a valid exercise of business judgment." *Aronson v. Lewis*, 473 A.2d

805, 815 (Del. 1984), *overruled on other grounds*, *Brehm v. Eisner*, 746 A.2d 244, 254 (Del. 2000);

*see Brehm*, 746 A.2d at 256.  The business judgment rule protects director actions unless the

directors "do not act in good faith, act in a manner that cannot be attributed to a rational business

purpose or reach their decision by a grossly negligent process that includes the failure to consider

all material facts reasonably available." *Brehm*, 746 A.2d at 264 n.66.  A director who "acts with

the intent to violate applicable positive law," is not acting in good faith.  *In re Walt Disney Co.

Deriv. Litig.*, 906 A.2d 27, 67 (Del. 2006) (quotation omitted).

Plaintiffs contend that defendants knew, when they nominated Reese and Crowley in 2009,

that their re-election to the Sears Board would violate section 8 of the Clayton Act, which prohibits

interlocking directorates.  In relevant part, that section provides:

> No person shall, at the same time, serve as a director or officer in any two
> corporations . . . that are . . . competitors, so that the elimination of competition by
> agreement between them would constitute a violation of any of the antitrust laws .
> . . [,] if each of the corporations has capital, surplus, and undivided profits
> aggregating more than $10,000,000 . . . . [unless] (A) the competitive sales of either
> corporation are less than [$26,161,000.00 as of January 13, 2009]; (B) the
> competitive sales of either corporation are less than 2 per centum of that
> corporation's total sales; or (C) the competitive sales of each corporation are less
> than 4 per centum of that corporation's total sales.

15 U.S.C. § 19(a)(1), (2); *see SMC Corp. v. F.T.C.*, 565 F.2d 807, 811 (2d Cir. 1977) (holding that

"section 8 [of the Clayton Act] applies to corporations as well as to individual directors.").  Plaintiff

alleges that:  (1) Sears competes with AutoZone, Auto Nation and Jones Apparel and each of those

companies has "a combined capital surplus and undivided profit exceeding $26,161,000.00"; (3)

Crowley has been a member of the AutoNation Board since 2002, a member of the Sears Board

since March 24, 2005 and a member of the AutoZone Board since August 18, 2008; and (4) Reese

has been a member of the Jones Apparel Board since 2003 and a member of the Sears Board since March 24, 2005. (Am. Compl. ¶¶ 2, 7, 14, 22-52.) Those allegations support the inference that Reese and Crowley's re-election to the Sears Board in 2009 violated section 8 of the Clayton Act.

The record also supports the inference that defendants knew, when they nominated and recommended Reese and Crowley, that section 8 of the Clayton Act prohibited interlocking directorates. Plaintiff alleges, and Sears publicly represents, that each of the individual defendants has extensive corporate experience. *See* Sears Corporate Governance Guidelines § 6, http://www.searsholdings.com/govern/guidelines.htm.[1] Lampert is the CEO, Board Chairman and owner of ESL, a hedge fund that owns 54 percent of Sears, 43.67 percent of AutoZone and 45 percent of AutoNation. (*Id.* ¶ 8.) Crowley is Chief Operating Officer of ESL and Chief Administrative Officer of Sears, was a member of the Kmart Board from 2003 until the merger and has been a member of the AutoNation Board and its Corporate Governance and Nominating Committee since 2002 and the AutoZone Board since August 2008. (*Id.* ¶ 7); http://www.searsholdings.com/govern. Mnuchin is Chairman and co-CEO of a private investment firm, was CEO of another investment firm in 2003 and 2004, was Vice Chairman of ESL during 2003 and an Executive Vice President and Chief Information Officer of Goldman, Sachs & Co. from 1986 through 2003. http://www.searsholdings.com/govern. Reese was a principal with a private equity investment firm in 1999-2000, an Executive Vice President and Chief Financial Officer of

---

[1]*See Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) ("[T]he district court may . . . take judicial notice of matters of public record without converting a 12(b)(6) motion into a motion for summary judgment." (quotation omitted)); *Doron Precision Sys., Inc. v. FAAC, Inc.*, 423 F. Supp.2d 173, 179 n. 8 (S.D.N.Y. 2006) ("For purposes of a 12(b)(6) motion to dismiss, a court may take judicial notice of information publicly announced on a party's website, as long as the website's authenticity is not in dispute and it is capable of accurate and ready determination." (quotation omitted)).

ITT Corp. from 1995 to 1998, is a member of the Boards of Xerox Corporation and Merrill, Lynch & Co. and has been a member of the Jones Apparel Board since 2003. *Id.*; (Am. Compl. ¶ 14). Rollins is a senior adviser to a private investment firm and a member of the Avaya Inc. Board and was President, CEO and a director of Dell, Inc. from 1996 through May 2007. http://www.searsholdings.com/govern. Scott is a founding partner and former board member of resort television network and was Chairman of the J. Crew Board from 1997 to 2003. *Id.* Tisch has been a managing partner a private investment firm since 1992 and is the Chancellor of Brown University. *Id.* Richard Perry is a co-founder of a private investment management firm, worked in Goldman, Sachs' private equity department and has served on the Boards of Radio & Records, Inc. and Endurance Specialty Insurance, Ltd. *See* Press Release, Sears Holdings Corporation, Sears Holdings Elects Richard C. Perry, Founder of Perry Capital, to Board (Sept. 26, 2005), available at, http://www.searsholdings.com/pubrel/pressOne.jsp?id=2005-09-26-0004131665. Moreover, Sears' corporate documents state that Board members "shall comply with all applicable laws [and] regulations" http://www.searsholdings.com/govern/board.htm, and emphasize the company's sensitivity to antitrust issues. *See* http://www.searsholdings.com/govern/code.htm#ANTITRUST (stating that Sears "is subject to complex antitrust laws designed to preserve competition among enterprises and to protect consumers from unfair business arrangements and practices"). Taken together, plaintiffs' allegations and Sears' representations amply support the inference that the individual defendants knew, when they took the actions plaintiff contest, that section 8 of the Clayton Act prohibited interlocking directorates.

The record also supports the inference that defendants knew, when they nominated and recommended Reese and Crowley in 2009, that each sat on the board of a Sears competitor.

Defendants allegedly nominated Reese and Crowley on the advice of the Board's Nominating and Corporate Governance Committee, the body charged with reviewing the qualifications and independence of Board members, identifying individuals qualified to become members and recommending qualified nominees to the Board. (Am. Compl. ¶¶ 54-58); http://www.searsholdings.com/govern/nominating.htm. Further, Sears publicly acknowledges Reese and Crowley's competing affiliations on its website. *See* http://www.searsholdings.com/govern/. Viewed together, this information supports the inference that, at the relevant time, the individual defendants knew Reese and Crowley were members of the boards of Sears' competitors.

In short, the record amply supports the inference that the individual defendants knew, when they nominated and recommended Reese and Crowley in 2009, that Sears would be in violation of section 8 of the Clayton Act if they were elected. If that is true, and for the purposes of this motion we must assume that it is, then the individual defendants knowingly caused Sears to violate section 8 of the Clayton Act, conduct that is not protected by the business judgment rule. *See In re Walt Disney Deriv. Litig.*, 906 A.2d at 67. Because the amended complaint "support[s] a reasonable doubt" that the contested actions are protected by the business judgment rule and alleges that the majority of the directors who took part in those actions remain on the Sears Board, plaintiffs were not required to make a Rule 23.1 pre-suit demand. *See Aronson*, 473 A.2d at 815.

## Conclusion

For the reasons set forth above, the Court denies defendants' motions to dismiss [doc. nos. 53 & 55].

**SO ORDERED.**                                          **ENTERED:**

7

February 26, 2010

Ronald A. Guzman

_____

**HON. RONALD A. GUZMAN**
**United States District Judge**

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ROBERT F. BOOTH TRUST and RONALD GROSS, derivatively on behalf of nominal defendant SEARS HOLDINGS CORPORATION, | ) ) ) ) | No. 1:09-cv-05314 |
| Plaintiff, | ) ) | Hon. Ronald A. Guzmán |
| v. | ) ) | |
| WILLIAM C. CROWLEY, EDWARD S. LAMPERT, STEVEN T. MNUCHIN, RICHARD C. PERRY, ANN N. REESE, KEVIN B. ROLLINS, EMILY SCOTT and THOMAS J. TISCH, | ) ) ) ) ) ) | |
| Defendants, | ) ) | |
| and | ) ) | |
| SEARS HOLDINGS CORPORATION, | ) ) | |
| Nominal Defendant. | ) ) | |

**AMENDED STIPULATION OF SETTLEMENT**

This Stipulation of Settlement (the "Stipulation"), dated as of April 28, 2010, is entered

into, by and through their respective counsel, by: (a) plaintiffs Robert F. Booth Trust and Ronald

Gross (the "Plaintiffs"); (b) nominal defendant Sears Holding Corporation ("Sears" or the

"Company"); and (c) defendants William C. Crowley, Edward S. Lampert, Steven T. Mnuchin,

Richard C. Perry, Ann N. Reese, Kevin B. Rollins, Emily Scott, and Thomas J. Tisch

(collectively, the "Individual Defendants," with (a) and (b), collectively, the "Settling Parties,"

and with (b) collectively, the "Settling Defendants"). This Stipulation is intended by the Settling

Parties to fully, finally and forever compromise, resolve, discharge, and settle the Released

Claims in accordance with the terms and conditions set forth below, subject to the approval of the United States District Court for the Northern District of Illinois (the "Court"):

## HISTORY OF THE LITIGATION AND THE SETTLEMENT PROCESS

A.      On August 28, 2009, the Robert F. Booth Trust, a shareholder of Sears, filed a derivative complaint in the United States District Court for the Northern District of Illinois (the "Court") against the Individual Defendants and nominally against Sears (the "Booth Trust Action").

B.      On September 14, 2009, Ronald Gross, a shareholder of Sears, filed a derivative complaint in the Court against the Individual Defendants and nominally against Sears (the "Gross Action").

C.      On September 28, 2009, the Court entered an Order consolidating the Booth Trust Action and the Gross Action under the case number 09-C-5314 (the "Action") and appointing Vianale & Vianale LLP and Sarraf Gentile LLP as Lead Counsel and Susman Heffner & Hurst LLP as Liaison Counsel.

D.      On October 13, 2009, Plaintiffs filed an Amended Consolidated Verified Derivative Complaint (the "Amended Complaint").  The Amended Complaint alleged that two directors of Sears, William C. Crowley ("Crowley") and Ann N. Reese ("Reese"), had violated Section 8 of the Clayton Antitrust Act, which bars individuals from serving as directors of two or more corporations with competitive sales above certain monetary thresholds.  The Amended Complaint further alleged that the Individual Defendants had breached their fiduciary duties by nominating Crowley and Reese to the Sears board of directors in alleged violation of Section 8.

E.    On November 20, 2009, the Settling Defendants moved to dismiss the Action on the grounds that Plaintiffs lacked standing because they did not make a pre-suit demand on the Board of Sears and did not sufficiently allege demand futility. In an Opinion of February 26, 2010, the Court denied the Settling Defendants' motion to dismiss.

F.    On March 5, 2010, plaintiffs moved to preliminarily enjoin the Settling Defendants from nominating and endorsing Crowley and Reese for reelection to the Sears board of directors in 2010.

G.    In preparation for a preliminary injunction hearing scheduled for March 24, 2010, Plaintiffs' Counsel sought and received discovery materials from Defendants, including 1556 pages of documents and responses to 23 interrogatories and 56 requests for admission. Subsequently, Plaintiffs' Counsel received additional documents and took the depositions of Reese and Crowley.

H.    At approximately the same time as the Plaintiffs' filing of the Motion for Preliminary Injunction, Plaintiffs' Counsel and counsel for the Individual Defendants engaged in a series of negotiations for a potential settlement over a period of nearly two weeks. Counsel discussed possible steps that Sears could take to address the issues raised in the Amended Complaint with respect to the alleged violations of the Clayton Act. After reaching agreement on the material terms of a proposed settlement, counsel also discussed the position that the Settling Defendants would take on Plaintiffs' Counsel's application for attorney's fees and reimbursement of expenses. A tentative agreement resolving the matter was reached on Thursday, March 18, 2010, and a Memorandum of Understanding memorializing the settlement was signed on March 19, 2010. On March 19, the Court was advised of the settlement, and the preliminary injunction hearing was removed from the Court's calendar.

I.      As a result of the aforementioned negotiations, the Settling Parties have agreed to the material terms of a settlement, resulting in the agreement set forth herein.

**THE SETTLING DEFENDANTS' DENIALS OF WRONGDOING AND LIABILITY**

J.      The Settling Defendants have denied and continue to deny each and every one of the claims and contentions alleged in the Amended Complaint.  The Settling Defendants also have denied and continue to deny all allegations that Sears has suffered damage by or as a result of the conduct alleged in the Derivative Claims with respect to the Settling Defendants.

K.      The Settling Defendants have nevertheless concluded that it is desirable to settle the Derivative Claims in the manner and upon the terms and conditions set forth in this Stipulation.

L.      Neither this Stipulation, nor any of its terms or provisions, nor entry of the Judgment, nor any document referred to herein or exhibit attached hereto, nor any action taken to carry out this Stipulation is, may be construed as, or may be used as, evidence of the validity of any Released Claims or as an admission by or against the Settling Defendants of any fault, wrongdoing, or concession of liability whatsoever.

M.      Neither this Stipulation nor the Exhibits hereto shall be offered or received into evidence, nor used in any way, in any action or proceeding in any court or other tribunal for any purpose whatsoever other than to enforce the provisions of this Stipulation, except that this Stipulation and the Exhibits hereto may be filed as evidence of the Settlement or in any action against the Released Parties to support a defense of res judicata, collateral estoppel, release, or other theory of claim or issue preclusion or similar defense.

THE DERIVATIVE CLAIMS AND THE BENEFITS OF SETTLEMENT

N.      Based on their review and analysis of the relevant facts and controlling legal principles, Plaintiffs' Counsel and the Settling Defendants believe that the Settlement set forth in this Stipulation confers substantial benefits upon, and is in the best interests of, Sears. The Individual Defendants acknowledge Plaintiffs' efforts that resulted in the Settlement.  The Settling Parties have agreed to settle pursuant to the terms and provisions of this Stipulation after considering, inter alia, the substantial benefits that Sears will receive.

O.      Although the Plaintiffs believe that the Derivative Claims have substantial merit, Plaintiffs and their Counsel recognize and acknowledge the expense and length of time that would be required to prosecute the Derivative Claims through a preliminary injunction hearing, trial, and appeal.  Plaintiffs and their Counsel have also taken into account the uncertain outcome and the risks of litigating the Derivative Claims, as well as the difficulties and delays inherent in such litigation.

P.      The Settling Parties acknowledge that the Derivative Claims have been filed, commenced and prosecuted by the Plaintiffs and defended by the Settling Defendants in good faith and with adequate basis in fact and law under Federal Rule of Civil Procedure 11, and that the Derivative Claims are being voluntarily settled based on the advice of counsel.

Q.      The Settling Parties, through their counsel, have conducted extensive, arm's length negotiations with respect to the compromise and settlement of the Derivative Claims.  Plaintiffs, through their counsel, have conducted a thorough investigation into the underlying facts and strength of the Derivative Claims.  Plaintiffs' Counsel have concluded that the terms and conditions of the Stipulation confer substantial benefits upon, and are in the best

interest of, Sears, and have agreed to settle the claims raised in the Amended Complaint, pursuant to the terms and provisions of this Stipulation.

NOW, THEREFORE, without any admission or concession on the part of Plaintiffs of any lack of merit of the Derivative Claims whatsoever, and without any admission or concession on the part of the Settling Defendants as to the merits of the Derivative Claims or as to any liability or wrongdoing whatsoever, IT IS HEREBY STIPULATED AND AGREED, by and among the Settling Parties, through their respective counsel, that, subject to the approval of the Court, in consideration of the substantial benefits flowing to the Settling Parties hereto from the Settlement, the Released Claims shall be finally and fully compromised, settled, and released and the Derivative Claims shall be dismissed with prejudice:

1.      **DEFINITIONS**

As used in this Stipulation, the following terms have the meanings specified below:

1.1      "Derivative Claims" means the claims asserted or encompassed in the Amended Complaint or any predecessor action.

1.2      "Effective Date" means the date upon which the Judgment approving the Settlement in accordance with this Stipulation becomes Final as a matter of law and is no longer subject to appellate review.

1.3      "Final" means the latest of:  (a) the expiration of the time for the filing or noticing of any motion for reconsideration of or appeal from of the Judgment; (b) the final affirmance of the Judgment on an appeal or after reconsideration, the expiration of the time for a petition, or a denial of any petition, to review the affirmance of the Judgment on appeal, or, if such petition is granted, the final affirmance of the Judgment following review

pursuant to that grant; or (c) the final dismissal of any appeal from the Judgment or the final resolution of any proceeding to review any appeal from the Judgment without any material change to the Judgment. Any proceeding or order, or any appeal or petition for a review of a proceeding or order, pertaining solely to any application for or award of attorneys' fees or expenses shall not in any way delay or preclude the Judgment from becoming Final.

1.4      "Judgment" means the Final Order and Judgment entered by the Court in a form substantially similar to the Proposed Final Order and Judgment attached hereto as Exhibit A.

1.5      "Notice of Settlement" means the long-form notice of settlement to be mailed to shareholders of Sears pursuant to the terms of the Preliminary Approval Order, substantially in the form of Exhibit D.

1.6      "Person" means an individual, business or legal entity, including any corporation, limited liability corporation, professional corporation, limited liability partnership, partnership, limited partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and their spouses, heirs, predecessors, successors, representatives, or assignees.

1.7      "Plaintiffs" means Robert F. Booth Trust and Ronald Gross.

1.8      "Plaintiffs' Counsel" means Vianale & Vianale LLP, Sarraf Gentile LLP, and Susman Heffner & Hurst LLP.

1.9      "Preliminary Approval Order" means an order entered by the Court substantially in the form attached hereto as Exhibit B.

1.10 "Released Claims" means any and all claims, demands, rights, remedies, or causes of action, whether based on federal, state, local, statutory, common or foreign law or any other law, rule, regulation, or principle of equity, whether known or unknown, including without limitation Unknown Claims, whether suspected or unsuspected, whether contingent or non-contingent, whether accrued or unaccrued, whether or not concealed or hidden, whether factual or legal, and for any remedy whether at equity or law, that were or that could have been asserted from the beginning of time through the Effective Date against the Released Parties in the Amended Complaint, or by any Sears shareholder claiming in the right of, or on behalf of, Sears arising out of or related, directly or indirectly, in any way to any of the facts, allegations, transactions, events, occurrences, acts, disclosures, statements, omissions, failures to act, or matters set forth, referred to, or that could have been alleged in the Amended Complaint.  By operation of the Judgment, the Releasing Parties shall have waived any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to California Civil Code § 1542 (see ¶ 1.17, below).

1.11 "Released Parties" means all Settling Defendants, including Sears, to the extent that it may be subject to a direct claim, and each and all members of their families, parent entities, affiliates, or subsidiaries, and each and all of their respective past, present, or future officers, directors, employees, attorneys, accountants, auditors, heirs, executors, personal representatives, estates, administrators, predecessors, successors, and assigns.

1.12 "Releasing Parties" means the Plaintiffs (individually, and derivatively on behalf of Sears), Sears, to the extent a derivative claim was properly brought, and the Sears shareholders and any of their heirs, executors, administrators, predecessors, successors, and

assigns, and all Persons acting in concert with any of the aforementioned persons and entities.

1.13 "Settlement" means the agreement made and entered into by and among the Settling Parties and set forth in this Stipulation.

1.14 "Settlement Hearing" means the hearing the Settling Parties will request that the Court hold after publication of the Settlement Notice in order to consider and determine, among other things, whether the Settlement should be approved, whether Judgment should be entered dismissing the Derivative Claims with prejudice, and whether and in what amount attorneys' fees and expenses should be awarded.

1.15 "Summary Notice" means the short-form notice of the Settlement that will be published pursuant to the Preliminary Approval Order, substantially in the form attached hereto as Exhibit C.

1.16 "Settling Defendants" means, collectively, nominal defendant Sears and the Individual Defendants.

1.17 "Unknown Claims" means any Released Claims that the Plaintiffs (individually, and derivatively on behalf of Sears), Sears, or any past or present Sears shareholder does not know or suspect to exist in his, her, or its favor at the time of the release of the Released Parties that, if known by him, her, or it might have affected his, her, or its settlement with, and release of, the Released Parties, or might have affected his, her, or its decision not to object to this Settlement, including claims based on the discovery of facts in addition to or different from those which he, she, or it now knows or believes to be true with respect to the Released Claims. The Settling Parties further agree that the

Released Claims constitute an express waiver of all rights and protections to the fullest

extent permitted by California Civil Code § 1542 and all similar federal, state, or foreign

laws, rights, rules, or legal principles.  Section 1542 states:

> **A general release does not extend to claims which the creditor does not
> know or suspect to exist in his or her favor at the time of executing the
> release, which if known by him or her must have materially affected his or
> her settlement with the debtor.**

The Plaintiffs, Sears, and past and present Sears shareholders shall be deemed by operation of

the Judgment to have acknowledged that the release of Unknown Claims was separately

bargained for and is a key element of the Settlement.

### 2.      <u>SETTLEMENT OF THE DERIVATIVE CLAIMS</u>

In settlement of and as a result of the Derivative Claims, and effective as of the date of

this Stipulation, the Settling Defendants have agreed to each of the following:

2.1      Defendant Crowley will not stand for reelection in 2010 to the Sears board

of directors.  Crowley will also cease serving as an executive officer of Sears, though he

may act as a consultant or advisor to Sears.

2.2      Any person not currently on the Sears board of directors or an officer of

Sears who is nominated in 2010 to serve as a director shall be an independent director who

is not employed by ESL Investments Inc. ("ESL") and who is not an officer or director of

any Sears competitor in the apparel, footwear, automotive parts, or automobile repair

services businesses.  Sears will add at least one such independent director to its board at or

before its 2011 annual meeting of shareholders.  Plaintiffs shall have the right to withdraw

from the settlement if any such nominee does not meet these criteria.  If plaintiffs withdraw,

the settlement will become void, and all attorneys' fees or expenses that have been awarded must be repaid.

2.3     In settlement of and as a result of the Derivative Claims, Sears further agrees to the following:

Guidelines Regarding Protection of Sears Holdings Corporation Information.  Sears has adopted and taken, or agrees to adopt and to take, such actions as are necessary to implement the measures set forth in the Guidelines Regarding Protection of Sears Holdings Corporation Information attached hereto as Exhibit E.  Provided, however, that none of the terms, agreements or modifications set forth in Exhibit E shall be deemed to be an admission that Sears's prior corporate procedures were deficient.

Review of Corporate Governance Procedures.  Sears will review and, if necessary, enhance corporate governance procedures to ensure compliance with Section 8 of the Clayton Antitrust Act by the Sears board of directors and its committees.

Sears or its counsel will report to Plaintiffs' Counsel on the implementation of the procedures described in this Paragraph 2.3 thirty (30) days and one hundred and eighty (180) days following the election of directors this year and in 2011.

2.4     Nothing in this Stipulation or Settlement shall be construed to restrict the ability of the Sears board of directors to nominate additional employees of ESL to the Sears board of directors if there is no person employed by ESL on the boards of directors of AutoZone, Inc. or AutoNation, Inc.  In the event that the *Copperweld* or similar standard applies, ESL shall be entitled to nominate additional persons employed by ESL to such boards.

2.5     Term of Agreement.  Any and all forward-looking provisions of this Settlement shall terminate two (2) years from the Effective Date.  Sears shall have no obligations pursuant to this Settlement once the two-year period has passed.

2.6     Attorneys' Fees and Expenses.  Subject to approval by the Court, the Settling Defendants agree that they will not contest an application by Plaintiffs' Counsel for an award of attorneys' fees and expenses not to exceed a total within the range of $200,000 to $925,000, to be paid within fourteen (14) days after the Effective Date.  Provided, however, that the Defendants reserve the right to contest any claim by Plaintiffs' Counsel that the Clayton Antitrust Act or any other antitrust law mandates a particular award of attorneys' fees or expenses, or to contest any award by the Court of more than $925,000.

3.     **PRELIMINARY APPROVAL, NOTICE ORDERS, AND SETTLEMENT HEARING**

3.1     Upon execution of this Stipulation by all Settling Parties, the Settling Parties shall submit this Stipulation, together with its Exhibits, to the Court, and shall apply for entry of a Preliminary Approval Order, substantially in the form of Exhibit B attached hereto, that          (a) preliminarily approves the Settlement set forth in this Stipulation; (b) sets a date for the Settlement Hearing; (c) approves the Notice of Settlement and Summary Notice; and (d) preliminarily enjoins the Releasing Parties from commencing, instituting, or prosecuting any of the Released Claims.  Sears shall be responsible for paying all costs incurred in connection with distribution of the Notice of Settlement to Sears shareholders and publication of the Summary Notice.

3.2     The Settling Parties shall request that, after notice of the Settlement is made, the Court hold a Settlement Hearing to consider and determine:  (a) whether to

Case: 10-3285     Document: 38     Filed: 03/12/2012     Pages: 243

approve the Settlement; (b) whether Judgment should be entered dismissing the Amended

Complaint with prejudice; (c) whether permanently to bar and enjoin the Releasing Parties

from litigating any of the Released Claims against any of the Released Parties; and (d)

whether to approve the application of Plaintiffs' Counsel for an award of fees and

reimbursement of expenses.

### 4.    RELEASES AND BAR

4.1      Upon the Effective Date, each of the Releasing Parties, on behalf of

himself/herself and/or itself and each of his/her/its predecessors, successors, parents,

subsidiaries, affiliates, custodians, agents, attorneys, assigns, representatives, heirs, estates,

executors, trusts, trustees, trust beneficiaries, administrators, spouses, marital communities,

and immediate family members, shall be deemed to have, and by operation of the Judgment

shall have, fully, finally, and forever released, relinquished, and discharged all Released

Claims as against the Released Parties, will be forever barred and enjoined from

commencing, instituting, or prosecuting any of the Released Claims and covenants not to

bring any Released Claims.

4.2      Upon the Effective Date, each of the Settling Defendants, on behalf of

him/herself and/or itself and each of his/her/its predecessors, successors, parents,

subsidiaries, affiliates, custodians, agents, assigns, representatives, heirs, estates, executors,

trusts, trustees, trust beneficiaries, administrators, spouses, marital communities, and

immediate family members,   shall be deemed to have, and by operation of the Judgment

shall have, fully, finally, and forever released, relinquished, and discharged the Plaintiffs

and Plaintiffs' Counsel from all claims or demands relating to or arising out of, or

connected with, the institution, prosecution, assertion, settlement, or resolution of the Derivative Claims and/or the Released Claims.

4.3     Pending final approval of the Settlement by the Court, neither the Plaintiffs, Sears, nor any past or present Sears shareholder shall commence, maintain, or prosecute any action or proceeding against the Released Parties in any court or tribunal asserting any of the Released Claims.

4.4     If any Settling Defendant files, commences, prosecutes, intervenes in, or otherwise participates in, any subsequent action or proceeding against the Released Parties, or asserts any claims (including claims for contribution or indemnity) against the Released Parties in any subsequent action or proceeding, nothing in paragraph 4.1 shall be deemed to have released claims, if any, that the Released Parties may have against any Settling Defendant relating in any way to the subject matter of that subsequent action or proceeding.

## 5.     PLAINTIFFS' COUNSEL'S ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

5.1     Plaintiffs' Counsel will together apply to the Court for an award of attorneys' fees and expenses not to exceed $925,000.  Plaintiffs' Counsel may seek a case contribution award of up to $750 for each of the Plaintiffs, to be taken out of any expenses awarded by the Court.  Sears or its directors' and officers' insurers will pay such award, as is approved by the Court, to Plaintiffs' Counsel, in accordance with instructions from Plaintiffs' Counsel, within fourteen (14) days of the Effective Date.  Neither Sears nor its directors' and officers' insurance carriers shall have any obligation with respect to Plaintiffs' Counsel's fees and/or expenses beyond the amounts awarded by the Court in

response to the application for fees and expenses agreed to in this paragraph 5.1, subject to the provisions of paragraph 2.6.

5.2 The Settling Defendants, Sears, and their directors' and officers' insurers shall have no obligations or liability with respect to the apportionment or distribution of any attorneys' fees or expenses awarded by the Court.

5.3 No order of the Court, or modification or reversal on appeal of any order of the Court, concerning the amount or allocation of attorneys' fees or expenses referenced in paragraph 5.1 shall constitute grounds for cancellation or termination of this Stipulation or prevent the Judgment from becoming Final.

5.4 Except as otherwise expressly provided in paragraphs 3.1 and 5.1, the Settling Parties shall bear their own attorneys' fees and costs incurred in connection with the Derivative Claims and Settlement.

6. **CONDITIONS OF SETTLEMENT; EFFECT OF DISAPPROVAL, CANCELLATION OR TERMINATION**

6.1 The Settling Defendants and the Plaintiffs, each in his, her or its sole discretion, shall have the right to terminate the Settlement and this Stipulation by providing written notice of his or her election to do so within thirty (30) days of: (a) the Court declining to enter in any material respect the proposed Preliminary Approval Order attached hereto as Exhibit B; (b) the Court refusing to approve the Stipulation or any material part of it; (c) the Court declining to enter in any material respect the Proposed Final Order and Judgment attached hereto as Exhibit A; or (d) the date upon which the Final Order and Judgment is modified or reversed in any material respect on appeal or by writ, except that, with respect to subparagraphs (b), (c) and (d) of this paragraph 6.1, an award of attorneys'

fees and expenses that is less than the amount requested by Plaintiffs shall not be grounds for termination or cancellation of the Settlement.

6.2 In the event that the Settlement is not approved by the Court, or is terminated for any reason, the parties thereto shall be restored to their respective positions in the Derivative Actions as of the date of the non-approval or termination of the Settlement, and all negotiations, proceedings, documents prepared, and statements made in connection with the Settlement shall be without prejudice to the Settling Parties, shall not be deemed or construed to be an admission by any Settling Party of any act, matter or proposition, and shall not be used in any manner or be admissible for any purpose in any of the Derivative Claims or in any other action or proceeding.

6.3 In the event that the Settlement is not approved by the Court, or is terminated for any reason, the terms and provisions of this Stipulation shall have no further force and effect with respect to the Settling Parties, and shall not be used or admitted in any of the Derivative Claims or in any other action or proceeding for any purpose.

7. **MISCELLANEOUS PROVISIONS**

7.1 The Settling Parties: (a) acknowledge that it is their intent to consummate the terms and conditions of this Stipulation; (b) acknowledge that this Stipulation, including the agreement to pay attorneys' fees and expenses not to exceed $925,000, subject to Court approval, has been authorized by the Board; and (c) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Stipulation and to exercise their best efforts to accomplish the foregoing terms and conditions of this Stipulation.

7.2     The Settling Parties intend this Settlement to be a final and complete resolution of all disputes among themselves with respect to the Derivative Claims.  The Settlement compromises claims that are contested and shall not be deemed an admission by any Settling Party as to the merits of any claim, demand, or defense.  While the Settling Defendants deny that the claims and contentions advanced in the Amended Complaint are meritorious, the Settling Defendants agree that the Derivative Claims were filed or raised in good faith and are being settled voluntarily after negotiating at arm's length and in good faith after consultation with competent legal counsel.  The Settling Parties agree not to assert in any forum that the Derivative Claims were brought, commenced or prosecuted by Plaintiffs or defended by the Settling Defendants in bad faith.  The Settling Parties hereto shall assert no claims of any violation of Rule 11 of the Federal Rules of Civil Procedure relating to the prosecution, defense, or settlement of the Derivative Claims.  The Settling Parties agree that the terms of this Settlement, including the amount of attorneys' fees and expenses, were negotiated at arm's length and in good faith by the Settling Parties and reflect a settlement that was reached voluntarily after consultation with experienced legal counsel.

7.3     This Stipulation and its exhibits constitute the entire agreement among the Settling Parties concerning the Settlement of the Derivative Claims, and no representations, warranties, or inducements have been made by any party hereto concerning this Stipulation and its exhibits other than those contained and memorialized in such documents.

7.4     All of the Exhibits to this Stipulation are material and integral parts hereof and are fully incorporated herein by this reference.

7.5     All the agreements made and orders entered in the Action concerning the confidentiality of documents and information shall survive this Stipulation and Settlement. Within ten (10) business days after payment of any attorneys' fees and expenses awarded by the Court pursuant to this Stipulation, Plaintiffs' Counsel shall return to Counsel for the Settling Defendants all confidential material produced or otherwise transmitted to them.

7.6     Any written or oral public statement regarding the Settlement contained herein shall be limited to the terms set forth in this Stipulation and to statements that the Derivative Claims were resolved to the mutual satisfaction of the Settling Parties. None of the Settling Parties shall make any public statement regarding the terms of this Stipulation or the Settlement contained herein that is critical of or disparages the Settlement or the conduct of the Settling Parties.

7.7     This Stipulation may be amended or modified only by a written instrument signed by or on behalf of all Settling Parties or their respective successors-in-interest.

7.8     This Stipulation may be executed in one or more counterparts, including by facsimile and/or electronically scanned counterparts. All executed counterparts, including facsimile and/or electronically scanned counterparts, shall be deemed to be one and the same instrument.

7.9     This Stipulation shall be binding upon, and inure to the benefit of, the Settling Parties and their respective successors, assigns, beneficiaries, heirs, spouses, marital communities, executors, administrators, and legal representatives.

7.10     This Stipulation shall not be construed more strictly against one Settling Party over another merely by virtue of the fact that it, or any part of it, may have been

Case: 10-3285   Document: 38   Filed: 03/12/2012   Pages: 243

prepared by counsel for one of the Settling Parties, it being recognized that this Stipulation is the result of arm's length negotiations between the Settling Parties and all Settling Parties have contributed substantially and materially to the preparation of this Stipulation.

7.11    The Settling Parties and their counsel agree to cooperate fully with one another in seeking approval by the Court of the Preliminary Approval Order, the Stipulation and the Settlement, and to promptly agree upon and execute all such other documentation as may be reasonably required to obtain final approval of the Settlement by the Court.

7.12    All Persons executing this Stipulation and any of the Exhibits hereto, or any related settlement documents, warrant and represent that they have the full authority to do so and that they have the authority to take appropriate action required or permitted to be taken pursuant to the Stipulation to effectuate its terms.  The Trustees of plaintiff Robert H. Booth Trust further represent and warrant that they have the authority to enter into this stipulation on behalf of the Trust.

7.13    The waiver by any party of any breach of this Stipulation shall not be deemed or construed as a waiver of any other breach, whether prior or subsequent to, or contemporaneous with, the execution of this Stipulation.

7.14    Without affecting the finality of the Judgment entered in accordance with this Stipulation, the Court shall retain jurisdiction with respect to the implementation and enforcement of the terms of this Stipulation, and the Settling Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in this Stipulation.

7.15    The rights and obligations of the Settling Parties to this Stipulation shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of Illinois without giving effect to any state's choice-of-law principles.

7.16    Any notice required by this Stipulation shall be submitted in writing and delivered either by overnight mail, electronic mail, facsimile or in person as follows:

If to counsel for the Settling Plaintiffs:

> Kenneth J. Vianale, Esq.
> VIANALE & VIANALE LLP
> 2499 Glades Road, Suite 112
> Boca Raton, FL  33431
> Tel: (561) 392-4750
> Fax: (561) 392-4775

If to counsel for the Settling Defendants:

> Paul Vizcarrondo, Esq.
> WACHTELL, LIPTON, ROSEN & KATZ
> 51 West 52nd Street
> New York, NY  10019-6150
> Tel: (212) 403-1000
> Fax:  (212) 403-2000

> Christopher Q. King, Esq.
> Sonnenschein Nath & Rosenthal LLP
> 233 South Wacker Drive
> Suite 7800
> Chicago, IL  60606-6404
> Tel:  (312) 876-8000
> Fax:  (312) 876-7934

> William R. Harker, Esq.
> Sears Holdings Corp.
> 3333 Beverly Road
> Hoffman Estates, IL  60179
> Tel:  (847) 286-2500
> Fax:  (847) 286-2471

IN WITNESS WHEREOF, the parties hereto have caused this Stipulation to be executed, by their duly authorized attorneys.

Dated:  April 28, 2010

*/s/ Kenneth J. Vianale*
Kenneth J. Vianale
VIANALE & VIANALE LLP
2499 Glades Road, Suite 112
Boca Raton, FL  33431
Tel:  (561) 392-4750
Fax:  (561) 392-4775

*/s/ Ronen Sarraf*
Ronen Sarraf
Joseph Gentile
SARRAF GENTILE LLP
116 John Street, Suite 2310
New York, NY  10038
Tel:  (212) 868-3610
Fax:  (212) 918-7967

*Lead Counsel for Plaintiffs*

*/s/ Matthew T. Hurst*
Matthew T. Hurst
SUSMAN HEFFNER & HURST LLP
20 South Clark Street, Suite 600
Chicago, IL  60603
Tel:  (312) 346-3466
Fax:  (312) 346-2829

*Liaison Counsel for Plaintiffs*

*/s/ Paul Vizcarrondo*
Paul Vizcarrondo
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, NY  10019-6150
Tel:  (212) 403-1000
Fax:  (212) 403-2000

/s/ Christopher Q. King
Christopher Q. King
Ramji Kaul
SONNENSCHEIN, NATH &
ROSENTHAL LLP
233 South Wacker Drive
Suite 7800
Chicago, IL 60606-6404
Tel: (312) 876-8000
Fax: (312) 876-7934

*Attorneys for the Individual Defendants*

/s/Paula E. Litt
Paula E. Litt
Kristen E. Hudson
SCHOPF & WEISS LLP
One South Wacker Drive
28th Floor
Chicago, IL 60606-4617
Tel: (312) 701-9300
Fax: (312) 701-9335

*Attorneys for Sears Holdings Corporation.*

Case: 10-3285 Document: 38 Filed: 03/12/2012 Pages: 243

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ROBERT F. BOOTH TRUST and RONALD GROSS, derivatively on behalf of nominal defendant SEARS HOLDINGS CORPORATION, | ) ) ) ) |
| | No. 1:09-cv-05314 |
| Plaintiff, | Hon. Ronald A. Guzmán |
| v. | |
| WILLIAM C. CROWLEY, EDWARD S. LAMPERT, STEVEN T. MNUCHIN, RICHARD C. PERRY, ANN N. REESE, KEVIN B. ROLLINS, EMILY SCOTT and THOMAS J. TISCH, | |
| Defendants, | |
| and | |
| SEARS HOLDINGS CORPORATION, | |
| Nominal Defendant. | |

**[PROPOSED] ORDER AND FINAL JUDGMENT**

The above-captioned matter, having come before the Court for hearing, as noticed, on

____, 2010, at __.m., pursuant to the Order of this Court, dated _____, 2010 (the

"Preliminary Approval Order"), to consider and determine the matters set forth in the

Preliminary Approval Order; and due and sufficient notice having been given in accordance with

the provisions of the Preliminary Approval Order, and all Persons having any objection to the

proposed settlement of the Derivative Claims (the "Settlement") embodied in the Amended

Stipulation of Settlement, dated April 28, 2010 (the "Stipulation") or the request for attorneys'

fees and reimbursement of expenses in this action having been given an opportunity to present

Case: 10-3285 Document: 38 Filed: 03/12/2012 Pages: 243

such objections to the Court; the Court having heard and considered the matter, including all papers filed in connection therewith, and the oral presentations of counsel and any objections raised at said hearing, and good cause appearing therefore;

THE COURT HEREBY FINDS, DETERMINES AND ORDERS AS FOLLOWS:

1.      Unless otherwise defined below, all terms that are capitalized herein shall have the same definitions as used in the Stipulation.

2.      This Court has jurisdiction over the subject matter of the Derivative Claims and the Settling Parties.

3.      Based upon the evidence submitted by Counsel, this Court finds that the form and the method of dissemination of both the Notice of Settlement and the Summary Notice (collectively, the "Notice"), as previously preliminarily approved by the Court, complied with the requirements of Federal Rule of Civil Procedure 23.1 and satisfied the requirements of due process, and constituted due and sufficient notice of the matters set forth therein. A full opportunity has been offered to Sears Shareholders to object to the proposed Settlement and to participate in the hearing thereon.

4.      The proposed Settlement of the Derivative Claims is found to be fair, reasonable, proper and in the best interests of Sears and Sears shareholders. In making this determination, the Court has considered the substantial benefits the Settlement provides Sears, taking into account among other factors the risks of establishing liability and obtaining relief exceeding that obtained through the Settlement, and the complexity, expense and likely duration of the litigation, and the stage of the proceedings.

5.      The Court finds, for settlement purposes, that (1) the action was properly brought as a shareholder derivative suit pursuant to Federal Rule of Civil Procedure 23.1; and (2) the plaintiffs adequately represent the interests of Sears Shareholders in enforcing the rights of Sears.

6.      The Stipulation and the terms of the proposed Settlement of the Derivative Claims set forth therein are, in all respects, approved. The Settling Parties are directed to consummate the Settlement in accordance with the terms and provisions of the Stipulation.

7.      Subject to the provisions herein, this Court hereby dismisses the Amended Complaint and the Derivative Claims with prejudice and in their entirety, on the merits, as against all Settling Defendants, with each Settling Party to bear its own costs, except as set forth in Paragraph 10 below and in paragraph 3.1 of the Stipulation respecting the costs of Notice.

8.      Upon the Effective Date, each of the Releasing Parties, on behalf of him/her/itself and each of his/her/its predecessors, successors, parents, subsidiaries, affiliates, custodians, agents, attorneys, assigns, representatives, heirs, estates, executors, trusts, trustees, trust beneficiaries, administrators, spouses, marital communities, and immediate family members, shall be deemed to have, and by operation of the Judgment shall: (i) have, fully, finally and forever released, relinquished and discharged all Released Claims as against all the Released Parties; and (ii) be forever barred and enjoined from commencing, instituting, prosecuting, continuing, or in any way participating in the commencement or prosecution of any action asserting any of the Released Claims against any of the Released Parties.

9.      Upon the Effective Date, each of the Settling Defendants, on behalf of him/her/itself and each of his/her/its predecessors, successors, parents, subsidiaries, affiliates, custodians, agents, assigns, representatives, heirs, estates, executors, trusts, trustees, trust beneficiaries, administrators, spouses, marital communities, and immediate family members,

Case: 10-3285    Document: 38    Filed: 03/12/2012    Pages: 243

shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged the Plaintiffs and Plaintiffs' Counsel from all claims or demands relating to or arising out of, or connected with the institution, prosecution, assertion, settlement, or resolution of the Derivative Claims and/or the Released Claims.

10.     Plaintiffs' Counsel in the action are hereby awarded attorneys' fees and expenses of $ _____.  This Court finds that this amount is fair and reasonable under the facts and circumstances of this case. Payment of such award of attorneys' fees and reimbursement of expenses (including case contribution awards of up to $750 for each of the Plaintiffs) shall be made in accordance with the provisions of the Stipulation.

11.     Without in any way affecting the finality of this Order and Final Judgment, this Court shall retain jurisdiction with respect to the implementation and enforcement of the terms of this Stipulation, and the Settling Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement.

12.     Neither the Settlement, nor this Order and Final Judgment, nor the Stipulation, nor its Exhibits, nor any other papers relating to the Settlement, nor any negotiations, discussions or proceedings in connection herewith shall be: (a) offered or received against any of the Settling Defendants as evidence of, or construed as, or deemed to be, evidence of any presumption, concession, or admission by any of the Settling Defendants of the truth of any fact alleged by the Plaintiffs or the validity of any claim that has been or could have been asserted in the Amended Complaint or in any other proceeding, or the deficiency of any defense that could have been asserted in response to the Amended Complaint or in any other proceeding, or of any alleged liability, negligence, fault, or wrongdoing of the Settling Defendants; (b) offered or received against any of the Settling Defendants as evidence of a presumption, concession, or admission of

Case: 10-3285      Document: 38      Filed: 03/12/2012      Pages: 243

any fault, misrepresentation or omission with respect to any statement or written document approved or made by any Settling Defendants, or against the Plaintiffs as evidence of any infirmity in the claims of the Plaintiffs; (c) offered or received against any of the Settling Defendants as evidence of a presumption, concession, or admission of any alleged liability, negligence, fault or wrongdoing, or in any way referred to for any other reason as against any of the Settling Parties, in any other civil, criminal or administrative action, arbitration, or other proceeding, other than such proceedings as may be necessary to effectuate the provisions of the Stipulation; provided, however, that the Settling Defendants may refer to it to effectuate the releases and the liability protection granted them hereunder; (d) construed against any of the Settling Defendants or the Plaintiffs as an admission or concession that the consideration to be given hereunder represents what could be or would have been achieved after trial; and (e) construed as or received in evidence as an admission, concession or presumption against the Plaintiffs or their counselors that any of the claims asserted in the Derivative Claims are without merit.

13.     This Settlement shall be a final and complete resolution of all disputes among the Settling Parties with respect to the Derivative Claims. No Settling Party may assert in any forum that the Derivative Claims were brought, commenced or prosecuted by Plaintiffs or their counsel or defended by the Settling Defendants or their counsel in bad faith or that the Derivative Claims were not filed or raised in good faith or were not settled voluntarily after negotiating at arm's-length and in good faith after consultation with competent legal counsel. No claims of any violation of Rule 11 of the Federal Rules of Civil Procedure relating to the prosecution, defense, or settlement of the Derivative Claims may be brought by any Settling Party.

14.     The provisions of this Order and Final Judgment constitute a full and complete adjudication of the matters considered and adjudged herein and the Derivative Claims shall be dismissed with prejudice.  The Clerk is hereby directed to enter judgment in accordance with this Order and Final Judgment as a final judgment with respect to all matters ordered, judged and decreed. Without further order of the Court, the Settling Parties may agree to reasonable extensions of time to carry out any of the provisions of the Stipulation.

15.     Entry of the Order and Final Judgment settles and disposes of and discharges all of the Released Claims.

Dated this ____ day of _____, 2010

IT IS SO ORDERED.

_____
PRESIDING JUDGE

# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ROBERT F. BOOTH TRUST and RONALD GROSS, derivatively on behalf of nominal defendant SEARS HOLDINGS CORPORATION, | ) ) ) ) | No. 1:09-cv-05314 |
| Plaintiff, | ) ) | Hon. Ronald A. Guzmán |
| v. | ) ) | |
| WILLIAM C. CROWLEY, EDWARD S. LAMPERT, STEVEN T. MNUCHIN, RICHARD C. PERRY, ANN N. REESE, KEVIN B. ROLLINS, EMILY SCOTT and THOMAS J. TISCH, | ) ) ) ) ) ) ) | |
| Defendants, | ) ) | |
| and | ) ) | |
| SEARS HOLDINGS CORPORATION, | ) ) | |
| Nominal Defendant. | ) ) | |

**PRELIMINARY APPROVAL ORDER**

This matter came before the Court on the application of the Settling Parties for

preliminary approval of the proposed settlement (the "Settlement") set forth in the Amended

Stipulation of Settlement, dated as of April 28, 2010 (the "Stipulation"). Due and adequate

notice having been given to the Settling Parties, and the Court having considered the Stipulation

and all other papers filed and proceedings had herein and otherwise being fully advised in the

premises and good cause appearing therefore, IT IS HEREBY ORDERED:

1.     This Order incorporates by reference the definitions in the Stipulation, and all

terms used herein shall have the same meanings as set forth in the Stipulation, unless otherwise

Case: 10-3285      Document: 38      Filed: 03/12/2012      Pages: 243

set forth herein.

2.      This Court preliminarily approves the proposed Settlement, as set forth in the Stipulation.

3.      In connection with preliminary approval of the proposed Settlement, the Court preliminarily finds, for the purposes of the Settlement, that the Action was properly brought pursuant to Federal Rule of Civil Procedure 23.1 as a shareholder derivative action on behalf of Sears, and that plaintiffs fairly and adequately represent the interests of Sears Shareholders in enforcing the rights of Sears.

4.      The Court will hold a settlement hearing on July 9, 2010 at _____ in Courtroom 1219, United States District Court, Northern District of Illinois, Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Chicago, Illinois  60604 (the "Settlement Hearing"):  (i) to determine pursuant to Federal Rule of Civil Procedure 23.1 whether to grant final approval of the proposed Settlement as fair, reasonable and adequate and in the best interests of Sears and Sears Shareholders; (ii) to hear and determine any objections to the Settlement; (iii) to determine whether a Judgment substantially in the form attached as Exhibit A to the Stipulation should be entered dismissing all claims in the Amended Consolidated Derivative Complaint against the Released Persons with prejudice and releasing the claims released in the Stipulation; (iv) in the event the Court approves the Settlement, to rule upon an application by Plaintiffs' Counsel for an award of attorneys' fees and reimbursement of expenses; and (v) to consider any other matters that may properly be brought before the Court in connection with the Settlement.

5.      Notice of Sears' Settlement of Derivative Claims, including the date and time of the Settlement Hearing and the application of Plaintiffs' Counsel for fees and expenses, shall be

carried out as follows:

      a.     Within 21 days of the date of this Order, the Notice of Settlement, substantially in the form of Exhibit D to the Stipulation, shall be sent by U.S. First Class mail to all owners of Sears shares as of the date of this Order who can be identified using reasonable efforts.  Pursuant to the Stipulation, Sears will bear the cost of complying with this requirement.

      b.     Within 28 days of the date of this Order, the Summary Notice, substantially in the form of Exhibit C to the Stipulation, shall be published once via the internet over PR Newswire, or an alternative national news service.  The news service that issues the Summary Notice shall be informed that the Summary Notice should be tickered to Sears' stock symbol.  Pursuant to the Stipulation, Sears will bear the cost of complying with this requirement.

      6.     Nominees who hold Sears stock shall send the Notice of Settlement to the beneficial owners of such Sears stock within ten days after receipt thereof, or send a list of the names and addresses of such beneficial owners to the Notice Administrator within ten days of receipt thereof in which event the Notice Administrator shall promptly mail the Notice to such beneficial owners.

      7.     At or prior to the Settlement Hearing, counsel for the Settling Parties shall file proof by affidavit that the Notice of Settlement and Summary Notice were disseminated as required in this Order.  All papers in support of the Settlement shall be filed seven (7) days before the Settlement Hearing.

      8.     The mechanism for providing notice to Sears shareholders described in paragraph 5 is hereby preliminarily found to be reasonable and sufficient under the circumstances, and to comply with the provisions of Federal Rule of Civil Procedure 23.1 and the requirements of due process of the United States Constitution, and to constitute due and sufficient notice to all

Persons affected by the proposed Settlement or entitled to participate in the Settlement Hearing regarding the Derivative Claims.

9. The Court will consider at the Settlement Hearing objections to the proposed Settlement or the award of attorneys' fees and reimbursement of expenses, and requests to be heard or to present evidence or testimony in opposition to the proposed Settlement, but only if such objections, requests and any supporting papers, are filed with the Clerk of the Court, United States District Court, Northern District of Illinois, Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Chicago, Illinois 60604, not later than fourteen (14) days before the settlement hearing, and, by the same date, copies of all such papers are also served upon:

> **Plaintiffs' Counsel:**
>
> Kenneth J. Vianale
> VIANALE & VIANALE LLP
> 2499 Glades Road, Suite 112
> Boca Raton, Florida 33431

Plaintiff's Counsel shall e-mail a complete copy of any objections he receives to all other counsel of record no later than one business day after his receipt of an objection. Written objections must comply in form and content with all of the requirements described in the Notice of Settlement. Any Person who fails to object in the manner described in the Notice of Settlement shall be deemed to have waived such objections and shall be forever barred from raising such objections or otherwise contesting the Settlement in this or any other action or proceeding.

10. The Court reserves the right to approve the Stipulation with modifications agreed to by the Settling Parties and without further notice to any Sears Shareholders, and retains

jurisdiction over the Derivative Claims to consider all further applications arising out of or connected with the proposed Settlement.

11.     Pending final determination whether the Settlement and Stipulation should be approved, all proceedings in this action, other than proceedings necessary to carry out the terms and conditions of the Settlement, are stayed, and the Plaintiffs and/or every Sears Shareholder, or any of them, are preliminarily barred and enjoined from (a) commencing, prosecuting, instigating, continuing, or in any way participating in the commencement or prosecution of any action asserting any Released Claims against any of the Released Parties, or (b) challenging the Settlement other than in this Action in accordance with the procedures established by the Court.

12.     Neither the Stipulation, nor the Exhibits thereto, nor any document referred to therein, nor any action taken to carry out the Stipulation is, may be construed as, or may be used as an admission by or against Released Parties, or any of them, of any fault, wrongdoing or liability whatsoever.

13.     In the event the Settlement is not approved by the Court, or is terminated for any reason, the Settlement and all of its terms shall be null and void, of no further force or effect, without prejudice to any Settling Party, and may not be introduced as evidence or referred to in any actions or proceedings by any Person.

Date:  _____, 2010
Chicago, Illinois

SO ORDERED

_____
Ronald A. Guzmán, U.S.D.J.

Case: 10-3285 Document: 38 Filed: 03/12/2012 Pages: 243

# EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ROBERT F. BOOTH TRUST and RONALD GROSS, derivatively on behalf of nominal defendant SEARS HOLDINGS CORPORATION, | ) ) ) ) | |
| | ) | No. 1:09-cv-05314 |
| Plaintiff, | ) ) | Hon. Ronald A. Guzmán |
| v. | ) ) | |
| WILLIAM C. CROWLEY, EDWARD S. LAMPERT, STEVEN T. MNUCHIN, RICHARD C. PERRY, ANN N. REESE, KEVIN B. ROLLINS, EMILY SCOTT and THOMAS J. TISCH, | ) ) ) ) ) ) | |
| Defendants, | ) ) | |
| and | ) ) | |
| SEARS HOLDINGS CORPORATION, | ) ) | |
| Nominal Defendant. | ) ) | |

**SUMMARY NOTICE OF PENDENCY OF SHAREHOLDER
DERIVATIVE ACTION, PROPOSED SETTLEMENT AND SETTLEMENT HEARING**

TO:     ALL OWNERS OF SEARS HOLDINGS CORPORATION COMMON STOCK

YOU ARE HEREBY NOTIFIED that the parties to the above-captioned derivative

action brought against certain current and former directors of Sears Holdings Corporation

("Sears") have reached a proposed settlement of the claims. A settlement hearing will be

held before the Honorable Ronald A. Guzmán in the United States District Court for the

Northern District of Illinois, Everett McKinley Dirksen United States Courthouse, 219

South Dearborn Street, Chicago, Illinois 60604, at ___ on July 9, 2010 to determine

Case: 10-3285 Document: 38 Filed: 03/12/2012 Pages: 243

whether the proposed settlement should be approved by the Court as fair, reasonable, and adequate, and to consider the application of plaintiffs' counsel for attorneys' fees and reimbursement of expenses.

Plaintiffs, shareholders of Sears, brought claims under Section 8 of the Clayton Act, which prohibits directors from sitting on the boards of competing companies. Plaintiffs claimed that Mr. Crowley and Ms. Reese, directors of Sears, were interlocking directors in violation of the statute. Defendants denied all of plaintiffs' claims, including that there was any violation under Section 8 of the Clayton Act. Plaintiffs did not seek damages but rather injunctive relief directing the Board to eliminate the purported interlocks. Under the settlement, Mr. Crowley agreed not to stand for reelection as a director at the Annual Meeting on May 4, 2010, and will resign as an executive officer. In addition, Sears has agreed to enhance and maintain procedures that will prevent Ms. Reese from participating in any Board discussions regarding the operation of Sears women's apparel or footwear business except to the extent necessary to carry out her fiduciary duties as a board member, and other corporate governance relief.

If you are a holder of Sears common stock, and you approve of the proposed settlement, you do not need to do anything. If you object to the proposed Settlement, you are entitled to share those objections with the Court. The method for objecting and the deadline to do so are explained in the "Notice of Proposed Settlement of Shareholder Derivative Lawsuit Brought on Behalf of Sears Holdings Corporation" ("Notice"). If you have not received a copy of the Notice in the mail you may view, download and print a copy by going to this link [insert link], or by visiting the following website: [to be provided by Notice Administrator]. If you are unable to view, download or print the

Case: 10-3285 Document: 38 Filed: 03/12/2012 Pages: 243

Notice on the internet, you may obtain a copy by mail by contacting the Notice Administrator at [phone number to be provided by Notice Administrator].

If you are a holder of Sears common stock and do not take steps to appear in this action or to object to the proposed settlement, you will be bound by the Order and Final Judgment of the Court, you will forever be barred from raising an objection to such settlement in this or any other action or proceeding, and certain claims that you might have may be released.

You may obtain further information by contacting plaintiffs' counsel at the telephone number and address listed in the Notice.

**BY ORDER OF THE COURT**

_____

Ronald A. Guzmán
United States District Judge

# EXHIBIT D

**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ROBERT F. BOOTH TRUST and RONALD GROSS, derivatively on behalf of nominal defendant SEARS HOLDINGS CORPORATION, | ) ) ) ) |
| | )    No. 1:09-cv-05314 |
| Plaintiff, | ) )    Hon. Ronald A. Guzmán |
| | ) |
| v. | ) |
| | ) |
| WILLIAM C. CROWLEY, EDWARD S. LAMPERT, STEVEN T. MNUCHIN, RICHARD C. PERRY, ANN N. REESE, KEVIN B. ROLLINS, EMILY SCOTT and THOMAS J. TISCH, | ) ) ) ) ) ) |
| | ) |
| Defendants, | ) ) |
| and | ) ) |
| SEARS HOLDINGS CORPORATION, | ) ) |
| Nominal Defendant. | ) ) |

**NOTICE OF PROPOSED SETTLEMENT OF SHAREHOLDER DERIVATIVE
LAWSUIT BROUGHT ON BEHALF OF SEARS HOLDINGS CORPORATION**

**TO:  ALL SHAREHOLDERS OF SEARS HOLDINGS CORPORATION
("SEARS SHAREHOLDERS").**

**PLEASE READ THIS NOTICE CAREFULLY.**

**THE DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS
(THE "COURT") HAS AUTHORIZED THIS NOTICE.  THIS IS NOT A
SOLICITATION.**

**SECURITIES BROKERS AND OTHER NOMINEES:  PLEASE SEE INSTRUCTIONS
ON PAGE ___ HEREIN.**

     You have been sent this notice (the "Notice") to advise you of the proposed settlement (the "Settlement") of a shareholder derivative lawsuit (the "Lawsuit") brought against certain

current and former directors of Sears Holdings Corporation ("Sears" or the "Company"). This Notice explains the claims made in the Lawsuit, the relief achieved in the Settlement, and your rights as a Sears shareholder.

The Lawsuit was not brought to recover money for Sears shareholders. Rather, it sought injunctive relief, that is, an order requiring the defendants to take certain action. The Lawsuit was brought under the federal antitrust laws by two shareholders of Sears. The Lawsuit asked the Court to issue an order requiring Sears to remove two directors from the Sears Board of Directors (the "Sears Board"). The parties to the Lawsuit have entered into a settlement agreement called a Stipulation of Settlement (the "Stipulation"), which the Court must approve before it can become final. As a result of the Settlement, Sears agreed that one of the challenged board members would not stand for re-election to the Sears Board at the annual meeting of shareholders. The other challenged board member will continue to serve, but with certain restrictions on her board involvement. Plaintiffs and their attorneys believe that the proposed Settlement achieves the objectives of the Lawsuit, provides substantial benefits to the Company, and is in the best interests of the Company and its shareholders.

No money was sought or recovered in this Lawsuit. There is no process for shareholders to file claims or receive any money from the Settlement.

A hearing (the "Settlement Hearing") is scheduled to be held on July 9, 2010 at ____ _ m. before the Honorable Ronald A. Guzmán in Courtroom 1219, United States District Court for the Northern District of Illinois, Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Chicago, Illinois 60604, for the Court to determine whether to approve the Settlement and whether to approve the payment of attorneys' fees and expenses to Plaintiffs' attorneys. **If you are satisfied with the outcome of the Lawsuit as described in this Notice, you do not need to do anything. You may attend the hearing, but you are not required to do so.**

The Lawsuit was settled before trial. At the time the Settlement was reached, the Judge had not determined whether Defendants committed any of the violations of law alleged in the Lawsuit. Neither this Notice nor the Settlement amounts to a finding by the Court about the merits of the claims or defenses asserted by any party, the merits of the Settlement, or any other matter. The Defendants have denied and continue to deny each and every allegation of liability and wrongdoing on their part and contend that the claims asserted against them in the Lawsuit are without merit. The Defendants deny that they have breached any duty, violated any law, or engaged in wrongdoing of any form.

This Notice reflects only the statements and opinions of the parties to the proposed Settlement, and not the views of the Court.

You should read the Notice carefully because your legal rights may be affected.

**What Is The Lawsuit About?**

In August 2009, the first derivative complaint was filed in the Northern District of Illinois. In September 2009, another, similar shareholder action was filed in the same court. The two cases were later consolidated into the single action entitled *Robert Booth Trust v. William*

*Crowley*, No. 1:09-cv-05314 (the "Lawsuit"). On October 13, 2009, Plaintiffs filed an Amended Consolidated Verified Derivative Complaint (the "Complaint") against the Individual Defendants and nominally against Sears.

The Lawsuit makes claims on behalf of Sears against the following present and former directors of Sears: William C. Crowley ("Mr. Crowley"), Edward S. Lampert ("Mr. Lampert"), Steven T. Mnuchin, Richard C. Perry, Ann N. Reese ("Ms. Reese"), Kevin B. Rollins, Emily Scott, and Thomas J. Tisch (collectively referred to as the "Individual Defendants").

The Complaint alleged that two directors of Sears, Mr. Crowley and Ms. Reese, committed violations of Section 8 of the Clayton Antitrust Act ("Section 8"). Section 8 prohibits individuals from serving at the same time as directors of corporations which compete with each other. This situation is sometimes referred to as having "interlocking directors." The antitrust laws prohibit the boards of competing companies from sharing directors because such interlocks can potentially lead to conduct that results in the stifling of competition between the companies. Director interlocks are only unlawful, however, if the competing companies sharing a director have at least a certain percentage of competing sales.

Mr. Crowley was on the Boards of Directors of AutoZone, Inc. and AutoNation, Inc. at the same time he was on the Sears Board. Mr. Crowley is also an employee of ESL Investments, Inc. ("ESL"), a company which owns a substantial interest in AutoZone and AutoNation. Ms. Reese was on the Board of Directors of Jones Apparel Group, Inc. while she was a director of Sears. The Complaint alleged that Crowley's board service violated Section 8 because Sears, AutoZone and AutoNation competed for sales of automobile parts and service. It alleged that Ms. Reese's board service violated Section 8 because Sears competes with Jones Apparel Group for sales of women's apparel, footwear and accessories. The Amended Complaint further alleged that the members of the Sears Board had breached their fiduciary duties by nominating Mr. Crowley and Ms. Reese to the Sears Board in alleged violation of Section 8. The Complaint did not seek money damages but rather injunctive relief directing the Sears Board to eliminate the alleged director interlocks.

The parties to the Lawsuit disagree about whether the companies alleged to have interlocking directors – Sears, AutoZone and AutoNation as to automobile parts and services, and Sears and Jones Apparel Group as to women's clothing and footwear -- compete for sales to the same market of consumers in amounts large enough to make them subject to Section 8's interlocking director rules. If the allegations regarding Mr. Crowley's board service had gone to trial, resolving this issue might have required an expensive and time-consuming analysis of Sears', AutoZone's and AutoNation's automobile parts and services businesses. Similarly, if the allegations regarding Ms. Reese's board service had gone to trial, resolving this issue might have required an expensive and time-consuming analysis of Sears' and Jones Apparel's women's clothing and footwear lines and the consumer market for these products. The parties would likely have needed the assistance of costly experts on these issues. Plaintiffs and their attorneys considered as a factor favoring settlement the expense and time that would have been required to resolve these difficult fact issues. Plaintiffs also considered the possibility that after these factual issues were fully developed, the Court may have ruled in favor of the Defendants.

**What Is A Derivative Claim?**

A derivative claim is a claim brought by a shareholder on behalf of the company, rather than on behalf of the shareholders of the company. The recovery sought in a derivative action is for the benefit of the company rather than directly for individual shareholders.

**What Happened in the Case Before the Settlement?**

The parties and the Court devoted considerable resources to this case before the Settlement was reached. Plaintiffs' counsel conducted an extensive investigation before filing the case. The Defendants moved to dismiss the amended complaint on the ground that Plaintiffs were required to make a written, pre-suit demand on Sears' current board, asking the Board to take action. Plaintiffs filed a brief opposing dismissal. After considering the briefs of both parties and the applicable law, the Court denied the motion to dismiss.

Plaintiffs then moved the Court for a preliminary injunction, to prevent the Sears Board from nominating Mr. Crowley and Ms. Reese for re-election to the board at the next Annual Shareholders Meeting. Plaintiffs asked the Defendants to produce numerous categories of documents to enable Plaintiffs to prepare for a hearing on this motion. Sears provided Plaintiffs' lawyers with more than a thousand pages of responsive documents, which Plaintiffs' counsel reviewed, as well as written answers to questions posed by Plaintiffs' counsel concerning the matters in dispute.

After evaluating the strengths and weaknesses of their respective positions, and mindful of the expense and uncertainty of protracted litigation, the parties agreed to engage in initial discussions regarding a possible settlement. The Parties reached a Memorandum of Understanding setting forth the settlement, subject to further discovery. The Defendants then provided Plaintiffs' attorneys with additional relevant documents. Plaintiffs' attorneys also took the depositions of Ms. Reese and Mr. Crowley. After researching the applicable law, evaluating the results of their investigation, reviewing the documents obtained from Defendants, and questioning Mr. Crowley and Ms. Reese under oath, Plaintiffs' attorneys concluded that a settlement on the terms described in this notice was in the best interest of Sears and its shareholders.

**What Are The Terms Of The Proposed Settlement?**

The primary objective of the Lawsuit was to eliminate the alleged Section 8 violation resulting from Mr. Crowley and Ms. Reese's service on the Sears Board. As a result of the proposed settlement, Mr. Crowley did not stand for re-election to the Sears Board at the annual meeting of shareholders held on May 4, 2010, and will cease serving as an executive officer of Sears. This agreement will end his board membership and completely cure the alleged Section 8 violation that resulted from his interlocking board service. The Defendants have also agreed to guidelines governing Ms. Reese's service on the Sears Board. You can read the Guidelines at www._____. (Online version will supply a link to the Guidelines). These guidelines will require Ms. Reese to remove herself from board meeting discussions concerning the operation of Sears' women's apparel and footwear businesses, except to the extent necessary to exercise her fiduciary duty as a director and as a member of the Sears Board's audit committee, and from voting on such matters. Sears or its attorneys are required to report to Plaintiffs' coun-

sel on the steps taken to carry out the Guidelines.   Plaintiffs' and their attorneys believe that the limitations on Ms. Reese's board service proposed in the Settlement address the underlying concerns of Section 8, namely, avoiding the potential for anti-competitive conduct, such as price fixing, monopolization, and attempts to injure the businesses of companies that might compete against Sears and Jones Apparel.

The Guidelines will also require Sears Board member Edward Lampert, who also serves as Chairman and Chief Executive Officer of ESL, to remove himself from Board discussions concerning the operations of Sears' auto parts and auto repair service businesses, except to the extent necessary to exercise his fiduciary duty as a director, and voting on such matters.

In addition, Sears has agreed to changes in its board composition that Plaintiffs and their attorneys believe will foster the goals of Section 8.  One of the concerns arising from Mr. Crowley's board service was his employment by ESL, a company which has investment interests in many companies, including AutoZone and AutoNation.  As part of the Settlement, the Defendants have agreed that any person not currently on the Sears Board or an officer of Sears who is nominated in 2010 to serve as a director will be an independent director who is not employed by ESL and who is not an officer or director of any Sears competitor in the apparel, footwear, automotive parts, or automobile repair services businesses.  Defendants have also agreed that Sears will add at least one such independent director to its Board at or before its 2011 annual meeting of shareholders.   Plaintiffs will have the right to withdraw from the settlement if any nominee does not meet the criteria provided for in the Settlement.

## What Are The Reasons For The Settlement?

The Plaintiffs, the Defendants and Sears each believe that the proposed Settlement is fair, reasonable and adequate, and is in the best interests of Sears and its current shareholders.  The Settlement removed Mr. Crowley from the Sears Board entirely and placed limitations on Ms. Reese's board service to eliminate any potential anti-competitive effect from her alleged interlocking board memberships. In addition, the Settlement will require Sears to add an independent director to the Board.  Even if Plaintiffs had prevailed at a trial, they could not have forced Sears to add such a director to its Board; this beneficial relief could only be achieved through a Settlement.  Likewise, the Settlement requires Mr. Lampert to remove himself from Board discussions of the operation of Sears' auto parts and service business.  This relief was not sued for in the Lawsuit and was only obtained through the Settlement.

Although Plaintiffs believe the derivative claims in the Complaint have merit, they recognize the significant costs, risks and uncertainties of rejecting the proposed settlement and pressing the case through trial and appeals.  In a shareholder derivative case such as this one, the Plaintiff is asserting claims on behalf of the company itself.  In evaluating a possible settlement, the Plaintiffs had to consider what was in the best interest of the Company and its shareholders.  A trial would have been difficult and expensive for Plaintiffs and for Sears.  There have been few previous cases challenging interlocking directors under Section 8. For this reason, Plaintiffs' attorneys could not predict whether this case would be dismissed before trial, or if the case was allowed to proceed to trial, how a trial would come out.  There was a possibility that, after extensive discovery, pre-trial motions, a trial and an appeal, the Court would have allowed Mr. Crowley, Ms. Reese, or both of them to remain on the Sears Board.  In view of these risks, Plaintiffs

and Plaintiffs' counsel believe that the proposed settlement, which immediately accomplishes most of the relief sought in the Complaint, is in the best interests of Sears and its shareholders.

The Company believes that the Settlement provides substantial benefits to the Company, including assisting in the prevention and detection of potential violations of law, regulation or Company policy and is in the best interests of Sears and its current shareholders. The Company further believes that the Settlement allows Sears to avoid expensive and time-consuming litigation the outcome of which was uncertain and to maintain Ms. Reese, a highly-experienced independent director who is chair of the audit committee, on the Board.

In agreeing to settle the case, Sears and the Individual Defendants are not admitting that they did anything wrong. They have denied and continue to deny each and every allegation of liability and wrongdoing on their part and contend that the claims asserted against them in the Complaint are without merit. The Individual Defendants deny that they have breached any duty, violated any law, or engaged in wrongdoing of any form.

**What Attorneys' Fees And Expenses Will Be Paid?**

The Plaintiffs are represented by Kenneth J. Vianale, Vianale & Vianale LLP; Matthew T. Hurst, Susman Heffner & Hurst LLP; and Ronen Sarraf and Joseph Gentile, Sarraf Gentile LLP.

Plaintiffs retained their attorneys on a contingent fee basis. In a contingent fee case, the attorneys only get paid if the case is resolved successfully. The Plaintiffs' attorneys have not been paid anything for their legal services. Plaintiffs' attorneys have paid all of the expenses to prosecute the Lawsuit, for which they have not yet been reimbursed.

An additional term of the Settlement is the parties' agreement that Plaintiffs' counsel will seek an award of attorneys' fees for their work on the prosecution and settlement of the Lawsuit and reimbursement of expenses, which in total will not exceed $925,000. Sears has agreed not to oppose a request for attorneys' fees and expenses up to $925,000. Plaintiffs' Counsel will also seek permission from the Court to pay the Plaintiffs awards of up to $750 for their contribution to the case. The case contribution awards would be paid out of any attorneys' fees awarded by the Court. The award of attorney's fees and reimbursement of expenses and the payment of a case contribution award are subject to approval of the Court.

**What Will Happen At The Settlement Hearing?**

The Court has scheduled a Settlement Hearing for July 9, 2010, at __ _.m. At this hearing, the Court will hear objections any shareholder may raise as to any aspect of the Settlement. At or following the hearing, the Court will decide whether the Settlement is fair, reasonable, and adequate, and determine whether to enter the Final Order approving the Settlement. The Court will also, either at the Settlement Hearing or after it, consider the matter of attorneys' fees and whether the fees requested are fair and reasonable and in what amount to award attorneys' fees and expenses to Plaintiffs' counsel. Pending a final ruling on whether the Settlement should be approved, the Parties, the Company and all Sears shareholders are prohibited from beginning or continuing any action that asserts any of the Released Claims against any Released Parties. The terms "Released Claims" and "Released Parties" are defined below.

**YOU ARE NOT REQUIRED TO PARTICIPATE IN OR
ATTEND THE SETTLEMENT HEARING, BUT MAY DO SO IF YOU WISH.**

**If you are satisfied with the outcome of the case, you do not need to do anything.
You may attend the hearing, but you are not required to do so.**

**What if I Disagree With the Settlement?**

If you are a shareholder of Sears as of the date of the Settlement Hearing and you want to object to any feature of the Settlement, you may do so by writing to the Court. In addition to writing to the Court, you may, if you wish, attend the hearing and speak to the Court about your objection. If you write to the Court with an objection, you do not need to also go to the hearing. The Court will read and consider your written objection whether you are at the hearing or not.

Only current Sears shareholders are entitled to object to the Settlement. If you are a Sears shareholder and you want to object to the Settlement, you must send a signed letter or other signed written submission stating that you object to the Settlement in *Robert F. Booth Trust, et al. v. Crowley, et al.*, No. 1:09-cv-05314. You may, but need not, hire a lawyer at your own expense to represent you in filing an objection. If you do hire a lawyer, he or she will need to file a Notice of Appearance along with the objection.

Your objection must include your name, address, and telephone number. You must also state that you are a Sears shareholder and state whether you purchased your shares before or after April 6, 2010. Your written objection must contain a plain statement of why you object to the Settlement. If there are any documents you want the Court to look at in support of your objection, you must send copies of the documents along with your objection. You are not required to attend the hearing for the purpose of explaining your objection to the Judge. However, if you plan on attending the hearing and would like to address the Court regarding your objection, you must state that in your written objection. If you want to ask permission from the Court to present testimony from any witnesses at the hearing, you must state that in your objection as well.

Mail the objection and any supporting papers to the Court and Plaintiffs' attorney at the addresses provided below to arrive no later than fourteen (14) days before the Settlement Hearing. YOUR OBJECTION MUST BE IN WRITING AND RECEIVED BY THIS DATE TO BE CONSIDERED. If the Court does not receive your objection at least fourteen days before the hearing, the Court may not be able to consider it.

| Court | Plaintiffs' Counsel | |
|---|---|---|
| Clerk of the Court | Kenneth J. Vianale, Esq. | |
| United States District Court | VIANALE & VIANALE LLP | |
| Northern District of Illinois | 2499 Glades Road, Suite 112 | |
| Everett McKinley Dirksen | Boca Raton, Florida  33431 | |
| United States Courthouse | Tel.:  (561) 392-4750 | |
| 219 South Dearborn Street | | |
| Chicago, Illinois  60604 | | |

You will not be entitled to object to the proposed Settlement, to the final judgment to be entered in this action, to any award of attorneys' fees or expenses, or otherwise to be heard by the Court unless you file and serve written objections (and, if you wish to be heard, by stating that in the objection) in the form and manner, and by the date, required by this Notice. If you do not object in the manner and by the date required, you shall be considered to have waived any objections, and shall forever be barred in this or any other action or proceeding from raising any objections to the proposed Settlement and the application for an award of attorneys' fees and re-imbursement of expenses by Plaintiffs' counsel.

The date of the Settlement Hearing may be changed without further notice to Sears shareholders. If you or your lawyer intends to attend the Settlement Hearing, you should con-firm the date and time with Plaintiffs' counsel.

**What Is The Effect Of The Court's Approval Of The Proposed Settlement?**

The Stipulation gives a full description of the terms for dismissal of the Settled Claims. The following is only a summary. If the Court approves the Settlement, on the date the Judg-ment approving the Settlement becomes Final (as defined in the Stipulation), the Releasing Par-ties (which includes Plaintiffs and all Sears shareholders) will fully, finally and forever release all Released Claims against the Released Parties.

The "Releasing Parties" means the Plaintiffs (individually, and derivatively on behalf of Sears), Sears, to the extent a derivative claim was properly brought, and the Sears shareholders and any of their heirs, executors, attorneys, administrators, predecessors, successors, and assigns, and all Persons acting in concert with any of the aforementioned persons and entities.

The "Released Parties" are Sears, to the extent that it may be subject to a direct claim, the Individual Defendants (collectively, the "Settling Defendants"), and each and all members of their families, parent entities, affiliates, or subsidiaries, and each and all of their respective past, present, or future officers, directors, employees, attorneys, accountants, auditors, heirs, execu-tors, personal representatives, estates, administrators, predecessors, successors, and assigns.

The "Released Claims" are any and all claims, demands, rights, remedies, or causes of action, whether based on federal, state, local, statutory, common or foreign law or any other law, rule, regulation, or principle of equity, whether known or unknown, including without limitation Unknown Claims, whether suspected or unsuspected, whether contingent or non-contingent, whether accrued or unaccrued, whether or not concealed or hidden, whether factual or legal, and for any remedy whether at equity or law, that were or that could have been asserted from the be-ginning of time through the Effective Date against the Released Parties in the Amended Com-plaint, or by any Sears shareholder claiming in the right of, or on behalf of, Sears arising out of or related, directly or indirectly, in any way to any of the facts, allegations, transactions, events, occurrences, acts, disclosures, statements, omissions, failures to act, or matters set forth, referred to, or that could have been alleged in the Amended Complaint. By operation of the Judgment, the Releasing Parties shall have waived any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is simi-lar, comparable, or equivalent to California Civil Code § 1542. "Unknown Claims" means any

Released Claims that the Plaintiffs (individually, and derivatively on behalf of Sears), Sears, or any Sears shareholder does not know or suspect to exist in his, her, or its favor at the time of the release of the Released Parties that, if known by him, her, or it might have affected his, her, or its settlement with, and release of, the Released Parties, or might have affected his, her, or its decision not to object to this Settlement, including claims based on the discovery of facts in addition to or different from those which he, she, or it now knows or believes to be true with respect to the Released Claims.  The Settling Parties further agree that the Released Claims constitute an express waiver of all rights and protections to the fullest extent permitted by California Civil Code § 1542 and all similar federal, state, or foreign laws, rights, rules, or legal principles.  Section 1542 states:

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.**

Upon final approval of the Settlement, all Releasing Parties will be enjoined and barred from bringing any Released Claims against any of the Released Parties.

## SPECIAL NOTICE TO NOMINEES

If you hold any Sears securities as nominee for a beneficial owner, then, within ten days after you receive this Notice, you must either:  (1) send a copy of this Notice by first class mail to all such Persons; or (2) provide a list of the names and addresses of such Persons to the Notice Administrator:

Sears

[insert name and address of Notice Administrator]

If you choose to mail the Notice yourself, you may obtain from the Notice Administrator (without cost to you) as many additional copies of these documents as you will need to complete the mailing.

Regardless of whether you choose to complete the mailing yourself or elect to have the mailing performed for you, you may obtain reimbursement for reasonable administrative costs actually incurred in connection with forwarding the Notice and that would not have been incurred but for the obligation to forward the Notice, upon submission of appropriate documentation to the Notice Administrator.

## How Do You Get More Information About the Lawsuit And The Proposed Settlement?

This Notice summarizes the proposed Settlement.  The Stipulation of Settlement, including the proposed Final Judgment attached to the Stipulation as Exhibit A, sets forth the complete terms of the Settlement.  You can view the Stipulation at www. _____ (online version will supply a link to the Stipulation).  You can view other relevant documents filed in connection with the Settlement of the Lawsuit by inspecting the papers filed in the Lawsuit at the

Case: 10-3285 Document: 38 Filed: 03/12/2012 Pages: 243

office of the Clerk of Court, United States District Court for the Northern District of Illinois, Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Chicago, Illinois 60604, during normal business hours or by requesting a copy of the relevant documents from Plaintiffs' counsel. If you have questions about the Settlement, you can contact Plaintiffs' counsel listed above.

**Remember, please do not call the Court or the Company. They cannot help you with additional information.**

DATE: _____, 2010

# EXHIBIT E

## <u>Guidelines Regarding Protection of Sears Holdings Corporation Information</u>

- These guidelines are intended to supplement, and not to replace or limit, any other restrictions that may apply to the disclosure of information by the directors of Sears Holdings Corporation ("SHC"). Additionally, these guidelines are not intended to affect or interfere with the exercise of fiduciary duties that directors owe to their companies.

- Activities, such as information sharing, that facilitate, or may give the appearance of facilitating, conduct that would violate the antitrust laws are strictly prohibited.

<u>ESL Directors</u>

- Any directors, officers, or employees of ESL ("ESL Directors") will remove themselves from SHC board meeting discussions concerning the operations of SHC's U.S. auto business unit, except to the extent necessary to exercise their fiduciary duties as a director. In the event the SHC board is asked to vote on matters directly concerning the operations of SHC's U.S. auto business unit, ESL Directors will abstain from voting.

- If, in the course of performing duties as an SHC director, any issues arise concerning areas of competition between Sears and other companies in which ESL holds equity interests, the ESL Directors will consult with counsel on the appropriate course of action to avoid potential antitrust issues.

- For clarity, ESL Directors are not prohibited from participating in meetings concerning the operations of SHC's non-auto business units, or SHC as a whole.

<u>Jones Directors</u>

- Any directors, officers, or employees of the Jones Apparel Group ("Jones Directors") will remove themselves from SHC board meeting discussions concerning the operations of SHC's women's apparel and footwear businesses, except to the extent necessary to exercise their fiduciary duties as a director, including as a member of the audit committee. In the event the SHC board is asked to vote on matters directly concerning the operations of SHC women's apparel and footwear businesses, Jones Directors will abstain from voting.

- If, in the course of performing duties as an SHC director, any issues arise concerning areas of competition between Sears and Jones, the Jones Directors will consult with counsel on the appropriate course of action to avoid potential antitrust issues.

Case: 10-3285 Document: 38 Filed: 03/12/2012 Pages: 243

- For clarity, Jones Directors are not prohibited from participating in meetings concerning the operations and strategy of SHC business units other than women's apparel and footwear, or SHC as a whole.

MHN

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |
|---|---|
| ROBERT F. BOOTH TRUST and RONALD GROSS, derivatively on behalf of nominal defendant SEARS HOLDINGS CORPORATION,   ) ) ) ) |  |
|  ) | No. 1:09-cv-05314 |
| Plaintiff,   ) ) | Hon. Ronald A. Guzmán |
| v.   ) ) |  |
| WILLIAM C. CROWLEY, EDWARD S. LAMPERT, STEVEN T. MNUCHIN, RICHARD C. PERRY, ANN N. REESE, KEVIN B. ROLLINS, EMILY SCOTT and THOMAS J. TISCH,   ) ) ) ) ) ) |  |
| Defendants,   ) ) |  |
| and   ) ) |  |
| SEARS HOLDINGS CORPORATION,   ) ) |  |
| Nominal Defendant.   ) ) |  |

## PRELIMINARY APPROVAL ORDER

This matter came before the Court on the application of the Settling Parties for

preliminary approval of the proposed settlement (the "Settlement") set forth in the Amended

Stipulation of Settlement, dated as of April 28, 2010 (the "Stipulation"). Due and adequate

notice having been given to the Settling Parties, and the Court having considered the Stipulation

and all other papers filed and proceedings had herein and otherwise being fully advised in the

premises and good cause appearing therefore, IT IS HEREBY ORDERED:

1.     This Order incorporates by reference the definitions in the Stipulation, and all

terms used herein shall have the same meanings as set forth in the Stipulation, unless otherwise

**112**

Case: 1:09-cv-05314 Document #: 93 Filed: 05/11/10 Page 2 of 5 PageID #:1349
Case: 10-3285   Document: 38   Filed: 03/12/2012   Pages: 243

set forth herein.

2.  This Court preliminarily approves the proposed Settlement, as set forth in the

Stipulation.

3.  In connection with preliminary approval of the proposed Settlement, the Court

preliminarily finds, for the purposes of the Settlement, that the Action was properly brought

pursuant to Federal Rule of Civil Procedure 23.1 as a shareholder derivative action on behalf of

Sears, and that plaintiffs fairly and adequately represent the interests of Sears Shareholders in

enforcing the rights of Sears.

4.  The Court will hold a settlement hearing on July 9, 2010 at _10:00 a.m._ in Courtroom

1219, United States District Court, Northern District of Illinois, Everett McKinley Dirksen

United States Courthouse, 219 South Dearborn Street, Chicago, Illinois  60604 (the "Settlement

Hearing"): (i) to determine pursuant to Federal Rule of Civil Procedure 23.1 whether to grant

final approval of the proposed Settlement as fair, reasonable and adequate and in the best

interests of Sears and Sears Shareholders; (ii) to hear and determine any objections to the

Settlement; (iii) to determine whether a Judgment substantially in the form attached as Exhibit A

to the Stipulation should be entered dismissing all claims in the Amended Consolidated

Derivative Complaint against the Released Persons with prejudice and releasing the claims

released in the Stipulation; (iv) in the event the Court approves the Settlement, to rule upon an

application by Plaintiffs' Counsel for an award of attorneys' fees and reimbursement of

expenses; and (v) to consider any other matters that may properly be brought before the Court in

connection with the Settlement.

5.  Notice of Sears' Settlement of Derivative Claims, including the date and time of

the Settlement Hearing and the application of Plaintiffs' Counsel for fees and expenses, shall be

2

**113**

Case: 1:09-cv-05314 Document #: 93 Filed: 05/11/10 Page 3 of 5 PageID #:1350
Case: 10-3285    Document: 38    Filed: 03/12/2012    Pages: 243

carried out as follows:

        a.      Within 21 days of the date of this Order, the Notice of Settlement, substantially in the form of Exhibit D to the Stipulation, shall be sent by U.S. First Class mail to all owners of Sears shares as of the date of this Order who can be identified using reasonable efforts. Pursuant to the Stipulation, Sears will bear the cost of complying with this requirement.

        b.      Within 28 days of the date of this Order, the Summary Notice, substantially in the form of Exhibit C to the Stipulation, shall be published once via the internet over PR Newswire, or an alternative national news service. The news service that issues the Summary Notice shall be informed that the Summary Notice should be tickered to Sears' stock symbol. Pursuant to the Stipulation, Sears will bear the cost of complying with this requirement.

        6.      Nominees who hold Sears stock shall send the Notice of Settlement to the beneficial owners of such Sears stock within ten days after receipt thereof, or send a list of the names and addresses of such beneficial owners to the Notice Administrator within ten days of receipt thereof in which event the Notice Administrator shall promptly mail the Notice to such beneficial owners.

        7.      At or prior to the Settlement Hearing, counsel for the Settling Parties shall file proof by affidavit that the Notice of Settlement and Summary Notice were disseminated as required in this Order. All papers in support of the Settlement shall be filed seven (7) days before the Settlement Hearing.

        8.      The mechanism for providing notice to Sears shareholders described in paragraph 5 is hereby preliminarily found to be reasonable and sufficient under the circumstances, and to comply with the provisions of Federal Rule of Civil Procedure 23.1 and the requirements of due process of the United States Constitution, and to constitute due and sufficient notice to all

**114**

Case: 1:09-cv-05314 Document #: 93 Filed: 05/11/10 Page 4 of 5 PageID #:1351
Case: 10-3285    Document: 38    Filed: 03/12/2012    Pages: 243

Persons affected by the proposed Settlement or entitled to participate in the Settlement Hearing regarding the Derivative Claims.

9.     The Court will consider at the Settlement Hearing objections to the proposed Settlement or the award of attorneys' fees and reimbursement of expenses, and requests to be heard or to present evidence or testimony in opposition to the proposed Settlement, but only if such objections, requests and any supporting papers, are filed with the Clerk of the Court, United States District Court, Northern District of Illinois, Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Chicago, Illinois 60604, not later than fourteen (14) days before the settlement hearing, and, by the same date, copies of all such papers are also served upon:

> **Plaintiffs' Counsel:**
>
> Kenneth J. Vianale
> VIANALE & VIANALE LLP
> 2499 Glades Road, Suite 112
> Boca Raton, Florida 33431

Plaintiff's Counsel shall e-mail a complete copy of any objections he receives to all other counsel of record no later than one business day after his receipt of an objection. Written objections must comply in form and content with all of the requirements described in the Notice of Settlement. Any Person who fails to object in the manner described in the Notice of Settlement shall be deemed to have waived such objections and shall be forever barred from raising such objections or otherwise contesting the Settlement in this or any other action or proceeding.

10.     The Court reserves the right to approve the Stipulation with modifications agreed to by the Settling Parties and without further notice to any Sears Shareholders, and retains

jurisdiction over the Derivative Claims to consider all further applications arising out of or connected with the proposed Settlement.

11.    Pending final determination whether the Settlement and Stipulation should be approved, all proceedings in this action, other than proceedings necessary to carry out the terms and conditions of the Settlement, are stayed, and the Plaintiffs and/or every Sears Shareholder, or any of them, are preliminarily barred and enjoined from (a) commencing, prosecuting, instigating, continuing, or in any way participating in the commencement or prosecution of any action asserting any Released Claims against any of the Released Parties, or (b) challenging the Settlement other than in this Action in accordance with the procedures established by the Court.

12.    Neither the Stipulation, nor the Exhibits thereto, nor any document referred to therein, nor any action taken to carry out the Stipulation is, may be construed as, or may be used as an admission by or against Released Parties, or any of them, of any fault, wrongdoing or liability whatsoever.

13.    In the event the Settlement is not approved by the Court, or is terminated for any reason, the Settlement and all of its terms shall be null and void, of no further force or effect, without prejudice to any Settling Party, and may not be introduced as evidence or referred to in any actions or proceedings by any Person.

Date: _May 11_, 2010
Chicago, Illinois

SO ORDERED

_Ronald A. Guzmán_
Ronald A. Guzmán, U.S.D.J.

5

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ROBERT F. BOOTH TRUST and RONALD GROSS, derivately on behalf of nominal defendant SEARS HOLDING CORPORATION,<br><br>*Plaintiff,*<br><br>v.<br><br>WILLIAM C. CROWLEY, *et al.,*<br><br>*Defendants,*<br><br>and<br><br>SEARS HOLDING CORPORATION,<br><br>*Nominal Defendant.*<br><br>THEODORE H. FRANK,<br><br>*Objector.* | No. 1:09-CV-05314<br><br>Judge Ronald A. Guzmán<br><br><br>OBJECTION OF THEODORE H. FRANK<br><br><br>*FILED*<br>JUL 0 1 2010<br>7-1-2010<br>MICHAEL W. DOBBINS<br>CLERK, U.S. DISTRICT COURT<br>NF |

Class member and shareholder Theodore H. Frank objects as follows:

1.      I am a shareholder of Sears Holding Corporation.  I purchased 100 shares on March 9, 2010.  My address is 901 N. Monroe St., Apt. 1007, Arlington, Virginia 22201-2358. My telephone number is (703) 243-3090.

**117**

Case: 1:09-cv-05314 Document #: 107 Filed: 07/01/10 Page 2 of 9 PageID #:1377
Case: 10-3285    Document: 38    Filed: 03/12/2012    Pages: 243

2.    On June 28, 2010, I received via First Class Mail the Notice of the Proposed Settlement of this lawsuit. It informed me that if I objected to the lawsuit, my objections had to be filed with the court by June 25, 2010.

3.    As I do not own a time machine, I could not file an objection by the June 25 deadline.

4.    I object that notice is inadequate. The June 28 mailing was the first I learned of the lawsuit, much less the settlement. I received notice only eleven days before the fairness hearing, and three days after objections were due. I telephoned (888) 404-8013, the toll-free number on the bottom of the settlement notice that is apparently the offices of the settlement administrator, The Garden City Group, Inc., to find out why I received notice so late. No one answered. I left a voice-mail message. No one returned my call.

5.    I called Mr. Vianale and asked if he would agree to change the deadlines given the late notice. He refused.

6.    The mailing was "Presorted First Class Mail U.S. Postage PAID" from Philadelphia, PA. There was no postmark on the mailing. (See attached Exhibit 1.) I have lived at my current home address for close to nine years, and in my experience, since at least 2004,[1] first-class mail from the New York-Washington corridor takes two days or less to reach me in Arlington; more often than not, it takes only a day. Notice was apparently mailed to the class, at the earliest, only a day or two before objections were due with the court, and possibly not mailed until June 25.

---

[1] Mail was somewhat slower in the wake of the 2001 anthrax attacks on a Washington, DC, post office.

---

Objection of Theodore H. Frank
No. 1:09-CV-05314                    2

7.     Class members are entitled to the "best notice practicable under the circumstances." Fed. R. Civ. Proc. 23(c)(2)(B).  The notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 94 L. Ed. 865, 70 S. Ct. 652 (1950); *cf. Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-175, 40 L. Ed. 2d 732, 94 S. Ct. 2140 (1974).

8.     The notice here fails this standard.  I follow and litigate class actions for a living on behalf of a non-profit public-interest law firm, yet I did not learn of this class action settlement until after objections were due.  If a relatively legally sophisticated investor like me was left in the dark, it is exceedingly likely that the overwhelming majority of shareholders are in the same boat. Even if my late-filed objection is accepted by the court, there is no telling how many other class members would have objected, but thought an objection futile because they learned of the settlement so late.

9.     The preliminary approval of settlement was issued only on May 11, 2010.  There is no reason to request or hold a fairness hearing less than sixty days after preliminary approval of settlement unless one is trying to artificially limit the number of objections to a bad settlement.

10.     I have elected with my broker to receive shareholder notice over e-mail.  For example, I own stock in Metro Bancorp, Inc.  On June 11, 2010, I received e-mail notice of the 2010 Metro Bancorp, Inc. Annual Meeting of Shareholders, to be held on July 23, 2010; I can file my proxy for that meeting over the Internet.  There is no reason not to have sent notice through e-mail (and to permit objections to be submitted via e-mail) unless one is trying to artificially limit

## 119

Case: 1:09-cv-05314 Document #: 107 Filed: 07/01/10 Page 4 of 9 PageID #:1379
Case: 10-3285    Document: 38    Filed: 03/12/2012    Pages: 243

the number of objections to a bad settlement. *See also* Robert H. Klonoff, *Making Class Actions Work: The Untapped Potential of the Internet*, 69 U. PITT. L. REV. 727, 766 n. 251 (2008).

11.     Even if the notice had been timely, it is problematic because it violates the plain language of Rule 23(h)(1). Though class counsel are requesting $925,000 in fees, class members are given no information on what basis class counsel are making this claim.

12.     Nothing in the notice—or even in the docket—gives any basis for the fee request, giving class members no basis to determine whether it is reasonable. Given the "clear sailing" clause of the settlement whereby the defendants agree not to challenge the requested fee award, this means that class members have no basis to determine whether the settlement is fair. If "class counsel agreed to accept excessive fees and costs to the detriment of class plaintiffs, then class counsel breached their fiduciary duty to the class." *Lobatz v. U.S. West Cellular of Cal., Inc.*, 222 F.3d 1142, 1147 (9th Cir. 2000). But the class has been kept in the dark whether this has happened.

13.     Fed. R. Civ. Proc. 23(h)(1), added as part of the 2003 amendments to the Federal Rules, directly addresses this issue. Notice of a motion for attorneys' fees must be "directed to class members in a reasonable manner." "For motions by class counsel in cases subject to court review of a proposed settlement under Rule 23(e), it would be important to require the filing of at least the initial motion in time for inclusion of information about the motion in the notice to the class about the proposed settlement that is required by Rule 23(e)... In setting the date objections are due, the court should provide sufficient time after the full fee motion is on file to enable potential objectors to examine the motion." Notes of Advisory Committee on 2003 Amendments

to Rule 23(h)(1). Even now, June 29, 2010, four days after objections are due, no such full fee motion has been made. The notice is therefore both late and inadequate.

14.    I further object that this settlement is self-dealing, and thus the plaintiffs' attorneys do not meet the standard of Fed. R. Civ. Proc. 23(a)(4) or Fed. R. Civ. Proc. 23.1(a), and the settlement does not meet the standard of Fed. R. Civ. Proc. 23(e)(2).

15.    This lawsuit has made the plaintiffs' lawyers' putative client, Sears Holding Corporation and its shareholders, worse off.

16.    This was a "strike suit." Unscrupulous plaintiffs' attorneys bring a meritless lawsuit, and then threaten to force defendants to incur expensive discovery and litigation expenses unless the defendants agree to pay the plaintiffs' attorneys to go away. But in doing so, these attorneys make their putative clients worse off. This is a breach of the attorneys' fiduciary obligation to their clients to not put their own interests ahead of their clients. Fed. R. Civ. Proc. 23(e)(2) requires a settlement to be "fair, adequate, and reasonable." It is inherently unfair for the plaintiffs' attorneys to benefit at the expense of their shareholder clients without any material benefit accruing to shareholders, and an abuse of the courts' equitable power to reward the attorneys for this self-dealing.

17.    The complaint alleges no damage to shareholders from the shareholders' collective decision to legally elect two experienced board members. The injunctive relief does not make shareholders better off: it likely makes shareholders worse off by creating unnecessary board turnover. The only thing this lawsuit has done is transfer money from shareholders like me to the plaintiffs' and defense attorneys and to distract executives and board members from more important and pressing issues. If the plaintiffs' attorneys were acting in the best interests of the

**121**

Case: 1:09-cv-05314 Document #: 107 Filed: 07/01/10 Page 6 of 9 PageID #:1381
Case: 10-3285    Document: 38    Filed: 03/12/2012    Pages: 243

shareholders, rather than themselves, they would not have brought this lawsuit, or, at a minimum, would have first made an inquiry to the board through a formal demand letter that could have saved all parties involved a lot of money. They thus do not "fairly and adequately represent the interests of shareholders." Rule 23.1(a). Moreover, as a matter of equity, this court should not award attorneys' fees to attorneys who have breached their fiduciary duty.

18.    There are likely other objections to this settlement I could have brought if I had been given timely notice, but I have not had time to do legal research into a variety of questions, and given Mr. Vianale's statement that he would seek to enforce the June 25 deadline, I felt the need to file this objection as quickly as possible to minimize any claims of prejudice. I have separately sent Mr. Vianale a copy of this objection by e-mail.

19.    I will not be able to attend the fairness hearing in Chicago on July 9, 2010, because I was not given adequate notice of the fairness hearing. I request the opportunity to participate by telephone or, in the alternative, for the fairness hearing to be continued to August 9, 2010.

20.    My non-profit public-interest law firm brings *pro bono* objections to class action settlements on behalf of consumers when their class attorneys engage in self-dealing settlements that benefit themselves at the expense of the class. In my experience, plaintiffs' attorneys often respond to class action objections I make with *ad hominem* attacks falsely equating me with "professional objectors" who bring meritless objections to delay the settlement in the hopes of being paid to go away—similar to the tactics plaintiffs' attorneys used in this case. For the record, I have never taken a single dollar to settle or withdraw a class action objection, and neither has my law firm.

        Dated: June 29, 2010

**122**

Case: 1:09-cv-05314 Document #: 107 Filed: 07/01/10 Page 7 of 9 PageID #:1382
Case: 10-3285     Document: 38     Filed: 03/12/2012     Pages: 243

Respectfully submitted,

/s/Theodore H. Frank
Theodore H. Frank
901 N. Monroe St. #1007
Arlington, VA 22201-2358
Telephone: (703) 243-3090
Email: tedfrank@gmail.com
*In pro per*

**123**

Case: 1:09-cv-05314 Document #: 107 Filed: 07/01/10 Page 8 of 9 PageID #:1383
Case: 10-3285    Document: 38    Filed: 03/12/2012    Pages: 243

## PROOF OF SERVICE

I declare that:

I am employed in the state of Illinois. I am over the age of 18 years and not party to the within action; my office address is 312 N. May Street, Suite 100, Chicago, Illinois 60607.

On June 29, 2010, I served the attached:

OBJECTION OF THEODORE H. FRANK

__X__    By First-Class Mail in that I caused such envelope(s) to be delivered via First-Class Mail to the addressee(s) designated.

Clerk of the Court                          Kenneth J. Vianale, Esq.
United States District Court                VIANALE & VIANALE LLP
Northern District of Illinois               2499 Glades Road, Suite 112
Everett McKinley Dirksen                    Boca Raton, FL 33431
United States Courthouse                    (561) 392-4750
219 South Dearborn Street
Chicago, IL 60604

I declare under penalty of perjury that the foregoing is true and correct.

This 29nd day of June, 2010.

_/s/ M. Frank Bednarz_____
M. Frank Bednarz

Presorted
First Class Mail
U.S. Postage
PAID
Philadelphia, PA
Permit # 5634

THEODORE H FRANK
901 N MONROE ST APT 1007
ARLINGTON, VA 22201-2358

Robert F. Booth Trust v. Crowley et al.
c/o The Garden City Group, Inc.
P.O. Box 9486
Dublin, OH 43017 - 4586

**Return Service Requested**

RBT01093324

aring, you.

**UNITED STATES DISTRICT COURT**
**FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 4.0.3**
**Eastern Division**

Robert F. Booth Trust
                    Plaintiff,

v.                                  Case No.: 1:09−cv−05314
                                  Honorable Ronald A. Guzman

William C Crowley, et al.
                    Defendant.

**NOTIFICATION OF DOCKET ENTRY**

This docket entry was made by the Clerk on Friday, July 9, 2010:

      MINUTE entry before Honorable Ronald A. Guzman: Fairness and motion
hearing held on 7/9/2010. Plaintiff's Motion for settlement [97] and Motion for attorneys
fees [100] are entered and continued for hearing and fairness hearing on 8/27/2010 at
10:30 A.M. The parties are ordered to submit briefs and/or records, as stated in open
court, by 7/23/2010. Briefs to be submitted in camera. Mailed notice by judge's staff.
(srb,)

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of
Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was
generated by CM/ECF, the automated docketing system used to maintain the civil and
criminal dockets of this District. If a minute order or other document is enclosed, please
refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our
web site at ***www.ilnd.uscourts.gov***.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

2010 AUG 16 PM 3: 20

CLERK
U.S. DISTRICT COURT

|  |  |
|---|---|
| ROBERT F. BOOTH TRUST and RONALD GROSS, derivatively on behalf of nominal defendant SEARS HOLDING CORPORATION, | No. 1:09-CV-05314 |
| *Plaintiffs,* | Judge Ronald A. Guzmán |
| v. | MOTION TO INTERVENE AND OBJECTION OF THEODORE H. FRANK; AND MOTION TO DISMISS UNDER RULE 23.1(a) |
| WILLIAM C. CROWLEY, *et al.,* | |
| *Defendants,* | Date: August 27, 2010 |
| and | Time: 10:30 a.m. |
| SEARS HOLDING CORPORATION, | |
| *Nominal Defendant.* | |
| THEODORE H. FRANK, | |
| *Objector/Intervenor.* | |

> **F I L E D**
> 8-16-2010
> AUG 16 2010 JH
>
> MICHAEL W. DOBBINS
> CLERK, U.S. DISTRICT COURT

Under Rule 23.1, a "derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of shareholders or members who are similarly situated." The plaintiffs here have brought a strike suit with no hope of benefiting the corporation or shareholders for the sole benefit of themselves and their attorneys. As such, the Court should reject the settlement, which makes shareholders worse off by providing for the payment of attorneys' fees without any offsetting benefit. At a minimum, if the Court accepts the settlement, the Court should not reward the Robert F. Booth Trust and its counsel for their self-

serving behavior, and should limit fees to a token amount. To protect the interests of shareholders and to protect his own interest as a shareholder, Proposed Intervenor Theodore H. Frank moves to intervene in this action pursuant to Fed. R. Civ. Proc. 24(a) and 24(b). Intervenor's proposed pleading is attached as Exhibit 1.

## ARGUMENT

### I.   FRANK IS ENTITLED TO INTERVENE AS A MATTER OF RIGHT.

1.   Theodore H. Frank is a shareholder of Sears Holding Corporation. He purchased 100 shares on March 9, 2010. His address is 901 N. Monroe St., Apt. 1007, Arlington, Virginia 22201-2358. His telephone number is (703) 243-3090.

2.   Frank is entitled to intervene in this action as a matter of right pursuant to Fed. R. Civ. Proc. 24(a). Rule 24(a)(2) mandates intervention as a matter of right for anyone who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."

3.   Under Rule 24(a), a party moving to intervene must show that: (1) the motion is timely brought, (2) the intervenor has an interest relating to the subject of the pending action; (3) there is potential that the intervenor's interests will be impaired by disposition of the action in their absence; and (4) the intervenor's interests are not adequately represented by existing parties. *See Heartwood, Inc. v. U.S. Forest Serv., Inc.*, 316 F.3d 694 (7th Cir. 2003); *Shea v. Angulo*, 19 F.3d 343, 346 (7th Cir. 1994). Each of these elements is present here.

4.   The motion is timely. Frank's position in this case as an intervenor does not differ from his position in this case as an objector; because objections are due August 20, 2010, and this

motion for intervention predates that deadline, none of the parties will be prejudiced by his intervention. (Frank moves to intervene because the Seventh Circuit has not yet ruled whether *Devlin v. Scardeletti*, 536 U.S. 1 (2002), which permits appeal without intervention of a Rule 23 settlement approval, supersedes *Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998), *aff'd by an equally divided Court, California Public Employees' Retirement System v. Felzen*, 525 U.S. 315, 119 S. Ct. 720, 142 L. Ed. 2d 766 (1999), which forbids such an appeal in the Rule 23.1 circumstance without intervention. *Cf. SEC v. Enter. Trust Co.*, 559 F.3d 649, 651 (7th Cir. 2009).) "The requirement of timeliness is not a tool of retribution to punish the tardy would-be intervenor, but rather a guard against prejudicing the original parties by the failure to apply sooner. Federal courts should allow intervention 'where no one would be hurt and greater justice could be attained.'" *Utah Ass'n. of Counties v. Clinton*, 255 F.3d 1246, 1250 (2001) (*quoting Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994)).

5.    For example, in *Flying J., Inc. v. Van Hollen*, the Seventh Circuit reversed a district court's denial of a motion to intervene where the motion was, as here, intended to preserve appellate rights, even though the motion to intervene did not come until after the district court had issued an injunction. 578 F.3d 569 (7th Cir. 2009). Thus, the motion to intervene is timely.

6.    Frank satisfies both the second and third requirements for intervention as of right. A party's interest is sufficient to justify intervention if it is "direct, significant, [and] legally protectable." *Sec. Ins. Co. v. Schipporeit, Inc.*, 69 F.3d 1377, 1380 (7th Cir. 1995). This is true here, where Frank is a shareholder, and the self-appointed derivative shareholder has brought suit that harms the corporation's interests, and thus Frank's interests as a shareholder. *Cf. Felzen*,

**129**

Case: 1:09-cv-05314 Document #: 117 Filed: 08/16/10 Page 4 of 11 PageID #:1649
Case: 10-3285    Document: 38    Filed: 03/12/2012    Pages: 243

134 F.3d at 876 ("Rule 23.1 provides for notice to shareholders only in the event of dismissal or settlement, so that other investors may contest the faithfulness or honesty of the self-appointed plaintiffs; we do not doubt that this monitoring is often useful and that intervention to facilitate an appeal could be justified.").

7.    Finally, Frank also satisfies the fourth requirement for intervention as of right: his interests as a shareholder are not adequately protected by existing parties. As *Felzen* notes,

> Many thoughtful students of the subject conclude, with empirical support, that derivative actions do little to promote sound management and often hurt the firm by diverting the managers' time from running the business while diverting the firm's resources to the plaintiffs' lawyers without providing a corresponding benefit. Janet Cooper Alexander, *Do the Merits Matter? A Study of Settlements in Securities Class Actions,* 43 Stan. L.Rev. 497 (1991); Reinier Kraakman, Hyun Park & Steven Shavell, *When are Shareholder Suits in Shareholder Interests?,* 82 Geo. L.J. 1733 (1994); Roberta Romano, *The Shareholder Suit: Litigation Without Foundation?,* 7 J.L. Econ. & Org. 55 (1991); Mark L. Cross, Wallace N. Davidson & John H. Thornton, *The Impact of Directors' and Officers' Liability Suits on Firm Value,* 56 J. Risk & Insurance 128 (1989); Daniel R. Fischel & Michael Bradley, *The Role of Liability Rules and the Derivative Suit in Corporate Law: A Theoretical and Empirical Analysis,* 71 Cornell L.Rev. 261 (1986).

*Id.* One hundred percent of the settlement proceeds in this settlement will go to the plaintiffs' lawyers, with zero to shareholders: this is precisely the "diver[sion of] the firm's resources to the plaintiffs' lawyers without providing a corresponding benefit" that the Seventh Circuit warned about. *Id.* (suggesting settlement providing 50% of benefit to attorneys is problematic). As defense counsel acknowledged at the July 9 hearing, this settlement, including the clear-sailing proposed attorneys' fee, is driven by the expense of litigation that plaintiffs' counsel could impose upon the corporation.

8.    Frank intervenes solely in the interests of shareholders: he will not request any attorneys' fees from the corporation for his participation in the litigation; he will not agree to a

130

Case: 1:09-cv-05314 Document #: 117 Filed: 08/16/10 Page 5 of 11 PageID #:1650
Case: 10-3285    Document: 38    Filed: 03/12/2012    Pages: 243

*quid pro quo* settlement with plaintiffs' attorneys to withdraw his objection. Frank is willing to stipulate to an injunction forbidding him from withdrawing any appeal without court approval.

## II.    IN THE ALTERNATIVE, FRANK SHOULD BE PERMITTED TO INTERVENE UNDER RULE 24(B).

9.      Rule 24(b) provides for permissive intervention as long as a timely application is made and the "applicant's claim . . . and the main action have a question of law or fact in common." Fed. R. Civ. P. 24(b). As part of this determination, the courts consider "whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." *Id.*; see also *Southmark Corp. v. Cagan*, 950 F.2d 416, 419 (7th Cir. 1991).

10.      As noted above, the motion to intervene is timely, as it has been filed before the deadline for objections, and is filed solely for the purposes of protecting appellate rights.

11.      The questions of law and fact Frank will raise in any proceeding where he is permitted to intervene are coterminous with those Frank will raise in his objection, which the court will consider as part of the Rule 23.1 fairness hearing.

12.      No delay or prejudice to the existing parties will occur if the motion to intervene is granted. Frank seeks to participate in an appeal of any decision to approve the settlement; if the settlement is approved, Frank will appeal regardless of whether the motion to intervene is granted. As such, Frank's participation will not prejudice the rights of existing parties. *Flying J., Inc.*, *supra*.

## III.    THE PROPOSED SETTLEMENT SHOULD BE REJECTED AND THE CASE DISMISSED UNDER RULE 23-1(a).

13.      The settlement provides zero for shareholders; its sole "benefit" is a resolution of the alleged interlocking directorate problem forbidden by the Clayton Act, but there is no evidence that this resolution improves the lot of shareholders.

**131**

Case: 1:09-cv-05314 Document #: 117 Filed: 08/16/10 Page 6 of 11 PageID #:1651
Case: 10-3285    Document: 38    Filed: 03/12/2012    Pages: 243

14.     The Clayton Act's provisions barring interlocking directorates are intended not to protect the corporation from wrongdoing directors, but as a prophylactic measure to protect consumers from corporate collusion that might unfairly raise prices to consumers and cause corporations to realize unfair profits.  Shareholders would suffer no injury if that were true; indeed, shareholders would benefit if Sears realized excessive profits.  To the extent there is any violation of the Clayton Act's prohibition on interlocking directorate, the only harm to shareholders is if there is a government fine for the violation.

15.     The federal government has not issued a fine for a violation of the Clayton Act's interlocking directorate provisions during the Obama administration, George W. Bush administration, Clinton administration, or George H.W. Bush administration.  On information and belief, the Reagan administration did not issue any fines for a violation of the Clayton Act's interlocking directorate provisions.

16.     This was a "strike suit."  Unscrupulous plaintiffs' attorneys bring a meritless lawsuit, and then threaten to force defendants to incur expensive discovery and litigation expenses unless the defendants agree to pay the plaintiffs' attorneys to go away.  But in doing so, these attorneys make their putative clients worse off.  This is a breach of the attorneys' fiduciary obligation to their clients to not put their own interests ahead of their clients.  Fed. R. Civ. Proc. 23.1(a) requires the derivative shareholder to fairly and adequately represent shareholders.  A derivative shareholder who brings litigation designed to benefit the plaintiffs' attorneys at the expense of their shareholder clients without any material benefit accruing to shareholders is plainly inadequate; it would be an abuse of the courts' equitable power to reward the attorneys for this self-dealing.

**132**

17.    The suit is meritless, and in parts arguably frivolous. Two causes of action are brought for injunctive relief under 15 U.S.C. § 26, but that relief is only available "against threatened loss or damage by a violation of the antitrust laws" where there is "a showing that the danger of irreparable loss or damage is immediate." The derivative shareholder plaintiffs cannot possibly meet either requirement: indeed, they explicitly disclaim any damages in their amended complaint. Moreover, the derivative shareholder plaintiffs do not claim to have suffered any antitrust injury entitling them to bring a cause of action under the Clayton Act. *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477 (1977). Nor can the corporation, in whose shoes the derivative shareholder plaintiffs purport to sit, have suffered any antitrust injury or "threatened loss or damage."

18.    The sole evidence that this case is not a strike suit and that the settlement benefits shareholders is a statement in the settlement to that effect. But this evidence fails for two reasons.

19.    *First*, the statement is equivocal: it could merely mean that the settlement benefits shareholders because it reduces the expense of proceeding with litigation in the face of a burdensome strike suit. That is not evidence that the *litigation* benefited shareholders; indeed, it would mean the opposite.

20.    *Second*, the self-serving statement in the settlement contradicts the complaint. The complaint alleges that there is no damage from the alleged breach of fiduciary duty. But if there is no damage from the alleged breach of fiduciary duty, how can the *cure* of the alleged breach of fiduciary duty produce benefit? Either the breach of the fiduciary duty did damage shareholders (in which case both the complaint and settlement shows that the derivative shareholder does not fairly and adequately represent the shareholders), or the cure does not provide benefit to

---

133

Case: 1:09-cv-05314 Document #: 117 Filed: 08/16/10 Page 8 of 11 PageID #:1653
Case: 10-3285    Document: 38    Filed: 03/12/2012    Pages: 243

shareholders (in which case the settlement is self-serving, which shows that the derivative shareholder does not fairly and adequately represent the shareholders). The plaintiffs cannot have it both ways.

21.     On April 6, 2010, Sears issued a Schedule 14A statement reflecting the change in composition of the board of directors anticipated by this settlement and disclosing the existence of the memorandum of understanding that would lead to this settlement. *See* Sears Holding Corp. Sched. 14A at 6-7 (Apr. 6, 2010). If the market believed that the settlement made shareholders better off, Sears's stock price would have risen. But, in fact, the opposite occurred:



In the aftermath of the disclosure of the settlement agreement, the Sears stock price (in red) dropped for three consecutive days and substantially underperformed the Dow Jones Industrial Average (in blue). While this fact is not necessarily dispositive—there could have been other reasons why Sears stock underperformed the Dow Jones Industrial Average in this timeframe—it does show that one cannot simply believe the self-serving statements in the settlement agreement that the settlement benefits Sears and its shareholders without additional evidence supporting that fact. The parties have that burden, but have provided no evidence to rebut the fact that the stock price dropped in response to the settlement.

**134**

Case: 1:09-cv-05314 Document #: 117 Filed: 08/16/10 Page 9 of 11 PageID #:1654
Case: 10-3285    Document: 38    Filed: 03/12/2012    Pages: 243

22.     The complaint alleges no damage to shareholders from the shareholders' collective decision to legally elect two experienced board members. The injunctive relief does not make shareholders better off. The only thing this lawsuit has done is transfer money from shareholders like me to the plaintiffs' and defense attorneys and to distract executives and board members from more important and pressing issues. If the plaintiffs' attorneys were acting in the best interests of the shareholders, rather than themselves, they would not have brought this lawsuit, or, at a minimum, would have first made an inquiry to the board through a formal demand letter that could have saved all parties involved a lot of money. They thus do not "fairly and adequately represent the interests of shareholders." Rule 23.1(a). Moreover, as a matter of equity, this court should not award attorneys' fees to attorneys who have breached their fiduciary duty.

23.     This lawsuit has thus made the plaintiffs' lawyers' putative client, Sears Holding Corporation and its shareholders, worse off, and the plaintiffs' attorneys are in breach of Fed. R. Civ. Proc. 23-1(a).

24.     The settlement is impermissibly collusive. Though the lawsuit alleges wrongdoing by the *directors* of the corporation at the expense of the corporation, the settlement requires payment by the *corporation* to the plaintiffs' attorneys. To the extent the lawsuit has any merit, shareholders lose twice.

25.     The "clear sailing" provision in the settlement whereby the defendant directors agree not to challenge the $925,000 attorney-fee request is further evidence of the collusive nature of the settlement meriting additional scrutiny. *Weinberger v. Great N. Nekoosa Corp.*, 925 F.2d 518, 524 (1st Cir. 1991) (clear sailing agreements are evidence of impermissible collusion in settlements and require additional scrutiny); *Malchman v. Davis*, 761 F.2d 893, 906-08 (2d Cir.

1985) (Newman, J., concurring) ("It is unlikely that a defendant will gratuitously accede to the plaintiffs' request for a 'clear sailing' clause without obtaining something in return. That something will normally be at the expense of the plaintiff class"); *BTZ, Inc. v. Great N. Nekoosa Corp.*, 47 F.3d 463, 465 (1st Cir. 1995); *Levit v. Filmways, Inc.*, 620 F. Supp. 421, 423-24 (D. Del. 1985).

26.    No action can be maintained unless the derivative shareholder fairly and adequately represents the interests of shareholders. Rule 23-1(a). Because this suit is brought to benefit the attorneys, rather than the interests of shareholders, this court is obligated to dismiss the action.

## CONCLUSION

27.    Wherefore Objector/Intervenor Theodore H. Frank respectfully requests this court to (a) grant his motion for intervention; (b) reject the proposed settlement; and (c) dismiss the action with prejudice pursuant to Rule 23-1(a).

Dated:  August 16, 2010

Respectfully submitted,

*/s/Theodore H. Frank*
Theodore H. Frank
901 N. Monroe St. #1007
Arlington, VA 22201-2358
Telephone:  (703) 243-3090
Email:  tedfrank@gmail.com
*In pro per*

## PROOF OF SERVICE

I declare that:

I am employed in the state of Illinois. I am over the age of 18 years and not party to the within action; my office address is 312 N. May Street, Suite 100, Chicago, Illinois 60607.

On August 16, 2010, I served the attached:

MOTION TO INTERVENE AND OBJECTION OF THEODORE H. FRANK; AND MOTION TO DISMISS UNDER RULE 23.1(a)

__X__    By First-Class Mail in that I caused such envelope(s) to be delivered via First-Class Mail to the addressee(s) designated.

Clerk of the Court
United States District Court
Northern District of Illinois
Everett McKinley Dirksen
United States Courthouse
219 South Dearborn Street
Chicago, IL 60604

Christopher Q. King
Ramji Kaul
SONNENSCHEIN, NATH &
ROSENTHAL LLP
233 South Wacker Drive
Suite 7800
Chicago, Illinois 60606

Matthew T. Hurst
SUSMAN HEFFNER & HURST LLP
20 South Clark Street, Suite 600
Chicago, Illinois 60603

Kenneth J. Vianale, Esq.
VIANALE & VIANALE LLP
2499 Glades Road, Suite 112
Boca Raton, FL 33431
(561) 392-4750

Paul Vizcarrondo, Jr.
Jonathan M. Moses
Amanda L. Straub
Jonathon R. La Chapelle
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, New York 10019

Ronen Sarraf
Joseph Gentile
SARRAF GENTILE LLP
116 John Street, Suite 2310
New York, New York 10038

I declare under penalty of perjury that the foregoing is true and correct.

This 16th day of August, 2010.

_/s/ M. Frank Bednarz_
M. Frank Bednarz

---

Proof of Service – Motion to Intervene and Objection of Theodore H. Frank
No. 1:09-CV-05314

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ROBERT F. BOOTH TRUST and RONALD GROSS, derivatively on behalf of nominal defendant SEARS HOLDING CORPORATION, | No. 1:09-CV-05314 |
| | Judge Ronald A. Guzmán |
| *Plaintiffs,* | |
| v. | [PROPOSED] PLEADING OF OBJECTOR/INTERVENOR THEODORE H. FRANK |
| WILLIAM C. CROWLEY, *et al.,* | |
| *Defendants,* | |
| and | |
| SEARS HOLDING CORPORATION, | |
| *Nominal Defendant.* | |
| THEODORE H. FRANK, | |
| *Objector/Intervenor.* | |

**F I L E D**
8-16-2010
AUG 16 2010 JH

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT.

1.    On information and belief, Plaintiffs Robert F. Booth Trust and Ronald Gross are shareholders of Sears Holding Corp. ("Sears").

2.    Nominal Defendant Sears is a Delaware corporation with principal executive offices located in Hoffman Estates, Illinois.

3.    Defendants William C. Crowley, Edward S. Lampert, Steven T. Mnuchin, Richard C. Perry, Ann N. Reese, Kevin B. Rollins, Emily Scott, and Thomas J. Tisch are directors or former directors of Sears.

4.      Plaintiffs allege a cause of action for injunctive relief under 15 U.S.C. § 26, and there is therefore federal jurisdiction under 28 U.S.C. § 1337.

5.      Venue is laid in this District pursuant to 15 U.S.C. § 22 and 28 U.S.C. § 1391.

6.      Objector/Intervenor Theodore H. Frank is a shareholder of Sears Holding Corporation. He purchased 100 shares on March 9, 2010. He is a citizen of Virginia.

7.      Frank is entitled to intervene in this action as a matter of right pursuant to Fed. R. Civ. Proc. 24(a). He "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect [his] interest." Existing parties do not adequately represent Frank's interest.

8.      The derivative shareholder plaintiffs have brought litigation that adversely affects the corporation and has negotiated a self-serving settlement that provides zero for shareholders.

9.      The derivative shareholder plaintiffs therefore do not fairly and adequately represent the interests of shareholders under Fed. R. Civ. Proc. 23-1(a).

### PRAYER FOR RELIEF

Objector/Intervenor Theodore H. Frank respectfully requests this court dismiss the action with prejudice pursuant to Fed. R. Civ. Proc. 23-1(a).

Dated:  August 16, 2010

Respectfully submitted,

*/s/Theodore H. Frank*
Theodore H. Frank
901 N. Monroe St. #1007
Arlington, VA 22201-2358
Telephone: (703) 203-3848
Email: tedfrank@gmail.com
*In pro per*

**139**

## PROOF OF SERVICE

I declare that:

I am employed in the state of Illinois.  I am over the age of 18 years and not party to the within action; my office address is 312 N. May Street, Suite 100, Chicago, Illinois 60607.

On August 16, 2010, I served the attached:

[PROPOSED] PLEADING OF OBJECTOR/INTERVENOR THEODORE H. FRANK

__X__   By First-Class Mail in that I caused such envelope(s) to be delivered via First-Class Mail to the addressee(s) designated.

Clerk of the Court
United States District Court
Northern District of Illinois
Everett McKinley Dirksen
United States Courthouse
219 South Dearborn Street
Chicago, IL 60604

Christopher Q. King
Ramji Kaul
SONNENSCHEIN, NATH &
ROSENTHAL LLP
233 South Wacker Drive
Suite 7800
Chicago, Illinois 60606

Matthew T. Hurst
SUSMAN HEFFNER & HURST LLP
20 South Clark Street, Suite 600
Chicago, Illinois 60603

Kenneth J. Vianale, Esq.
VIANALE & VIANALE LLP
2499 Glades Road, Suite 112
Boca Raton, FL 33431
(561) 392-4750

Paul Vizcarrondo, Jr.
Jonathan M. Moses
Amanda L. Straub
Jonathon R. La Chapelle
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, New York 10019

Ronen Sarraf
Joseph Gentile
SARRAF GENTILE LLP
116 John Street, Suite 2310
New York, New York 10038

I declare under penalty of perjury that the foregoing is true and correct.

This 16th day of August, 2010.

_/s/ M. Frank Bednarz_
M. Frank Bednarz

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ROBERT F. BOOTH TRUST and RONALD GROSS, derivatively on behalf of nominal defendant SEARS HOLDINGS CORPORATION, | ) ) ) ) | No. 1:09-cv-05314 |
| Plaintiff, | ) ) | Hon. Ronald A. Guzmán |
| v. | ) ) | |
| WILLIAM C. CROWLEY, EDWARD S. LAMPERT, STEVEN T. MNUCHIN, RICHARD C. PERRY, ANN N. REESE, KEVIN B. ROLLINS, EMILY SCOTT, and THOMAS J. TISCH, | ) ) ) ) ) ) | |
| Defendants, | ) ) | |
| and | ) ) | |
| SEARS HOLDINGS CORPORATION, | ) ) | |
| Nominal Defendant. | ) ) | |

## PLAINTIFFS' OPPOSITION TO THE MOTION TO INTERVENE AND OBJECTION OF THEODORE H. FRANK AND MOTION TO DISMISS UNDER RULE 23.1(A)

VIANALE & VIANALE LLP
Kenneth J. Vianale
2499 Glades Road, Suite 112
Boca Raton, Florida 33431

SARRAF GENTILE LLP
Ronen Sarraf
Joseph Gentile
116 John Street, Suite 2310
New York, New York 10038

*Lead Counsel for Plaintiffs*

SUSMAN HEFFNER & HURST LLP
Matthew T. Hurst
20 South Clark Street, Suite 600
Chicago, Illinois 60603

*Liaison Counsel for Plaintiffs*

Plaintiffs Robert F. Booth Trust and Ronald Gross respectfully submit this opposition to the Motion to Intervene and Objection of Theodore H. Frank; And Motion to Dismiss Under Rule 23.1(a) (the "Motion").

## **PRELIMINARY STATEMENT**

Plaintiffs brought this shareholder derivative action on behalf of nominal defendant Sears Holding Corporation ("Sears") in order to enforce Section 8 of the Clayton Act, 15 U.S.C. § 19 ("Section 8"), and remove William C. Crowley ("Crowley") and Ann N. Reese ("Reese") from the Sears board.  Plaintiffs alleged that Crowley and Reese served on the boards of competing companies in violation of Section 8.[1]  Pursuant to the Settlement: (1) Crowley has stepped down as an officer and director of Sears; (2) a new independent director unaffiliated with the majority shareholder, ESL Investments, Inc., owned by Edward S. Lampert ("Lampert"), will be added to the board before the next election; (3) Reese will abide by a "firewall" that prevents her from considering or voting on operations related to women's apparel and footwear; (4) Lampert will also abide by a firewall preventing his consideration of or voting on matters relating to Sears' auto parts and auto repair service businesses; and (5) Sears will consider adopting more corporate governance measures to ensure compliance with Section 8.  The Settlement achieves most of the relief Plaintiffs sought.

Theodore H. Frank ("Frank") objects to the Settlement, seeks to intervene in the action and simultaneously dismiss it.  The Court should deny the motion to intervene because: (1) Frank has not met the standards for mandatory or permissive intervention under Rule 24; and (2) Frank's stated intention to appeal whether intervention is granted or not renders his motion moot.

---

[1]  Crowley sits on the boards of AutoZone, Inc. and AutoNation, Inc., which compete with Sears in the sale of auto products and auto repair services, respectively, and Reese sits on the board of Jones Apparel Group, which competes with Sears in the sale of women's, men's and children's clothing and women's accessories. Complaint, DE 45, ¶¶ 22-52.

Frank's objection to the Settlement – that it confers no benefit on Sears – and his request that the action be dismissed, are both without support.

First, this Settlement achieves the basic goal of Section 8 and warrants approval. As the Seventh Circuit has explained: Section 8 "reflects a public interest in preventing directors from serving in positions which involve either a potential conflict of interest or a potential frustration of purpose." *Protectoseal v. Barancik*, 484 F.2d 585, 589 (7th Cir. 1973) (copy attached hereto as Exhibit A). The Settlement does precisely that, by removing Crowley, adding a new independent director, and limiting the participation of Reese and Lampert in areas in which a conflict might arise. The Settlement also brings the Company into compliance with the U.S. antitrust laws and avoids the possibility of litigation with the government. This is a real benefit given that Sears Roebuck & Co., now a wholly-owned Sears subsidiary, was twice sued by the government for violating Section 8. *See U.S. v. Sears Roebuck & Co.,* 112 F. Supp. 336 (S.D.N.Y. 1952); *U.S. v. Sears Roebuck & Co.*, 111 F. Supp. 614, 621 (S.D.N.Y. 1953).

In such instances, the law is clear that injunctive or non-monetary relief that is of benefit to a corporation warrants settlement approval. *See Mills v. Electro-Auto Lite Co.*, 396 U.S. 375, 391-92 (1970). This is particularly true when the purpose of a settlement is to vindicate a federal statute's purpose. *See id.* at 396. With respect to Section 8, the Seventh Circuit has expressly held that corporations may sue under that statute to remove an interlocking director from board service because of the importance of Section 8 compliance to corporations. *Protectoseal,* 484 F.2d at 588.

Second, Frank's argument that the Settlement is without value because enforcement of Section 8 is unlikely is without merit. Section 8 is still law, its financial requirements and thresholds are updated annually by the Department of Commerce, the U.S. government continues

to monitor companies to ensure their compliance with Section 8, and no one can assure Sears

that it may violate Section 8 with impunity.  Moreover, non-compliance with the U.S. antitrust

laws violates Sears' own corporate governance objectives and guidelines.[2]  Frank advocates for

what any rational shareholder would reject: management that knowingly breaks federal law by

colluding and conspiring in the name of higher profits.

Finally, Frank's motion to dismiss is baseless, contrary to this Court's prior denial of

Defendants' motion to dismiss, unduly prejudicial to Plaintiffs given the late stage of the

proceedings, and contrary to the overwhelmingly positive support the Settlement has received

from Sears shareholders.  Indeed, of the 100,000 notices mailed to shareholders regarding the

approval of this Settlement, only eight objections were received.   Accordingly, the Settlement

should be approved and Frank's objections and motion to dismiss should be denied.

## ARGUMENT

### I.  FRANK HAS NOT SATISFIED THE REQUIREMENTS TO INTERVENE

#### A.      Intervention as of Right Should be Denied

Frank does not meet the standards for intervention as of right under Rule 24(a)(2).[3]

Intervention of right is mandatory under Rule 24(a)(2), only when four requirements have been

satisfied:  "'(1) timeliness, (2) an interest relating to the subject matter of the main action, (3)

potential impairment of that interest if the action is resolved without the intervenor, and (4) lack

of adequate representation by existing parties.'" *Sachs v. Reef Aquaria Design Inc.*, No. 06 C

1119, 2007 U.S. Dist. LEXIS 75247 at *3 (N.D. Ill. Oct. 5, 2007)(Guzmán, J.) (*quoting Reid L.*

---

[2]   *See www.searsholdings.com/govern/code.htm#ANTITRUST*).

[3]   Rule 24(a)(2) provides mandatory intervention to one who: "claims an interest relating to the property or transaction  that is the subject of the action, and is so situated that disposing of the action  may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."

*v. Ill. State Bd. of Educ.*, 289 F.3d 1009, 1017 (7th Cir. 2002)). Failure to satisfy even one of the

requirements for mandatory intervention warrants denial of the motion. *SEC v. Homa,* No. 99 C

6895, 2000 U.S. Dist. LEXIS 14582 at *7 (N.D. Ill. Sept. 29, 2000)(Guzmán, J.)(*citing*

*Commodity Futures Trading Comm'n v. Heritage Capital Advisory Servs., Ltd.*, 736 F.2d 384,

386 (7th Cir. 1984)).

### 1. The Motion is Untimely

This action was filed nearly a year ago, on August 28, 2009. Frank says that Sears' proxy

statement filed with the SEC on April 6, 2010, advised shareholders of the Settlement. *See*

Motion at 8, ¶21. In his objection filed in June, Frank told the Court: "I have elected with my

broker to receive shareholder notice over e-mail." Objection of Theodore H. Frank, 6/29/10, at

¶10. As an example, Frank notes that he received the proxy statement notice of the "2010 Metro

Bancorp, Inc. Annual Meeting of Shareholders" by e-mail. *Id.* Thus, with respect to Sears,

Frank either knew of the Settlement in this case when it was publicly announced on April 6,

2010, or should have known about it at that time. The Settlement was also the subject of a half-

page article in *The Wall Street Journal* on April 7, 2010.

The length of time Frank *knew or should have known* of his interest in the case is relevant

to the timeliness inquiry. *See Sachs*, 2007 U.S. Dist. LEXIS at *3-*4; *Central States, Southeast*

*and Southwest Areas Pension Fund v. Gopher News Co.*, 542 F. Supp.2d 823, 828-29 (N.D. Ill.

2008); *In re Old Bank One Shareholders Sec. Litig.*, 2007 U.S. Dist. LEXIS 94776 at *5 (N.D.

Ill. Dec. 28, 2007). Frank did not move for intervention until August 16, 2010, forty-nine days

after the date, June 28, 2010, he admits he received actual notice of the Settlement. Frank

Objection, 6/29/10 at ¶2. As this Court noted in *Sachs*, "the Seventh Circuit has held that

intervention was untimely and inexcusable where the applicant sought to intervene *four months*

*after the action had been filed and forty-nine days* after the applicant had become aware of her

interest in the case." *Sachs*, 2007 U.S. Dist. LEXIS 75247 at *4 (emphasis added)(*quoting Fed.

Deposit Ins. Corp. v. Hanrahan*, 612 F.2d 1051, 1053 (7th Cir. 1980)).

Intervention will also cause undue prejudice to Plaintiffs. Frank seeks intervention for

the purpose of moving to dismiss the action. Motion, Ex. A (prayer for relief requests dismissal

of action). Plaintiffs have already litigated a motion to dismiss, which the Court denied. DE 65.

The parties and the Court should not be put to the task of another motion to dismiss at this stage,

after settlement has been reached. Frank, on the other hand will suffer no prejudice; his

objection to the Settlement is of record, and he says he will appeal whether or not this Court

grants his motion to intervene. *See* Motion at 5 ("Frank will appeal regardless of whether the

motion to intervene is granted.").

### 2. Frank Lacks Standing and Fails to Provide a Proper Pleading

Under Rule 23.1 and Delaware law, to have standing, Frank must be a shareholder of

Sears at the time the transaction complained of took place and when the action was brought.

Rule 23.1(b)(1); *Weinhaus v. Gale*, 237 F.2d 197, 199 (7th Cir. 1956). Frank purchased 100

shares of Sears stock on March 9, 2010. *See* Motion at 2. Plaintiffs, however, allege Section 8

was violated in *2009*, when the board nominated Crowley and Reese for reelection to the board

that year. *See* Complaint , DE 45, at ¶¶57-59. Because Frank did not own the stock in 2009, he

has no standing to pursue the claims Plaintiffs allege, nor to dismiss claims he does not possess

the power to bring.

Frank also fails to attach a proper pleading to his Motion. Under Rule 24, a motion to

intervene must be "accompanied by a pleading that sets out a *claim or defense* for which

intervention is sought." Rule 24(c), Fed. R. Civ. P. (emphasis added). Frank's two-page

"Proposed Pleading" sets forth no claim.  Insofar as the exhibit may be construed as a defense, it contains no facts supporting a request for dismissal with prejudice.  It states only that Plaintiffs are inadequate under Rule 23.1(a) because the litigation "adversely affects the corporation" and because the Settlement provides no value to shareholders.  Motion, Ex. A at ¶¶ 8-9.  The exhibit contains no factual allegations to support either assertion.  But the exhibit does show Frank's lack of standing; it alleges that Frank did not purchase any Sears shares until March 9, 2010, nearly a year after the 2009 election of directors that Plaintiffs challenge. *Id.* at ¶6.

### 3.    Frank's Interest Will Not be Impaired if Intervention is Denied

Frank has already twice lodged his objections to the Settlement and states that he intends to appeal whether or not his motion to intervene is granted.  Motion at 5.  Under these circumstances, Frank has not shown impairment to his interest (if any, considering his lack of standing discussed above) if intervention is denied.

### 4.    Frank Has Not Shown that Plaintiffs Are Inadequate

Frank must establish "with fair probability that the [plaintiffs'] representation was inadequate." Rule 24, Advisory Committee Notes (1963).  Frank has made no showing of inadequacy sufficient to warrant intervention.  Motion at 5- 7.  He has not discredited the truth of Plaintiffs' allegations that the directorships of Crowley and Reese violated Section 8.  Nor does he contend that Plaintiffs or their counsel failed to diligently prosecute the case.  His sole argument is that Sears is better off ignoring Section 8.  This argument, however, runs *contra* to the holding in *Protectoseal v. Barancik*, 484 F.2d at 588, and ignores Sears' own judgment that the Settlement confers substantial benefits on the corporation.  *See* Stipulation of Settlement, DE 82-1, ¶ N).  Frank fails to meet his burden on inadequacy of representation.

### B.      Frank Should not be Granted Permissive Intervention

Permissive intervention may be allowed in the trial court's discretion when the movant "has a claim or defense that shares with the main action a common question of law or fact." Rule 24(b)(1) & (B), Fed. R. Civ. P.; *Iwork Software, LLC.v. Corporate Express, Inc.*, No. 02 C 6355, 2003 U.S. Dist. LEXIS 19686 at *14 (N.D. Ill. Nov. 4, 2003)(Guzmán, J.)  "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  Rule 24(b)(3), Fed. R. Civ. P.

Frank has no claim or defense that shares a common question of law or fact with the case. Frank shares no claim in common with Plaintiffs.  He has no standing to assert the claims alleged in the Complaint, as discussed above, and in any event, he seeks dismissal of the case.  Nor does he share any question of law or fact in common with the defense of the case. As set forth in the Stipulation of Settlement, Defendants agree that the Settlement confers a benefit on Sears and its shareholders -- a proposition Frank rejects.

Permissive intervention would also unduly delay this action and the adjudication of Plaintiffs' rights.  Plaintiffs filed a meritorious action and overcame Defendants' motion to dismiss months ago.  Thereafter, the Settlement was reached after an extensive negotiation and confirmatory discovery.  Nevertheless, Frank now wishes to litigate the proposed motion to dismiss that he attaches to his motion to intervene. Plaintiffs would be unduly prejudiced by having to undergo a second motion to dismiss at this stage of the proceedings.  Frank on the other hand, is adequately protected by the objection he has lodged.  Frank's statement that he will appeal the Court's ruling on the Settlement regardless of whether he is granted intervention shows he will suffer no prejudice if intervention is denied.

## II.  FRANK'S OBJECTIONS TO THE SETTLEMENT ARE WITHOUT MERIT

Frank contends that the Settlement confers no benefit on Sears because the Company's true interest lies not in complying with Section 8, but in colluding with other companies to unfairly raise prices on consumers. *See* Motion at 6. According to Frank, Sears can thereby rack up "unfair" and "excessive" profits, which greatly benefits shareholders. *Id.* Frank argues that Sears can and should ignore Section 8 entirely, because it will only suffer harm if it is unable to elude Government detection and prosecution, which Frank thinks is unlikely. *Id.* Frank accordingly argues that a derivative suit like this one that seeks compliance with Section 8 is by definition meritless. *Id.* at 9. As discussed below, Frank's position is inconsistent with settled case law and sound corporate practice.

### A.    The *Protectoseal* Decision Shows the Settlement Has Substantial Value

*Protectoseal* dispenses with Frank's argument that Section 8 was not intended to protect corporations from wrongdoing directors and thus the Settlement provides no value to Sears. In that case, Protectoseal Company sued to remove a director, Barancik, from its board because he simultaneously sat on the board of Protectoseal's competitor, Justrite Manufacturing Company. Protectoseal alleged its injury took "the form of exposure to possible treble damage liability to third parties who might charge that plaintiff and Justrite were engaged in a conspiracy in restraint of trade, as well as injury by reason of defendant's access to confidential information." *Protectoseal*, 484 F.2d at 588. The trial court granted summary judgment to Protectoseal, enjoining Barancik from continued membership on the board and from voting any of his shares for the election of directors. *Id.* at 587. On appeal, Barancik contended that plaintiff had no standing because ***"the potential liability is illusory"*** and he denied "any intent to receive or utilize confidential information concerning plaintiff's business." *Id.* (emphasis added).

The Seventh Circuit summarily rejected this argument:

> We find it unnecessary to appraise these factual matters for we
> have no doubt that a corporation has standing to request a federal
> court to remove a director whose service on its board violates an
> Act of Congress. The corporation itself is a potential defendant in
> litigation which the government may initiate to enforce § 8. *See
> United States v. W.T. Grant Co.*, 345 U.S. 629, 630, 634 n. 9, 73
> S.Ct. 894, 97 L.Ed. 1303. ***Even if that were not the case, the
> corporation surely has sufficient interest in the legality of its
> directors' tenure to justify litigation such as this.*** There is no
> merit to defendant's standing argument; if it is illegal for him to
> serve on plaintiff's board, plaintiff has a right to have him
> removed.

484 F.2d at 588 (emphasis added).

*Protectoseal* makes it clear that a corporation like Sears has a legitimate "interest in the

legality of its directors' tenure." Frank's argument that Sears' real interest lies in colluding with

other companies like AutoZone, AutoNation and Jones Apparel, has no basis in the law.

In addition, there is a prior history here that Frank has ignored. Sears Roebuck – now a

wholly-owned subsidiary of Sears after the 2005 merger with K-Mart – was twice sued by the

Government for violating Section 8. *See U.S. v. Sears Roebuck & Co.*, 112 F. Supp. 336

(S.D.N.Y. 1952) (shortly after Government sued, Sears Roebuck director John M. Hancock

voluntarily resigned from the board of Bond Stores, Inc.); *U.S. v. Sears Roebuck & Co.*, 111 F.

Supp. 614 (S.D.N.Y. 1953) (granting Government summary judgment against Sears Roebuck

and Sidney J. Weinberg, a director of both Sears Roebuck and The B.F. Goodrich Company, for

violating Section 8). Against this background, Frank's argument that Sears should ignore

Section 8 is not well grounded, to say the least. On the contrary, Sears implicitly rejects these

principles in its Corporate Governance statements.[4]

---

[4] *See* Sears' website: www.searsholdings.com/govern/code.htm#ANTITRUST) (For officers and
employees: "You are expected to comply with [the antitrust] laws at all times";

Further, the Department of Commerce updates the financial requirements and thresholds contained in Section 8 annually[5] and the FTC has recently stepped up enforcement of Section 8. On October 12, 2009, the FTC announced after its two-year investigation of Apple and Google, that Arthur D. Levinson, a director of both companies, was stepping down from Google's board. Earlier in the year, Apple had announced that Eric E. Schmidt, also a director of both companies, was stepping down from Apple's board. FTC Chairman Jon Leibowitz announced: "Google, Apple, and Mr. Levinson should be commended for recognizing that overlapping board members between competing companies raise serious antitrust issues and for their willingness to resolve our concerns without the need for litigation . . . . **Beyond this matter, we will continue to monitor companies that share board members and take enforcement actions where appropriate.**" Statement of FTC Chairman Jon Leibowitz, October 12, 2009 (available at *www.ftc.gov/opa/2009/10/google.shtm*) (emphasis added).

### B.    Non-Monetary Benefits and Vindication of a Federal Statute's Purpose Are Sufficient Settlement Consideration

The law is well-settled that non-monetary benefits to a corporation and its shareholders are adequate consideration for a settlement and for the award of attorneys' fees to plaintiffs' counsel. In *Mills v. Electric Auto-Lite Co.*, the Supreme Court held that a shareholder's derivative action that vindicated a federal statutory policy "rendered a substantial service to the corporation and its shareholders. *Id.* at 396. In *Mills*, the plaintiff brought a derivative action alleging a violation of Section 14(a) of the Securities Act of 1934, based on the corporation's failure to disclose in the proxy disseminated to shareholders seeking their vote on a proposed

---

www.searsholdings.com/govern/guidelines.htm (For board members: "The Board of Directors … is committed to the maximization of stockholder value while adhering to all applicable laws and observing the highest ethical standards.").

[5]    The most recent updates to Section 8 were announced on January 19, 2010, and were published by the FTC in the Federal Register on January 21, 2010.  15 U.S.C. § 19(a)(5).

merger, that the directors recommending that shareholders vote to approve the merger were

controlled by the company's majority stockholder. *Id.* at 378. The corporation ultimately made

the proxy disclosures plaintiff complained about.

The Supreme Court held that the plaintiff had conferred a substantial benefit on the

corporation and its shareholders, and was entitled to legal fees from the corporation, even though

the suit had not produced and might never produce any monetary recovery. *Id.* at 392. The

Court held that "in vindicating the statutory policy [of full disclosure], petitioners have rendered

a substantial service to the corporation and its shareholders. *Id.* at 396. The Court held that

private derivative actions like this one furnished "a benefit to all shareholders by providing an

important means of enforcement of the proxy statute." *Id.* The Court also held that in

shareholder derivative actions like this one, the corporation was the proper party to pay the

plaintiff's attorney's fees and expenses because "the expenses incurred by one shareholder in the

vindication of a corporate right of action can be spread among all shareholders through an award

against the corporation, regardless of whether an actual money recovery has been obtained in the

corporation's favor." *Id.* at 394.

Here, the federal interest is clear and strong. Section 8 "reflects a public interest in

preventing directors from serving in positions which involve either a potential conflict of interest

or a potential frustration of purpose." *Protectoseal*, 484 F.2d at 589. The terms of the

Settlement vindicate the federal purpose underlying Section 8, namely, removing conflicts of

interest and frustration of the antitrust law's purpose of free and open competition. Indeed, the

Supreme Court in *Mills* commented favorably on the substantial benefit conferred by a

stockholder who had sued derivatively for a judicial declaration that the election of some of the

corporation's directors was illegal. *Mills,* 396 U.S. at 395 (discussing stockholder action in

*Bosch v. Meeker Cooperative Light & Power Assn.*, 257 Minn. 362, 363, 101 N.W.2d 423, 425 (1960)). *Accord Koppel v. Wein,* 743 F.2d 129, 134-35 (2d Cir. 1984); *Kopet v. Esquire Realty Co.*, 523 F.2d 1005, 1008 (2d Cir. 1975).

Frank's argument that Sears' stock price did not rise in the days following the announcement of the Settlement in April 2010, Motion at 8, is irrelevant. To begin with, Frank himself concedes he does not know if there were other market factors affecting the stock price. *Id.* More importantly, the analysis has no support in the applicable law. The Supreme Court has recognized that the benefit conferred on a corporation may not be capable of expression in monetary terms. *Mills*, 396 U.S. at 395. The *Mills* Court stated that many courts "have acknowledged that a corporation may receive a "substantial benefit" from a derivative suit, justifying an award of counsel fees, regardless of whether the benefit is pecuniary in nature." *Id.* That is why the *Mills* Court held that vindication of a federal statutory policy is enough to show a substantial service had been rendered to the corporation and its shareholders. *Mills*, 396 U.S. at 396. *Accord Tandycrafts, Inc. v. Initio Partners*, 562 A.2d 1162, 1165 (Del. 1989) ("the [corporate] benefit need not be measurable in economic terms").

Frank's opposition to plaintiffs' request for attorneys' fees does not address the *Mills* decision or its progeny. *Mills* held that in the circumstances we have here, the Court can require the corporation to pay attorneys' fees because that is the most equitable way in a derivative action to "spread among all shareholders" the cost of the benefit conferred on the corporation. *Mills*, 396 U.S. at 394.[6]

---

[6] Frank's vow that he will not seek attorney's fees for himself, Motion at 4-5, must be taken with a grain of salt. Under well-settled law, Frank would not be entitled to a fee in any event. *Zucker v. Westinghouse Elec.*, 374 F.3d 221, 226 (3d Cir. 2004) (shareholder objector who is also an attorney appearing *pro se* cannot recover attorney's fees in a derivative action because the conflict of interest might lead him to take actions contrary to the corporation's best interest);

## CONCLUSION

For the foregoing reasons, the Court should deny Frank's motion to intervene, overrule

his objections, deny his motion to dismiss, and approve the Settlement.

Dated: August 24, 2010                              Respectfully submitted,

                                                   /s/ Matthew T. Hurst

**VIANALE & VIANALE LLP**                          **SUSMAN HEFFNER & HURST LLP**
Kenneth J. Vianale                                 Matthew T. Hurst
2499 Glades Road, Suite 112                        20 South Clark Street, Suite 600
Boca Raton, Florida 33431                          Chicago, Illinois 60603
T: 561-392-4750                                    T: 312-346-3466
F: 561-392-4775                                    F: 312-346-2829

**SARRAF GENTILE LLP**                             *Liaison Counsel for Plaintiffs*
Ronen Sarraf
Joseph Gentile
116 John Street, Suite 2310
New York, New York 10038
T: 212-868-3610
F: 212-918-7967

*Lead Counsel for Plaintiffs*

---

*see UFCW Local 880-Retail Food Employers Joint Pension Fund v. Newmont Mining Corp.*, No.
08-1423, 2009 U.S. App. LEXIS 20463 at **18 (10th Cir. Sept. 11, 2009)(denying fees to
objector-attorney appearing pro se in class action because "[a] party must first incur attorney fees
before he or she is entitled to an attorney-fee award."); *In re Texaco Inc. Shareholder Derivative
Litig.*, 123 F. Supp.2d 169, 173-74 (S.D.N.Y. 2000) (*pro se* attorney shareholder cannot seek
legal fees for objecting to derivative settlement).



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ROBERT F. BOOTH TRUST and RONALD GROSS, derivatively on behalf of nominal defendant SEARS HOLDING CORPORATION, | No. 1:09-CV-05314 |
| *Plaintiffs,* | Judge Ronald A. Guzmán |
| v. | REPLY IN SUPPORT OF MOTION TO INTERVENE AND MOTION TO DISMISS OF THEODORE H. FRANK |
| WILLIAM C. CROWLEY, *et al.,* | |
| *Defendants,* | Date: September 10, 2010 Time: 9:30 a.m. |
| and | |
| SEARS HOLDING CORPORATION, | **F I L E D** |
| *Nominal Defendant.* | AUG 25 2010 JH |
| THEODORE H. FRANK, | AUG 25 2010 MICHAEL W. DOBBINS |
| *Objector/Intervenor.* | CLERK, U.S. DISTRICT COURT |

Under Rule 23.1(a), a "derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of shareholders or members who are similarly situated." The plaintiffs have brought a strike suit imposing great expense upon the corporation to seek an injunction against a director holding office—all supposedly in the name of preventing the corporation from having to face a lawsuit that would seek an injunction against a director holding office. Plaintiffs seem to have mistaken the infamous Vietnam-War-era adage "We had to destroy the village in order to save it" as a legitimate argument for self-serving

---

Reply of Theodore H. Frank
No. 1:09-CV-05314                 1

**155**

Case: 1:09-cv-05314 Document #: 124 Filed: 08/25/10 Page 2 of 9 PageID #:1687
Case: 10-3285     Document: 38     Filed: 03/12/2012     Pages: 243

litigation. Plaintiffs have identified no basis on which this court can find that the plaintiffs' actions "fairly and adequately represent the interests of shareholders." The case must be dismissed.

In Theodore H. Frank's initial motion, he relied heavily on three cases: *Flying J., Inc. v. Van Hollen*, 578 F.3d 569 (7th Cir. 2009) (motion to intervene for purposes of appeal not untimely); *Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998) (dicta stating that shareholder derivative settlement where attorneys received half of pecuniary benefit was problematic under Rule 23(a)); and *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477 (1977) (plaintiff must show "antitrust injury" to bring action under Clayton Act).     Remarkably, plaintiffs' opposition brief does not mention, much less attempt to distinguish, any of these cases.

### I.     The Motion to Intervene Should Be Granted.

#### A.     The Motion to Intervene Is Timely.

Frank brings his motion to intervene solely to preserve his right of appeal in the event of an adverse ruling on his objection. (Frank does not concede that a successful motion to intervene is a prerequisite to standing to appeal, but notes that the question has not been fully resolved by the Seventh Circuit, and thus is protecting his rights with this belt-and-suspenders motion.) Frank's motion is thus timely under *Flying J., Inc. v. Van Hollen*, 578 F.3d 569 (7th Cir. 2009), which requires the granting of such a motion to protect the rights of the intervenor on appeal, even if made after final judgment was issued. Plaintiffs make no argument to the contrary, instead relying on a district court case that predates *Flying J*, and is thus obviously superseded to the extent it contradicts it. Plaintiffs do not contend that *Flying J* does not apply to Frank's motion to intervene, and do not dispute that *Flying J* requires this Court to grant Frank's motion.

---

**156**

Case: 1:09-cv-05314 Document #: 124 Filed: 08/25/10 Page 3 of 9 PageID #:1688
Case: 10-3285    Document: 38    Filed: 03/12/2012    Pages: 243

Nor can plaintiffs demonstrate any prejudice from the motion to intervene. Frank is raising no arguments as an intervenor that he is not raising as an objector. As an objector, Frank is entitled to object that the plaintiffs fail to meet the standard of Rule 23.1(a), and that the court must therefore dismiss the action. *See, e.g., Felzen, supra.* The fact then that Frank also moves to dismiss as an intervenor does not demonstrate prejudice. Plaintiffs protest that the court has already ruled upon a motion to dismiss. But this Court only ruled upon the directors' motion to dismiss under Fed. R. Civ. Proc. 23.1(b); there has been no ruling under Fed. R. Civ. Proc. 23.1(a), which Frank argues requires the dismissal of this action. Under the Court's scheduling order, Frank was entitled to raise his objections so long as they were served by August 20; the motion to intervene and supporting arguments were raised on August 16; there is therefore no prejudice to plaintiffs, because the very same arguments are being raised in Frank's objection.

### B.    Frank Has Standing.

Plaintiffs acknowledge that Frank owned shares on March 9, 2010. William Crowley and Ann Reese were directors of Sears Holding after Frank purchased shares. Moreover, the transaction of which Frank complains is the settlement made in April 2010 that violates Rule 23.1; plaintiffs do not dispute that Frank has the right to object to the settlement under Rule 23.1. Since the motion to intervene parallels Frank's objection, and is made solely for the purposes of preserving his appellate rights, Frank has standing.

Contrary to plaintiffs' claims, Frank has set out a pleading that provides a "claim or defense": the pleading states the defense that the present suit should be dismissed for failure to meet the standards of Fed. R. Civ. Proc. 23.1(a). This is sufficient: there is no requirement that

157

Case: 1:09-cv-05314 Document #: 124 Filed: 08/25/10 Page 4 of 9 PageID #:1689
Case: 10-3285    Document: 38    Filed: 03/12/2012    Pages: 243

Frank's pleading state additional facts with particularity, especially when Frank's legal and factual

arguments in support of that defense are not secret. *See* Fed. R. Civ. Proc. 8.

### C.    Frank's Interest May Be Impaired by Denial of His Motion to Intervene.

The Seventh Circuit has not yet resolved whether *Felzen*'s requirement of intervention to

preserve appellate standing in a Rule 23.1 case survives *Devlin v. Scardeletti*, 536 U.S. 1 (2002),

which holds that a Rule 23 objector can appeal without moving to intervene. If *Felzen* is still

good law, then Frank will not have appellate standing to appeal an adverse ruling on his objection

without intervention. The fact that Frank will appeal a denial of a motion to intervene does not

mean that Frank's interest is not impaired by that denial; it just means that there is no unfair

prejudice to the plaintiffs from granting Frank's motion to intervene. Plaintiffs' brief fails to

acknowledge either *Felzen* or *Devlin* in arguing that Frank's interest will not be impaired.

### D.    Plaintiffs Are Inadequate to Raise Frank's Issues.

The plaintiffs have negotiated a settlement that benefits themselves and their attorneys at

the expense of shareholders. Frank wishes to challenge this under Fed. R. Civ. Proc. 23.1(a).

The defendants are prohibited from making this challenge by virtue of their settlement, and it is

quite obvious that the plaintiffs are not going to admit that they fail to meet the Rule 23.1(a)

standards. Frank therefore must intervene to ensure that this issue is raised on appeal. Again, this

scenario is precisely on point with *Flying J*, and, again, plaintiffs do not address *Flying J* in their

opposition. *See also Devlin*, 536 U.S. at 20 (Scalia, J., dissenting) ("nonnamed class members

will typically meet the requirements for intervention as of right under Federal Rule of Civil

Procedure 24, including intervention only for the purpose of appeal, and even after the class

judgment has been entered").

**158**

Case: 1:09-cv-05314 Document #: 124 Filed: 08/25/10 Page 5 of 9 PageID #:1690
Case: 10-3285    Document: 38    Filed: 03/12/2012    Pages: 243

### E.    There Is Obviously a Common Claim of Law and Fact.

Plaintiffs argue that Frank's alternative motion for permissive intervention fails to demonstrate "a common question of law or fact" with the main action. This is a patently frivolous argument: Frank's intervention, brought for purposes of preserving the right to appeal, makes no arguments of law or fact that are not made by his objection, which is part of the main action. It is not just the case that there is "a common question of law or fact"; there are nothing *but* common questions of law or fact in Frank's intervention. It is telling that plaintiffs do not identify a single issue of law or fact in Frank's intervention that is not raised in Frank's objection.

### II.    Plaintiffs Fail to Demonstrate That the Litigation Benefited Shareholders.

Plaintiffs do not dispute that the only consequence of a Section 8 violation is the possibility that the government may bring a lawsuit seeking an injunction. So, to avoid the X% chance of costly litigation that might result in an injunction, the plaintiffs have *actually brought* costly litigation that resulted in a partial injunction. As a matter of simple math, Sears Holdings is worse off because plaintiffs brought this litigation. *Protectoseal v. Barancik*, 484 F.2d 585 (7th Cir. 1973), where the corporation itself (rather than a derivative shareholder) chose to bring litigation, does not change the simple mathematical equation that a 100% chance of litigation is more expensive to the corporation than a chance of litigation less than 100%. (Indeed, the settlement doesn't even prevent the possibility of the government bringing future Section 8 litigation: Director Reese remains on the Board after this settlement.)

Plaintiffs cite to a recent Section 8 investigation of Google and Apple, but this example only serves to prove Frank's point that this litigation has made Sears Holding worse off. If the

**159**

Case: 1:09-cv-05314 Document #: 124 Filed: 08/25/10 Page 6 of 9 PageID #:1691
Case: 10-3285    Document: 38    Filed: 03/12/2012    Pages: 243

government believes there is a Section 8 violation, it *negotiates* an agreement to remove directors rather than immediately brings costly litigation; only if the corporation refuses to remove the challenged director will there be litigation. This is why plaintiffs cannot identify a single Section 8 lawsuit since 1953. Plaintiffs, instead of putting the shareholders' interest first, and raising the issue with the Board, went directly to litigation in the hope of generating extortionate attorneys' fees.

There is also a material difference between *Protectoseal* and the current litigation: in *Protectoseal*, there was no dispute that there was an interlocking directorate; the only question was the issue of standing. In this case, there is a substantial factual dispute whether Section 8 was violated, which would require expensive discovery to resolve to the detriment of shareholders; to this day, Sears Holdings denies that there was a Section 8 violation, and is only settling to avoid the expense of litigation—an expense that would not be incurred by shareholders that had the interests of other shareholders at heart.

Moreover, it is far from clear that *Protectoseal* is still good law. *Protectoseal* predates the unanimous decision in *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477 (1977), which requires a showing of "antitrust injury" before bringing suit under the Clayton Act. Plaintiffs do not cite *Brunswick*, much less make any attempt to refute Frank's argument that *Brunswick* bars their cause of action under 15 U.S.C. § 26 or attempt to explain why *Protectoseal* is not abrogated by *Brunswick*; they certainly do not claim to have suffered *Brunswick* "antitrust injury."

Plaintiffs have the burden of proof that the settlement provided benefit, but have failed to demonstrate such benefit, even in the face of probative evidence that the settlement hurt shareholders by causing the stock price to decline. (While Frank acknowledges that the stock

**160**

Case: 1:09-cv-05314 Document #: 124 Filed: 08/25/10 Page 7 of 9 PageID #:1692
Case: 10-3285 Document: 38 Filed: 03/12/2012 Pages: 243

price decline is not *dispositive* evidence, it is surely *probative* evidence that plaintiffs have the obligation to rebut given that they have the burden of proof. Plaintiffs provide no alternative explanation for the stock-price decline, and have waived the issue.) *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375 (1970), which was not a case where evidence demonstrated that the settlement hurt shareholders, does not state otherwise. *Mills* simply holds that injunctive relief might be difficult to quantify in some circumstances. But in this case (where common sense by itself demonstrates that the lawsuit made the corporation worse off by creating unnecessary expense to benefit the plaintiffs' attorneys at the expense of the shareholders), the injunctive relief was quantified by the market, and quantified with a negative value. According to plaintiffs, *Mills* requires the approval of *every* settlement with injunctive relief, and that is clearly an untenable reading inconsistent with Rule 23.1(c).

## CONCLUSION

*Flying J* requires this Court to grant Frank's motion for intervention; plaintiffs do not even mention *Flying J*, much less argue why it does not apply. *Felzen* remarks, citing substantial economic literature, that a settlement where the attorneys receive 50% of the pecuniary benefit is problematic under Rule 23.1. Though this settlement provides 100% of the pecuniary benefit to attorneys, the plaintiffs do not cite *Felzen*, much less attempt to explain why it does not apply. Plaintiffs present no rebuttal of the market evidence that the settlement hurt shareholders, though they have the burden of proof that the settlement is in shareholders' best interests. Thus, Objector/Intervenor Theodore H. Frank respectfully requests this court to (a) grant his motion for

161

Case: 1:09-cv-05314 Document #: 124 Filed: 08/25/10 Page 8 of 9 PageID #:1693
Case: 10-3285    Document: 38    Filed: 03/12/2012    Pages: 243

intervention; (b) reject the proposed settlement; and (c) dismiss the action with prejudice pursuant to Rule 23.1(a).

Dated:  August 25, 2010

Respectfully submitted,

/s/Theodore H. Frank
Theodore H. Frank
901 N. Monroe St. #1007
Arlington, VA 22201-2358
Telephone:  (703) 243-3090
Email:  tedfrank@gmail.com
In pro per

**162**

Case: 1:09-cv-05314 Document #: 124 Filed: 08/25/10 Page 9 of 9 PageID #:1694
Case: 10-3285     Document: 38     Filed: 03/12/2012     Pages: 243

## PROOF OF SERVICE

I declare that:

I am employed in the state of Illinois. I am over the age of 18 years and not party to the within action; my office address is 312 N. May Street, Suite 100, Chicago, Illinois 60607.

On August 25, 2010, I served the attached:

# REPLY IN SUPPORT OF MOTION TO INTERVENE AND MOTION TO DISMISS OF THEODORE H. FRANK

__X__    By First-Class Mail in that I caused such envelope(s) to be delivered via First-Class Mail to the addressee(s) designated.

Clerk of the Court
United States District Court
Northern District of Illinois
Everett McKinley Dirksen
United States Courthouse
219 South Dearborn Street
Chicago, IL 60604

Christopher Q. King
Ramji Kaul
SONNENSCHEIN, NATH &
ROSENTHAL LLP
233 South Wacker Drive
Suite 7800
Chicago, Illinois 60606

Matthew T. Hurst
SUSMAN HEFFNER & HURST LLP
20 South Clark Street, Suite 600
Chicago, Illinois 60603

Kenneth J. Vianale, Esq.
VIANALE & VIANALE LLP
2499 Glades Road, Suite 112
Boca Raton, FL 33431
(561) 392-4750

Paul Vizcarrondo, Jr.
Jonathan M. Moses
Amanda L. Straub
Jonathon R. La Chapelle
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, New York 10019

Ronen Sarraf
Joseph Gentile
SARRAF GENTILE LLP
116 John Street, Suite 2310
New York, New York 10038

I declare under penalty of perjury that the foregoing is true and correct.

This 25th day of August, 2010.

/s/ M. Frank Bednarz
M. Frank Bednarz

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ROBERT F. BOOTH TRUST and RONALD GROSS, derivatively on behalf of nominal defendant SEARS HOLDINGS CORPORATION, | ) ) ) ) |
| | ) No. 1:09-cv-05314 |
| Plaintiff, | ) |
| | ) Hon. Ronald A. Guzmán |
| v. | ) ) |
| WILLIAM C. CROWLEY, EDWARD S. LAMPERT, STEVEN T. MNUCHIN, RICHARD C. PERRY, ANN N. REESE, KEVIN B. ROLLINS, EMILY SCOTT and THOMAS J. TISCH, | ) ) ) ) ) ) |
| Defendants, | ) ) |
| and | ) ) |
| SEARS HOLDINGS CORPORATION, | ) ) |
| Nominal Defendant. | ) ) |

**INDIVIDUAL DEFENDANTS' RESPONSE TO MOTION TO INTERVENE AND
OBJECTION OF THEODORE H. FRANK TO PROPOSED SETTLEMENT**

Defendants William C. Crowley, Edward S. Lampert, Steven T. Mnuchin, Richard C. Perry, Ann N. Reese, Kevin B. Rollins, Emily Scott and Thomas J. Tisch (the "Individual Defendants") submit the following response to the Motion to Intervene and Objection to the Settlement and Motion to Dismiss under Rule 23(a) submitted by Theodore H. Frank.

Mr. Frank's motion to intervene is directed to the attorney's fees to be paid to Plaintiffs' counsel. The Individual Defendants stipulated to the settlement and therefore take no position on that Motion or the purported "Motion to Dismiss under Rule 23(a)."[1]

As the Individual Defendants have stated previously, they have authorized the settlement of this litigation because it serves the interests of Sears Holdings Corporation's ("SHC" or the "Company") shareholders in at least two ways. First, settlement avoids the cost and distraction of continuing litigation. At the time of the settlement, the Individual Defendants' Motion to Dismiss had been denied, the Court had ordered expedited discovery and set a hearing on Plaintiffs' Motion for Preliminary Injunction, the Individual Defendants had retained an expert economist, and the parties were beginning to prepare for the hearing. The cost of continuing to litigate a complex case like this in the District Court and the Seventh Circuit, especially on the accelerated timeline that had been set would have been dramatically more than the settlement will cost. Second, settlement enables SHC to retain the services of Ann N. Reese, who chairs the SHC board Audit Committee, and is one of the board's two audit committee financial experts under the Sarbanes-Oxley Act. *See* SEC Reg. S-K, Item 407(d)(5). *See* Individual Defendants' Memorandum in Further Support of the Amended Joint Motion for Preliminary Approval of Settlement, Doc. # 89 (4/28/10), pp. 4-5.

---

[1] Pursuant to Paragraph 7.2 of the Stipulation, and Paragraph 12 of the Preliminary Approval Order, Defendants have denied the material allegations against them, and specifically deny that the "Settlement brings [Sears Holdings Corp] into compliance with the U.S. antitrust laws . . .." (Pl. Opp. To the Motion to Intervene and Objection of Theodore H. Frank and Motion to Dismiss Under Rule 23.1(A), # 119, p. 3.)

The Individual Defendants believe that the proposed settlement should be approved as being in the best interests of SHC's shareholders.  Pursuant to the Stipulation, the Individual Defendants take no position on Plaintiffs' petition for attorney's fees.

Dated:  September 7, 2010

*Of Counsel*:

Paul Vizcarrondo, Jr.
Jonathan M. Moses
Amanda L. Straub
Jonathon R. La Chapelle
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, New York  10019
Tel:  (212) 403-1000
Fax:  (212) 403-2000

*Attorneys for the Individual Defendants*

Respectfully submitted,

/s/ Ramji Kaul
Christopher Q. King (#06189835)
Ramji Kaul (#6284924)
SONNENSCHEIN, NATH & ROSENTHAL LLP
233 South Wacker Drive
Suite 7800
Chicago, Illinois  60606
Tel:  (312) 876-8000
Fax:  (312) 876-7934

# 166

## CERTIFICATE OF SERVICE

I hereby certify that on September 7, 2010, I electronically filed the foregoing **INDIVIDUAL DEFENDANTS' RESPONSE TO MOTION TO INTERVENE AND OBJECTION OF THEODORE H. FRANK TO PROPOSED SETTLEMENT** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to registered parties.

/s/ Ramji Kaul
Ramji Kaul
One of the attorneys for Defendants

12787051\V-5

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ROBERT F. BOOTH TRUST and RONALD GROSS, derivatively on behalf of nominal defendant SEARS HOLDINGS CORPORATION, | ) ) ) ) | No. 1:09-cv-05314 |
| Plaintiff, | ) ) | Hon. Ronald A. Guzmán |
| v. | ) ) | |
| WILLIAM C. CROWLEY, EDWARD S. LAMPERT, STEVEN T. MNUCHIN, RICHARD C. PERRY, ANN N. REESE, KEVIN B. ROLLINS, EMILY SCOTT, and THOMAS J. TISCH, | ) ) ) ) ) ) | |
| Defendants, | ) ) | |
| and | ) ) | |
| SEARS HOLDINGS CORPORATION, | ) ) | |
| Nominal Defendant. | ) ) | |

## SUPPLEMENTAL RESPONSE TO OBJECTION OF THEODORE H. FRANK

VIANALE & VIANALE LLP
Kenneth J. Vianale
2499 Glades Road, Suite 112
Boca Raton, Florida 33431

SARRAF GENTILE LLP
Ronen Sarraf
Joseph Gentile
116 John Street, Suite 2310
New York, New York 10038

*Lead Counsel for Plaintiffs*

SUSMAN HEFFNER & HURST LLP
Matthew T. Hurst
Two First National Plaza
 Suite 600
Chicago, Illinois 60603

*Liaison Counsel for Plaintiffs*

Plaintiffs Robert F. Booth Trust and Ronald Gross respectfully submit this supplemental memorandum of law in further response to the Objection of Theodore H. Frank.

**ARGUMENT**

Objector Theodore H. Frank ("Frank") presented a stock price chart in paragraph 21 of his motion to intervene and objection dated August 27, 2010. Frank claimed that the decline in the stock price of Sears Holdings Corporation ("Sears") on April 7, 2010, when the Settlement became public, must mean that the Settlement made shareholders worse off.

Frank, however, left out data important to any market analysis. As a result, his analysis is flawed and misleading, for the following reasons:

1.     The stock price decline Frank highlights was statistically insignificant. Sears' stock price decline from $107.91 on April 6, 2010 to a closing price of $106.11 on April 7, 2010, was only 1.6% -- a statistically insignificant drop for Sears. Even a cursory review of the range of Sears' closing prices in March and April 2010 makes this clear. (A copy of Sears' historical common stock trading prices for January to September 2010 is annexed hereto as Exhibit A). In fact, Sears' stock price fluctuated in a one or two dollar range throughout much of the period from March 22, 2010 to April 21, 2010. (*See* Exhibit A). Sears' public stock prices and volumes are not subject to reasonable dispute, are generally known in this District, and can be readily and accurately determined by the Court. Rule 201(b), Fed. R. Civ. P. Accordingly, plaintiffs respectfully request that the Court take judicial notice of Sears' stock prices and trading volumes set forth at Exhibit A. *Pugh v. Tribune Co.*, 521 F.3d 686, 691 n.2 (7th Cir. 2008) (court may take judicial notice of company's stock prices); *Radaszewski v. Maram,* 383 F.3d 599, 600 (7th Cir. 2004).

2.      The light trading volume on April 7, 2010 and thereafter shows no adverse shareholder reaction to the Settlement.  Sears had 21,412 shareholders of record as of February 28, 2010 and 114,834,071 common shares outstanding.  (2009 Form 10-K, available at www.searsholdings.com (Investor Relations)).[1]  There was no big sell off of Sears stock in reaction to the Settlement. On the contrary, only 553,200 shares of Sears common stock were traded (bought and sold) on April 7, 2010.  This number is far below Sears' average daily trading volume for March 2010 of 777,834 shares, and 760,276 shares for April 2010.[2]  Trading volume and stock prices for the remainder of the week are unremarkable.  The low trading volume on April 7, 2010 and thereafter lends no support to Frank's argument that shareholders believed the Settlement made Sears worse off.  The negligible number of shareholder objections to the Settlement (only eight) is consistent with this lack of any shareholder selloff of Sears shares.

3.      Frank presents no information showing that news of the Settlement was of a type that could move the market.  In the absence of expert testimony that news of the Settlement could move the market for Sears stock one way or another, Frank's stock chart is proof of nothing. Moreover, the Sears proxy filed on April 6, 2010 contained other information besides news of the Settlement.

## **CONCLUSION**

For the reasons set forth above and those contained in plaintiffs' brief in opposition to Frank's motion to intervene and in response to his objection, plaintiffs' respectfully submit that the Court should overrule Frank's objection to the Settlement.

---

[1] The Court may take judicial notice of information publicly announced on a party's website, as long as the website's authenticity is not in dispute and it is capable of accurate and ready determination.  *Doron Precision Sys. Inc. v. FAAC, Inc.*, 423 F.Supp.2d 173, 179 n. 8 (S.D.N.Y. 2006).  Sears' 2009 Form 10-K is also publicly filed with the Securities and Exchange Commission.

[2] Average daily trading volume is obtained by adding up the total number of shares traded in the month and then dividing by the number of trading days in the month. In March 2010, the total trading volume was 17,910,00 shares divided by 23 trading days; in April 2010, total share volume was 15,965,800 shares divided by 21 trading days.

Dated: September 8, 2010

Respectfully submitted,

/s/ Matthew T. Hurst

**VIANALE & VIANALE LLP**
Kenneth J. Vianale
2499 Glades Road, Suite 112
Boca Raton, Florida 33431
T: 561-392-4750
F: 561-392-4775

**SARRAF GENTILE LLP**
Ronen Sarraf
Joseph Gentile
116 John Street, Suite 2310
New York, New York 10038
T: 212-868-3610
F: 212-918-7967

*Lead Counsel for Plaintiffs*

**SUSMAN HEFFNER & HURST LLP**
Matthew T. Hurst
Two First National Plaza
Suite 600
Chicago, Illinois 60603
T: 312-346-3466
F: 312-346-2829

*Liaison Counsel for Plaintiffs*

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 09 C 5314 | **DATE** | 1/27/2012 |
| **CASE TITLE** | Robert F. Booth Trust, et al. vs. William C. Crowley, et al. | | |

**DOCKET ENTRY TEXT**

For the reasons set forth in this order, the Court denies without prejudice plaintiffs' motion to approve the amended stipulation of settlement [97, 137].

■[ For further details see text below.]                                        Docketing to mail notices.

---

### STATEMENT

    Plaintiffs' motion to approve the amended stipulation of settlement is denied without prejudice for several reasons. First, the parties do not explain why the amended stipulation contains different definitions for "Derivative Claims" (§ 1.1) and "Released Claims" (§ 1.10), when the terms should be co-extensive. Second, even as amended, § 1.10 is still too broad. It purports to release defendants from liability for *any* § 8 violation and related breach of fiduciary duty claim, not just from the § 8 and fiduciary duty claims alleged in the amended complaint, *i.e.*, those based on Reese and Crowley's election to the Sears board. Third, it purports to release Lampert from liability for all § 8 and related fiduciary duty claims though: (1) the amended complaint does not allege that he is an interlock; (2) Lampert is the only individual defendant, other than Reese and Crowley, absolved of liability; and (3) the relief to which he agreed, to stay out of certain board discussions and votes, is insufficient, given his status as controlling shareholder of Sears, to support releasing him from liability. Fourth, it purports to release plaintiffs' counsel from any claims relating to the prosecution or settlement of this suit.

```
 1                    IN THE UNITED STATES DISTRICT COURT
                    FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                           EASTERN DIVISION

 3   ROBERT F. BOOTH TRUST and        )
     RONALD GROSS, derivatively on    )
 4   behalf of nominal defendant      )
     SEARS HOLDINGS CORPORATION,      )
 5                                     )
                 Plaintiffs,          )
 6                                     )
       v.                             )  No. 09 C 5314
 7                                     )
     WILLIAM C. CROWLEY, EDWARD S.    )
 8   LAMPERT, STEVEN T. MNUCHIN,      )
     RICHARD C. PERRY, ANN N. REESE,  )
 9   KEVIN B. ROLLINS, EMILY SCOTT    )
     and THOMAS J. TISCH,             )  Chicago, Illinois
10                                     )  July 9, 2010
                 Defendants,          )  10:00 a.m.
11                                     )
       and                            )
12                                     )
     SEARS HOLDINGS CORPORATION,      )
13                                     )
                 Nominal Defendant.   )
14
                      TRANSCRIPT OF PROCEEDINGS
15             BEFORE THE HONORABLE RONALD A. GUZMAN

16
     APPEARANCES:
17
     For the Plaintiffs:        VIANALE & VIANALE LLP
18                              BY:  MR. KENNETH J. VIANALE
                                2499 Glades Road
19                              Suite 112
                                Boca Raton, Florida  33431
20                              (561) 392-4750

21                              SARRAF GENTILE LLP
                                BY:  MR. RONEN SARRAF
22                              485 Seventh Avenue
                                Suite 1005
23                              New York, New York  10018
                                (212) 868-3610
24

25
```

**173**

Case: 1:09-cv-05314 Document #: 149 Filed: 10/15/10 Page 2 of 48 PageID #:1860
Case: 10-3285    Document: 38    Filed: 03/12/2012    Pages: 243

2

```
 1    APPEARANCES:   (Continued)

 2    For the Plaintiffs:        SUSMAN HEFFNER & HURST LLP
                                 BY:  MR. MATTHEW TODD HURST
 3                               Two First National Plaza
                                 Suite 600
 4                               Chicago, Illinois  60603
                                 (312) 346-3466
 5
      For the Defendants:        SONNENSCHEIN, NATH & ROSENTHAL, LLP
 6                               BY:  MR. CHRISTOPHER Q. KING
                                      MR. RAMJI B. KAUL
 7                               233 South Wacker Drive
                                 Suite 7800
 8                               Chicago, Illinois  60606
                                 (312) 876-8000
 9
      For the Nominal Defendant  SCHOPF & WEISS LLP
10    Sears:                     BY:  MS. KRISTEN ELIZABETH HUDSON
                                 One South Wacker Drive
11                               28th Floor
                                 Chicago, Illinois  60606
12                               (312) 701-9300

13    Court Reporter:            NANCY C. LaBELLA, CSR, RMR, CRR
                                 Official Court Reporter
14                               219 South Dearborn Street
                                 Room 1222
15                               Chicago, Illinois  60604
                                 (312) 435-6890
16                               Nancy_LaBella@ilnd.uscourts.gov

17

18

19

20

21

22

23

24

25
```

```
 1       (Proceedings heard in open court:)

 2              THE CLERK:  09 C 5314, Robert F. Booth Trust v.

 3    Crowley.

 4              MR. VIANALE:  Good morning, your Honor.  Kenneth

 5    Vianale on behalf of the plaintiffs.

 6              MR. SARRAF:  Good morning, your Honor.  Ronen Sarraf

 7    on behalf of the plaintiffs.

 8              MR. HURST:  Good morning, your Honor.  Matt Hurst,

 9    also on behalf of the plaintiffs.

10              MR. KING:  Good morning, your Honor.  Christopher

11    King and Ramji Kaul on behalf of the director defendants.

12              MS. HUDSON:  Good morning, your Honor.  Kristen

13    Hudson on behalf of Sears Holdings Corporation.

14              MR. FRANK:  Theodore H. Frank, pro se on behalf of

15    myself.

16              THE COURT:  Okay.  We have requests for final

17    approval of the settlement and a memorandum of law in support

18    of plaintiffs' motion for attorneys' fees.

19              Do you wish to be heard?

20              MR. VIANALE:  Yes, your Honor.

21              Your Honor, the two issues before the Court, as you

22    mentioned, are fairness and adequacy of the settlement and the

23    reasonableness of the attorneys' fees request.

24              To begin with, your Honor preliminarily approved

25    this -- the settlement of this derivative action on May 11th.
```

**175**

Case: 1:09-cv-05314 Document #: 149 Filed: 10/15/10 Page 4 of 48 PageID #:1862
Case: 10-3285    Document: 38    Filed: 03/12/2012    Pages: 243

4

1    You directed that notice go out to the shareholders of Sears

2    Corporation.  We have an affidavit from the Garden City Group

3    laying out the notice that was given to the shareholders.

4    Notice went to 57,565 shareholders of record, copies of the

5    notice, on June 1.  Thereafter, another group of shareholders

6    received notice.  50,393 notices went out a second time; that

7    is, to individuals who held their stock in street name and

8    nominee name.  A total of 107,958 copies of the long form

9    written notice that the Court approved went out pursuant to

10   your Honor's preliminary approval order and on the time scheme

11   set out in that order.

12          In addition, a Web site was set up by the company

13   explaining the details of the settlement.  And a press release

14   was issued on June 4th to all shareholders of Sears advising

15   them of the settlement and allowing them to obtain a written

16   copy of the notice by simply clicking and downloading.

17          As a result of the notice program, there are only

18   seven objections to the settlement.  We don't think there

19   was -- I'd like to deal with the notice issue because we have

20   an objector here in court who is questioning the notice, and I

21   want to -- I'd like to deal with that.  Mr. Frank is at the

22   far end, who has made an objection on notice and --

23          THE COURT:  Well, why don't we leave that and let him

24   speak first and then you can respond to his objection rather

25   than have you anticipate what he's going to say.

**176**

Case: 1:09-cv-05314 Document #: 149 Filed: 10/15/10 Page 5 of 48 PageID #:1863
Case: 10-3285    Document: 38    Filed: 03/12/2012    Pages: 243

5

1              MR. VIANALE:  Okay.  He's -- that's fine, your Honor.

2         Let me say first that we believe that the notice

3    program was more than adequate in this case for two important

4    reasons.  First of all, this is a derivative, not a class

5    case.  And your Honor directed more notice than the

6    Constitution even requires in a derivative case.  And the

7    question was whether or not the notice was sufficient to flush

8    out whatever objections might reasonably be expected from the

9    settlement.

10        The number of objections that we have received is

11   minuscule.  In fact, it's 1/100th of 1 percent of the

12   shareholders.  And the weight of those objections I'd like to

13   deal with later.  But they're not exactly the weightiest of

14   objections.  And under the case law, I think that the notice

15   program was more than adequate.

16        THE COURT:  The notice that went out to the

17   shareholders though doesn't tell them what the actual

18   attorneys' fees are going to be in the case, does it?

19             MR. VIANALE:  It gives them a maximum.

20        THE COURT:  It gives them a maximum, but they don't

21   know if it's going to be $5 or 900,000, right?

22             MR. VIANALE:  That's up to the Court.  We couldn't

23   anticipate that.

24        THE COURT:  Right.  But I'm saying they don't know

25   that when you get the notice.  So if they're objecting to the

**177**

Case: 1:09-cv-05314 Document #: 149 Filed: 10/15/10 Page 6 of 48 PageID #:1864
Case: 10-3285     Document: 38     Filed: 03/12/2012     Pages: 243

6

 1   attorneys' fees, we'll never know, right?

 2           MR. VIANALE:  They couldn't know unless your Honor

 3   rules.

 4           THE COURT:  Right.  Right.

 5           MR. VIANALE:  So that -- in other words, that would

 6   be true in every case in which there's a class action or a

 7   derivative settlement where the Court must --

 8           THE COURT:  In most cases.  In most cases.  Sometimes

 9   the attorneys' fees are actually fixed in advance and included

10   in the notice.  But it would be true in most cases, correct.

11           But the point I'm making is that the notice -- the

12   fact that there was no objection to the notice may be a very

13   valid point with respect to all of the other portions of the

14   settlement agreement but not necessarily so with respect to

15   the attorneys' fees because the notice didn't include the

16   actual amount of the attorneys' fees.

17           MR. VIANALE:  Well, but I think that that is -- that

18   actually argues in favor of the settlement, not against -- or

19   in favor of the attorneys' fees provision because if they know

20   what the maximum is that we're asking for and there are no

21   objections or very few objections to that, then if there was a

22   lesser amount that was awarded by the Court, one wouldn't

23   expect any objections.

24           THE COURT:  That's one way to look at it.

25           MR. VIANALE:  Besides the notice -- the notice

1    advised the shareholders of the following:  The maximum amount

2    that we're asking for, which was 925,000 --

3              THE COURT:  Well, it said the maximum amount that

4    Sears would not object to, I think is what the notice said,

5    correct, not what you're asking for?

6              MR. VIANALE:  That's correct, your Honor.

7              THE COURT:  Go on.

8              MR. VIANALE:  So there is a possibility that -- I'm

9    trying to understand what your Honor is suggesting.

10              THE COURT:  Well, what I'm trying to say is that the

11    shareholder that receives that notice could say to himself,

12    well, maybe they're only asking for $50,000.  I don't know.

13    How can I object?

14              MR. VIANALE:  Well, we have -- if we had told the

15    shareholders that we would ask for up to $925,000 and that

16    Sears would not object to that amount, we've given them the

17    outside maximum of what it is we would ask for and what Sears

18    would object to.  And the Court -- in other words, we've told

19    them more about the attorneys' fees than they would receive if

20    they had the actual number.  It's actually more prejudicial to

21    the application for attorneys' fees than it would be if we had

22    an actual number that was less than $925,000.  We gave them

23    the absolute maximum of what we would ask for, the maximum

24    that Sears would tolerate.

25              In any event --

 1          THE COURT:  I don't interpret it that way, but go

 2  ahead.

 3          MR. VIANALE:  Your Honor, with respect to the

 4  settlement, what is the settlement?  First of all, we believe

 5  that the action achieves almost everything that it sought out

 6  to do and, therefore, the settlement is more than fair,

 7  reasonable and adequate.

 8          Crowley -- Mr. Crowley was one of the two people that

 9  we sought to have removed from the board, Mr. Crowley and

10  Ms. Reese.  Mr. Crowley is stepping down.  He's not going to

11  be a director.  He's not going to be an officer.  We've

12  achieved everything we possibly could with the settlement with

13  respect to Mr. Crowley.

14          With respect to additional -- the settlement provides

15  for an additional director, an independent director --

16  somebody having nothing to do with ESL, which is the

17  controlled shareholder in this case -- is going to be added to

18  the board by the next election.

19          With respect to Ms. Reese and Mr. Lampert, they are

20  going to both be subject to a firewall which prevents them

21  from discussing the operations of -- with respect to Ms. Reese

22  the women's apparel and footwear business and with respect to

23  Mr. Lampert the auto parts and auto repair businesses.  With

24  respect to Mr. Lampert, that is relief that we couldn't

25  have -- could not have obtained in this case other than

# 180

1    through the settlement.

2         And finally, your Honor, the company has agreed to

3    review its corporate governance and enhance it if necessary to

4    assist in not having these kinds of violations in the past.

5         But the real thrust here of the settlement and its

6    value is the fact that Mr. Crowley is gone.  And that's half

7    of the relief that we could have obtained if we had fought and

8    won on every single issue.

9         And we have laid out, your Honor, the various factors

10   that courts look at when considering the fairness of a

11   derivative settlement and a class action settlement, which are

12   much the same in terms of the factors looked at.  And we've

13   laid those out in great detail in our papers.  I'm not going

14   to go through every one of them, but I'd just like to look at

15   a couple of the factors that are laid out in the Armstrong

16   case, which is from the Seventh Circuit, 1980.  It lays out

17   six factors.

18        The most important factor -- although the courts say

19   that you have to look at this in a mix, they also say what is

20   the most important factor in the mix; and that is the strength

21   of the case that the plaintiffs had versus the benefit of the

22   settlement; what were the strengths and weaknesses of the case

23   versus what one obtained.

24        And here, we believe -- the plaintiffs believed that

25   they had a strong case under Section 8 of the Clayton Act.  We

**181**

Case: 1:09-cv-05314 Document #: 149 Filed: 10/15/10 Page 10 of 48 PageID #:1868
Case: 10-3285    Document: 38    Filed: 03/12/2012    Pages: 243

10

1    believed that these directors were interlocking directors

2    within the meaning of the Act.  They sat on boards of

3    competing corporations.  That's why we sought to remove them.

4    But there were impediments.  There were real possibilities

5    that along the way we would have gotten rulings that would

6    have dismissed the case.

7          And one of the main things we've highlighted in our

8    brief is the defense that was raised by the defendants under

9    the statute itself which is the so-called de minimis defense.

10   And that defense says that if the competing sales of the

11   companies at issue is less than 2 percent of their annual

12   revenues, the statute says that it doesn't apply; you can

13   interlock all you want.

14         And in this case, we alleged that Sears sold women's

15   clothing and sold men's clothing and sold children's clothing

16   and sold jewelry, it sold accessories; and we said that Jones

17   Apparel sold women's clothing, jewelry, accessories, handbags,

18   children's clothing, footwear.  We said, okay, there is an

19   interlock here.

20         The same thing with respect to Mr. Crowley's presence

21   on the board.  Sears sells auto parts.  Sears has an auto

22   repair business.  Well, so does AutoZone and AutoNation.

23         When you get down to the nitty-gritty of looking at

24   whether or not the de minimis defense applies, it was an

25   extremely complicated task.  It was very fact intensive.  And

 1    the company had a number of defenses, let's just say with

 2    respect to AutoZone and AutoNation.  The company took the

 3    position that, yeah, AutoZone sells auto -- all sorts of auto

 4    maintenance products and so does Sears, but AutoZone is a much

 5    bigger company.  It sells a much longer line of products.

 6    Sears is much smaller than that.  And they wound up defending

 7    on the ground that we're talking only about three major

 8    products that Sears sells that AutoZone sells, which were -- I

 9    mean, when you get down to the level of detail, which were

10    basically oil, transmission fluid and brake fluid; and that's

11    when they said, okay, you want to add up those sales?  Because

12    that's the real de minimis category we're looking at.  We took

13    a much broader view of the case.  We think that this would

14    have been -- we think that the Court would have accepted our

15    view.

16         The Seventh Circuit has a case, Protectoseal case,

17    which says you shouldn't get into this kind of nitty-gritty

18    when you're talking about the prophylactic statute that

19    Section 8 is; that that may be an appropriate way to analyze

20    things under Section 7 when you're talking about a merger of

21    companies and they have similar product lines.  And we believe

22    we would have prevailed on that.  But, nevertheless, those

23    cases predated the 1990 amendment to the statute which brought

24    in these de minimis defenses.  And I believe that the Court

25    would have been flooded with a raft of product and sale

1  information from the defendants and experts who were going to

2  take the stand and say these are the only products that these

3  two companies compete under or compete on, et cetera.  And if

4  we got bogged down into that, it would be very, very

5  expensive.  There were very, very few legal precedents

6  available to give anybody guidance.

7        The statute, as your Honor commented at one prior

8  hearing, you know, it doesn't have a lot of case law under it

9  and certainly none since 1990.  So rather than get into that,

10  creating not only litigation issues before this Court but

11  perhaps before the appellate court, the settlement achieves

12  most, if not all, of the major objectives that the lawsuit

13  had, without the expense and the time and the risk of that

14  kind of litigation under Section 8.

15        In a normal settlement -- in any other settlement, if

16  we were dealing, let's say, with money, if we came in to court

17  and we said we have a settlement and we were seeking a hundred

18  million dollars tops, that's all we think we would have gotten

19  from the jury if we won on everything, and we came in and we

20  said we got $50 million, there's lots of case law that said

21  you did a pretty good job to get that much.

22        Well, here, we sought to get Ms. Reese and

23  Mr. Crowley off the board.  We succeeded in getting

24  Mr. Crowley off the board.  We got 50 percent just on the face

25  of it of all the relief we possibly could have if we had won

**184**

Case: 1:09-cv-05314 Document #: 149 Filed: 10/15/10 Page 13 of 48 PageID #:1871
Case: 10-3285    Document: 38    Filed: 03/12/2012    Pages: 243

13

1   on all issues.  And we think there were lots of risks on those

2   issues.

3          So when you look at the strength of the case and the

4   defenses that they would have raised and the expense to the

5   company and to the plaintiff and to the Court's resources

6   versus what we achieved, we think that factor alone weighs

7   very, very heavily in favor of the settlement.

8          With respect to the other factors, I touched on the

9   complexity and the length and the expense of the litigation

10  and the trial which would have adhered to this type of a case,

11  particularly with expert testimony.

12         But let me just deal with the issue of the amount of

13  opposition to the settlement and the presence of collusion in

14  reaching the settlement.  There's no collusion here.  Both

15  sides litigated this at arm's length, at length, adversarial

16  from the very first.  There's no indication here that there's

17  anything but what the eye sees.

18         And, secondly, as proof of that, courts have said,

19  well, is the attorneys' fees provision here somehow linked to

20  the settlement.  It isn't.  If your Honor approves the

21  settlement and not the attorneys' fees provision, the

22  settlement goes through.  That's some indication that there's

23  no collusion among the parties here.

24         With respect to the amount of opposition to the

25  settlement, as I said earlier, 107,500 some-odd notices went

1  out.  You've only got seven objections.  It's 1/100th of 1

2  percent of the shareholders here.  It's a tiny, tiny number.

3  But put that aside.  What is the weight of the opposition?

4  The number of the opposition is minuscule.  But what is the

5  weight of the opposition?

6        Well, let's look at it.  You got Mr. Orlick, who says

7  he should be given two and a half million dollars as punitive

8  damages because he's got some beef with Sears.  He won't tell

9  anybody what it is.  And it apparently has a case number

10 beginning with 04.  Or a claim number.  It's not even a

11 lawsuit.  It's a claim number.  If it has anything to do with

12 2004, that predated anything that happened in this case.  So

13 it couldn't possibly have anything to do with this case.

14        THE COURT:  You don't think he's entitled to his two

15 million?

16        MR. VIANALE:  I do not.

17        Mr. James raises a question with respect to the scope

18 of the release.  He doesn't say what it is.  He just says,

19 here's the release, I object.  Okay.  But look at the release

20 in this case.  This release only releases claims with respect

21 to this case.  It only releases claims of the company.  It's

22 not even individual claims.  It's individual to the extent

23 that they may be derivative, but it doesn't release individual

24 claims.  And it only has to do with the narrow facts of this

25 case, what was in the complaint and what might have been

1    brought in the complaint.  There's really no issue there.

2           The other shareholders raise the issue -- they say,

3    well -- one shareholder says they should both be off the

4    board.  That's one objection.  They should both be off the

5    board.  Well, it doesn't really explain the fact that Crowley

6    is off the board.  One of them is.  It seemed unclear that the

7    objector didn't seem to understand that one of them is off the

8    board.

9           With respect to Ms. Reese, this is a compromise.

10   Yeah, I would have loved to have gotten them both off the

11   board and come in and say we achieved every single goal.  We

12   didn't.  But we achieved most of it.  She's going to be on the

13   board.  That's not an impediment to the settlement here.

14   She's going to observe a firewall which prevents her from

15   taking part in discussions about the operations of the women's

16   apparel and footwear business.  Does that help to achieve the

17   goals of Section 8?  Yes, it does.  What is that?  To avoid

18   anti-competitive activity.  That's the point.  And it doesn't

19   remove her, but it makes it very clear that the company is

20   going to observe, I think, the strictures of Section 8.

21          So your Honor had raised this at one earlier time

22   when we came for preliminary approval, and you had mentioned

23   how can we leave her on the board; it's not part of the

24   statute; the statute doesn't allow for what you're talking

25   about, a firewall.  And the Seventh Circuit has cases on this

**187**

Case: 1:09-cv-05314 Document #: 149 Filed: 10/15/10 Page 16 of 48 PageID #:1874
Case: 10-3285    Document: 38    Filed: 03/12/2012    Pages: 243

16

1   point.  We cited two of them in our brief, the Armstrong case

2   and the Isby case.  And unless the -- the Seventh Circuit has

3   said, look, settlements involve parties compromising, not

4   getting everything that they want.  The only impediment to a

5   settlement is if an illegality is enforced or initiated by the

6   Court by approving the settlement and that illegality appears

7   on the face of the settlement agreement.  There's no

8   illegality appearing on the face of the settlement agreement

9   here.

10          As I said before, we had a hard road to hoe to prove

11  the case and to ultimately win on all the issues, given the

12  fact the statute affords the defendants a de minimis defense.

13  So this settlement is no different than any other; that is,

14  you don't get everything you want.  And -- but the settlement

15  still has a lot of benefits that make sense to approve.

16          Your Honor, if I could go on now to Mr. Frank's

17  objection.  He objects, saying that the settlement has no

18  value; the settlement makes the company worse off than it was

19  before.  He's in the opposite direction from the other

20  objector, saying that both of them ought to be off.  He says,

21  no, neither of them ought to be off; and this only led to

22  director turnover, quote/unquote.

23          Well, here's the response to that:  The company

24  itself has said in the settlement that the settlement is

25  valuable.  But suppose you look at that and you say, well,

**188**

Case: 1:09-cv-05314 Document #: 149 Filed: 10/15/10 Page 17 of 48 PageID #:1875
Case: 10-3285    Document: 38    Filed: 03/12/2012    Pages: 243

17

1    that's because they're settling and they just want to get the

2    case over with, so you can't trust that.  Okay.  That's a

3    statement when they had a motive to not be fully truthful.

4    But look at their Web site.  Their Web site has been up for

5    years.  And their Web site contains their own corporate

6    governance guidelines that they set out, they tell their own

7    employees.  And they tell their employees that it's very

8    important for company employees to avoid -- to adhere to the

9    antitrust laws.  Why?  Because if the company doesn't adhere

10   to the antitrust laws, it can get into trouble; it can cause

11   the company to be investigated; it can cause the company to

12   have to expend money to defend itself; and worst of all, it

13   can hurt the company's reputation.  We've put that in our

14   brief.  We've cited it from their Web site.  That is an

15   important benefit of the settlement.  That's why the

16   settlement is valuable.

17          The idea that the company is worse off because it's

18   now complying with Section 8 and recognizes the utility of

19   taking steps to comply in the future with Section 8 doesn't

20   make any sense.  Why would a company want to expose itself to

21   liability when it could, through this settlement, reduce that

22   risk or eliminate it entirely with respect to Mr. Crowley?

23          The notion that this has only led to, you know,

24   director turnover -- that was the word that Mr. Frank used --

25   directors only sit on the board for terms of one year.  It's

**189**

Case: 1:09-cv-05314 Document #: 149 Filed: 10/15/10 Page 18 of 48 PageID #:1876
Case: 10-3285    Document: 38    Filed: 03/12/2012    Pages: 243

18

 1    not a lifetime appointment.  It's not an appointment during

 2    good behavior like a federal judge.  This is a one-year term.

 3    So the idea that there's turnover is inherent in the bylaws

 4    and the articles of incorporation.  That's the way the company

 5    runs.

 6          Mr. Frank has also said that this was a quote/unquote

 7    strike suit and that the plaintiffs' lawyers were

 8    unscrupulous.  You know, your Honor, you -- you reviewed this

 9    case.  You ruled on a motion to dismiss.  You have all the

10    facts to decide whether or not you think this was a strike

11    suit.  We've been in front of your Honor a number of times.

12    If you think we were unscrupulous or that this was a strike

13    suit, you'd be the best person to know.  We don't think it was

14    either of those things.

15          The case was -- the case was researched carefully

16    before we brought it, both on the law and the facts.  It was

17    litigated professionally.  There's nothing unscrupulous about

18    what we did, and it is certainly not a strike suit.  This

19    company has never claimed from day one that these allegations

20    were meritless.  If anything, this is -- the case has shown

21    it's a very close case.  That's why both sides have agreed to

22    settle it.

23          Your Honor, I'd like to go on to the attorneys' fees

24    request.  With respect to attorneys' fees, we're asking for

25    $925,000.  That amount includes a request for expenses of

# 190

1    approximately 30,000 -- $31,000.  So we're effectively asking

2    for $893,000 in attorneys' fees.

3         We've laid out the law in our papers.  The Seventh

4    Circuit takes a market approach.  The Seventh Circuit says we

5    have to discern as closely as possible what would be the

6    market award, what would be the market price for the legal

7    services.

8         In another case, the Seventh Circuit said the

9    reasonable attorneys' --

10        THE COURT:  How do you do that in a shareholders'

11   derivative action?

12        MR. VIANALE:  I'm sorry?

13        THE COURT:  How do you do that in a shareholders'

14   derivative action?

15        MR. VIANALE:  It would ordinarily be difficult,

16   except that here we have an actual market transaction.  We

17   have a market price.  What -- the cases say what -- the lawyer

18   should get what he would have gotten in the way of a fee in an

19   arm's-length negotiation had one been feasible.  That's what

20   we had.

21        THE COURT:  An arm's-length negotiation with who?

22   Not with your opponent.  With your client.

23        MR. VIANALE:  But the client is the company.  This is

24   a derivative action.  It's not a class case.

25        THE COURT:  Sure.  But the problem is that the

1    company is what?  The shareholders.  It's not the directors.

2    It's not the officers.  It's not the accountants.  It's not

3    even the people that work on the assembly line, if Sears still

4    has one.  It's the shareholders.  So how do we know what the

5    shareholders would have been willing to pay you out of their

6    own pockets -- which is what company money is --

7              MR. VIANALE:  The company --

8              THE COURT:  -- to do this?

9              MR. VIANALE:  But it only -- I don't -- with respect,

10   your Honor, I don't think that's correct.  I think the

11   company is owned by shareholders.  The company itself is a

12   separate legal entity that has a board of directors and

13   management that makes the decisions to --

14             THE COURT:  I'm aware of the fact that corporations

15   are separate legal entities.  Whose money --

16             MR. VIANALE:  But management --

17             THE COURT:  -- is paying your fee?

18             MR. VIANALE:  The company, I believe.

19             THE COURT:  Well --

20             MR. VIANALE:  But who has to manage -- in other

21   words, there has to be a manager for the company who

22   manages --

23             THE COURT:  There is.

24             MR. VIANALE:  -- on behalf of the shareholders.

25             THE COURT:  There is.  But my question to you goes to

1    who is it that you have to have this arm's-length negotiation

2    with to determine what an appropriate fee for you would be.

3         MR. VIANALE:  If it isn't the company, it couldn't be

4    anybody else because how could you have a negotiation with

5    shareholders?

6         THE COURT:  Well, do the shareholders have any say in

7    it?  Should their determination be considered?  They're part

8    of the company.  They're some part of the company, right?

9    Still I think even today the shareholders are considered to be

10   some at least miniscule part of the corporation, aren't they?

11        MR. VIANALE:  I agree, your Honor, most definitely.

12   And they are being heard.  But if your Honor's question is who

13   should the plaintiffs' lawyers negotiate with, it has to be

14   the company.  Should the shareholders have a say?  Of course.

15   That's why they got notice, and some objected to it.  Yes, no

16   question about it.

17        THE COURT:  Why don't we send them a questionnaire

18   asking them how much they would have been willing to pay you

19   to do this litigation?

20        MR. VIANALE:  Because they're not -- they are not in

21   a position to really judge that.  Management has the expertise

22   to make that judgment.  If you did that on every corporate

23   issue that Sears ever had, you'd have chaos.

24        THE COURT:  I don't want to do it on every corporate

25   issue.  I want to do it to try to establish what an

193

Case: 1:09-cv-05314 Document #: 149 Filed: 10/15/10 Page 22 of 48 PageID #:1880
Case: 10-3285     Document: 38     Filed: 03/12/2012     Pages: 243

22

1    arm's-length transaction with your clients would be in this

2    type of a case.  Why don't we do that?

3           MR. VIANALE:  First of all, I would say it's

4    unprecedented.

5           THE COURT:  So?

6           MR. VIANALE:  Well, because I think that the case law

7    makes it clear that in something like this, the shareholders

8    are represented by experts, who is really management.  The

9    shareholders --

10          THE COURT:  So their direct say shouldn't be --

11          MR. VIANALE:  How do they know --

12          THE COURT:  -- taken into account?  I just want to

13   know.  Are you saying that their direct say should not be

14   taken into account?

15          MR. VIANALE:  I didn't say that, your Honor.

16          THE COURT:  Okay.

17          MR. VIANALE:  I don't mean that.  I think that their

18   statements should be taken into account with respect to --

19          THE COURT:  So why don't we get their statements?

20   Why don't we find out from them what they think?

21          MR. VIANALE:  They don't -- because they don't have

22   the expertise in hiring lawyers that the corporation does.

23   They have no idea what legal fees cost.  You have a

24   shareholder saying you should be paid $1.  Okay.  The

25   management of a corporation like this, which regularly retains

**194**

Case: 1:09-cv-05314 Document #: 149 Filed: 10/15/10 Page 23 of 48 PageID #:1881
Case: 10-3285    Document: 38    Filed: 03/12/2012    Pages: 243

23

1   counsel, is in a very good position to know what that costs.

2           THE COURT:  The problem is that the management, of

3   course, is another portion of the corporation.  But all of

4   these different segments of the corporation don't have the

5   same particular interests.  Sometimes their interests are in

6   conflict.  The management's interest in resolving this case

7   may be different from the shareholders' interest.  The

8   management's interest in paying you money for this case to go

9   away may be different from the shareholders' interest.  The

10  shareholders may not have wanted you to institute this lawsuit

11  in the first place even though you're here representing them.

12          I just don't understand why you would object to

13  having the shareholders put in their opinion, their two cents,

14  as to what an appropriate fee would be, what they would be

15  willing to pay you to conduct this litigation, of what value

16  was it to them, the shareholders of the corporation, the

17  people who own the corporation, the people whose money is

18  invested in the corporation.  Why shouldn't they be allowed to

19  have a say-so?  What was the value to them of what you

20  accomplished, this more than 50 percent success that you've

21  had in this lawsuit?  What's the value to them?  Isn't that

22  part of the determination of what the market will bear, the

23  market analysis for what your services are worth?

24          MR. VIANALE:  I don't -- no, because -- respectfully,

25  no, your Honor, because how do they have any basis to know

# 195

24

1   what we did in the case?

2           THE COURT:  I mean, if that's the case, if the

3   shareholders are incompetent, then what you're really saying

4   is that their say should not be heard, their direct say should

5   not -- they should only be heard through the officers of the

6   corporation.  And in a shareholders' derivative action,

7   there's a certain tension there, isn't there?

8           MR. VIANALE:  There may be a certain tension, your

9   Honor.  But I don't know how, you know, thousands of

10  shareholders who have limited touch with this case would be

11  able to judge our fee application.  That's really what we're

12  talking about here.  For a shareholder to make the

13  determination that you're talking about on a market basis like

14  we did with the company, they would have to know a lot of

15  things.

16          THE COURT:  No more than they have to know when they

17  vote on directors.  And they do that every year, don't they?

18          MR. VIANALE:  Well, they get proxy materials at least

19  with that.

20          THE COURT:  Excuse me?

21          MR. VIANALE:  They get proxy materials with that.

22  They get the whole background of who the director is and --

23          THE COURT:  Well, give them the background on the

24  case, the same background you've given me.

25          I'm, frankly, astounded that you would take the

# 196

Case: 1:09-cv-05314 Document #: 149 Filed: 10/15/10 Page 25 of 48 PageID #:1883
Case: 10-3285    Document: 38    Filed: 03/12/2012    Pages: 243

25

1    position that shareholders are too ignorant to have an opinion

2    on this that's worth listening to.

3              MR. VIANALE:  No, I didn't say that, your Honor.

4              THE COURT:  Sure you did.  You said how could they

5    possibly know.  They have no basis.  They have no way.  Only

6    the directors can know.

7              MR. VIANALE:  No, they don't have any facts in front

8    of them.  How can they know?  This company had all the facts

9    in front of it.  It had the complaint.  It had what we did.

10   It was here in court.  It had its lawyers.  I'm just saying,

11   how are you going to educate the shareholders to the point

12   where they have an opinion that means anything here?

13             THE COURT:  Well, that's why we gave them the notice

14   of the settlement, right?  So they could have enough

15   information to make a rational determination.  Wasn't that

16   process worth something?

17             MR. VIANALE:  It is, your Honor.  If you want us to

18   notify the class and ask them what they think they should pay

19   us in our attorneys' fees, we can do that.

20             THE COURT:  Before we do that, here's what I'd like:

21   I'd like first an explanation from you of how you reached your

22   multiplier in this case.

23             MR. VIANALE:  Well, the multiplier was 1.394, your

24   Honor.  It's well below --

25             THE COURT:  How did you calculate it?

1          MR. VIANALE:  Our lodestar in the case was $641,000.

2    The company said it wouldn't object to a fee request beyond

3    925,000.  We could have come in, I guess, and asked for more

4    than $925,000.  We did not do that.  So we're asking for a

5    modest multiplier.

6          THE COURT:  It appears to me -- first of all, you're

7    assuming that a multiplier is applicable in every case.  I

8    don't assume that.

9          It appears to me that the multiplier you're asking

10   for in this case was not arrived at by looking at the factors

11   that the case law requires.  Rather, you reached the amount

12   you wanted to charge and you determined what the multiplier

13   ought to be to take your actual hourly charge, your actual

14   lodestar, to that amount.  And that's not appropriate.  It's

15   not right.  It's not according to the case law.  It's totally

16   inappropriate.  That's what it appears like to me.

17         In addition to that, the materials you have submitted

18   in support of the attorneys' fees are, in my opinion, woefully

19   inadequate.  Give us the actual documents, not your summary of

20   the documents.  Give us your actual hourly calculations, the

21   time sheets, the explanations, all of that.  We'll look at it

22   and determine whether or not it's an appropriate, reasonable

23   fee.

24         There is, as far as I can tell, no calculation here

25   for the likelihood -- how many law firms were involved in this

**198**

Case: 1:09-cv-05314 Document #: 149 Filed: 10/15/10 Page 27 of 48 PageID #:1885
Case: 10-3285    Document: 38    Filed: 03/12/2012    Pages: 243

27

1   case?

2           MR. VIANALE:  Just three.

3           THE COURT:  Excuse me?

4           MR. VIANALE:  Three.

5           THE COURT:  -- for the likelihood that there was some

6   sort of duplication of effort by three different law firms

7   doing the same case.  And it seems to me there must have been.

8   Another reason why I want the actual time sheets, the actual

9   records submitted to us.

10          Let's do that first.  We'll wrestle with this issue

11  of -- and I don't raise this issue of the shareholders out of

12  thin air.  I've got a letter in there from an 86-year-old

13  shareholder who is absolutely mortified that her company that

14  she invested her money in is going to pay you close to a

15  million dollars for a case that took less than a year and at

16  which there was no evidentiary hearing whatsoever.  For

17  paperwork.  She's mortified.  She's got a right to have some

18  input into this process.

19          How long will it take you to submit those materials?

20          MR. VIANALE:  The backup for our --

21          THE COURT:  All of the backup records.

22          MR. VIANALE:  Not very long, your Honor.  A week.

23          THE COURT:  I'm sorry?

24          MR. VIANALE:  A week.

25          THE COURT:  All three?

# 199

Case: 1:09-cv-05314 Document #: 149 Filed: 10/15/10 Page 28 of 48 PageID #:1886
Case: 10-3285    Document: 38    Filed: 03/12/2012    Pages: 243

28

1              MR. HURST:  Yes, your Honor.

2              MR. VIANALE:  One of us is going to be away.  Could

3      we have two weeks, your Honor?

4              THE COURT:  Sure.

5              Sir, what did you have to say?

6              MR. FRANK:  Thank you, your Honor.

7              THE COURT:  Identify yourself completely for the

8      record, please.

9              MR. FRANK:  Absolutely.  My name is Theodore H.

10     Frank.  I'm a shareholder.

11             THE COURT:  The last name is Frank?

12             MR. FRANK:  My last name is Frank.

13             THE COURT:  Okay.

14             MR. FRANK:  And I know when I worked on the 27th

15     floor, when I heard pro se, I would think somebody who was

16     going to complain about gold-fringed flags.  So I wanted to

17     show the Court that I'm an attorney.  I'm an elected member of

18     the American Law Institute.  And I'm here because there are

19     severe problems with this settlement that I object to as a

20     shareholder.  One of those is procedural, three of them are

21     substantive.  I'll take them in turn.

22             With respect to the notice, the notice was woefully

23     inadequate.  They did not send me notice until June 23rd, two

24     days before the deadline for objections.  I did not receive it

25     until June 28th.  Now, they argue, well, that's okay because

**200**

**200**

Case: 1:09-cv-05314 Document #: 149 Filed: 10/15/10 Page 29 of 48 PageID #:1887

Case: 10-3285    Document: 38    Filed: 03/12/2012    Pages: 243

29

1  he's a shareholder who holds his shares through a broker.  But
2  none of the cases they cite in support of the proposition that
3  you can treat those shareholders as second-class citizens
4  suffice -- stand for the proposition that you can ignore them
5  entirely.  All of those cases just simply said that if the
6  attorneys have performed their notice obligations with due
7  diligence, the fact that the broker engaged in unreasonable
8  delay does not make the notice improper.  But that's not what
9  happened here.

10       My broker did send them the names and addresses very
11  promptly.  And they sat on it another five days.  And then
12  they sent out the notice.  They did not ask the broker -- they
13  knew they had a settlement on April 28th.  They did not ask
14  the broker for the names and addresses until June 1st.  They
15  sat on that for 35 days.  Even if you go by the May 11th
16  approval of the preliminary -- the preliminary approval, they
17  sat on it for 21 days.

18       If you look at the cases they cite, the Fidel case
19  notice was sent out 46 days before the hearing, rather than
20  the 24 days here.  The DeJulius case out of the Tenth Circuit,
21  the notice was sent to the brokers two days after the
22  preliminary approval.  In the Torrisi case, the brokers held
23  on to the names and addresses for two months.  None of those
24  cases are -- all of those cases are distinguishable from what
25  we have here.

1          And if the Court were to go farther and say it's okay

2     to completely set up your notice system so that shareholders

3     who hold their shares in a broker's name are effectively going

4     to be frozen out, that would violate the Supreme Court's

5     holdings on what constitutes adequate notice.

6          And I'll note that the notice provision does not

7     satisfy their own case law, Torrisi, which says was notice

8     adequate to flush out whatever objections might reasonably be

9     raised.  And it clearly wasn't because the objections we have

10    here are from, let's face it, mostly the crackpots, the person

11    who is asking for the two and a half million dollars.

12          THE COURT:  You don't think he's entitled to that

13    either?

14          MR. FRANK:  I'll go out on a limb and say he doesn't

15    deserve two and a half million dollars.

16          I was able to file a quasi substantive objection in

17    24 hours -- literally less than 24 hours after I got -- opened

18    up my mailbox and found out that my objection was due three

19    days ago.  And I would have liked to have had more time, but

20    plaintiffs' lawyer said, no, you're -- you can't object at

21    all.

22          MR. VIANALE:  That's untrue, your Honor.

23          MR. FRANK:  He said you can send it in to the Court

24    and we'll see what the Court says, whether you're allowed to

25    object.

1              MR. VIANALE:  Thank you.

2              MR. FRANK:  Which effectively meant that I had to get

3     it in as early as possible.

4              And I -- you know, I would have liked to have had

5     time to research some of these issues a bit more thoroughly,

6     like the -- for example, the interrelationship between 23(h)

7     and 23.1.  They claim that 23(h) doesn't apply at all under a

8     23.1 setting.  I'm not so sure that that's true, but I haven't

9     had time to research it.  I can't raise it here.  I've been

10    prejudiced in that way.

11             But let me raise some of the issues that I can raise.

12    And the fact of the matter is that this settlement is

13    worthless to the class.  And we know that it's worthless to

14    the class because in their complaint, the plaintiff said there

15    are no damages here.  We know that it's worthless to the

16    class.  And they say, well, but the plaintiffs -- excuse me --

17    the defendants say that the settlement benefits Sears.  Well,

18    we know that the defendants don't really believe that because

19    they settled this case on April 28th, and they didn't file a

20    disclosure with the SEC.  The Court preliminarily approved the

21    settlement on May 11th, and they didn't file a disclosure at

22    the SEC.

23             So there are one of two possibilities here.  Either

24    the defendants are in violation of the securities laws because

25    they did not disclose a material change in circumstances in

1   the business or this wasn't material at all.  And if it's not

2   material at all, it's not a material benefit to the class.

3   Where -- where is the benefit to the class?

4           Well, how did the market react?  On June 4th the

5   press release came out and the stock dropped $3.  Now, I'm not

6   going to claim that the stock dropped $3 because of the press

7   release.  That would require, you know, some financial

8   analysis that I have not had time to conduct.  But it does

9   show that this isn't a slam-dunk question, whether or not this

10  wonderful lawsuit that the plaintiffs have engaged in out of

11  the goodness of their hearts has had benefit to the

12  corporation.  At least it's a questionable fact.  And they

13  haven't adduced any evidence in support of it.

14          Well, they say but there's the problem of if there

15  was a Clayton Act violation, there could be all these adverse

16  consequences.  Well, what are those adverse consequences?  And

17  I had a colleague of mine make some phone calls and do some

18  research.  And the number of fines that the Obama

19  administration has issued for interlocking directorate

20  violations is zero dollars.  The number of fines that the Bush

21  administration issued for interlocking directorate violations,

22  zero dollars.  Well, what about the Clinton administration?

23  No.  Zero dollars.  Bush?  Zero dollars.  Reagan?  Zero

24  dollars.  I didn't check Carter.  But going back 30 years, the

25  FTC, DOJ, they don't issue fines for this.  What do they do?

# 204

Case: 1:09-cv-05314 Document #: 149 Filed: 10/15/10 Page 33 of 48 PageID #:1891
Case: 10-3285    Document: 38    Filed: 03/12/2012    Pages: 243

33

1    They go to the corporation and they say we think you have an

2    interlocking directorate problem; please fix it.

3        THE COURT:  How often do they do that?

4        MR. FRANK:  Not very often, your Honor, but I don't

5    have an exact number on that.  I apologize.

6        So there's no benefit to the class from this

7    settlement.

8        The only benefit that they say is, well, we threw a

9    director off the board and he can't participate anymore.  But,

10   your Honor, as a matter of simple economics, if you have a

11   choice between chocolate, vanilla and strawberry or if you

12   have a choice between chocolate and vanilla, you're always

13   better with the first one, even if you might not want the

14   strawberry.  At a minimum you cannot be worse off with having

15   more choices for directors than less choices.

16       So we have no evidence of benefit.  We have evidence

17   that it hurt the shareholders, that it hurt the corporation.

18   Why should shareholders agree to this?

19       And I think you raised an interesting point:  What

20   would the shareholders pay on the market for this?  And this

21   goes to something I mentioned in the brief about the fiduciary

22   duty to the clients.  And it also goes to 23.1(a).  Are the

23   representatives here adequate and representative of the

24   shareholders as a whole?  And, your Honor, if the attorneys

25   went to a shareholders' meeting and said here's our

1  proposition; we think that there's some breach of fiduciary

2  duty among the appointment of directors and it hasn't caused

3  you any damage and it's not going to cause you any damage in

4  the future, but we'd like to engage in what Mr. Vianale calls

5  a very, very expensive litigation to correct this problem that

6  isn't causing you any damage and we'd like to get paid close

7  to a million dollars for it and have the shareholders spend a

8  lot of money on Wachtell Lipton and a Chicago law firm and

9  have directors distracted by this litigation; what do you, the

10  shareholders, want?  And, keep in mind, you shareholders,

11  you've already elected these directors to the board, already

12  knowing what their resumes were, by a 99.9 plus percent

13  figure.  And I think the shareholders will say get out of

14  here; we're not spending a dime on that; we don't want that

15  kind of lawsuit.  That's just churning.

16       THE COURT:  But that's not really the issue here, is

17  whether the shareholders would want to hire them to conduct

18  this litigation.  The issue is what would the shareholders be

19  willing to pay for these types of services, which is a

20  slightly different question; that is, what are the services

21  that they're offering --

22       MR. FRANK:  I agree that it's a slightly different

23  issue.  But I think the issue, would the shareholders, X and

24  Z, want to bring this litigation, I think the answer is very

25  clearly no.

 1          THE COURT:  Let's assume that they wanted to bring

 2     this litigation.  What would they be willing to pay this law

 3     firm to do it?  That's the market analysis that I think the

 4     case law calls for.

 5          MR. FRANK:  Then I think the correct answer there is

 6     zero because this is not a lawsuit that helps the company.

 7     And there's no evidence that it's helped the company.  All the

 8     evidence is is that this is a lawsuit that the lawyers engaged

 9     in for their own benefit at the expense of their client, the

10     shareholders, or the expense of their putative client.

11          There's one last issue, and that's whether the

12     settlement is collusive.  And there are indicia of collusion

13     here.  The first indicia is this clear sailing clause.  And

14     that's the Weinberger case in the First Circuit and many other

15     cases citing Weinberger; that when you have a clear sailing

16     clause, you've got to look at it a little bit more closely

17     because, you know, why is it that -- you know, what is it that

18     the plaintiffs' attorneys gave up to get that clear sailing

19     clause?  Why is it that the defendants are paying to do that?

20          And the second issue here is the alleged -- the

21     lawsuit alleges a no damage breach of fiduciary duty by the

22     directors at the expense of the corporation and shareholders.

23     And the settlement has the shareholders paying for the

24     attorneys' fees to correct this problem.

25          Now, it's possible that it might be covered by the

1   directors' and officers' insurance.  The settlement agreement

2   isn't clear on that.  But there is a backstop in there that

3   says that Sears will pay this; that it will come out of my

4   funds as a shareholder to pay the attorneys for this lawsuit

5   alleging a director's breach of fiduciary duty.  And I would

6   submit that that is at least a little bit collusive between

7   the directors and the plaintiffs' attorneys at the expense of

8   the shareholders.

9          One last point regarding the benefits of the

10  settlement.  This is a lawsuit for no damages, and they've

11  shown no indication on how there might be damages in the

12  future.  So how is it that the settlement is beneficial?  If

13  there's a breach of fiduciary duty --

14         THE COURT:  But you're just calling into question the

15  basis behind the Act.  It could be that the Act is totally

16  bogus, but that's not for us to decide.  The Act says this is

17  something that's bad and you have a right to challenge it.

18         MR. FRANK:  But --

19         THE COURT:  You can argue that it's not.  You can

20  argue that it isn't.  And if you can convince Congress that

21  that's true, they'll change the law.  But until you do that,

22  that's a given here.

23         MR. FRANK:  Your Honor, but that's not -- it's not a

24  law for the benefit of the shareholders.  And this is one of

25  the issues I would have loved to have had more time to

1    research.  But this goes to the question of antitrust injury,

2    right?  This is something to protect competition, to protect

3    Sears and Jones Apparel from colluding somehow to split up the

4    market for ladies' wear, so nobody has alleged that that's

5    actually happened here.  That's something at the expense of

6    consumers.  That's something shareholders would want.  They

7    would love to have some sort of arrangement whereby prices go

8    up and the company makes more profit at the expense of

9    consumers.

10          So, you know, leaving it -- I'm not asking the Court

11   to reevaluate the merits of Section 8.  I'm asking the Court

12   to say why is this being brought on behalf of shareholders

13   when there's no damage to the shareholders and there's no

14   future damage to the shareholders.  And if -- they can't have

15   it both ways is the point I'd like to make.  They can't say

16   that by curing this breach of fiduciary duty, there are

17   benefits but there were no costs from the original breach of

18   fiduciary duty.  So either there are damages to the class from

19   the breach of fiduciary duty -- alleged breach of fiduciary

20   duty or there are benefits to the shareholders from the

21   alleged cure of the -- from the cure to the alleged breach of

22   fiduciary duty.  But you can't have it where neither of those

23   is true.

24          I'm happy to answer any questions you might have,

25   your Honor.

1          THE COURT:  No, no questions.

2          Does anyone else wish to speak?

3          MR. VIANALE:  Your Honor, I'd like to respond to just

4   a couple of points.

5          THE COURT:  Sure.

6          MR. VIANALE:  About the disclosure of the settlement,

7   Mr. Frank said it wasn't disclosed until some much later time.

8   The settlement was disclosed in an SEC filing on April 7 or

9   April 8.  And the existence of a -- of the memorandum of

10  understanding was disclosed in that SEC filing.

11         Secondly, the next day there was a full-page

12  article -- or half-page article in the Wall Street Journal

13  about that filing that appeared in the C section and talked

14  about Section 8, Mr. Crowley, Ms. Reese.  That was done all in

15  early April.  I think it was April 8th.  So what he said on

16  that point is factually incorrect.

17         With respect to the notice to shareholders, we think

18  that the notice, as I said earlier, was okay.  It was

19  constitutionally valid.  But, nevertheless, to remove this

20  article -- argument entirely, we would be prepared to send a

21  postcard to those shareholders who held the stock in nominee

22  name, that is, those shareholders who were notified after the

23  first wave on June 1.  And we have drawn up the language that

24  we would propose to tell them.  It essentially would tell them

25  that -- we would ask your Honor to put off the settlement

 1  hearing for another day, give them another day for objections

 2  and advise them to go to the original notice that they

 3  received on how to object or that they could obtain another

 4  copy of the notice by simply downloading it or calling the

 5  notice administrator.

 6          THE COURT:  How many notices are we talking about?

 7  How many shareholders?

 8          MR. VIANALE:  I think roughly 49 to 50,000.  And

 9  we've drawn up language --

10          THE COURT:  Is it likely that a substantial number of

11  those people, like Mr. Frank here, didn't actually receive the

12  notice until after the date for filing objections had passed?

13          MR. VIANALE:  It's possible, your Honor.  Not that I

14  think that's the standard.  The cases say actual notice isn't

15  required.  But it's possible.  And so to cure that, to remove

16  that as a problem, to remove that as an argument -- I don't

17  think constitutionally it's an issue, but rather than litigate

18  and argue that, we think we can cure it with a postcard.

19          THE COURT:  Do you agree?  Can that be cured with a

20  postcard?

21          MR. FRANK:  If it gives the class time to file

22  objections, then I would agree that that would cure it.

23          THE COURT:  It makes sense to me.  It makes sense to

24  me.

25          MR. KING:  Your Honor, this is Chris King on behalf

1   of the director defendants.

2          There's one thing that Mr. Vianale said -- just said

3   that I would like to disagree with.  I actually don't believe

4   that a majority of the people did not receive notice until

5   after the deadline.  The vast bulk of the mailings to the

6   people who held through nominees and who did not provide the

7   names or addresses to Sears were mailed out in advance of the

8   deadline.  And so that portion of what Mr. Vianale said I

9   don't agree with.

10          However, the defendants will not object to the

11   postcard notice approach that Mr. Vianale has suggested.  We

12   have no objection to that.

13          And, your Honor, I do have a couple of points that I

14   would like to be heard on or just at least address, before the

15   Court concludes, from Mr. Frank's comments.

16          THE COURT:  Go ahead.

17          MR. KING:  Thank you.

18          First of all, your Honor, I do want to take exception

19   to the suggestion there is any -- there's been any collusion

20   here.  This was an extremely hard-fought, vigorously contested

21   case, wholly at arm's length, by very reputable counsel on the

22   defense side.  And there was absolutely no collusion here.

23          Second, the suggestion that Mr. Frank made that the

24   people who held through -- elected to hold their stock through

25   nominees instead of by registering their stock with the

1    company were somehow frozen out of the notice process is not

2    accurate.  In fact, your Honor's notice that your Honor

3    approved and what was sent out specifically provides for

4    notice to be given to those nominee holders, which it was; for

5    those nominee holders within ten days to either send the

6    notices out themselves, ask for copies of the notice so they

7    can send them out or give a list to the settlement

8    administrators to send them out, which is the accepted way of

9    proceeding according to all of the cases on this issue.  That

10   is exactly what happened, except that some of the nominee

11   holders -- some of the brokerage houses didn't comply with

12   that ten-day period.

13        THE COURT:  He's saying his brokerage house right

14   away gave you the information.  He still got his late.  Isn't

15   that what you're saying?

16        MR. FRANK:  My -- I don't know when my broker

17   received the mailing they got on the 1st.  It was a mailing.

18   I know that it was received by Garden City Group on the 18th.

19   Garden City Group then took that list and mailed out on the

20   23rd.

21        MR. KING:  Garden City Group has told me, your Honor,

22   that the date of the 23rd, which is the date that they gave to

23   Mr. Frank, was in error.  It was on the 22nd, one day's

24   difference.  But that's -- I believe that was three business

25   days.  So within three business days of having received

**213**

Case: 1:09-cv-05314 Document #: 149 Filed: 10/15/10 Page 42 of 48 PageID #:1900
Case: 10-3285    Document: 38    Filed: 03/12/2012    Pages: 243

42

 1  Mr. Frank's name from the broker, Garden City mailed it out.

 2  And that's well within the time frame that's been approved by

 3  other courts.

 4       The last thing that I would like to just mention to

 5  your Honor is your Honor earlier during the hearing made a

 6  suggestion that there might be some type of a further

 7  communication with the shareholders with respect to the

 8  attorneys' fees question.  Now, we've agreed not to take a

 9  position on the plaintiffs' request for fees.  We're not doing

10  that.

11       However, I must say that on behalf of the director

12  defendants and the company, if there is going to be some type

13  of a subsequent communication with the shareholders that has a

14  cost involved with it, we will want to be heard on that issue

15  at that time to address the issue of cost because obviously

16  additional cost to our clients -- and I'm sure Ms. Hudson

17  would say additional costs to the company -- are something

18  that are of concern to us.  And so I would just like to

19  reserve our rights on that if I may.

20       THE COURT:  Okay.

21       Anything else by anyone?

22       MR. VIANALE:  Your Honor, I have a formal notice that

23  we would propose to send to the shareholders.  If I could hand

24  it up?

25       THE COURT:  The postcard notice?

**214**

Case: 1:09-cv-05314 Document #: 149 Filed: 10/15/10 Page 43 of 48 PageID #:1901
Case: 10-3285    Document: 38    Filed: 03/12/2012    Pages: 243

43

1              MR. VIANALE:  Yes.

2              THE COURT:  Sure.

3        (Tendered.)

4        (Brief pause.)

5              THE COURT:  It appears pretty straightforward to me.

6    Have you seen it?

7              MR. FRANK:  I have not seen it.

8              THE COURT:  Give Mr. Frank a copy.

9              MR. FRANK:  I'm sorry?

10             MR. VIANALE:  I'm sorry.  Here, I have a copy for

11   him.

12       (Brief pause.)

13             MR. FRANK:  I mean, I think a lot would depend on the

14   dates.  As long as there is adequate time for shareholders.

15             THE COURT:  How much time do you think is adequate?

16             MR. FRANK:  Well, I mean, for example -- I mean, I

17   would say three weeks from the mailing date.  I don't know how

18   quickly they could get these mailed out.

19             MR. VIANALE:  Your Honor, I propose the following

20   dates:  The postcard would go out July 20th; that all

21   objections be served by August 20th.  And if your Honor had

22   another -- continue this fairness hearing to August 27th.

23             THE COURT:  Sounds adequate.

24             MR. FRANK:  I think so.

25             MR. KING:  No objection, your Honor.

 1          MR. FRANK:  Independently, your Honor, I would just

 2    like to apologize for the unintentional factual misstatement,

 3    if it is indeed the case that there was an SEC filing before

 4    April 28th.  I only looked back to April 28th because that's

 5    when the settlement agreement was signed.  And it perhaps

 6    should have but did not occur to me that there might have been

 7    a filing before there was an actual agreement.

 8          THE COURT:  Those dates are fine as far as I'm

 9    concerned.  And I think the notice is straightforward and

10    works quite well.  Now that we have the Internet and people

11    can download the original notices from there, that seems to me

12    to take care of the problem that Mr. Frank has raised.

13          I have one other question I would like to ask with

14    respect to the attorneys' fees.  It's really -- I want to ask

15    of the attorneys for Sears and for the defendants, which is:

16    When you agreed to this cap that you would not object to on

17    attorneys' fees, this 900-and-some thousand dollars, what was

18    the basis for agreeing to that?

19          MR. KING:  It was a negotiated compromise amount,

20    your Honor.  There was a negotiation.

21          THE COURT:  But on what did you base your position in

22    that negotiation as to what an appropriate amount of fees

23    would be?  Did you, for example, compare it to the fees you

24    were charging your client for the same litigation?

25          MR. KING:  We did consider what -- what the cost was

**216**

Case: 1:09-cv-05314 Document #: 149 Filed: 10/15/10 Page 45 of 48 PageID #:1903
Case: 10-3285    Document: 38    Filed: 03/12/2012    Pages: 243

45

 1  that was being sought.  And we also considered that amount in

 2  light of the potential cost if we didn't settle and what they

 3  might recover if the case went through the hearing, as well as

 4  what -- what Sears would spend.

 5       THE COURT:  That doesn't actually answer my question

 6  though.  Did you consider it in light of the charges that you

 7  had actually submitted to your client up to that point in

 8  time?

 9       MR. KING:  I do not recall actually pulling our fees

10  at that time, no, your Honor.

11       THE COURT:  I would like to see your fees for a

12  comparison.  Submit those.

13       MR. KING:  All right.  And may we just -- may we

14  provide you with a total by firm or a -- how -- how does your

15  Honor wish to receive that?

16       THE COURT:  Well, I'd like to have the actual

17  documents.

18       MR. KING:  The time records?

19       THE COURT:  Yes, same thing they're submitting.

20  Another clear indicator of what the market might feel is an

21  appropriate fee for these services.  Something for us to look

22  at.

23       MR. KING:  Your Honor, I don't want to be -- to

24  create a problem here, but there will be for -- many of us

25  make very detailed time records, and there will be privilege

**217**

Case: 1:09-cv-05314 Document #: 149 Filed: 10/15/10 Page 46 of 48 PageID #:1904
Case: 10-3285    Document: 38    Filed: 03/12/2012    Pages: 243

46

 1   issues associated with that.  May we --

 2            THE COURT:  That's always a problem.

 3            MR. KING:  -- redact them or --

 4            THE COURT:  It's always a problem because, frankly,

 5   when we review these things, if the description in the time

 6   record is not sufficient to tell us precisely what's being

 7   charged for, it doesn't really do us any good.  And you have

 8   your concern about the privilege issues.  I would think that

 9   you would be able to redact any mentions of anything having to

10   do with any form of work product, opinions, conclusions,

11   strategies and still be able to include the substantive

12   subject matter to which the charge relates.  That's what I

13   would ask you to do.

14            MR. KING:  Your Honor, may we submit those in camera,

15   your Honor?

16            THE COURT:  Do you have any objection?

17            MR. FRANK:  I would prefer if Sears not spend money

18   on redactions.  So as long as the totals are available, I

19   don't have any problem.

20            THE COURT:  Do you have any objection?

21            MR. VIANALE:  No, your Honor.

22            MR. KING:  That certainly is our preference, your

23   Honor.  We don't want to redact them either.

24            THE COURT:  Fine.  You can submit them in camera.

25            MR. KING:  Thank you, your Honor.

**218**

Case: 1:09-cv-05314 Document #: 149 Filed: 10/15/10 Page 47 of 48 PageID #:1905
Case: 10-3285     Document: 38     Filed: 03/12/2012     Pages: 243

47

 1            MR. VIANALE:  Can we do the same, your Honor?  Can we

 2    do the same with ours?

 3            THE COURT:  Yes.

 4            MS. HUDSON:  Just to be clear, your Honor.  You

 5    wanted the billing records for the individual director

 6    defendants' counsel, as well as nominal defendant Sears

 7    Holdings Corporation?

 8            THE COURT:  Yes.

 9            So I think we'll give this a 60-day status hearing.

10    You may be able to get everything done by then.

11            THE CLERK:  September 9th.

12            THE COURT:  September 9th.

13            MR. VIANALE:  Your Honor, the previous schedule we

14    were going to put on the postcard had a fairness hearing

15    August 27th.  So that contemplated us being -- all of us being

16    back here then.

17            THE COURT:  Well, we've got until August 28th on this

18    new postcard going out for the filing of objections.  Should

19    we have a status hearing before then?

20            MR. VIANALE:  August 20th, your Honor, is for the

21    objections.

22            THE COURT:  August 20th?

23            MR. VIANALE:  Yes, your Honor.

24            THE COURT:  All right.  Let's try August 27th.

25            THE CLERK:  10:00 a.m.?

**219**

Case: 1:09-cv-05314 Document #: 149 Filed: 10/15/10 Page 48 of 48 PageID #:1906
Case: 10-3285  Document: 38  Filed: 03/12/2012  Pages: 243

48

1           THE COURT:  10:30.

2           MR. KING:  So the postcard should request a fairness

3  hearing August 27, 10:30?

4           THE COURT:  Yes.  We'll try to make that work.

5           MR. KING:  Thank you, your Honor.

6           THE COURT:  Thank you all.

7           MR. FRANK:  Thank you, your Honor.

8           THE COURT:  Have a good day.

9                    *    *    *    *    *

10

11  I certify that the foregoing is a correct transcript from the
    record of proceedings in the above-entitled matter.
12

13
    _/s/ Nancy C. LaBella___                    _July 16, 2010_
14  Official Court Reporter

15

16

17

18

19

20

21

22

23

24

25

1

1    IN THE UNITED STATES DISTRICT COURT
     FOR THE NORTHERN DISTRICT OF ILLINOIS
2              EASTERN DIVISION

3  ROBERT F. BOOTH TRUST,            )
   derivatively on behalf of         )
4  nominal defendant SEARS HOLDINGS )
   CORPORATION,                      )
5                                    )
               Plaintiff,            )
6                                    )
     v.                              )  No. 09 C 5314
7                                    )
   WILLIAM C. CROWLEY, EDWARD S.     )
8  LAMPERT, STEVEN T. MNUCHIN,       )
   RICHARD S. PERRY, ANN N. REESE,   )
9  KEVIN B. ROLLINS, EMILY SCOTT,    )
   and THOMAS J. TISCH,              )  Chicago, Illinois
10                                   )  September 10, 2010
               Defendants,          )  9:30 a.m.
11                                   )
                                     )
     and                             )
12                                   )
   SEARS HOLDINGS CORPORATION,       )
13                                   )
               Nominal Defendant.    )
14
               TRANSCRIPT OF PROCEEDINGS
15       BEFORE THE HONORABLE RONALD A. GUZMAN

16
   APPEARANCES:
17
   For the Plaintiff:        SARRAF GENTILE LLP
18                           BY:  MR. JOSEPH GENTILE
                             485 Seventh Avenue
19                           Suite 1005
                             New York, New York  10018
20                           (212) 868-3610

21                           SUSMAN HEFFNER & HURST LLP
                             BY:  MR. MATTHEW TODD HURST
22                           Two First National Plaza
                             Suite 600
23                           Chicago, Illinois  60603
                             (312) 346-3466
24

25

# 221

```
 1    APPEARANCES:   (Continued)

 2    For the Plaintiff:         VIANALE & VIANALE LLP
                                 BY:  MR. KENNETH J. VIANALE
 3                               2499 Glades Road
                                 Suite 112
 4                               Boca Raton, Florida  33431
                                 (561) 392-4750
 5
      For the Defendants:        SONNENSCHEIN, NATH & ROSENTHAL, LLP
 6                               BY:  MR. CHRISTOPHER Q. KING
                                      MR. RAMJI B. KAUL
 7                               233 South Wacker Drive
                                 Suite 7800
 8                               Chicago, Illinois  60606
                                 (312) 876-8000
 9
      For the Nominal Defendant  SCHOPF & WEISS LLP
10    Sears:                     BY:  MS. LESLEY GAYLE SMITH
                                 One South Wacker Drive
11                               28th Floor
                                 Chicago, Illinois  60606
12                               (312) 701-9300

13
      Court Reporter:            NANCY C. LaBELLA, CSR, RMR, CRR
14                               Official Court Reporter
                                 219 South Dearborn Street
15                               Room 1222
                                 Chicago, Illinois  60604
16                               (312) 435-6890
                                 Nancy_LaBella@ilnd.uscourts.gov
17

18

19

20

21

22

23

24

25
```

```
 1        (Proceedings heard in open court:)
 2            THE CLERK:  09 C 5314, Robert F. Booth Trust v.
 3   Crowley.
 4            MR. VIANALE:  Good morning, your Honor.  Kenneth
 5   Vianale for the plaintiffs.
 6            MR. GENTILE:  Good morning.  Joseph Gentile for the
 7   plaintiffs.
 8            MR. HURST:  Good morning, your Honor.  Matt Hurst
 9   also for the plaintiffs.
10            MR. FRANK:  Theodore Frank for Theodore Frank.
11            MR. KING:  Good morning, your Honor.  Christopher
12   King and Ramji Kaul for the individual defendants.
13            MS. SMITH:  Lesley Smith on behalf of the nominal
14   defendant, Sears Holdings Corp.
15            THE COURT:  First, as to the motion to intervene, we
16   have denied that motion.  However, in the denial we make it
17   clear that you're entitled to have your voice heard at the
18   fairness hearing and in any other aspect of the case that you
19   wish as an affected party.  So, Mr. Frank, if there's
20   something you wish to present to the Court in the way of
21   objections to the settlement that you haven't already
22   presented in your written filings, we'd be happy to hear it
23   now.
24            MR. FRANK:  I'm happy to rest on the briefs, your
25   Honor.  If you have any questions, I'm happy to answer them.
```

1           THE COURT:  No, I don't.  I've read your materials

2  and I think I understand the points you're making.

3           MR. FRANK:  Thank you, your Honor.

4           THE COURT:  Who wants to go first?  Is there anything

5  you wish to say?

6           MR. VIANALE:  Your Honor, Kenneth Vianale for the

7  plaintiffs.

8           We are asking the Court, again, to approve the

9  settlement as fair, reasonable and adequate under Rule 23.1.

10  We had a lengthy presentation about that at the last hearing.

11  I won't go through that again, your Honor.  I went through all

12  the factors.  All of that is in our briefs.  We believe we

13  meet all of the factors.

14           Let me just reiterate that we believe that the

15  settlement provides a substantial benefit to the corporation

16  and to its shareholders.  Mr. Crowley has left the board as an

17  officer and a director.  A new independent director will be

18  added to this small board.  Ms. Reese and Mr. Lampert are

19  going to have a firewall which prevents them from

20  participating in votes related to areas that are -- that are

21  at issue in the lawsuit.  Those are the main tenets of the

22  settlement.

23           We think we didn't stress the last time, which I'd

24  like to now, is the addition of the new director.  Apart from

25  the relief we're getting on the interlocking directors, the

1    company is adding a new director, which we think is

2    significant in a small board like this, which is largely

3    controlled by Mr. Lampert.  He owns more than 50 percent of

4    the corporation.  It's not a surprise that an owner that large

5    would -- would control.  Having another independent director

6    is a benefit to the corporation in a situation like that,

7    particularly with a small board.

8             THE COURT:  It's not directly relevant to this

9    lawsuit though, is it?

10            MR. VIANALE:  It isn't, but it's still a benefit.

11   It's not directly relevant to the Section 8 Clayton Act claim,

12   but it is indirectly related.

13            This is a company that gets involved in a lot of

14   litigation.  They have antitrust cases brought.  They were

15   sued recently in the State of California for anticompetitive

16   activity.  It doesn't hurt in this situation to have a

17   director who is not involved with ESL Investments from our

18   standpoint.

19            Here's the other point:  Does it add value for the

20   shareholders?  It sure does.  If this company for some reason

21   is sold, like a lot of companies are being sold and merged

22   today --

23            THE COURT:  The company seems to be getting sold in

24   little pieces for the last 15 years or so, hasn't it?

25            MR. VIANALE:  Sold and then re-put back together

```
 1   again when K-Mart and Sears merged in 2005.

 2           The point is, it may not be directly tied to Section

 3   8 Clayton Act, which is what the case was brought under, but

 4   in a small board situation where the plaintiffs are alleging

 5   misconduct on the part of some of the directors, particularly

 6   the controlling director who is at issue here, we think it's a

 7   benefit to have a director coming who has no -- a new director

 8   coming to the board who has no affiliation or relationship to

 9   ESL Investments, the controlling shareholder.  It's in our

10   papers -- we didn't stress it before -- but we think on top of

11   the obvious benefits of removing the interlock, having a new

12   director is a big help.

13           Here's another point, your Honor:  The objections to

14   the settlement.  Over 100,000 notices went out on the

15   settlement, including a renotice that we did.  We've filed

16   affidavits from the claims administrator on this.  But just to

17   be absolutely certain that everybody got notice, that nobody

18   was shortchanged with time, we sent out another 50,000

19   postcards, which your Honor approved the wording on.  Nobody

20   objected as a result of that.  There wasn't a single person

21   that objected as a result of that.  So there can't be any

22   doubt now that the shareholders have complete notice of this.

23   They've had an opportunity.  And what has been the result?

24   We've had only eight objections out of over 100,000 notices.

25   That's a very strong statement that the settlement is fair and
```

```
 1   reasonable and adequate.
 2           I'd like to deal with Mr. Frank's objection, and then
 3   I would like to talk about the attorneys' fees if I could.
 4           Mr. Frank's major objection, he put forward in
 5   paragraph 14 of his objection and motion to intervene; and he
 6   says that the settlement is of no value to shareholders
 7   because somehow stopping Sears from colluding or giving it the
 8   opportunity to collude or the temptation to collude is no
 9   value to shareholders because it's in their interest that the
10   company might collude and gain, as he says, excessive or
11   unfair profits.
12           If that's the basis of the objection, there's no case
13   law support for that, to put it mildly.  The case that's in
14   point is Protectoseal v. Barancik -- we cited that -- a 1973
15   case.  It says very clearly a corporation has a very strong
16   interest in making sure that its board is not conflicted; that
17   its board adheres to Section 8 and there's not an interlock.
18           Sears itself says in its own corporate governance
19   guidelines on its Web site, yes, we are committed to
20   maximizing shareholder value, but within the confines of the
21   law.  And any reasonable, rational corporation abides by that.
22   The notion that one should pursue excessive profits in
23   disregard of the law because that's what is in the interest of
24   the shareholders is just plainly wrong.  That is the basis of
25   all of his objections.
```

8

1         The other objection that he put forward was with
2  respect to the company's stock price.  He said, well, the
3  company's stock price went down on the day that it was
4  announced in its proxy that you had reached an agreement here
5  and had settled this case.  And we have put in papers to
6  respond to that.  But it bears noting that the company filed a
7  proxy on April 6 in the morning, at 6:00 a.m. in the morning
8  before the opening of trading.  By the end of the day on April
9  6, the stock price had dropped 54 cents.  Now, it went from
10  basically $108.45 to $107.91, which is less than one-half of
11  one percent, which in the grand scheme of things for this
12  stock is statistically irrelevant.

13         We put in the stock prices so the Court could see
14  during March and during April of this year, which is the
15  relevant period we're talking about, the company's stock went
16  up and down a dollar or two dollars, a dollar or two dollars,
17  back and forth.  What he's offered is proof of nothing.

18         The cases are clear that settlements that are
19  non-pecuniary still provide a value.  We've cited the Mills
20  case and other cases from the Seventh Circuit, the Gaffney
21  case, that make it clear that a settlement like this may be
22  difficult in economic terms to value, but that doesn't mean it
23  is not worthy; it doesn't mean that it doesn't -- hasn't
24  provided a substantial benefit; and it doesn't mean it
25  shouldn't be approved.

1            Finally, your Honor, on the attorneys' fees issue, we

2 provided the Court with our detailed billing statements. We

3 did so in camera. We've given you everything we have on that.

4 Your Honor's opinion in denying the motion to intervene said

5 that it would apply the Hensley case, Hensley v. Eckerhart

6 from the Illinois Supreme Court in 1983. And I would just

7 like to discuss that with the Court for a moment because we

8 put in a brief on Tuesday of this week, which may or may not

9 have gotten to your Honor, but --

10            THE COURT: The supplemental brief on the attorneys'

11 fees?

12            MR. VIANALE: On the attorneys' fees.

13            THE COURT: Yes, we have it.

14            MR. VIANALE: And I'd like to just discuss that

15 because we think that the principles in the two Florin cases

16 from the Seventh Circuit, which are attached to that brief,

17 are controlling here and not Hensley. And I'd like to try to

18 explain that.

19            Hensley dealt with a fee-shifting statute, a civil

20 rights statute. And in that case, and in subsequent cases,

21 courts have held when you have a fee-shifting statute, the

22 court may only award lodestar against the defendants. They're

23 the ones who ultimately have to pay the case in a prevailing

24 party fee-shifting statute.

25            In Florin, the Seventh Circuit took up this very

1    issue.  In Florin, the Seventh Circuit was presented with a
2    case brought under ERISA where there was also a fee-shifting
3    statute, and the trial judge applied simply a lodestar
4    approach.  There was no enhancement to lodestar.  And the
5    court said it was bound in a fee-shifting case not to apply
6    more than lodestar.  And the Seventh Circuit then reviewed
7    that issue and said, yes, the case started out as an -- under
8    a fee-shifting statute, ERISA, but it was settled under a
9    common fund basis.

10          And the question is, should we apply the statutory
11   principles of fee-shifting under Hensley and Dague, two
12   Supreme Court cases, or are we bound to apply equitable
13   principles that apply to a common fund and allow a multiplier
14   for risk, the risk of undertaking the case and the risk of
15   non-payment.  And the court analyzed the issue and said that
16   even though the case was brought under a fee-shifting statute,
17   it was settled under a common fund equitable basis.  And the
18   defendants had asked for a release and received a release of
19   all liability, for fees, for claims, for everything.  And,
20   accordingly, the court said that in that circumstance, the
21   fee-shifting statute, the principles there, should not be
22   applied; that a common fund equitable principle should be
23   applied; and that a risk multiplier was mandated,
24   quote/unquote, to supply the -- to award plaintiffs the market
25   value of their services for having undertaken the risk on a

 1 | contingent fee basis, that is, where they would have no other
 2 | recourse to recoup their attorneys' fees.

 3 | We think that that Florin case -- let me give you the
 4 | final history. Florin sent the case back to the trial court.
 5 | The trial court again refused to apply any multiplier and it
 6 | went back up to the Seventh Circuit. And the Seventh Circuit
 7 | again reaffirmed its position and its principles and said that
 8 | a risk multiplier was mandated and awarded a 1.53 multiplier.

 9 | Here, we've asked the Court for a multiplier on our
10 | time which equates to 1.39. The Florin court said that in
11 | awarding a risk multiplier, the ceiling should be two times
12 | the lodestar. We're well below that at 1.39. And unless the
13 | Court could come -- we believe under the Florin decision,
14 | unless the Court could come to the conclusion that we faced no
15 | risk in this case, no risk of loss, we would be entitled to a
16 | multiplier based on the risk of non-payment.

17 | THE COURT: Well, I think the thing that caught our
18 | attention is the manner at which you arrived at your
19 | multiplier. You seemed to predetermine how much money you
20 | wanted paid and then you determined how much of a multiplier
21 | you had to apply to your lodestar to reach that. That seemed
22 | to us to be upside down, an upside down application of the
23 | lodestar to justify what you wanted in fees. That's not the
24 | purpose of the lodestar. The lodestar should be determined on
25 | the basis of the amount of risk, et cetera, and all the other

 1  factors and then applied.  And the amount that is ultimately
 2  determined by it is the amount that you get in fees, not the
 3  other way around.

 4        MR. VIANALE:  I agree, your Honor.  But we tried to
 5  explain in our brief as best we could, without disclosing
 6  confidential settlement discussions with defense counsel that
 7  we had, on how we got to the number.  And because of that,
 8  we're a little handicapped.  But I think I can explain to the
 9  Court what happened and how we got there without -- without
10  disclosing any real confidences.

11        We disclosed -- we had discussions about the fee.
12  When we negotiated the fee after the settlement had been
13  reached, we disclosed to the defendants at their request what
14  our lodestar was and where our lodestar would ultimately be.
15  You know, there was a lot more work to be done in the case
16  with settlement, with notice, with hearings, with objections.
17  And we estimated where our lodestar would be.  And I said to
18  them, we expected some type of a -- yes, some type of a
19  multiplier on that time.  And that's how we reached the
20  number.

21        But that was -- but that process was just -- right
22  consistent with the cases.  We didn't do it backwards.  We
23  told them what our lodestar was and where we would end up and
24  then we wanted a small multiplier for the risk of non-payment,
25  which the court says is mandatory.

1     Now, I don't think that that's -- that there's
2  anything wrong with the way we approached that.  I think
3  that's the way we had to approach it.  The estimated lodestar
4  that I discussed with counsel -- with defense counsel was
5  almost exactly where we are.  I mean, this isn't the first
6  case we've had.  I kind of know what -- we kind of had a
7  pretty good idea where the lodestar would end up considering
8  where we were when we had the discussions.  It's gotten higher
9  because of the objections we've had to respond to, but I think
10  that that was the proper approach.

11     The multiplier we're asking for of 1.39 is on the low
12  side of where the Seventh Circuit says the ceiling would be.
13  It awards us some risk of non-payment, and the court -- the
14  Seventh Circuit says you have to assess that risk ex ante;
15  that is, at the very beginning of the case, not after it's all
16  over.

17     But what was the risk of non-payment in this case?
18  And we've laid that out in our brief.  Well, there were a lot
19  of sinkholes in the case.  There were plenty of turns in the
20  road where we could have lost the whole case; I mean, not just
21  one little round, but the whole case.  Your Honor could have
22  dismissed the case from day one on the motion to dismiss.  We
23  faced extinction then.

24     THE COURT:  I think the motion was on the basis of
25  the failure to sufficiently allege futility, right?

1           MR. VIANALE:  Correct, your Honor.

2           THE COURT:  That wouldn't have been a dismissal with

3  prejudice, would it?  You could have gone back and notified

4  the board and refiled.

5           MR. VIANALE:  Well, not really, Judge.  Because if we

6  had notified the board -- and suppose we had made a demand;

7  you said, no, you have to make a pretrial demand.

8           THE COURT:  Sure.

9           MR. VIANALE:  All right.  We make a demand on the

10  board and the board says, all right, we've considered your

11  demand and we think everything you're alleging is inaccurate;

12  and, by the way, it's not in the corporation's interest to

13  take any notice of any of this stuff; we're not interested; go

14  away.  Now I refile my case; it's a totally different posture.

15  I've got to now prove that the board was prejudiced.  I've got

16  to prove that the board was self-interested.  I've got -- it's

17  a much, much higher burden once the board makes a decision

18  that it's not in their interest.

19           And if I was unable to persuade you that the board

20  was disinterested in the beginning -- if I was unable to

21  persuade you of the board's interest in the beginning, I don't

22  think I'd be able to tell you later that -- I mean, frankly,

23  the Delaware law that would apply here is very, very harsh on

24  plaintiffs.  If the defendant simply color by number,

25  according to the Delaware cases, the plaintiff has very little

1   chance of overcoming a board's decision not to pursue

2   litigation once they get a demand.  So I don't think I would

3   fare any better had your Honor dismissed us.

4          The second problem for us would have been their

5   statutory defenses.  We could have lost outright on that.  We

6   bore the burden of proving or disproving all of the de minimis

7   statute -- the de minimis defenses that the statute affords

8   them.

9          So, you know, in these kinds of cases -- we have case

10  law; we cited it to your Honor -- the derivative cases are not

11  easy cases for a shareholder to win on.  And the risk

12  multiplier we're asking for, we think, is modest and reflects,

13  you know, a fair estimation, which we can only give -- it's

14  subjective -- but we give a fair estimation of whether -- what

15  the chances of us having total loss were.  And, here, we're

16  saying -- I think the case was -- you know, we had at least a

17  50/50 chance of winning or losing; but the multiplier we're

18  asking for is even less than that.

19         THE COURT:  One of the things I noticed in a couple

20  of the objections that were filed was an objection to the

21  expansive nature of the release that was included as part of

22  the settlement, the language.  In fact, one of the objectors

23  apparently had some sort of a complaint or complaints filed

24  against Sears and was fearsome that the -- was fearing that

25  the release that was included in the settlement would actually

1  put him out of business because it seemed to be releasing any

2  and all complaints that could in any way have been asserted.

3          Now, when you represent -- I don't know, how many? --

4  tens of thousands of shareholders, why do you need such an

5  expansive release?  You've got lots of shareholders out there

6  who, as far as the Court is concerned, could have all sorts of

7  causes of action against Sears that could have been included

8  in this complaint; and your release seems to liquidate their

9  actions, and they're not even here.  They're just here in a

10  representative capacity through you.  Why would you agree to

11  that?

12          MR. VIANALE:  Well, your Honor, we didn't agree to

13  that.  We agreed to a release that had to do with claims that

14  were brought or could have been brought --

15          THE COURT:  Have you read the release language?

16          MR. VIANALE:  Yeah, I've read it, your Honor.

17  This -- it's standard in cases like this that --

18          THE COURT:  I don't care if it's standard.

19          MR. VIANALE:  All right.  Okay.

20          THE COURT:  I'm asking you why it's good here.

21          MR. VIANALE:  First, with respect to the objector, he

22  doesn't even say he filed an action.  He says he's got some

23  complaint with the SEC.  He doesn't say he filed any lawsuit.

24          THE COURT:  Okay.

25          MR. VIANALE:  Number two --

1    THE COURT:  Is that complaint related in any way to

2  this cause of action?

3    MR. VIANALE:  I have no idea.

4    THE COURT:  Neither do I.

5    MR. VIANALE:  And he won't tell us.

6    THE COURT:  But the point is why, if there is such a

7  thing among the tens of thousands of shareholders out there,

8  should we extinguish those complaints and their chances to

9  pursue those complaints by virtue of this lawsuit?  Is there

10  any reason for that?

11    MR. VIANALE:  Well, there's two reasons.  One, unless

12  we gave the defendants a broad release with respect to actions

13  related to what we were suing about here, they're not going to

14  have much interest in settling a case like this.

15    THE COURT:  Well, then maybe it shouldn't be settled.

16  Because let me tell you something, I think that the only cause

17  of action that should be extinguished by the settlement is

18  this cause of action.  All the language that relates to other

19  causes of action that could have been or are related to or

20  might have been included in this complaint should be

21  eliminated, completely.  This is the only cause of action that

22  should be extinguished, the complaint against Sears for

23  putting these very people on the board and as it relates to

24  Section 8.  That's what should be extinguished and nothing

25  else.

1          You don't need two pages of expansive language of

2    causes of action from the beginning of time.  Because there

3    are literally tens of thousands of people out there who could

4    have such causes of action who have had no ability to relate

5    to you, "I have this cause of action; as my lawyer I want you

6    to include it in the complaint and make it part of the

7    settlement."  They haven't had that opportunity.  And by this

8    language, you're extinguishing the possibility that they will

9    be able to do so in the future.

10          MR. VIANALE:  Well, your Honor, but that -- but the

11    way you're describing it, it makes it sound as if we're

12    releasing all the claims that individuals might have, like

13    they slipped and fell on Sears' front porch.  These are

14    derivative claims.  These are claims that the corporation --

15          THE COURT:  Even if we limit it to derivative claims,

16    to claims that are somehow related to this cause of action,

17    neither I nor you know how many such claims are out there.

18    And if any one of the shareholders has such a claim, he has

19    had no opportunity to present it to this Court or any -- and

20    will have no opportunity to present it to any other court in

21    the future by virtue of this release.

22          MR. VIANALE:  But that was the purpose of giving them

23    the language of the release and that -- and the notice.  And

24    the only objection to the release was this one shareholder who

25    said -- by the way, if you notice in his very first objection,

1  he talks about some complaint he had with the SEC in 2005 --

2  no, excuse me -- 2004, which is even before the merger of

3  K-Mart and Sears. So I don't even think that case could

4  possibly have any relation to this one.

5  THE COURT: I don't know if it does or not. I have

6  no idea.

7  MR. VIANALE: But more importantly, he was notified.

8  That's the purpose of the notice; that the shareholders got

9  notice. And they said this is the scope of the release. If

10 you want to come -- he's the only one who came forward. And

11 what did he tell the Court? He said, I'm sorry, I can't tell

12 you what this is about.

13 So, in other words, I understand -- we understand the

14 Court's concern, but that's the point of the meticulous notice

15 that was given in this case.

16 THE COURT: Well, the notice was -- we had to re-give

17 notice because we didn't give it meticulously the first time.

18 I just don't understand why Sears needs to have any

19 other cause of action extinguished by this. What we litigated

20 here is one thing and one thing only and, that is, whether

21 Sears violated Section 8 by having these named people on its

22 board. That's all that's been litigated here, and that's all

23 that should be settled and extinguished. And for that you

24 need about two sentences.

25 MR. KING: Your Honor, this is Christopher King on

1  behalf of the individual defendants.

2  I believe the release language here does essentially

3  what your Honor has suggested, in that, it applies to claims

4  that were made here or which could have been made here, which

5  is essentially the res judicata standard.  That is where this

6  comes from.  And it simply says that when this case is

7  settled, what was litigated here is final.

8  I also agree that --

9  THE COURT:  So why don't we describe what was

10  litigated here, and that is the only cause of action that is

11  final and is barred is a cause of action against Sears under

12  Section 8 for having these named persons on its board?

13  Period.  Why don't we put that in the release and say that's

14  all that's being extinguished here is that cause of action?

15  MR. KING:  Well, I think that we're entitled to --

16  under the agreement -- entitled to a release that grants us

17  the same level of protection that res judicata would enable

18  us.

19  THE COURT:  And I can understand that in a case where

20  the attorney and the clients he represents have such

21  sufficient communication that the attorney would know what

22  other possible causes of action are being extinguished by such

23  language.  That's not the case here.

24  MR. KING:  Well, your Honor, I believe that the

25  notice did provide the shareholders --

Case: 1:09-cv-05314 Document #: 148 Filed: 10/15/10 Page 21 of 32 PageID #:1847

1            THE COURT: The notice is not a substitute for a

2 conversation by an attorney with a client where the attorney

3 explores other causes of action and possible consequences to

4 this release that the client himself may not know about or be

5 aware of because of his lack of legal expertise. It doesn't

6 substitute for that.

7            You don't know -- you don't know what you're waiving

8 by this release. You don't know what you're releasing for all

9 of the clients you represent, the tens of thousands of them,

10 with this release. And you couldn't possibly know unless you

11 discussed it with them and investigated as an attorney what

12 their position is with respect to Sears.

13            MR. KING: The one other point that I wanted to

14 respond to, your Honor, if I may, is that the one objection

15 that was referred to -- that your Honor referred to with

16 respect to the shareholder who had an issue with the SEC, we

17 have conferred with Sears and they are not aware of this

18 shareholder's issue. So that issue has not been brought to

19 the attention --

20            THE COURT: Sure.

21            MR. KING: -- of the company.

22            THE COURT: But you think if you spoke to him, you

23 might find out that he does have some sort of action; that

24 he's got some sort of rights?

25            MR. VIANALE: I'd like to speak to him, but he said I

1  won't talk about it; it's confidential.  I mean, he made that

2  very clear.  And he could call us or he could --

3       THE COURT:  To me he's just representative of the

4  problem with releases such as this.  And I see them all the

5  time in common, ordinary class action cases and have more than

6  once caused the release to be rewritten in order to approve

7  the settlement.

8       There's no -- I don't see the fairness in a

9  settlement that has language that could be interpreted to bar

10 future causes of action by tens of thousands of people who

11 have had no real personal representation before the Court.  It

12 just doesn't seem fair to me, and it's not necessary.

13      The fact of the matter is that Sears knows that the

14 only thing litigated here and the only thing they've settled

15 here is the precise cause of action that you filed, and

16 they're not entitled to settle anything else.

17      MR. VIANALE:  What if somebody were to sue them for

18 breach of fiduciary duty for doing the same thing?  Shouldn't

19 they get a release for that?

20      THE COURT:  What if somebody wanted to sue them for

21 violating Section 8 of the act by virtue of some other named

22 board members?  Are there others?  I don't know.  Are people

23 objecting to that?  I don't know.  The point is why should you

24 bar that?

25      MR. VIANALE:  Because that's an issue for another

 1  day, that's why.

 2           THE COURT:  No, that's the issue for today if you're

 3  barring it by the language in your release.

 4           MR. VIANALE:  I don't think that would be barred.

 5           THE COURT:  I think it would be because the language

 6  says any cause of action that could have been brought --

 7           MR. VIANALE:  Yeah, but --

 8           THE COURT:  -- that's related to or could have been

 9  brought in this cause of action.  And you could clearly have

10  included that in this cause of action.

11           MR. VIANALE:  Not a new board member, we wouldn't.

12           THE COURT:  Other board members.

13           MR. VIANALE:  If there are other board members --

14           THE COURT:  The point is that this language can be

15  interpreted and used by attorneys in the future to try to

16  block lawsuits that are filed against Sears that were not

17  raised in this cause of action.  It can be a hindrance to

18  anyone.  And if you were an attorney representing such a

19  client, you wouldn't want to have to deal with this release

20  language in a motion to dismiss.  And there's no need for it.

21  There's no need for it.  Because the only thing that has been

22  litigated here is the cause of action in your complaint, that

23  precise cause of action.  That's all you've settled.  You

24  didn't discuss any other possible causes of action, and

25  there's no need to include language that can be used to

1  obstruct any other possible causes of action in the future
2  against the defendant in this case.
3       MR. VIANALE:  Well, I understand what your Honor is
4  saying.  I would like to, though, discuss my understanding of
5  what the law is on -- on this particular area.
6       This has come up before in the past where people
7  have -- shareholders, class members, have claimed that the
8  release is too broad.  What my understanding of the law is on
9  those issues is the courts have uniformly said, look, unless
10  the release is so outrageously broad that it's, you know,
11  somewhat shocking, releases that are very similar to the one
12  in this case are needed in order to bring parties to a
13  settlement; that the -- that defendants generally will not
14  settle cases like this with shareholders if they think there's
15  another shareholder behind them.  So that's the -- that's the
16  underlying basis for it.
17       Then to deal with what -- the problem your Honor is
18  raising, the courts have said the solution to this is notice.
19  If the notice adequately describes what is being released so
20  the shareholders can look at it and say, hey, I've got a claim
21  that's somewhat like that and this might be a problem for me,
22  they have the burden of having to come forward to object.
23       The other point your Honor is raising is how do we
24  know looking at this what causes of action might be out there
25  that might be released by the breadth of this language.  The

 1  courts have dealt with that.  They've said that under those
 2  circumstances, that's an issue for another day; that cases
 3  will never be settled or determined if there's a hypothetical
 4  case that we have to worry about today in court; that if
 5  there's a shareholder who got notice who didn't do anything
 6  about it and then later on comes forward and the defendants
 7  say, hey, that's barred by this settlement we had two years
 8  ago in the Sears case, the derivative in Chicago, the issue of
 9  whether the release bars that is what should be litigated
10  then, otherwise there's no end.  Now, that's my understanding
11  of what the Supreme Court has held in cases related to the
12  breadth of the release.

13          THE COURT:  Sure.  And what we're talking about now
14  is how to apply those principles to the particular language in
15  this release.  And I've given you my thoughts on that.  I
16  don't see the necessity for much of the broad language in this
17  release, the ambiguous language, causes of action that could
18  have been, that are in any way related to this cause of
19  action.  That type of language is just not necessary.

20          And I don't see why Sears should fear that it's not
21  getting finality in a settlement that says that you and no
22  other shareholder can raise the particular complaint that you
23  have settled in this case, unless you're telling me that in
24  your settlement process you bargained for and received
25  consideration for other possible causes of action that Sears

1 wants to extinguish by this release; and I don't think that's
2 so. From all the filings you've made, the only thing you've
3 talked about and considered are the people named as improper
4 board members in your complaint.
5 MR. VIANALE: That's not true, Judge. Mr. Lampert
6 was not named as an improper board member, and we negotiated
7 for and received --
8 THE COURT: Sure. And --
9 MR. VIANALE: -- consideration.
10 THE COURT: -- as I indicated, I think that may be
11 nice; but it's not really directly relevant to this case.
12 MR. VIANALE: No, Mr. Lampert's -- the release -- the
13 relief we got with Mr. Lampert is directly relevant to this
14 case. We also got a new board member.
15 THE COURT: Oh, I'm sorry. Mr. Lampert.
16 MR. VIANALE: Yes. We also got a new board member.
17 THE COURT: Okay.
18 MR. VIANALE: But we did negotiate for and receive
19 additional relief other than what was stated in the complaint,
20 which is why I think we got a good settlement.
21 THE COURT: Then put that in the release as well, the
22 issue with Mr. Lampert. But make the release relevant to this
23 case. Make it relevant to what you settled, to what you
24 alleged, the issues that were raised and what you settled.
25 And make sure it gives Sears complete finality as to those

 1  issues.  And that's the appropriate release in this case.
 2          Those are all the issues I have.  Does anyone else
 3  have anything they wish to say?
 4          Yes, sir?
 5          MR. FRANK:  Your Honor --
 6          THE COURT:  Please identify yourself for the record
 7  again.
 8          MR. FRANK:  Theodore Frank.
 9          I just wanted to address a misrepresentation of my
10  argument made by the plaintiffs.  It is not the case that the
11  only arguments I have objection is the idea that an
12  interlocking directorate might benefit the corporation.
13          THE COURT:  But it is one.
14          MR. FRANK:  It is one.  I'll grant that.  But the
15  fundamental objection is that this litigation cannot provide
16  benefit to the shareholders.  And there are three pieces of
17  evidence for that.
18          First, there's their own complaint.  They allege that
19  the breach of fiduciary duty -- quote/unquote -- the alleged
20  breach of fiduciary duty has no damages.  There are no damages
21  from it.  If there are no damages from it, how can there be
22  benefits from the cure of the breach of fiduciary duty?
23          Two, the day of the release of the notice of the
24  settlement, how did the market react?  As they say, the
25  market -- the stock price dropped.  They say, oh, it's only 54

## PROOF OF SERVICE

I hereby certify that on March 12, 2012, I electronically filed the foregoing with the Clerk of the United States Court of Appeals for the Seventh Circuit using the CM/ECF system, thereby effecting service on counsel of record who are registered for electronic filing under Cir. R. 25(a).

I further certify that I have caused to be served via First-Class Mail a copy of the foregoing Appendix of Appellant on the following counsel who are not registered for electronic filing:

Kenneth J. Vianale
VIANALE &
VIANALE Suite 112
2499 Glades Road
Boca Raton, FL 33431-0000

Paul Vizcarrondo
WACHTELL, LIPTON, ROSEN & KATZ
51 W. 52nd Street
New York, NY 10019-0000

Executed on March 12, 2012.

*/s/ Theodore H. Frank*
Theodore H. Frank
1718 M Street NW, No. 236
Washington, DC 20036
Telephone: (703) 203-3848
Email: tfrank@gmail.com
*In pro per*